# EXHIBIT A

# APPOINTMENT OF SUBSTITUTE TRUSTEES

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF WILSON** | § |

Date:                                    December 7, 2023

Borrower:                             Galleria Loop Note Holder LLC, a Texas limited liability company

Borrower's Address:            2500 West Loop South, Suite 255, Houston, Texas 77027

Holder:                                TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership

Holder's Address:                162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5

Substitute Trustees:            Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone

Substitute Trustees'           2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201
Address:

Deed of Trust:                    Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

    Date:                          Executed on August 18, 2023

    Grantor:                      OTISCO RDX, LLC, a Texas limited liability company

    Lender:                        TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership

    Trustee:                       Randa Barton

    Secures:                      Loan Agreement (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder.

Recording:                Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016.

Property:                All real property, improvements and personal property described as collateral in the Deed of Trust; the legal description of the real property is also, for the sake of convenience only, described on Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in this Appointment of Substitute Trustees, it being the intent that the "Property", for all purposes hereof, means all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust.

Holder, the present owner and holder of the Note, removes the Trustee and any prior substitute trustees under the Deed of Trust, and appoints Substitute Trustees, and each of them acting alone, to act in the place and stead of Trustee and any prior substitute trustees in accordance with the terms of the Deed of Trust and applicable law. Holder directs Substitute Trustees, and each of them acting alone, to foreclose the lien of the Deed of Trust in accordance with its terms and the laws of the State of Texas. Holder ratifies any prior acts taken by Substitute Trustees, or any of them, in connection with the sale of the Property.

[SIGNATURE ON FOLLOWING PAGE]

**HOLDER**:

TIG Romspen US Master Mortgage LP, an
exempted Cayman Islands limited partnership

By: 
Name: Joel Mickelson
Title: Authorized Signing Officer.

PROVINCE OF ONTARIO      §
                                     §
                                     §

       Before me, the undersigned authority, on the 7 day of December, 2023, personally appeared Joel Midek, who represented himself/herself to be authorized to execute this document on behalf of TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument, and he/she acknowledged to me that he/she executed the same in the capacity therein stated on behalf of and as the act and deed of such entity.

[SEAL]

RICHARD THOMAS VINCENT BERRY
NOTARY PUBLIC
ONTARIO

_____
Notary Public in and for the Province of Ontario

Richard Thomas Vincent Berry
Printed Name

My Commission Expires:

Does not expire.

After recording return to:

Kyle Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

## EXHIBIT A

### LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.


Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.


Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.


Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.


Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.


Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subdivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 169.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

Page 1 of 4

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(4)     THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot
113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID"
marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page
46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)     South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap
stamped "RPLS 5485";

(6)     South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH";

(7)     South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped
"RPLS 5485";

(8)     North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum
cap stamped "PRO-TECH" (leaning) marking the point of curvature of a
curve to the left;

(9)     In a southeasterly direction, 48.40 feet, along the arc of said curve to the
left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord
which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod
with aluminum cap stamped "PRO-TECH" marking the point of tangency
and the west corner of Lot 114 of said Las Palomas Country Club Estates,
Section 2;

THENCE along the common line of said Las Palomas Country Club Estates,
Section 2 and said Tract 3 as follows:

(10)    South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH" marking the south corner of said Lot
114 and the southwest corner of Lot 115 of said Las Palomas Country Club
Estates, Section 2;

(11)    South 68°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum
cap stamped "PRO-TECH" marking the southeast corner of said Lot 115
and the southwest corner of Lot 116 of said Las Palomas Country Club
Estates, Section 2;

(12)    South 59°35'52" East, 450.14 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH";

(13)    South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of
Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 177
and W. H. L. Jackson Survey No. 40, Abstract 401
Wilson County, Texas

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)    South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)    South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)    South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)    North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)    In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)    South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)    South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)    North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)    North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)    In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

Page 3 of 4

A-5

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(24)    North 18°28'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)    North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)    in a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)    North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

METES AND BOUNDS DESCRIPTION
TRACT 2
120.18 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)     In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2)     South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4350";

(3)     South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 1 of 5

A-7

(4) North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5) South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6) South 39°39'46" West, 261.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8) South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9) In a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10) South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11) South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13) In a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14) South 48°12'41" East, 562.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15) South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16) In a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17) South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(18)     South 42°59'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)     North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)     in a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)     North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)     THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)     South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)     North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)     North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 6485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)     THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

Page 3 of 6

A-9

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(28)  North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)  North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)  North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)  North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)  in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.70 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)  North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)  North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)  South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)  North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)  in a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)  North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(39)   North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and containing 120.18 acres (5,235,106 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY
NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT
481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED
279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL
RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE
WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT
BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS
FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF
1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS
MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking
the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way
widening as shown on the map or plat of The Meadows of Quail Run Section 1
recorded in Volume 9, Page 44 of the Wilson County Plat Records and the
northerly northwest corner of the herein described tract of land;

(1)  THENCE North 68°12'03" East, 120.00 feet, along the common line of said Lake
Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-
inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of
a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the
map or plat of said Meadows of Quail Run Section 1 and the northerly northeast
corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said
residue of a called 279.69-acre tract of land as follows:

(2)  South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum
cap stamped "PRO-TECH";

(3)  South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with
aluminum cap stamped "PRO-TECH";

(4)  South 21°48'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum
cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)  In a southeasterly direction, 145.78 feet, along the arc of said curve to the
left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord
which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod
with aluminum cap stamped "PRO-TECH" at the point of tangency;

Page 1 of 4

A-12

80.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 401
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)    South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)    North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)    North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)    In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)   South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)   South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)   South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)   In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)   South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)   South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)   South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)   South 18°25'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

Page 2 of 4

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(18)     South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)     THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)     North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)     North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 09°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)     North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)     in a northwesterly direction, 206.58 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)     North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)     North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)     North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 3 of 4

A-14

<div align="right">

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

</div>

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     **THENCE** North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

METES AND BOUNDS DESCRIPTION
TRACT 3B
0.456 ACRE IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3) South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

Page 1 of 2

A-16

(5)    THENCE South 68°13'56" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5465" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(6)         North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)         North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)    North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)     THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 59°28'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)     North 75°31'48" West, 35.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)     In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

Page 1 of 2

1.924 Acres
W. H. L. Jackson Survey No. 40, Abstract 481
and A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)    South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 263.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)    in a southwesterly direction, 112.66 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)    North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)    in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,535.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)   North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)   North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)   North 55°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)     South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
        stamped "RPLS 6405";

(2)     South 59°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the
        northwest corner of said called 131.73-acre tract of land and a reentrant
        corner of the herein described tract of land;

(4)     South 31°03'56" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 05°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
        northwest corner of a called 960.00-acre tract of land described in a deed
        to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386
        of the Wilson County Official Public Records and the southwest corner of
        said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

Page 1 of 5

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. I. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6)     South 04°46'07" East, 88.20 feet to a found 5/8 inch iron rod with cap stamped "W. DOVE 4143";

(7)     South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8)     THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9)     North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10)    North 84°04'23" West, 830.86 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11)    North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14)    North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;



**Wilson County**
**Genevieve Martinez**
**Wilson County Clerk**

*VG-5529-2024-139036*

---

**Instrument Number:** 139036

Real Property Recordings

Recorded On: January 03, 2024 10:43 AM               Number of Pages: 25

---

**" Examined and Charged as Follows: "**

Total Recording: $117.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                     **Record and Return To:**

Document Number:        139036                  SERVICELINK AGENCY SALES & POSTING
Receipt Number:          20231220000011         4600 FULLER AVE., STE 400
Recorded Date/Time:      January 03, 2024 10:43 AM
User:                    Loretta R               IRVING TX 75038
Station:                 CC-2210

---



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

*Genevieve Martinez*

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# EXHIBIT B

SCANNED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Security Instrument**") is made as of this __th day of August, 2023, by **OTISCO RDX, LLC**, a Texas limited liability company, having an address at 1001 West Loop South, Suite 700, Houston, Texas 77027 ("**Grantor**") to Randa Barton, a Texas resident, having an address at c/o Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200W, Dallas, Texas, 75201-7965 as Trustee ("**Trustee**") for the benefit of **TIG ROMSPEN US MASTER MORTGAGE LP**, an exempted Cayman Islands limited partnership, having an address at 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5, as beneficiary (together with its successors and assigns, "**Lender**").

## W I T N E S S E T H:

WHEREAS, this Security Instrument is given to secure a loan (the "**Loan**") in the principal sum of Eighteen Million Five Hundred Thousand and No/100 U.S. Dollars (USD $18,500,000.00) advanced pursuant to that certain Loan Agreement, dated as of May 31, 2019, between **GALLERIA LOOP NOTE HOLDER LLC**, a Texas limited liability company ("**Borrower**") and Lender, as modified by (i) that certain Reinstatement of and Amendment to Loan Agreement (the "**Reinstatement Agreement**") dated as of November 14, 2022, and (ii) that certain First Amendment to Reinstatement of and Amendment to Loan Agreement (the "**First Amendment**") dated as of July 5, 2023 (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by that certain Promissory Note, dated as of May 31, 2019, made by Borrower in favor of Lender in the principal amount of Eighteen Million Five Hundred Thousand and No/100 U.S. Dollars (USD $18,500,000.00) (as the same may hereafter be amended, restated, replaced, supplemented, renewed, extended or otherwise modified from time to time, the "**Note**"). All capitalized terms contained herein and not otherwise defined shall be as defined in the Loan Agreement;

WHEREAS, the owner or owners of Grantor have a direct or indirect interest in Borrower and will derive substantial direct and indirect benefits from the Loan Agreement and the transactions contemplated thereby, and such benefits are at least equal to the obligations incurred by Grantor under this Security Instrument.

WHEREAS, as required by the First Amendment, Grantor desires to secure the payment of a portion of the debt created by the Note and Loan Agreement (the "**Debt**") and the performance of all of its obligations under the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment, and the other Loan Documents (as herein defined); and

WHEREAS, this Security Instrument is given pursuant to the Loan Agreement, the Reinstatement Agreement and the First Amendment, and the payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement, the Reinstatement Agreement, the First Amendment and the Note, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument (the Loan Agreement, the Note, the Reinstatement Agreement, the First Amendment, this Security Instrument and all other documents evidencing or securing

the Debt (including all additional mortgages, deeds to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the "**Loan Documents**").

NOW THEREFORE, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument:

## ARTICLE I - GRANTS OF SECURITY

**Section 1.1**     <u>Property Mortgaged</u>. Grantor does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Trustee for the benefit of Lender and its successors and assigns, the following property, rights, interests and estates now owned, or hereafter acquired by Grantor (collectively, the "**Property**"):

        (a)     <u>Land</u>. The real property located in Wilson County, Texas, as more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**");

        (b)     <u>Additional Land</u>. All additional lands, estates and development rights (including without limitation any rights of Grantor or the Land in connection with any offsite detention or other facilities) hereafter acquired by Grantor and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

        (c)     <u>Improvements</u>. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "**Improvements**");

        (d)     <u>Easements</u>. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Grantor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

        (e)     <u>Equipment</u>. All "goods" and "equipment," as such terms are defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Grantor, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including all machinery, equipment, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Grantor and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "**Equipment**");

        (f)     <u>Fixtures</u>. All Equipment now owned, or the ownership of which is hereafter acquired, by Grantor which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings,

apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Grantor's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "**Fixtures**");

(g)     Personal Property.   All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, entitlements, approvals, authorizations, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, other than Fixtures, which are now or hereafter owned by Grantor and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "**Personal Property**"), and the right, title and interest of Grantor in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)     Leases and Rents.   All leases, subleases or subsubleases, lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "**Leases**"), whether before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code and all right, title and interest of Grantor, its successors and assigns therein and thereunder, including cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code (collectively, the "**Rents**") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt.   "Rents" shall include all revenues, deposits (including security, utility and other deposits and Lease termination payments and tenant reimbursements), accounts, cash, issues, fees, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Grantor or its agents or employees from any and all sources (including any Service Rights granted to any Person and any warrants, stock options or other rights granted to Grantor or its Affiliates in connection with any Lease) whether or not arising from or attributable to the Property, and proceeds, if any, from business interruption or other loss of income insurance, together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and all right, title and interest of Grantor, its successors and assigns therein and thereunder, including all guarantees, letters of credit (including the proceeds thereof) and any other credit support given by any guarantor in connection therewith, and all rents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the

Property and the Improvements whether paid or accruing before or after the filing by or against Grantor of any petition for relief under the Bankruptcy Code and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt.

(i)     <u>Condemnation Awards</u>. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including any Transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property.

(j)     <u>Insurance Proceeds</u>. All proceeds in respect of the Property under any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(k)     <u>Tax Certiorari</u>. All refunds, rebates or credits in connection with reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(l)     <u>Conversion</u>. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including proceeds of insurance and condemnation awards, into cash or liquidation claims;

(m)     <u>Rights</u>. The right, in the name and on behalf of Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)     <u>Agreements</u>. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, development, management or operation of the Land and any part thereof and any Improvements or respecting or pertaining to any business or activity conducted on the Land and any part thereof and all right, title and interest of Grantor therein and thereunder, including the right, upon the happening of any default hereunder, to receive and collect any sums payable to Grantor thereunder;

(o)     <u>Trademarks</u>. All tradenames, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p)     <u>Accounts</u>. All reserves, escrows, accounts receivable, accounts (including, without limitation, all escrows, deposits, reserves and impounds established pursuant to the Loan Documents), documents, instruments, chattel paper, claims, reserves (including deposits) representations, warranties and general intangibles, as one or more of the foregoing terms may be defined in the Uniform Commercial Code, and all contract rights, franchises, books, records, plans, specifications, permits, licenses (to the extent assignable), approvals, actions, choses, claims, suits, proofs of claims in bankruptcy and causes of action which now or hereafter relate to, are derived from or are used in connection with the Property, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Grantor or any operator or manager of the Improvements or acquired from others (including, without limitation, from the rental of any space and deposits securing reservations of such space), license, lease, sublease and concession fees and rentals, service charges, vending machine sales and proceeds, if any, from business interruption or other loss of income insurance, or arising from the sale of any Property or the rendition of services in the ordinary course of business or otherwise (whether or not earned by performance), together with the Property returned

by or reclaimed from customers wherever the Property is located, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business activities thereon and deposit accounts maintained by Grantor, together with all deposits or wire transfers made to such accounts, all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof;

(q)     Letter of Credit. All letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Grantor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1;

(r)     Tort Claims. All commercial tort claims Grantor now has or hereafter acquires relating to the properties, rights, titles and interests referred to in this Section 1.1 with respect to the land and Improvements;

(s)     Proceeds. All products and proceeds of any of the foregoing; and

(t)     Other Rights. Any and all other rights of Grantor in and to the items set forth in Subsections (a) through (s) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Grantor expressly grants to Lender as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "**Real Property**") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and subject to this Security Instrument.

Section 1.2    **Assignment of Rents**. Grantor hereby absolutely and unconditionally assigns to Lender all of Grantor's right, title and interest in and to all current and future Leases and Rents; it being intended by Grantor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to Section 7.1(h) of this Security Instrument, Lender grants to Grantor a license revocable upon the occurrence of an Event of Default to collect, receive, use and enjoy the Rents and Grantor shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3    **Security Agreement**. This Security Instrument is both a real property mortgage and a "security agreement", a "financing statement" and a "fixture filing" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Grantor in the Property. By executing and delivering this Security Instrument, Grantor hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment and the Personal Property and other property constituting the Property, whether now owned or hereafter acquired, to the full extent that the Fixtures, the Equipment and the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "**Collateral**"). If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including the right to take possession of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or

demand of Lender after the occurrence and during the continuance of an Event of Default, Grantor shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Grantor shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default. Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Grantor in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Grantor. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt and Other Obligations in such priority and proportions as Lender in its discretion shall deem proper. Grantor's principal place of business is as set forth on page one hereof and the address of Lender (secured party) is as set forth on page one hereof. Grantor irrevocably authorizes Lender at any time and from time to time to file in any jurisdiction any initial financing statements and amendments thereto and continuations thereof that (i) indicate the Collateral as the collateral covered thereby, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Uniform Commercial Code of the applicable jurisdiction, (ii) describe the Collateral in generic terms such as "all assets" or similar description, and (iii) contain any other information required by Article 9 of the applicable Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement or amendment, including (A) whether Grantor is an organization, the type of organization and any organization identification number issued to Grantor and, (B) in the case of a financing statement filed as a fixture filing, a sufficient description of real property to which the Collateral relates. Grantor agrees to furnish any such information to Lender promptly upon request. Grantor also ratifies its authorization for Lender to have filed in any jurisdiction any like initial financing statements or amendments thereto if filed prior to the date of this Security Instrument.

Grantor shall promptly notify Lender of the existence of any commercial tort claim now or hereafter existing for the benefit of Grantor or the Property, and shall execute, acknowledge and deliver a security agreement or other documentation as Lender shall from time to time require to acquire and perfect a valid and binding security interest in such commercial tort claim.

**Section 1.4** **Fixture Filing**. Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

**Section 1.5** **Pledges of Monies Held**. Grantor hereby pledges to Lender any and all monies now or hereafter held by Lender or on behalf of Lender as additional security for the Obligations until expended or applied as provided in this Security Instrument or the Loan Agreement.

**Section 1.6** **Common Law Pledge/Assignment**. To the extent that the Uniform Commercial Code does not apply to any item of the Personal Property in which a security interest is granted hereby, it is the intention of the parties that this Security Instrument serve to evidence Grantor's common law pledge and/or collateral assignment of such item of Personal Property, and Grantor hereby pledges and assigns such Personal Property to Lender.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto Trustee, and Trustee's successors and assigns, for the use and benefit of Lender, and its successors and assigns, forever;

IN TRUST, WITH POWER OF SALE, to secure payment to Lender of the Debt at the time and in the manner provided for its payment in the Loan Agreement, the Note and in this Security Instrument.

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Loan Agreement, shall well and truly perform the Other Obligations as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Grantor's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof shall survive any such payment or release.

## ARTICLE II - DEBT AND OBLIGATIONS SECURED

**Section 2.1     Debt**. This Security Instrument and the grants, assignments and Transfers made in Article I are given for the purpose of securing the Debt. Notwithstanding the foregoing, this Security Instrument initially secures a maximum amount of $2,266,000.00 of the Debt, which maximum amount may increase from time to time pursuant to the terms of Section 4 of the First Amendment.

**Section 2.2     Other Obligations**. This Security Instrument and the grants, assignments and Transfers made in Article I are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)     the performance of all other obligations of Grantor contained herein;

(b)     the performance of each obligation of Borrower contained in the Loan Agreement, the Reinstatement Agreement, the First Amendment and any other Loan Document; and

(c)     the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment or any other Loan Document.

**Section 2.3     Debt and Other Obligations**. Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "Obligations."

**Section 2.4     Notwithstanding anything contained herein to the contrary, the rights, liens and obligations created hereunder are expressly subject and subordinate to the prior perfected security interest of Milestone Capital CRE I, LLC pursuant to that Deed of Trust and Security Agreement dated January 2, 2023 in an amount not to exceed $5,900,000 filed of record in Wilson County, Texas under Document No. 132703.**

## ARTICLE III - GRANTOR COVENANTS

Grantor covenants and agrees that:

**Section 3.1     Payment of Debt**.  Grantor shall cause Borrower to pay the Debt at the time and in the manner provided in the Loan Agreement, the Note, the Reinstatement Agreement, the First Amendment and/or this Security Instrument.

**Section 3.2    Incorporation by Reference.** All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note, (c) the Reinstatement Agreement, (d) the First Amendment, and (e) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 3.3    Insurance.** Grantor shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Grantor and the Property as required pursuant to the Loan Agreement.

**Section 3.4    Maintenance of Property.** To the extent reasonably necessary, Grantor shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of equal or better quality of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender, which consent shall not be unreasonably withheld. Grantor shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land.

(a)    If all or any part of the Improvements shall be damaged or destroyed by fire or other casualty, Grantor shall give immediate written notice and make a claim to the insurance carrier and Lender. With respect to any such casualty loss for which Grantor has an insurance claim that exceeds **ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00),** Grantor hereby authorizes and empowers Lender, at Lender's option and in Lender's sole discretion as attorney-in-fact for Grantor, to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided, however, that the foregoing authorization and empowerment of Lender to act as attorney-in-fact for Grantor shall not become effective until the occurrence and during the continuance of an additional Event of Default under the Loan Agreement, the Reinstatement Agreement, or the First Amendment or until such time as Grantor fails to diligently pursue the collection of such insurance proceeds in Lender's opinion. The foregoing appointment is irrevocable, coupled with an interest and continuing so long as Indebtedness remains outstanding, and such rights, powers and privileges shall be exclusive in Lender and its successors and assigns.

(b)    As loss payee on all policies of casualty insurance, to the extent Lender receives insurance proceeds from any casualty loss, and shall hold the same in an interest-bearing account pending disposition in accordance with this Section. Grantor authorizes Lender to deduct from such insurance proceeds received by Lender all of Lender's reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in connection with the collection thereof (the remainder of such insurance proceeds being referred to herein as "Net Casualty Proceeds").

(c)    Lender shall cause the Net Casualty Proceeds from any casualty loss affecting the Property to be disbursed monthly for the cost of reconstruction of the Property if all of the following conditions are satisfied within **NINETY (90)** days after the applicable casualty loss: (1) Grantor satisfies Lender that the reconstruction can be completed within a reasonable period of time after such casualty loss (but in no event later than the Maturity Date (as defined in the Note) and that after giving effect to such reconstruction the Property will be restored to its condition immediately prior to the casualty loss or to another condition approved by Lender, which approval shall not be unreasonably withheld; (2) Grantor satisfies Lender that the Net Casualty Proceeds are sufficient to pay all costs of reconstruction, and if insufficient, Grantor deposits with Lender additional funds to make up such insufficiency; (3) Grantor delivers to Lender all plans and specifications and construction contracts for the work of reconstruction and

such plans and specifications and construction contracts are in form and content reasonably acceptable to Lender and with a contractor reasonably acceptable to Lender; and (4) Grantor delivers to Lender satisfactory evidence that upon completion of the reconstruction, the leases of the Property will remain in full force and effect. The disbursement of Net Casualty Proceeds pursuant to this clause shall be in accordance with customary disbursement procedures and shall not be available during the continuance of an Event of Default. Any Net Casualty Proceeds not required to reconstruct the Property shall be delivered to Grantor after expiration of the lien period for the work of reconstruction (or, at Grantor's option, after delivery of title insurance to Lender over such liens where the lien period has not so expired). Upon the occurrence and during the continuance of a Default or in the event Grantor is unable to satisfy the conditions set forth in subclauses (1) through (4) hereof by the required date, Lender shall have the right (but not the obligation) to apply all Net Casualty Proceeds held by it to the payment of the Indebtedness. Grantor shall have the obligation to promptly and diligently complete the work of reconstruction necessitated by any casualty loss and restore the Property to the equivalent of its condition immediately prior to such casualty provided the applicable Net Casualty Proceeds are made available to Grantor for such purpose.

(e) **Condemnation and Other Awards**. Promptly upon receiving written notice of the institution or threatened institution of any proceeding for the condemnation of the Property or any part thereof, Grantor shall notify Lender of such fact. Grantor shall then file or defend its rights thereunder and prosecute the same with due diligence to its final disposition; provided, however, that Grantor shall not enter into any settlement of such proceeding without the prior approval of Lender, which approval shall not be unreasonably withheld. Lender shall be entitled, at its option, to appear in any such proceeding in its own name, and upon the occurrence and during the continuation of a Default or if Grantor fails to diligently prosecute such proceeding, (i) Lender shall be entitled, at its option, to appear in and prosecute any such proceeding or to make any compromise or settlement in connection with such condemnation on behalf of Grantor. If the Property or any material part thereof is taken or materially diminished in value in connection with such condemnation, or if a consent settlement is entered, by or under threat of such proceeding, the award or settlement payable to Grantor by virtue of its interest in the Property, shall be, and by these presents is, assigned, transferred and set over unto Lender. Any such award or settlement shall be first applied to reimburse Lender for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such award or settlement. The balance of such award or settlement (the "Net Condemnation Proceeds") shall be paid to Lender for application as if such award or settlement constituted insurance proceeds from a casualty loss; provided, however, that Lender shall have no obligation to make Net Condemnation Proceeds available for construction or reconstruction of the Property unless Lender has determined that the Property as so constructed or reconstructed after giving effect to the condemnation would have a value that is no less than its value would have been had there been no such condemnation. Grantor shall have the obligation to promptly and diligently complete the work of reconstruction necessitated by any condemnation and restore the Property to the equivalent of its condition immediately prior to such condemnation (or if the initial construction of the Improvements is not substantially complete at the time of such condemnation, continue the construction of the Improvements in accordance with the terms hereof) provided the applicable Net Condemnation Proceeds are made available to Grantor for such purpose.

**Section 3.5** **Waste**. Grantor shall not commit or suffer any waste of the Property ("waste" meaning the diminution in the Property's value resulting from Grantor's negligent or willful failure to manage, maintain, repair and otherwise operate the Property in a commercially reasonable manner) or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property (including the risk of any discharge of any Hazardous Material), or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument. Grantor shall not, without the prior written consent of Lender, permit any

drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

**Section 3.6    Payment for Labor and Materials**. (a) Grantor shall promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances.

(b)    After prior written notice to Lender, Grantor, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) Grantor is permitted to do so under the provisions of any other mortgage, deed of trust, security instrument, deed or other agreement or instrument to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Grantor and from the Property or Grantor shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Grantor is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, (vi) Grantor shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon, (vii) Grantor shall have furnished to Lender all other items reasonably requested by Lender, including title insurance coverage or bonding over such lien, and (viii) Lender shall have determined that Grantor is likely to prevail in such contest.  Notwithstanding the foregoing, if Grantor provides a bond to indemnify against liens satisfying the requirements of the Texas Property Code with respect to any lien claim, Grantor will be deemed to have satisfied the provisions of this Section 3.6 with respect to such lien claim.

**Section 3.7    Performance of Other Agreements**.  Grantor shall cause Borrower to observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, the Reinstatement Agreement, the First Amendment, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

**Section 3.8    Change of Name, Identity or Structure**.  Grantor shall not change Grantor's name, identity (including its trade name or names) or, if not an individual, Grantor's corporate, partnership, limited liability company, or other structure, without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change and without first obtaining the prior written consent of Lender, which consent shall not be unreasonably withheld.  Grantor hereby authorizes Lender to file, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interest granted herein. At the request of Lender, Grantor shall execute a certificate in form satisfactory to Lender listing the trade names under which Grantor intends to operate the Property, and representing and warranting that Grantor does business under no other trade name with respect to the Property.

**Section 3.9    Title**.  Grantor has good, and indefeasible fee simple title to the real property comprising part of the Property and good title to the balance of such Property, free and clear all Liens (as

defined in the Loan Agreement) whatsoever except the Permitted Encumbrances (as defined in the Loan Agreement), such other Liens as may be expressly permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. The Permitted Encumbrances in the aggregate do not materially and adversely affect the value, operation or use of the Property. This Security Instrument, when properly recorded in the appropriate records, together with any Uniform Commercial Code financing statements required to be filed in connection therewith, will create (a) a valid, perfected first priority lien on the Property, subject only to Permitted Encumbrances and the Liens created by the Loan Documents and (b) perfected security interests in and to, and perfected collateral assignments of, all personalty (including the Leases), all in accordance with the terms thereof, in each case subject only to any applicable Permitted Encumbrances, such other Liens as are permitted pursuant to the Loan Documents and the Liens created by the Loan Documents. There are no claims for payment for work, labor or materials affecting the Property which are past due and are or may become a lien prior to, or of equal priority with, the Liens created by the Loan Documents unless such claims for payments are being contested in accordance with the terms and conditions of this Security Instrument or bonded around as provided in Section 3.6 above.

Section 3.10   **Letter of Credit Rights**. If Grantor is at any time a beneficiary under a letter of credit relating to the properties, rights, titles and interests referenced in Section 1.1 of this Security Instrument now or hereafter issued in favor of Grantor, Grantor shall promptly notify Lender thereof and, at the request and option of Lender, Grantor shall, pursuant to an agreement in form and substance satisfactory to Lender, either (i) arrange for the issuer and any confirmer of such letter of credit to consent to an assignment to Lender of the proceeds of any drawing under the letter of credit or (ii) arrange for Lender to become the transferee beneficiary of the letter of credit, with Lender agreeing, in each case that the proceeds of any drawing under the letter of credit are to be applied as provided in Section 7.2 of this Security Instrument.

## ARTICLE IV - OBLIGATIONS AND RELIANCES

Section 4.1   **Relationship of Grantor and Lender**. The relationship between Grantor and Lender is solely that of borrower and creditor, and Lender has no fiduciary or other special relationship with Grantor, and no term or condition of any of the Loan Agreement, the Reinstatement Agreement, the First Amendment, the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Grantor and Lender to be other than that of borrower and creditor.

Section 4.2   **No Reliance on Lender**. The general partners, managers, members, principals and (if Grantor is a trust) beneficial owners of Grantor are experienced in the ownership and operation of properties similar to the Property, and Lender is relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Grantor is not relying on Lender's expertise, business acumen or advice in connection with the Property.

Section 4.3   **No Lender Obligations**. (a) Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2, Lender is not undertaking the performance of (i) any obligations under any Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)   By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.4     Reliance.**  Grantor recognizes and acknowledges that in accepting the Loan Agreement, the Reinstatement Agreement, the First Amendment, the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.1 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Section 4.1 of the Loan Agreement.

## ARTICLE V - FURTHER ASSURANCES

**Section 5.1     Recording of Security Instrument, etc.**  Grantor forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, shall cause this Security Instrument and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property.  Grantor shall pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.  Notwithstanding the foregoing, Grantor may in good faith, in lieu of paying such taxes and assessments as they become due and payable, by appropriate proceedings, contest their validity. Pending such contest, Grantor shall not be deemed in default under this Deed of Trust because of such nonpayment if: (a) prior to delinquency of the asserted tax or assessment, Grantor furnishes Lender an indemnity bond secured by a deposit in cash or other security acceptable to Lender, or with a surety acceptable to Lender, in the amount of the tax or assessment being contested by Grantor plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, conditioned that such tax or assessment, with interest, cost and penalties, be paid as herein stipulated; and (b) Grantor promptly pays any amount adjudged by a court of competent jurisdiction to be due with all costs, penalties and interest thereon, on or before the date such judgment becomes final.  In any event, the tax, assessment, penalties, interest, and costs shall be paid prior to the date on which any writ or order is issued under which the Property or any part of the Property may be sold in satisfaction thereof.

**Section 5.2     Further Acts, Etc.**  Grantor shall, at the cost of Grantor, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Grantor may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements.  Grantor grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including such rights and remedies available to Lender pursuant to this Section 5.2.

**Section 5.3** **Changes in Tax, Debt, Credit and Documentary Stamp Laws**. (a) If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Grantor shall pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Grantor would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

(b) Grantor shall not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c) If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Grantor shall pay for the same, with interest and penalties thereon, if any.

**Section 5.4** **Severing of Security Instrument**. (a) Upon the occurrence of an Event of Default and delivery of written notice to Grantor with an opportunity to cure within ten (10) calendar days of such notice, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Grantor under this Security Instrument or any of the other Loan Documents executed and delivered by, or applicable to, Grantor or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Debt shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents with respect to all or any part of the Property. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singularly, successively, together or otherwise, at such time and in such order as Lender may determine in its discretion, to the fullest extent permitted by law, without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth herein or in the other Loan Documents. Without limiting the generality of the foregoing, Grantor agrees that if an Event of Default is continuing (i) Lender is not subject to any "one action" or "election of remedies" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and this Security Instrument has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Debt or the Debt has been paid in full.

(b) With respect to Grantor and the Property, nothing contained herein or in any other Loan Document shall be construed as requiring Lender to resort to the Property for the satisfaction of any of the Debt in any preference or priority, and Lender may seek satisfaction out of the Property, or any part thereof, in its discretion in respect of the Debt. In addition, Lender shall have the right from time to time to partially foreclose this Security Instrument in any manner and for any amounts secured by this Security Instrument then due and payable as determined by Lender in its discretion including the following circumstances: (i) in the event Borrower defaults beyond any applicable grace period in the payment of one or more scheduled payments of principal and interest, Lender may foreclose this Security Instrument to recover such delinquent payments or (ii) in the event Lender elects to accelerate less than the entire outstanding principal balance of the Loan, Lender may foreclose this Security Instrument to recover so much of the principal balance of the Loan as Lender may accelerate and such other sums secured by this Security Instrument as Lender may elect. Notwithstanding one or more partial foreclosures, the Property shall remain subject to

this Security Instrument to secure payment of sums secured by this Security Instrument and not previously recovered.

(c)     Lender shall have the right from time to time to sever the Note and the other Loan Documents into one or more separate notes, mortgages and other security documents (the "**Severed Loan Documents**") in such denominations as Lender shall determine in its discretion for purposes of evidencing and enforcing its rights and remedies provided hereunder. Grantor shall execute and deliver to Lender from time to time, promptly after the request of Lender, a severance agreement and such other documents as Lender shall request in order to affect the severance described in the preceding sentence, all in form and substance reasonably satisfactory to Lender. Grantor hereby absolutely and irrevocably appoints Lender as its true and lawful attorney, coupled with an interest, in its name and stead to make and execute all documents necessary or desirable to effect the aforesaid severance, Grantor ratifying all that its said attorney shall do by virtue thereof; provided, however, Lender shall not make or execute any such documents under such power until three (3) days after notice has been given to Grantor by Lender of Lender's intent to exercise its rights under such power. Grantor shall be obligated to pay any costs or expenses incurred in connection with the preparation, execution, recording or filing of the Severed Loan Documents and the Severed Loan Documents shall not contain any representations, warranties or covenants not contained in the Loan Documents and any such representations and warranties contained in the Severed Loan Documents will be given by Grantor only as of the Closing Date.

**Section 5.5     Replacement Documents**. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Grantor shall cause Borrower to issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE VI - DUE ON SALE/ENCUMBRANCE

**Section 6.1     Lender Reliance**. Grantor acknowledges that Lender has examined and relied on the experience of Grantor and its general partners, members, principals and (if Grantor is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Grantor's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations. Grantor acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2     No Sale/Encumbrance**. Neither Grantor nor any of its affiliates shall Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE VII - RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1     Remedies**. Upon the occurrence and during the continuance of any default by Borrower under the Reinstatement Agreement, the First Amendment, or any additional Event of Default under the Loan Agreement, Grantor agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Property, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order

as Lender may determine, in its discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

      (a)    declare the entire unpaid Debt to be immediately due and payable;

      (b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

      (c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

      (d)    sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

      (e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement or in the other Loan Documents;

      (f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

      (g)    apply for and obtain the appointment, on an *ex parte* basis (any required notice of such appointment or any proceeding to appoint the same being hereby expressly waived) and without regard for the adequacy of the security for the Debt and without regard for the solvency of Grantor, any guarantor, indemnitor or of any Person liable for the payment of the Debt, of a receiver, trustee, liquidator or conservator of the Property to do all of the actions set forth in subparagraph (h) below and to, with the consent of Lender, dispose (by lease, sale or otherwise) of some or all of the Property in the course of the proceeding in which such receiver, trustee, liquidator or conservator is appointed;

      (h)    the license granted to Grantor under <u>Section 1.2</u> hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Grantor and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Grantor and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Grantor agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Grantor with respect to the Property, whether in the name of Grantor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Grantor to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Grantor; (vi) require Grantor to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Grantor may be evicted by summary

proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, insurance and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

        (i)      exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including: (i) the right to take possession of the Fixtures, the Equipment, the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment, the Personal Property, and (ii) request Grantor at its expense to assemble the Fixtures, the Equipment, the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment, the Personal Property sent to Grantor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Grantor;

        (j)      apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items in any order in its discretion: (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note in the inverse order of maturity; and (v) all other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including advances made by Lender pursuant to the terms of this Security Instrument;

        (k)      surrender the Policies maintained pursuant to the Loan Agreement, collect the unearned Insurance Premiums and apply such sums as a credit on the Debt in such priority and proportion as Lender shall deem proper, and in connection therewith, Grantor hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Grantor to collect such Insurance Premiums;

        (l)      prohibit Grantor and anyone claiming for or through Grantor from making use of or withdrawing any sums from any lockbox, escrow or similar account;

        (m)      pursue such other remedies as Lender may have under applicable law; or

        (n)      apply the undisbursed balance of any other deposits or reserves of Grantor held by Lender, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

      **Section 7.2**      <u>**Application of Proceeds**</u>. The purchase money, proceeds and avails of any disposition of the Property, and or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

      **Section 7.3**      <u>**Right to Cure Defaults**</u>. Upon the occurrence and during the continuance of any default by Borrower under the Reinstatement Agreement, the First Amendment or any additional Event of

Default under the Loan Agreement, or if Grantor fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Grantor and without releasing Grantor from any obligation hereunder, make any payment or do any act required of Grantor hereunder in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such reasonable costs and expenses incurred by Lender in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate (as defined in the Note), for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such reasonable costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

**Section 7.4     Actions and Proceedings**. Upon the occurrence and during the continuation of any Event of Default, Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Grantor, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

**Section 7.5     Recovery of Sums Required To Be Paid**. Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

**Section 7.6     Examination of Books and Records**. At reasonable times and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine the records, books, management and other papers of Grantor which reflect upon their financial condition, at the Property or at any office regularly maintained by Grantor where the books and records are located. Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers. In addition, at reasonable times and upon reasonable notice, Lender, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Grantor pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Grantor where the books and records are located. This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

**Section 7.7     Other Rights, etc**. (a)  The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Grantor shall not be relieved of Grantor's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Grantor or any guarantor or any indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)      It is agreed that the risk of loss or damage to the Property is on Grantor, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.

Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)     Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.8     Right to Release Any Portion of the Property**. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

**Section 7.9     Violation of Laws**. If the Property is not in material compliance with Legal Requirements, Lender may impose additional requirements upon Grantor in connection herewith including monetary reserves or financial equivalents. Notwithstanding the foregoing, Grantor by written notice to Lender, shall have the right to contest in good faith the validity or applicability of such laws, rules, and regulations as long as such contest does not impair the value of the Property.

**Section 7.10     Choice of Remedies**. Without limiting the specificity of Section 5.4, nothing herein shall inhibit or prevent Lender from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in Article IX herein.

**Section 7.11     Right of Entry**. Upon reasonable notice to Grantor, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

**Section 7.12     Rights Pertaining To Sales**.  The following provisions shall, to the extent permitted by law, apply to any sale or sales of all or any portion of the Property under or by virtue of this Security Instrument, whether under any power of sale herein granted or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale:

(a)     Trustee (for purposes of this Section 7.12 only, the term "Trustee" shall be interpreted to include any public officer or other person having the responsibility to conduct any sale of all or part of the Property pursuant to this Security Instrument) may conduct any number of sales from time to time. The power of sale shall not be exhausted by any one or more of such sales as to any part of the Property that has not been sold or by any sale that is not completed or is defective until the Debt has been paid in full.

(b)     Any sale may be postponed or adjourned by public announcement at the time and place appointed for such sale or for such postponed or adjourned sale, and such sale may be completed at the time and place so announced without further notice.

(c)     Lender is hereby appointed the true and lawful attorney-in-fact of Grantor, which appointment is irrevocable and shall be deemed to be coupled with an interest, in Grantor's name and stead, to make all necessary conveyances, assignments, Transfers and deliveries of the Property and rights so sold, and for that purpose Lender may execute all necessary instruments to accomplish the same, and may substitute one or more persons with like power, and Grantor hereby ratifies and confirms all that said attorney or such substitute or substitutes shall lawfully do by virtue thereof. Nevertheless, Grantor, if requested by Lender, shall ratify and confirm any such sale or sales by executing and delivering to Lender or such purchaser or purchasers, as applicable, all such instruments as may be advisable, in Lender's judgment, for the purposes designated in such request.

(d)     The receipt by Trustee of the purchase money paid at any such sale, or the receipt of any other person authorized to give the same, shall be sufficient discharge therefor to any purchaser of any property or rights sold as aforesaid, and no purchaser, or its representatives, grantees or assigns, after paying such purchase price and receiving such receipt, shall be bound to see to the application of such purchase price or any part thereof upon or for any trust or purpose of this Security Instrument or, in any manner whatsoever, be answerable for any loss, misapplication or non-application of any such purchase money, or part thereof, or be bound to inquire as to the authorization, necessity, expediency or regularity of any such sale.

(e)     Any such sale or sales shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Grantor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Grantor and any and all persons claiming or who may claim the same, or any part thereof, by, through or under Grantor to the fullest extent permitted by applicable law, except to the extent that the sale is unlawful due to the Trustee's failure to comply with Texas law.

(f)     Upon any such sale or sales, Lender may bid for and acquire the Property and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting against the Debt the amount of the bid made therefor, after deducting therefrom the expenses of the sale, the cost of any enforcement proceeding hereunder and any other sums that Lender is authorized to charge to Borrower under the terms of the Note, this Security Instrument, or any other Loan Document to the extent necessary to satisfy such bid.

(g)     If Grantor, or any person claiming by, through or under Grantor, shall Transfer or refuse or fail to surrender possession of the Property after any sale thereof, then Grantor or such person shall be deemed a tenant at sufferance of the purchaser at such sale, subject to eviction by means of unlawful detainer proceedings or other appropriate proceedings, and to any other right or remedy available hereunder or under applicable law.

(h)     Upon any such sale, it shall not be necessary for Trustee, Lender or any public officer acting under execution or order of court to have present or constructively in its possession any or all of the Property.

(i)     In the event of any sale referred to in this Section 7.12, the entire Debt, if not previously due and payable, immediately thereupon shall, notwithstanding anything to the contrary in the Note, this Security Instrument or any other Loan Document, become due and payable.

(j)     This instrument shall be effective as a mortgage. If a sale hereunder shall be commenced by Trustee, Lender may, at any time before the sale of the Property, direct the Trustee to abandon the sale, and may institute suit for the collection of the Debt or part thereof and for the foreclosure of this Security Instrument. If Lender shall institute suit for the collection of the Debt or part thereof, and for the foreclosure of this Security Instrument, Lender may at any time before the entry of final judgment in said suit dismiss the same (or part thereof) and direct the Trustee to sell the Property in accordance with the provisions of this Security Instrument. Lender may pursue its rights and remedies against any guarantor or other party liable for any of the obligations in such a suit for foreclosure or by separate suit, whether or not the Trustee is also pursuing a sale under the terms hereof.

## ARTICLE VIII - PREPAYMENT

**Section 8.1     Prepayment**. The Debt may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Note.

## ARTICLE IX - INDEMNIFICATION

**Section 9.1     General Indemnification**. Grantor shall, at its sole cost and expense, protect (with legal counsel reasonably acceptable to Lender), defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all claims, suits, liabilities (including strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including reasonable attorneys' fees and other costs of defense) (collectively, the **"Losses"**) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) ownership of this Security Instrument, the Property or any interest therein or receipt of any Rents; (b) any amendment to, or restructuring of, the Debt, the Note, the Loan Agreement, this Security Instrument, or any other Loan Documents; (c) any and all lawful action that may be taken by Lender in connection with the enforcement of the provisions of this Security Instrument, the Loan Agreement, the Note or any of the other Loan Documents, whether or not suit is filed in connection with same, or in connection with Grantor, any guarantor or any indemnitor Person and/or any partner, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding; (d) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (e) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (f) any failure on the part of Grantor to perform or be in compliance with any of the terms of this Security Instrument, or on the part of Borrower to perform or be in compliance with any of the terms of the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment, or any of the other Loan Documents; (g) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (h) the failure of any person to file timely with the Internal Revenue Service an accurate Form 1099-B, Statement for Recipients of Proceeds from Real Estate, Broker and Barter Exchange Transactions, which may be required in connection with this Security Instrument, or to supply a copy thereof in a timely fashion to the recipient of the proceeds of the transaction in connection with which this Security Instrument is made; (i) any failure of the Property to be in compliance with any Legal Requirements; (j) the enforcement by any Indemnified Party of the provisions of this Article IX; (k) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (l) any and all claims (including lender liability claims) or demands by Grantor or any third parties, including any guarantor or indemnitor; (m) the payment of any

commission, charge or brokerage fee to anyone claiming through Grantor which may be payable in connection with the funding of the Loan; or (n) any misrepresentation made by Grantor in this Security Instrument by Borrower in the Loan Agreement, the Reinstatement Agreement, the First Amendment or any other Loan Document. Any amounts payable to Lender by reason of the application of this <u>Section 9.1</u> shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid. Notwithstanding the foregoing, in no event shall Grantor be obligated to indemnify Lender against losses arising out of the gross negligence, willful misconduct or bad faith of Lender.

Section 9.2    **Mortgage and/or Intangible Tax**. Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes. Grantor hereby agrees that, in the event that it is determined that any documentary stamp taxes or intangible personal property taxes are due hereon or on any mortgage or promissory note executed in connection herewith (including the Note), Grantor shall indemnify and hold harmless the Indemnified Parties for all such documentary stamp and/or intangible taxes, including all penalties and interest assessed or charged in connection therewith.

Section 9.3    **ERISA Indemnification**. Grantor shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses (including reasonable attorneys' fees and costs incurred in the investigation, defense, and settlement of Losses incurred) in connection with any prohibited transaction under ERISA.

Section 9.4    **Duty to Defend; Attorneys' Fees and Other Fees and Expenses**. Upon written request by any Indemnified Party, Grantor shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved (in the exercise of reasonable judgment) by the Indemnified Parties. Notwithstanding the foregoing, if the defendants in any such claim or proceeding include both Grantor and any Indemnified Party and Grantor and such Indemnified Party shall have reasonably concluded that there are any legal defenses available to it and/or other Indemnified Parties that are different from or additional to those available to Grantor, such Indemnified Party shall have the right to select separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Party, provided that no compromise or settlement shall be entered without Grantor's consent, which consent shall not be unreasonably withheld. Upon demand, Grantor shall pay or, in the sole good faith discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## ARTICLE X - WAIVERS

Section 10.1    **Waiver of Counterclaim**. To the extent permitted by applicable law, Grantor hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

Section 10.2    **Marshalling and Other Matters**. To the extent permitted by applicable law, Grantor hereby waives the benefit of all homestead, appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Grantor hereby expressly

waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Grantor, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by applicable law, and hereby waives any defense Grantor might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

      **Section 10.3**   <u>Waiver of Notice</u>. To the extent permitted by applicable law, Grantor shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Grantor and except with respect to matters for which Lender is required by applicable law to give notice, and Grantor hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Grantor.

      **Section 10.4**   <u>Waiver of Statute of Limitations</u>. To the extent permitted by applicable law, Grantor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt by Borrower or performance of its Other Obligations.

      **Section 10.5**   <u>Survival</u>. The indemnifications made pursuant to <u>Sections 9.1, 9.2</u> and <u>9.3</u> herein shall continue indefinitely in full force and effect and shall survive and shall in no way be impaired by any of the following: any satisfaction or other termination of this Security Instrument, any assignment or other Transfer of all or any portion of this Security Instrument or Lender's interest in the Property (but, in such case, shall benefit both Indemnified Parties and any assignee or transferee), any exercise of Lender's rights and remedies pursuant hereto including foreclosure or acceptance of a deed in lieu of foreclosure, any exercise of any rights and remedies pursuant to the Loan Agreement, the Note or any of the other Loan Documents, any Transfer of all or any portion of the Property (whether by Grantor or by Lender following foreclosure or acceptance of a deed in lieu of foreclosure or at any other time), any amendment to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, and any act or omission that might otherwise be construed as a release or discharge of Grantor from the obligations pursuant hereto.

      **Section 10.6**   <u>Trial by Jury</u>. **GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION THEREOF OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND GRANTOR HEREBY AGREES AND CONSENTS THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GRANTOR TO THE WAIVER OF ANY RIGHT GRANTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.**

# ARTICLE XI - EXCULPATION

The Debt shall be fully recourse to Borrower and Borrower shall be personally liable for all of the Debt.

# ARTICLE XII - NOTICES

All notices or other written communications hereunder shall be delivered in accordance with the Loan Agreement.

# ARTICLE XIII - APPLICABLE LAW

**Section 13.1** **Governing Law**. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN, THIS SECURITY INSTRUMENT SHALL BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE WHERE THE LAND IS LOCATED WITHOUT REGARD TO THE CONFLICTS OF LAW PROVISIONS THEREOF ("**GOVERNING STATE**"). GRANTOR HEREBY CONSENTS TO PERSONAL JURISDICTION IN THE GOVERNING STATE. JURISDICTION AND VENUE OF ANY ACTION BROUGHT TO ENFORCE THIS SECURITY INSTRUMENT OR ANY OTHER LOAN DOCUMENT OR ANY ACTION RELATING TO THE LOAN OR THE RELATIONSHIPS CREATED BY OR UNDER THE LOAN DOCUMENTS ("**ACTION**") SHALL, AT THE ELECTION OF LENDER, BE IN (AND IF ANY ACTION IS ORIGINALLY BROUGHT IN ANOTHER VENUE, THE ACTION SHALL AT THE ELECTION OF LENDER BE TRANSFERRED TO) A STATE OR FEDERAL COURT OF APPROPRIATE JURISDICTION LOCATED IN THE GOVERNING STATE. GRANTOR HEREBY CONSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF THE STATE COURTS OF THE GOVERNING STATE AND OF FEDERAL COURTS LOCATED IN THE GOVERNING STATE IN CONNECTION WITH ANY ACTION AND HEREBY WAIVES ANY AND ALL PERSONAL RIGHTS UNDER THE LAWS OF ANY OTHER STATE TO OBJECT TO JURISDICTION WITHIN SUCH STATE FOR PURPOSES OF ANY ACTION. Grantor hereby waives and agrees not to assert, as a defense to any Action or a motion to transfer venue of any Action, (i) any claim that it is not subject to such jurisdiction, (ii) any claim that any Action may not be brought against it or is not maintainable in those courts or that this Security Instrument may not be enforced in or by those courts, or that it is exempt or immune from execution, (iii) that the Action is brought in an inconvenient forum, or (iv) that the venue for the Action is in any way improper.

**Section 13.2** **Usury Laws**. It is expressly stipulated and agreed to be the intent of Grantor and Lender at all times to comply with the applicable Texas law governing the maximum rate of interest payable on the indebtedness evidenced by the Note, this Security Instrument, and the Related Debt (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to the Note, this Security Instrument, any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of the Note and/or the Related Debt, or (iii) Borrower will have paid or Lender will have received by reason of any voluntary prepayment by Borrower of the Note and/or the Related Debt, then it is Grantor's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the Note and/or the Related Debt (or, if the Note and all Related Debt have been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note, this Security Instrument, and other Loan

Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity for the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term of the Note, then Grantor and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Lender that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Lender and/or credit such excess interest against the Note and/or any Related Debt then owing by Borrower to Lender. Grantor hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Grantor will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Note and/or the Related Debt then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any debt evidenced by the Note and/or Related Debt shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of the Note and/or Related Debt (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Note and/or Related Debt does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Note and/or the Related Debt for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the Note and/or Related Debt. Notwithstanding anything to the contrary contained herein or in any other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or the Related Debt, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended. To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect. As used hereunder the term **"Maximum Lawful Rate"** shall mean the maximum lawful rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges made in connection with the transaction evidenced by the Note and the other Loan Documents. As used hereunder, the term **"Charges"** shall mean all fees, charges and/or any other things of value, if any, contracted for, charged, taken, received or reserved by Lender in connection with the transactions relating to the Note and the other Loan Documents, which are treated as interest under applicable law. As used hereunder, the term **"Related Debt"** shall mean any and all indebtedness paid or payable by Borrower to Lender pursuant to the Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, except such indebtedness which has been paid or is payable by Borrower to Lender under the Note. If any provision of this Security Instrument would oblige Grantor to make any payment of interest or other amount payable to any Lender in an amount or calculated at a rate which would be prohibited by any applicable law or would result in a receipt by that Lender of "interest" at a "criminal rate" (as such terms are construed under the Criminal Code (Canada)), then, notwithstanding such provision, such amount or rate shall be deemed to have been adjusted with retroactive effect to the maximum amount or rate of interest, as the case may be, as would not be so prohibited by applicable law or so result in a receipt by that Lender of "interest" at a "criminal rate", such adjustment to be effected, to the extent necessary (but only to the extent necessary), as follows:

i.     first, by reducing the amount or rate of interest required to be paid to the Lender; and

ii.     thereafter, by reducing any fees, commissions, costs, expenses, premiums and other amounts required to be paid to the affected Lender which would constitute interest for purposes of section 347 of the Criminal Code (Canada).

**Section 13.3     Provisions Subject to Applicable Law.** All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE XIV - DEFINITIONS

All capitalized terms not defined herein shall have the respective meanings set forth in the Loan Agreement. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "**Grantor**" shall mean "each Grantor and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "**Lender**" shall mean "Lender and any subsequent holder of the Note," the word "**Note**" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "**Property**" shall include any portion of the Property and any interest therein, and the phrases "**attorneys' fees,**" "**legal fees**" and "**counsel fees**" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

## ARTICLE XV - MISCELLANEOUS PROVISIONS

**Section 15.1     No Oral Change.** This Security Instrument, and any provisions hereof, including the provisions of this Section, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Grantor or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought, and the parties hereby: (a) expressly agree that it shall not be reasonable for any of them to rely on any alleged, non-written amendment to this Security Instrument; (b) irrevocably waive any and all right to enforce any alleged, non-written amendment to this Security Instrument; and (c) expressly agree that it shall be beyond the scope of authority (apparent or otherwise) for any of their respective agents to agree to any non-written modification of this Security Instrument.

**Section 15.2     Successors and Assigns.** This Security Instrument shall be binding upon and inure to the benefit of Grantor and Lender and their respective successors and assigns forever.

**Section 15.3     Inapplicable Provisions.** If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 15.4     Headings, Etc.** The headings and captions of various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 15.5    Number and Gender**. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

**Section 15.6    Subrogation**. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Grantor's obligations hereunder, and Borrower's obligations under the Loan Agreement, the Reinstatement Agreement, the First Amendment, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

**Section 15.7    Entire Agreement**. The Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower, Grantor and Lender with respect to the transactions arising in connection with the Debt and supersede all prior written or oral understandings and agreements between Borrower, Grantor and Lender with respect thereto. Grantor hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment, this Security Instrument and the other Loan Documents, there are not, and were not, and no persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, the Reinstatement Agreement, the First Amendment, this Security Instrument and the other Loan Documents.

**Section 15.8    Limitation on Lender's Responsibility**. No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

**Section 15.9    Rules of Construction**. The following rules of construction shall be applicable for all purposes of this Security Instrument and all documents or instruments supplemental hereto, unless the context otherwise clearly requires:

(a)    The terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to";

(b)    any pronoun used herein shall be deemed to cover all genders, and words importing the singular number shall mean and include the plural number, and vice versa;

(c)    all captions to the Sections hereof are used for convenience and reference only and in no way define, limit or describe the scope or intent of, or in any way affect, this Security Instrument;

(d)    the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or";

(e)     the words "hereof," "herein," "hereby," "hereunder," and similar terms in this Security Instrument refer to this Security Instrument as a whole and not to any particular provision or section of this Security Instrument;

(f)     an Event of Default shall "continue" or be "continuing" until such Event of Default has been waived in writing by Lender;

(g)     No inference in favor of or against any party shall be drawn from the fact that such party has drafted any portion hereof or any other Loan Document;

(h)     The cover page (if any) of, all recitals set forth in, and all Exhibits to, this Security Instrument are hereby incorporated herein; and

(i)     Wherever Lender's judgment, consent, approval or discretion is required under this Security Instrument or any other Loan Document for any matter or thing or Lender shall have an option, election, or right of determination or any other power to decide any matter relating to the terms and conditions of this Security Instrument, including any right to determine that something is satisfactory or not ("**Decision Power**"), such Decision Power shall be exercised in the sole and absolute discretion of Lender unless otherwise expressly stated to be reasonably exercised. Such Decision Power and each other power granted to Lender upon this Security Instrument or any other Loan Document may be exercised by Lender or by any authorized agent of Lender (including any servicer and/or attorney-in-fact), and Grantor hereby expressly agrees to recognize the exercise of such Decision Power by such authorized agent. Without limiting the generality of the foregoing, any authorized agent of Lender (including any servicer and/or attorney-in-fact) is hereby specifically authorized to remove a trustee and select and appoint a successor trustee.

    **Section 15.10    Duplicate Originals; Counterparts.**  For the purpose of facilitating the execution of this Security Instrument and for other purposes, this Security Instrument may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original, and such counterparts shall constitute but one and the same instrument. A signature of a party by facsimile or other electronic transmission (including a .pdf copy sent by e-mail) shall be deemed to constitute an original and fully effective signature of such party. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

    **Section 15.11    Lender's Right to Subordinate.**  Lender may, at its election, subordinate the lien of this Security Instrument and any or all of Lender's rights, titles or interests hereunder to any lien, leasehold interest, easement, plat, covenant, restriction, dedication, encumbrance or other matter affecting the Property or any part thereof by recording a written declaration of such subordination in the office of the register or recorder of deeds or similar filing officer for the county in which the Land is located. If foreclosure sale occurs hereunder after the recording of any such declaration, the title received by the purchaser at such sale shall be subject to the matters specified in such declaration, but such declaration shall not otherwise affect the validity or terms of this Security Instrument or any other Loan Document or the priority of any lien or security interest created hereunder or under any other Loan Document. Without limitation of the foregoing, Lender shall have the right to unilaterally modify any Loan Document to release any lien on any portion of the Property.

<div align="center">

**ARTICLE XVI – DEED OF TRUST PROVISIONS**

</div>

    **Section 16.1    Concerning the Trustee.**  Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly

indemnified to Trustee's reasonable satisfaction. Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for gross negligence or willful misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof. Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever, except if the result of Trustee's gross negligence or willful misconduct. Trustee shall not be personally liable in case of entry by Trustee or anyone acting by virtue of the powers herein granted Trustee upon the Property for debts contracted or liability or damages or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder or believed by Trustee to be genuine. Trustee may resign at any time upon giving thirty (30) days' notice to Grantor and to Lender. Lender may remove Trustee at any time or from time to time and select a successor trustee. In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee (and, if Lender so elects, several substitute trustees in succession), by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor. Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender. The procedure provided for in this paragraph for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise. Trustee may authorize one or more parties to act on Trustee's behalf to perform the ministerial functions required of Trustee hereunder, including without limitation, the transmittal and posting of any notices.

Section 16.2    **Trustee's Fees**. Trustee shall be entitled to reimbursement for actual expenses incurred by Trustee, Trustee's agents and counsel, in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Grantor will, from time to time, reimburse Trustee for and save and hold Trustee harmless from and against any and all loss, cost, liability, damage and expense whatsoever incurred by Trustee in the performance of Trustee's duties, except to the extent caused by Trustee's bad faith, gross negligence or willful misconduct. All such costs, fees and expenses shall be secured by this Security Instrument.

Section 16.3    **Certain Rights**. With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (a) to select, employ, and advise with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Note, this Security Instrument or the Other Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (b) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his/her agents or attorneys, (c) to select and employ, in and about the execution of his/her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith and (d) any and all other lawful action as Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting an action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for actual

expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.

Section 16.4 **Retention of Money**. All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

Section 16.5 **Perfection of Appointment**. Should any deed, conveyance, or instrument of any nature be required from Grantor by any Trustee or substitute trustee to more fully and certainly vest in and confirm to the Trustee or substitute trustee such estates rights, powers, and duties, then, upon request by the Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Grantor.

Section 16.6 **Succession Instruments**. Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his/her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in the Trustee's place.

## ARTICLE XVII - STATE-SPECIFIC PROVISIONS

Section 17.1 **Principles of Construction**. In the event of any inconsistencies between the terms and conditions of this Article XVII and the terms and conditions of this Security Instrument, the terms and conditions of this Article XVII shall control and be binding.

Section 17.2 **Foreclosure and Sale.**

(a) Foreclosure. Upon the occurrence of an Event of Default, and delivery of written notice to Grantor with an opportunity to cure within ten (10) calendar days of such notice, Trustee, Trustee's successor or substitute, is authorized and empowered and it shall be Trustee's special duty at the request of Lender to sell the Property or any part thereof situated in the State of Texas at the courthouse of any county in the State of Texas in which any part of the Property is situated, at public venue to the highest bidder for cash between the hours of 10:00 a.m. and 4:00 p.m. on the first Tuesday in any month after having given notice of such sale in accordance with the statutes of the State of Texas then in force governing sales of real estate under powers conferred by deed of trust. The sale must begin at the time stated in the notice of sale or not later than three hours after that time. Any sale made by Trustee hereunder may be as an entirety or in such parcels as Lender may request, and any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law. Further, any sale made by Trustee hereunder may, in lieu of cash, be upon such other terms and conditions as Lender may from time to time hereafter elect. The sale by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Property shall be sold and, if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the indebtedness secured hereby and the expense of executing this trust as provided herein, this Security Instruments and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Grantor shall never have any right to require the sale of less than the whole of the Property but Lender shall have the right, at its sole election, to request Trustee to sell less than the whole

of the Property. After each sale, Trustee shall make to the purchaser or purchasers at such sale good and sufficient conveyances in the name of Lender, conveying the property so sold to the purchaser or purchasers in fee simple with general warranty of title, and shall receive the proceeds of said sale or sales and apply the same as herein provided. Payment of the purchase price to Trustee shall satisfy the obligation of purchaser at such sale therefor, and such purchaser shall not be responsible for the application thereof. In the event any sale hereunder is not completed or is defective in the opinion of Lender, such sale shall not exhaust the power of sale hereunder and Lender shall have the right to cause a subsequent sale or sales to be made hereunder. Any and all statements of fact or other recitals made in any deed or deeds given by Trustee or any successor or substitute appointed hereunder as to nonpayment of the indebtedness secured hereby, or as to the occurrence of any Event of Default, or as to Lender having declared all of such indebtedness to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to the refusal, failure or inability to act of Trustee or any substitute or successor, or as to the appointment of any substitute or successor trustee, or as to any other act or thing having been duly done by Lender or by such Trustee, substitute or successor, shall be taken as conclusive (absent manifest error) evidence of the truth of the facts so stated and recited. Trustee, Trustee's successor or substitute, may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee, Trustee's successor or substitute.

(b)     Right to Require Proof of Financial Ability. At any time during the bidding of any sale conducted by Trustee under paragraph 17.2(a) above, Trustee may require a bidding party (a) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal the bidding party is representing (if applicable); and (b) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party), as a condition to the bidding party submitting bids at the foreclosure sale. If any such bidding party (the "**Questioned Bidder**") declines to comply with Trustee's requirement in this regard, or if such Questioned Bidder does respond but Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned Bidder (or, if applicable, the principal of such bidding party) to be inadequate, Trustee may continue the bidding with reservation; and in such event (i) Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (ii) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to Trustee, all bids by the Questioned Bidder shall be null and void. Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Grantor and Lender and elect to sell the Property for credit or for a combination of cash and credit; provided, however, that Trustee shall have no obligation to accept any bid except an all cash bid. In the event Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by Trustee (but in no event later than 3:45 p.m. local time on the date of sale), then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(c)     Judicial Foreclosure. This Security Instrument shall be effective as a mortgage as well as a deed of trust and upon the occurrence of an Event of Default may be foreclosed as to any of the Property in any manner permitted by the laws of the State of Texas or of any other state in which any part of the Property is situated, and any foreclosure suit may be brought by Trustee or by Lender. In the event a foreclosure hereunder shall be commenced by Trustee or his substitute or successor, Lender may at any time before the sale of the Property direct the said Trustee to abandon the sale, and may then institute suit for the collection of the Note and the other secured indebtedness, and for the foreclosure of this Security Instrument. It is agreed that if Lender should institute a suit for the collection of the Note or any other secured indebtedness and for the foreclosure of this Security Instrument, Lender may at any time before the

entry of a final judgment in said suit dismiss the same, and require Trustee, Trustee's substitute or successor to sell the Property in accordance with the provisions of this Security Instrument.

(d)     Proceeds of Sale.  The proceeds of any sale held by Trustee or any receiver or public officer in foreclosure of the liens evidenced hereby shall be applied:

FIRST, to the payment of all necessary costs and expenses incident to such foreclosure sale, including but not limited to all court costs and charges of every character in the event foreclosed by suit, and a reasonable fee to Trustee acting under the provisions of this Section 17.2 if foreclosed by power of sale as provided in said paragraph, not exceeding one percent (1%) of the proceeds of such sale;

SECOND, to the payment in full of the Debt (including specifically without limitation the principal, interest and attorneys' fees due and unpaid on the Note and the amounts due and unpaid and owed to Lender under this Security Instrument and the other Loan Documents) in such order as Lender may elect, in Lender's sole and absolute discretion; and

THIRD, the remainder, if any, there shall be, shall be paid to Grantor or to such other party or parties as may be entitled thereto by law.

(e)     Lender as Purchaser.  Lender shall have the right to become the purchaser at any sale held by any Trustee or substitute or successor or by any receiver or public officer, and any Lender purchasing at any such sale shall have the right to credit upon the amount of the bid made therefor, to the extent necessary to satisfy such bid, the Debt owing to such Lender, or if such Lender holds less than all of the Debt the pro rata part thereof owing to such Lender, accounting to all other beneficiaries of this Security Instrument not joining in such bid in cash for the portion of such bid or bids apportionable to such non-bidding beneficiaries.

(f)     Uniform Commercial Code.  Upon the occurrence of an Event of Default, Lender may exercise its rights of enforcement under the Uniform Commercial Code with respect to the Personal Property, and in conjunction with, in addition to or in substitution for those rights and remedies:

(i)     Lender may enter upon the Property to take possession of, assemble and collect the Personal Property or to render it unusable;

(ii)     Lender may require Grantor to assemble the Personal Property and make it available at a place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Personal Property;

(iii)     written notice mailed to Grantor as provided herein ten (10) days prior to the date of public sale of the Personal Property or prior to  the date after which private sale of the Personal Property will be made shall constitute reasonable notice;

(iv)     any sale made pursuant to the provisions of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the sale of the Property under power of sale as provided herein upon giving the same notice with respect to the sale of the Personal Property hereunder as is required for such sale of the Property under power of sale;

(v)     in the event of a foreclosure sale, whether made by Trustee under the terms hereof, or under judgment of a court, the Personal Property and the remainder of the Property may, at the option of Lender, be sold as a whole;

(vi)    it shall not be necessary that Lender take possession of the Personal Property or any part thereof prior to the time that any sale pursuant to the provisions of this paragraph is conducted and it shall not be necessary that the Personal Property or any part thereof be present at the location of such sale;

(vii)   prior to application of proceeds of disposition of the Personal Property to the secured indebtedness, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Lender;

(viii)  any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to non-payment of the indebtedness or as to the occurrence of any Event of Default, or as to Lender having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to any other act or thing having been duly done by Lender, shall absent manifest error be taken as conclusive evidence of the truth of the facts so stated and recited; and

(ix)    Lender may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Lender, including the sending of notices and the conduct of sale, but in the name and on behalf of Lender.

(g)     <u>Partial Foreclosure</u>.  In the event of a default in the payment of any part of the Debt, Lender shall have the right to proceed with foreclosure of the liens and security interests evidenced hereby without declaring the entire Debt due, and in such event any such foreclosure sale may be made subject to the unmatured part of the Debt; and any such sale shall not in any manner affect the unmatured part of the Debt, but as to such unmatured part, this Security Instrument shall remain in full force and effect just as though no sale had been made.  The proceeds of any such sale shall be applied as provided in <u>Section 17.2(d)</u> except that the amount paid under subparagraph SECOND thereof shall be only the matured portion of the Debt and any proceeds of such sale in excess of those provided for in subparagraphs FIRST and SECOND (modified as provided above) shall be applied to installments of principal of and interest on the Note in the inverse order of maturity.  Several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Debt.

(h)     <u>Waiver</u>.

(i)     To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force pertaining to the rights and remedies of sureties or providing for any appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor and Grantor's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of intent to accelerate, notice of acceleration, and all rights to a marshaling of the assets of Grantor, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and security interests hereby created.

(ii)     Grantor shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents whatever to defeat, reduce or affect the right of Lender under the terms of this Security Instrument to a sale of the Property for the collection of the Debt without any prior or different resort for collection, or the right of Lender under the terms of this Security Instrument to the payment of such indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatever.

(iii)     To the extent that Grantor, any partner thereof or any other entity responsible for the payment of the Debt is now, or at any time or from time to time hereafter is, a partnership, Grantor and Lender expressly acknowledge and agree that Lender is not required to comply with Section 3.05(d) of the Texas Revised Partnership Act, as same may be hereafter amended or modified, or any other or further laws, rules or regulations now or hereafter in effect which may limit the rights and remedies of a creditor to pursue partners of a partnership prior to the pursuit of such creditor's rights and remedies against such partnership.

(iv)     If any law referred to in this paragraph and now in force, of which Grantor or Grantor's heirs, devisees, representatives, successors and assigns and such other persons claiming any interest in the Property might take advantage despite this paragraph, shall hereafter be repealed and cease to be in force, such law shall not thereafter be deemed to preclude the application of this paragraph.

(v)     Subject to Borrower's right to the notice and cure provided in the the Loan Agreement, Grantor hereby waives notice of intent to accelerate and notice of acceleration, and agrees that Lender may foreclose the lien of this Security Instrument without sending either of such notices.

(i)     Delivery of Possession After Foreclosure. In the event there is a foreclosure sale hereunder and at the time of such sale Grantor or Grantor's heirs, devisees, representatives, successors or assigns or any other persons claiming any interest in the Property by, through or under Grantor are occupying or using the Property, or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain an action for forcible entry and detainer of said property in the Justice of the Peace Court in the Justice Precinct in which such property, or any part thereof, is situated.

(j)     Waiver of Deficiency Statute.

(i)     In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Grantor agrees that notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Lender shall be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Grantor expressly recognizes that this paragraph constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other persons against whom recovery of deficiencies is sought (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the

amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Borrower, and others against whom recovery of a deficiency is sought.

(ii)    Alternatively, in the event the waiver provided for in subsection (i) above is determined by a court of competent jurisdiction to be unenforceable, to the fullest extent not prohibited by applicable laws, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time):

(A)    the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure;

(B)    the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve months) following the foreclosure sale;

(C)    all reasonable closing costs customarily borne by the seller in a commercial real estate transaction should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, seller's attorneys' fees and marketing costs;

(D)    the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in subsection (iii) above) and other maintenance expenses; and

(E)    any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five years experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

Section 17.3    **Fixture Filing.**    Pursuant to the Uniform Commercial Code, this Security Instrument shall be effective as a Financing Statement filed as a fixture filing from the date of its filing for record covering and including any and all fixtures of every kind and type affixed to all or any portion of the Property or forming part of all or any portion of the Improvements. The name and address of Grantor and Lender (where information concerning the security interest granted hereby may be obtained), as secured party, are as set forth on the first page of this Security Instrument. The above described goods are or are to become fixtures related to the Property and the Improvements of which Grantor is the record title owner. This Security Instrument shall also be effective as a financing statement covering minerals or the like (including oil and gas) and accounts subject to Section 9.103(e) of the Uniform Commercial Code, as amended.

**Section 17.4    Miscellaneous.**

(a)    Releases.  Upon payment in full of the Debt and all other indebtedness secured hereby, Lender shall, at Grantor's expense, cause the lien created by this Security Instrument to be released by an instrument in form and substance reasonably satisfactory to Lender.

(b)    No Partnership.  Notwithstanding anything to the contrary contained herein or otherwise, (a) the relationship between Grantor and Lender hereunder and otherwise shall be deemed, construed and treated by Grantor and Lender for all purposes to be solely that of borrower/creditor; (b) the various consent, approval and other rights afforded to Lender under this Security Instrument have been granted and designed solely to protect the value of the Property and to assure Borrower's payment of the Debt and all of such rights are customarily granted lenders in a secured lending transactions; (c) Grantor and Lender hereby expressly disclaim any sharing of liabilities, losses, costs or expenses with respect to the ownership or operation of all or any portion of the Property, or otherwise; and (d) the terms contained herein are not intended by Grantor and Lender and shall not for any purpose be deemed, construed or treated by Grantor and Lender so as (i) to create a partnership or joint venture between Lender and Grantor or between Lender and any other party, or (ii) to cause Lender to be or become liable in any way for the debts and obligations of Borrower or Grantor (including, without limitation, any losses attributable to Grantor's operation of the Property) or any other party.

(c)    **INDEMNITY.   IT IS THE EXPRESS INTENTION OF GRANTOR AND GRANTOR HEREBY AGREES THAT THE INDEMNITIES SET FORTH IN THIS SECURITY INSTRUMENT (INCLUDING, WITHOUT LIMITATION, THOSE CONTAINED IN ARTICLE IX HEREOF) AND THE OTHER LOAN DOCUMENTS WILL APPLY TO AND FULLY PROTECT EACH INDEMNIFIED PARTY EVEN THOUGH ANY CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES) THEN THE SUBJECT OF INDEMNIFICATION MAY HAVE BEEN CAUSED BY, ARISE OUT OF, OR ARE OTHERWISE ATTRIBUTABLE TO, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE (EXCLUDING BAD FAITH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) IN WHOLE OR IN PART OF SUCH INDEMNIFIED PARTY AND/OR ANY OTHER PARTY.**

(d)    Incorporation By Reference.  The terms, covenants and provisions of the Note and the other Loan Documents have been incorporated into this Security Instrument by this reference.  All persons from time to time having an interest in all or any portion of the Property are hereby placed on notice of all of the terms, covenants and provisions of the instruments incorporated herein and that copies of same may be obtained by those having an appropriate interest in the Property or any portion thereof upon written request to the Lender at the address set forth on the first page of this Security Instrument.  Any such request shall include the name and address of the requesting party and also contain a brief explanation of the nature and reason for such request.

(e)    WAIVER OF CONSUMER RIGHTS.  TO THE EXTENT NOW OR HEREAFTER APPLICABLE, GRANTOR HEREBY WAIVES GRANTOR'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF GRANTOR'S OWN SELECTION, GRANTOR VOLUNTARILY CONSENTS TO THIS WAIVER.

(f)    Section 26.02 Notice.  IN ACCORDANCE WITH SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, THIS SECURITY INSTRUMENT AND THE OTHER

DOCUMENTS EVIDENCING, SECURING OR PERTAINING TO ALL OR ANY PORTION OF THE DEBT REPRESENT THE FINAL AGREEMENT BETWEEN GRANTOR AND LENDER AS TO THE SUBJECT MATTER THEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF SUCH PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN SUCH PARTIES.

(g)      TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE:  (A) GRANTOR IS REQUIRED TO: (I) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT LENDER SPECIFIES; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) GRANTOR MUST, IF REQUIRED BY LENDER, DELIVER TO LENDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF, this Security Instrument has been executed by Grantor as of the day and year first above written.

**GRANTOR:**

**OTISCO RDX, LLC,**
a Texas limited liability company

By: _____
Name: _Jennifer MacGeorge_
Title: _Authorized Signer_

STATE OF TEXAS )
                )
COUNTY OF HARRIS )

Before me, the undersigned authority, on this day personally appeared _Jennifer MacGeorge_, the _Authorized Signer_ of **OTISCO RDX, LLC,** a Texas limited liability company, known to me to be the person who signed the foregoing instrument, and acknowledged to me that he executed the instrument in the capacity and for the purposes therein expressed.

Given under my hand and seal of office on this _16th_ day of August, 2023.

[SEAL]                    _____
                          Notary Public, State of Texas

My Commission Expires:

_12/29/2023_              _Stephanie A. Gallegos_
                          Typed or Printed Name

STEPHANIE A. GALLEGOS
Notary Public, State of Texas
Comm. Expires 12-29-2023
Notary ID 125186127

Error! Unknown document property name.


**CAPITOL SERVICES**

Return Acknowledgement to:

Capitol Services, Inc.
PO Box 1831
Austin, TX 78767
800.345.4647

1402969

## EXHIBIT A

## LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

Error! Unknown document property name.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

Error! Unknown document property name.

(4)    THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)    South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)    South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)    South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)    North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)    in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)    South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)    South 68°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)    South 59°36'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

Error! Unknown document property name.

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)   South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)   South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)   South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)   North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)   In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)   South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)   South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)   North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)   North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)   In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

Error! Unknown document property name.

(24)     North 18°26'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)     In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land.  This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

Error! Unknown document property name.

# EXHIBIT "B"

METES AND BOUNDS DESCRIPTION
TRACT 2
120.18 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.16-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1) In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2) South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4360";

(3) South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Error! Unknown document property name.

(4) North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5) South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6) South 39°39'48" West, 261.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8) South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9) in a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10) South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11) South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13) in a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14) South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15) South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16) in a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17) South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(18)      South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)      North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)      In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)      North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)      North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)      THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)      South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)      North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)      North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 6485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)      THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

Error! Unknown document property name.

(28)     North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)     North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)     North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)     North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)     In a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)     North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)     North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)     South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)     North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)     In a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'25" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)     North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Error! Unknown document property name.

(39)    North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and containing 120.18 acres (5,235,106 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

Error! Unknown document property name.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 66°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 21°48'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)     In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

Error! Unknown document property name.

(6)     South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(7)     North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(8)     North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a
        northerly southwest line of a called 70.47-acre tract of land (Tract 4)
        described in a deed to National Loan Investors, L. P. recorded in Volume
        1594, Page 737 of the Wilson County Official Public Records marking the
        southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a
        reentrant corner of said residue of a called 279.69-acre tract of land and of
        the herein described tract of land;

        THENCE along the common line of said Tract 4 and said residue of a called
        279.69-acre tract of land as follows:

(9)     In a southeasterly direction, 89.78 feet, along the arc of said curve to the
        left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord
        which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod
        at the end of said curve;

(10)    South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(11)    South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(12)    South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    In a southeasterly direction, 207.93 feet, along the arc of said curve to the
        left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord
        which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod
        with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(15)    South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)    South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(17)    South 18°25'11" West, 462.20 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" and being the southeast corner of
        the herein described tract of land;

Error! Unknown document property name.

(18)    South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)    THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)    North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)    North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)    North 89°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)    North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)    in a northwesterly direction, 206.56 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)    North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)    North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)    North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Error! Unknown document property name.

(28)   North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)   North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)   in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)   North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)   North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)   THENCE North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

15

# EXHIBIT "C-2"

### METES AND BOUNDS DESCRIPTION
### TRACT 3B
### 0.456 ACRE IN THE
### W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
### WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3) South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

Page 1 of 2

16

(5)     THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5465" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(6)     North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)     North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

17

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS);

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows at Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)     THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 59°28'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)     North 75°31'48" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 59°28'12" West, 60.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)     In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

Error! Unknown document property name.

(6)    South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 253.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)    in a southwesterly direction, 112.66 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.66 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)    North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)    in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,636.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)    North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)    North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

Error! Unknown document property name.

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)     South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
        stamped "RPLS 5465";

(2)     South 59°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the
        northwest corner of said called 131.73-acre tract of land and a reentrant
        corner of the herein described tract of land;

(4)     South 31°03'56" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 05°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
        northwest corner of a called 960.00-acre tract of land described in a deed
        to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386
        of the Wilson County Official Public Records and the southwest corner of
        said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

Error! Unknown document property name.

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6)    South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W. DOVE 4143";

(7)    South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8)    THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9)    North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10)    North 84°04'23" West, 830.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11)    North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14)    North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

Error! Unknown document property name.

162.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(15)     in a northeasterly direction, 49.47 feet, along the arc of said curve to the left, having a radius of 141.84 feet, a central angle of 19°58'56" and a chord which bears North 83°06'24" East, 49.22 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of tangency;

(16)     North 67°03'57" East, 662.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)     North 14°11'45" East, 214.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of a called 0.93-acre tract of land (Tract 3) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737;

(18)     THENCE South 89°19'04" East, 196.37 feet along the common line of said Tract 3 and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 marking the southeast corner of said Tract 3;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(19)     South 12°37'41" East, 369.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)     South 08°14'34" East, 473.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(21)     In a southeasterly direction, 376.31 feet, along the arc of said curve to the left, having a radius of 140.25 feet, a central angle of 153°43'51" and a chord which bears South 81°49'43" East, 273.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(22)     South 68°37'11" East, 362.79 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)     South 38°22'03" East, 100.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(24)     North 60°11'44" East, 834.41 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 14°58'30" East, 487.63 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

Error! Unknown document property name.

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(26)     In a northwesterly direction, 188.40 feet, along the arc of said curve to the left, having a radius of 139.26 feet, a central angle of 77°30'46" and a chord which bears North 30°42'23" West, 174.35 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 20°50'49" East, 325.87 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28)     North 50°22'32" East, 100.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)     North 31°03'54" West, 604.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(30)     In a northwesterly direction, 87.29 feet, along the arc of said curve to the left, having a radius of 136.59 feet, a central angle of 36°36'58" and a chord which bears North 57°29'20" West, 85.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(31)     North 06°32'22" East, 372.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 86°04'12" East, 79.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(33)     North 04°41'13" East, 834.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)     North 07°45'05" East, 288.10 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(35)     In a northwesterly direction, 67.40 feet, along the arc of said curve to the left, having a radius of 144.70 feet, a central angle of 26°41'22" and a chord which bears North 02°41'56" West, 66.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(36)     North 65°02'37" East, 358.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(37)     South 40°13'05" East, 79.18 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(38)     North 58°27'33" East, 834.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Error! Unknown document property name.

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(39)     North 29°34'17" East, 305.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the west corner of Lot 36 of said Meadows of Quail Run Section One and the north corner of the herein described tract of land;

THENCE along the common line of said residue of a called 279.69-acre tract of land and said Meadows of Quail Run Section One as follows:

(40)     South 30°33'05" East, 439.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(41)     South 45°10'35" East, 638.61 feet to the POINT OF BEGINNING and containing 152.88 acres (6,659,424 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

24

Error! Unknown document property name.



^VG-3580-2023-135641*

**Wilson County**
**Genevieve Martinez**
Wilson County Clerk

---

### Instrument Number: 135641

Real Property Recordings

Recorded On: August 22, 2023 11:36 AM          Number of Pages: 62

---

**" Examined and Charged as Follows: "**

Total Recording: $266.00

---

*********** THIS PAGE IS PART OF THE INSTRUMENT ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 135641 |
| Receipt Number: | 20230822000016 |
| Recorded Date/Time: | August 22, 2023 11:36 AM |
| User: | Loretta R |
| Station: | cclerk03 |



**Record and Return To:**

CAPITOL SERVICES

PO BOX 1831

AUSTIN TX 78767

---



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# EXHIBIT C

January 16, 2024

Kyle Hirsch
Partner
Direct: +1 602 364 7170
Fax: +1 602 716 8170
kyle.hirsch@bclplaw.com



BRYAN
CAVE
LEIGHTON
PAISNER

BRYAN CAVE LEIGHTON PAISNER LLP
JP Morgan Chase Tower
2200 Ross Avenue  Suite 4200W
Dallas  TX 75201 7965
T: +1 214 721 8000
F: +1 214 721 8100
bclplaw.com

OTISCO RDX, LLC
412 W. Polk Street, Apt. 1
Houston, Texas 77019-4763
Attn: Ian M. Cain

Galleria Loop Note Holder LLC
c/o Jetall Companies, Inc.
2500 West Loop South, Suite 255
Houston, TX 77027
Attn: Ali Choudhri
Email: ali@jetallcompanies.com
        ali@jetallcapital.com

Ali Choudhri
2500 West Loop South, Suite 255
Houston, TX 77027
Email: ali@jetallcompanies.com
        ali@jetallcapital.com

Galleria Loop Note Holder LLC
c/o Jetall Companies, Inc.
1001 West Loop South, Suite 700
Houston, TX 77027-9033
Attn: Ali Choudhri
Email: ali@jetallcompanies.com
        ali@jetallcapital.com

Ali Choudhri
1001 West Loop South, Suite 700
Houston, TX 77027-9033
Email: ali@jetallcompanies.com
        ali@jetallcapital.com

Galleria Loop Note Holder LLC
c/o Jetall Companies, Inc.
5900 Balcones Drive, Suite 100
Austin, TX 78731
Attn: Registered Agents Inc
Email: ali@jetallcompanies.com
        ali@jetallcapital.com

**By email (where indicated)**

**By Certified Mail**
**Return Receipt Requested**

Re:     **Notice of Foreclosure Sale**
        **Real Property and Improvements in Wilson County, Texas**

Dear Sir or Madam:

This firm represents TIG ROMSPEN US MASTER MORTGAGE LP, an exempted Cayman Islands limited



partnership ("Lender"), in connection with the loan in the original principal amount of $18,500,000.00 (the "Loan") extended by Lender to Galleria Loop Note Holder LLC, a Texas limited liability company ("Borrower") evidenced by, among other things, the documents and instruments described as follows:

> That certain Loan Agreement dated as of May 31, 2019, between Lender and Borrower evidencing the Loan (as the same may have been amended, modified, and/or reinstated from time to time, including but not limited as reflected in that certain Amended and Restated First Amendment to Reinstatement of and Amendment to Loan Agreement dated effective as of the 4th day of July, 2023 (the "Amended and Restated First Amendment to Reinstatement Agreement"), the "Loan Agreement");

> That certain Promissory Note dated May 31, 2019, executed by Borrower and payable to order of Lender, in the original stated principal amount the Loan (as the same may have been amended, modified, and/or reinstated from time to time, the "Note");

Ali Choudhri, an individual ("Guarantor"), unconditionally guaranteed Borrower's Loan obligations as set forth in that certain Guaranty dated as of May 31, 2019 (the "Guaranty").

The Loan Agreement, the Note, the Guaranty, and all other documents and instruments securing or evidencing the Loan, are hereinafter, collectively, referred to as the "Loan Documents."

The Loan Documents are currently held by Lender.

In further support of Borrower's repayment obligations, OTISCO RDX, LLC, a Texas limited liability company ("Grantor"), executed that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated August 18, 2023, for the benefit of Lender (the "Wilson County DOT"), pursuant to which Grantor granted Lender, among other things, a lien interest in and to the real and personal property more particularly described on Exhibit A attached thereto and located in Wilson County, Texas, (the "Wilson County Property"). The Wilson County DOT was recorded in the Official Public Records of Wilson County, Texas (the "Wilson County Records") on August 22, 2023, under Document No. 135641.

Lender has provided Borrower and Guarantor with notice of certain events of default, opportunities to cure same, and of Lender's intent to accelerate the maturity of the Note (to the extent not already matured) if the noticed events of default were not timely and fully cured. To date, Borrower has failed to cure as demanded by Lender.

<u>Notice of Acceleration of Debt</u>

By letter dated October 13, 2023, Lender notified Borrower and Guarantor that, according to the records of Lender, Borrower had failed to cure the noticed events of default; Borrower continues to be in default for failing to timely deliver all required documents and to timely pay as required; and based on the uncured noticed events of default, Lender, pursuant to its rights under the Loan Documents, had accelerated the Note's maturity (to the extent not already matured) and declared the entire indebtedness evidenced by the Loan Documents immediately due and payable. By letter dated December 13, 2023, Lender provided formal notice to Grantor of such acceleration and declaration that the entire indebtedness evidenced by the Loan Documents is immediately due and payable. To date, the indebtedness evidenced by the Loan Documents and the Wilson County DOT remains unpaid.

Lender has instructed Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone, as



Substitute Trustees, to sell the Wilson County Property at a non-judicial foreclosure sale ("Foreclosure Sale"). A copy of the Notice of Substitute Trustee's Sale (the "Notice") specifying the date, time, place, and terms of the Foreclosure Sale is enclosed with this letter. The Notice has been posted at the location designated by the County Commissioner for the posting of such notices in Wilson County, Texas in accordance with Section 51.002 of the Texas Property Code and the provisions of the Wilson County DOT. If all amounts due and owing have not been paid by the date and time of the Foreclosure Sale, Substitute Trustees, or any of them acting alone, will conduct the Foreclosure Sale on the date and at the time and place specified in the Notice, as authorized by and in accordance with the provisions of the Wilson County DOT and applicable law.

Payment to Lender in an amount less than the total delinquent sums, or any attempt to cure the previously noticed events of default after expiration of the noticed cure period, will not be construed as an accord and satisfaction or as Lender's agreement to accept a lesser amount, or incomplete or untimely performance, as timely and/or complete payment and/or performance in full of the delinquent sums and obligations owed. Lender's acceptance of any endorsement or statement on any check evidencing a payment or letter accompanying a payment may not be deemed to be an accord and satisfaction. Lender may accept any such payment or check without prejudice to its rights to receive the balance of all amounts due under the Loan Documents and/or the Wilson DOT, or to pursue any remedy thereunder or at law or in equity.

Neither this letter nor any statement by or on behalf of Lender as to the amount due and owing under the Loan Documents constitutes a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Loan Documents, the Wilson County DOT, or otherwise at law or in equity. The specific enumeration of defaults and/or obligations contained in this letter does not constitute a waiver of any other default now or hereafter existing under the Loan Documents or the Wilson County DOT.

No communication, written or oral, that Borrower, Guarantor, or Grantor has had or may have with Lender concerning the obligations evidenced or secured by the Loan Documents or the Wilson County DOT, including any concerning a modification or restructure of the Loan Documents or a forbearance in the exercise of any of Lender's remedies, in any way modifies this letter or constitutes consent to the non-payment or a waiver of any of the remedies described herein. There are currently no agreements requiring that Lender forbear, modify, renew, or extend the Loan or the Loan Documents, and no settlement agreements between Borrower and Lender that restrict Lender's rights with regard to the Loan, the Loan Documents or the Wilson County DOT, and all proposals made by Borrower to Lender relating to the foregoing are rejected.

To the extent Grantor's obligations have been discharged, dismissed, or are subject to an automatic stay of a bankruptcy order under Title 11 of the United States Code, this notice is for compliance and information purposes only, and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. Section 362(b)11, if applicable. In addition, all Lender's claims, demands and accruals with respect to the Loan Documents and/or the Wilson County DOT, whenever made, and whether for principal, interest or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

Sincerely,

OTISCO RDX, LLC
Ian M. Cain
January 16, 2024



Kyle Hirsch

KH:lar


cc:     James Q. Pope (via email only)
        Jennifer MacGeorge (via email only)
        Bruce Merwin (via email only)
        Manny Gardberg (via email only)
        Stephen McCallister (via email only)
        Benjamin Gubernick, Esq. (via email only)
        Wesley Roitman (via email only)
        Scott Mestrezat (via email only)


Encl.



**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF WILSON** | § |

| | |
|---|---|
| Date: | January 11, 2024 |
| Borrower: | Galleria Loop Note Holder LLC, a Texas limited liability company |
| Borrower's Address: | 2500 West Loop South, Suite 255, Houston, Texas 77027 |
| Holder: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Holder's Address: | 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5 |
| Substitute Trustees: | Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone |
| Substitute Trustees' Address: | 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201 |
| Deed of Trust: | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing |
| Date: | August 18, 2023 |
| Grantor: | OTISCO RDX, LLC, a Texas limited liability company |
| Lender: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Trustee: | Randa Barton |



4806764

| | |
|---|---|
| Secures: | Promissory Note (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder. |
| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in this Notice of Substitute Trustee's Sale, it being the intent that the Foreclosure Sale will cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |

Foreclosure Sale

| | |
|---|---|
| Date of Sale: | Tuesday, February 6, 2024 |
| Time of Sale: | The sale of the Property will take place between the hours of 12:00 p.m. and 3:00 p.m. local time; the earliest time at which the sale will take place is 12:00 p.m., and the sale will begin within three hours thereafter. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |

Holder has appointed Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone, as Substitute Trustees under the Deed of Trust upon the contingency and in the manner outlined by the Deed of Trust and in accordance with Chapter 51 of the Texas Property Code. Default has occurred pursuant to the provisions of the Deed of Trust. The indebtedness evidenced by the Note is now wholly due. Holder has instructed Substitute Trustees, and each of them acting alone, to sell the Property toward the satisfaction of the Note.

The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell all the real property and any personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

Notice is hereby given that on the Date of Sale, at the Time of Sale, Substitute Trustees, or any of them acting alone, will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION OR QUIET ENJOYMENT OR THE LIKE FOR THE PERSONAL PROPERTY INCLUDED IN THE SALE. Holder may bid by credit against the indebtedness secured by the Deed of Trust. The Substitute Trustee(s) conducting the Foreclosure Sale may, at their option, postpone the sale for a reasonable time to permit the highest bidder (if other than Holder) to produce cash to pay the purchase price bid, and the sale may be resumed if the bidder fails to produce cash to pay the purchase price within such time period, provided in any event the sale shall be concluded no later than 4:00 P.M. local time.

_____
TROY MARTIN                    , Substitute Trustee

STATE OF TEXAS                    §
                                  §
COUNTY OF Medina                  §

    This instrument was acknowledged before me on this _11_ day of _January_, 2024, by
_Troy Martin_____, as Substitute Trustee.

[SEAL]

DEBORAH MARTIN
Notary Public, State of Texas
Comm. Expires 01-16-2024
Notary ID 124796435

_____
Notary Public, State of Texas

My Commission Expires:

_1/16/2024_____

_Deborah Martin_____
Printed Name of Notary

After recording return to:

Kyle S. Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

## EXHIBIT A

## LEGAL DESCRIPTION

**Tract 1:**
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

**Tract 2:**
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3A:**
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

**Tract 3B:**
A 0.456 acre tract of land, more or less, slutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

**Tract 3C:**
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

**Tract 3D:**
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 4:

Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidvison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:

Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:

Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:

Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:

Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:

Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:

Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

(4)    THENCE South 85°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)    South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)    South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)    South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)    North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)    in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)    South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)    South 68°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)    South 59°36'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)    South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)    South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)    South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)    North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)    In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)    South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)    South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)    North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)    North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)    In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 52°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(24)    North 18°28'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)    North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)    In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)    North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

METES AND BOUNDS DESCRIPTION
TRACT 2
120.18 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED
120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL
RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE
WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT
BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS
FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF
1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS
MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the
southerly point of tangency of a curve to the right of Lot 24 of The Meadows of
Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat
Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and
25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the
northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a
called 70.47-acre tract of land (Tract 4) described in a deed to National Loan
Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said
Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT
OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)     In a southeasterly direction, 21.77 feet, along the arc of said non-tangent
        curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37"
        and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-
        inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said
        curve;

(2)     South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap
        stamped "NORTHSTAR 4360";

(3)     South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(4)     North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(5)     South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(6)     South 39°39'48" West, 261.93 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(7)     South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(8)     South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9)     in a southwesterly direction, 352.46 feet, along the arc of said curve to the
        left, having a radius of 140.01 feet, a central angle of 144°14'04" and a
        chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch
        iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)    South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(11)    South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(12)    South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    in a southwesterly direction, 332.66 feet, along the arc of said curve to the
        left, having a radius of 139.55 feet, a central angle of 136°34'53" and a
        chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch
        iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(15)    South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16)    in a southwesterly direction, 231.62 feet, along the arc of said curve to the
        left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord
        which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod
        with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17)    South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with
        aluminum cap stamped "PRO-TECH";

(18)     South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)     North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)     In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)     North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 29°53'19" West, 538.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)     THENCE North 60°12'12" East, 100.65 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)     South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)     North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)     North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)     THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

(28)    North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)    North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)    North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)    North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)    in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)    North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)    North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)    South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)    North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)    in a northeasterly direction, 69.59 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)    North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(39)    North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and containing 120.18 acres (5,235,106 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) THENCE North 68°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3) South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 21°48'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5) In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

(6)    South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)    North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)    North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)    In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)    South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)    South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)    South 02°52'11" West, 834.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    South 18°25'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

(18)      South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)      THENCE South 83°26'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)      North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)      North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)      North 89°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)      North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)      In a northwesterly direction, 206.56 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)      North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)      North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)      North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

A-14

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     THENCE North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

METES AND BOUNDS DESCRIPTION
TRACT 3B
0.456 ACRE IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 481 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3)     South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

(5)  THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 270.69-acre tract of land as follows:

(6)  North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)  North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)  North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS);

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)   THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)   South 59°28'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped" PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)   North 75°31'46" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)   South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)   In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

(6)      South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 253.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P, recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)      in a southwesterly direction, 112.66 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)      North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)      in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,636.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)      North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)      North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)      North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
162.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the north line of a called 131.73-acre tract of land described in a deed to Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson County Official Public Records marking the southwest corner of Lot 42 of the Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson County Plat Records and the east corner of said residue of a called 279.69-acre tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(1)     South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5465";

(2)     South 59°22'36" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the northwest corner of said called 131.73-acre tract of land and a reentrant corner of the herein described tract of land;

(4)     South 31°03'66" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 05°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the northwest corner of a called 960.00-acre tract of land described in a deed to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386 of the Wilson County Official Public Records and the southwest corner of said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

152.86 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6)      South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W. DOVE 4143";

(7)      South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8)      THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9)      North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10)      North 84°04'23" West, 830.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11)      North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)      South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)      North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14)      North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;



*VG-6488-2024-245*

**Wilson County**
**Genevieve Martinez**
Wilson County Clerk

Instrument Number: 245

Foreclosure Posting

Recorded On: January 11, 2024 11:46 AM          Number of Pages: 26

**" Examined and Charged as Follows: "**

Total Recording: $2.00

***********  **THIS PAGE IS PART OF THE INSTRUMENT**  ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                              **Record and Return To:**

Document Number:    245                           TROY MARTIN
Receipt Number:     20240111000019
Recorded Date/Time: January 11, 2024 11:46 AM
User:               Loretta R                     TX
Station:            cclerk03



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# EXHIBIT D

29

SCANNED

## SUBSTITUTE TRUSTEE'S DEED AND BILL OF SALE

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF WILSON** | § |

Date:      March 22, 2024

Borrower:      Galleria Loop Note Holder LLC, a Texas limited liability company

Borrower's Address:      2500 West Loop South, Suite 255, Houston, Texas 77027

Holder:      RIC (LAVERNIA), LLC

Holder's Address:      162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5

Substitute Trustees:      Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone

Substitute Trustees' Address:      c/o Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201

Deed of Trust:      Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

     Date:      August 18, 2023

     Grantor:      OTISCO RDX, LLC, a Texas limited liability company

     Lender:      TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership

     Trustee:      Randa Barton

     Secures:      Loan Agreement (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder.

After recording, return to:
**ServiceLink, ASAP**
4600 Fuller Ave, Suite 400
Irving, TX 75038
4813054

1

| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
|---|---|
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in the Notice of Substitute Trustee's Sale filed and posted in connection with the Foreclosure Sale (as defined below) or this Substitute Trustee's Deed and Bill of Sale, it being the intent that the Foreclosure Sale cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |

Foreclosure Sale

| Date of Sale: | Tuesday, February 6, 2024 |
|---|---|
| Time of Sale: | 12:00 p.m. local time (that being within three hours of the earliest time of the sale of the Property at the public sale (the "Foreclosure Sale" as stated in the Notice of Substitute Trustee's Sale. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |
| Grantee: | RIC (LAVERNIA), LLC |
| Grantee's Mailing Address: | 162 Cumberland Street, Suite 300<br>Toronto, Ontario M5R 3N5<br>CANADA |

| Purchase Price: | $100,000 (which payment, in accordance with applicable law and the terms of the Deed of Trust, was made by crediting the Purchase Price against amounts due on or with respect to the indebtedness secured by the Deed of Trust, including the Note) |

Grantor conveyed to Trustee the Property for the purposes of securing and enforcing payment of, among other things, the Note.

Holder is the owner and holder of the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing encumbering the Property.

Borrower defaulted under the terms of the Note, and the maturity of the entire principal balance of the Note either had come due by the express terms of the Note or had been accelerated by Lender in accordance with the terms thereof, and the same remains due and payable as of the date hereof.

Lender appointed Substitute Trustees, and each of them acting alone, under the circumstances and in the manner set forth in the Deed of Trust. Lender instructed Substitute Trustees, and each of them acting alone, as authorized by and provided in the Deed of Trust, to enforce the trust due to the occurrence of the foregoing events and sell the Property at the Foreclosure Sale.

As evidenced by executed affidavits held in Lender's file, at the request of Lender, Substitute Trustees (i) filed, or caused to be filed, written notice ("Notice") of the earliest time, place and terms of the Foreclosure Sale with the county clerk of Wilson County, Texas, and (ii) posted, or caused to be posted, the Notice at the location in Wilson County, Texas designated for such notices by the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, the county in which the Property is situated. In addition, also as evidenced by executed affidavits held in Lender's file, counsel to Lender served, or caused to be served, the Notice by certified mail, return receipt requested, on each debtor obligated to pay the Note according to the records of Lender and as required by law.

All prerequisites required by law, the Deed of Trust and/or other documents creating, evidencing, describing or securing the Note have been duly satisfied by Lender and by Trustee.

The Foreclosure Sale was held by the undersigned pursuant to the terms of the Deed of Trust and in accordance with the laws of the State of Texas on the Date of Sale, Time of Sale and at the Place of Sale. The Foreclosure Sale commenced at the Time of Sale and was concluded by 4:00 p.m. on the Date of Sale.

Grantee, having been assigned all of Lender's right, title and beneficial interest in and to the Deed of Trust by and through that certain Assignment Of Beneficial Interest Under Deed Of Trust with an effective date of February 5, 2024, being the highest bidder at the Foreclosure Sale, did purchase the Property for the Purchase Price.

The undersigned Trustee, in consideration of the foregoing and of the payment of the Purchase Price, by the authority conferred on the undersigned Trustee by the Deed of Trust, GRANTS, SELLS and CONVEYS to Grantee, its legal representatives, successors and assigns,

the Property, together with, all and singular, the rights, privileges, and appurtenances thereto, subject, subordinate and inferior to any senior encumbrances and other exceptions to conveyance and warranty in the Deed of Trust (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with the rights, privileges and appurtenances thereto, subject, subordinate and inferior to the Permitted Exceptions, to Grantee, its legal representatives, successors and assigns, forever. Substitute Trustee binds Borrower and Borrower's legal representatives, successors and assigns to warrant and defend the Property to Grantee, its legal representatives, successors and assigns forever, against the claims or claims of all persons claiming or to claim the same or any part thereof, except as to the Permitted Exceptions. Substitute Trustee has not made, and does not make, any representation, express or implied, with respect to the personal property and the personal property is sold to Buyer "as is, where is, and with all faults." There is no warranty relating to title, possession, quiet enjoyment, or the like in this disposition of personal property.

_____
Cassie Martin , Substitute Trustee

4

STATE OF TEXAS     §
                   §
COUNTY OF _Cameron_ §

This instrument was acknowledged before me on this _22nd_ day of _March_, 2024, by
_Cassie Allen_____, as Substitute Trustee.

[SEAL]

MEGAN JONES
Notary Public
State of Texas
ID # 12600385-8
My Comm. Expires 03/28/2027

Notary Public, State of Texas

_Megan Jones_
Printed Name of Notary

My Commission Expires:

_3/28/2027_____

After recording return to:

Kyle S. Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

5

## EXHIBIT A

## LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

(4)     THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)     South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)     South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)     North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)     in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)    South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)    South 60°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)    South 59°36'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    South 68°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14)      South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15)      South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16)      South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17)      North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18)      In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19)      South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)      South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21)      North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)      North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23)      In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(24)    North 18°26'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)    North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)    In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)    North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

METES AND BOUNDS DESCRIPTION
TRACT 2
120.18 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)     In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.98 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2)     South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4360";

(3)     South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5)     South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6)     South 39°39'48" West, 261.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)     South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9)     in a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)    South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    in a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)    South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16)    in a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17)    South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(18)     South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)     North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)     In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)     North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 29°53'19" West, 538.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)     THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)     South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)     North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)     North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)     THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

(28)    North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)    North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)    North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)    North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)    in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 46°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)    North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)    North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)    South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)    North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)    in a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'25" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)    North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)        North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and containing 120.18 acres (5,235,106 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 68°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 21°48'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)     In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

(6)     South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)     North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1694, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)     In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 86.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)    South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)    South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)    South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    South 18°26'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

(18)     South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)     THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)     North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)     North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 89°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)     North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)     in a northwesterly direction, 206.56 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)     North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)     North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)     North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     **THENCE** North 21°48'15" West, 5.00 feet to the **POINT OF BEGINNING** and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

METES AND BOUNDS DESCRIPTION
TRACT 3B
0.456 ACRE IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)  THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)  South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3)  South 13°41'18" West, 35.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)  South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

(5)   THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 278.69-acre tract of land as follows:

(6)      North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)      North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)   North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)     THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 59°28'12" West, 6.00 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)     North 75°31'46" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)     In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

(6)     South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 253.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)     in a southwesterly direction, 112.68 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)     North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)     in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,535.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)    North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)    North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 401, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)     South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
        stamped "RPLS 6465";

(2)     South 59°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the
        northwest corner of said called 131.73-acre tract of land and a reentrant
        corner of the herein described tract of land;

(4)     South 31°03'56" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 06°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
        northwest corner of a called 960.00-acre tract of land described in a deed
        to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386
        of the Wilson County Official Public Records and the southwest corner of
        said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6)    South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W. DOVE 4143";

(7)    South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8)    THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9)    North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10)   North 84°04'23" West, 830.86 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11)   North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)   South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)   North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14)   North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

162.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(15)     in a northeasterly direction, 49.47 feet, along the arc of said curve to the left, having a radius of 141.84 feet, a central angle of 19°58'56" and a chord which bears North 83°06'21" East, 49.22 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of tangency;

(16)     North 67°03'57" East, 662.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)     North 14°11'45" East, 214.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of a called 0.93-acre tract of land (Tract 3) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737;

(18)     THENCE South 89°19'04" East, 196.37 feet along the common line of said Tract 3 and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 marking the southeast corner of said Tract 3;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(19)     South 12°37'41" East, 369.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)     South 08°14'34" East, 473.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(21)     In a southeasterly direction, 376.31 feet, along the arc of said curve to the left, having a radius of 140.25 feet, a central angle of 153°43'51" and a chord which bears South 81°49'43" East, 273.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(22)     South 68°37'11" East, 362.79 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)     South 38°22'03" East, 100.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(24)     North 60°11'44" East, 834.41 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 14°58'30" East, 487.63 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(26)    In a northwesterly direction, 188.40 feet, along the arc of said curve to the left, having a radius of 139.26 feet, a central angle of 77°30'46" and a chord which bears North 30°42'23" West, 174.35 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)    North 20°50'49" East, 325.87 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28)    North 50°22'32" East, 100.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)    North 31°03'54" West, 604.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(30)    In a northwesterly direction, 87.29 feet, along the arc of said curve to the left, having a radius of 136.59 feet, a central angle of 36°36'58" and a chord which bears North 57°29'20" West, 85.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(31)    North 06°32'22" East, 372.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)    North 86°04'12" East, 79.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(33)    North 04°41'13" East, 834.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)    North 07°45'05" East, 288.10 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(35)    In a northwesterly direction, 67.40 feet, along the arc of said curve to the left, having a radius of 144.70 feet, a central angle of 26°41'22" and a chord which bears North 02°41'58" West, 66.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(36)    North 65°02'37" East, 358.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(37)    South 40°13'05" East, 79.18 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(38)    North 58°27'33" East, 834.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(39)      North 29°34'17" East, 305.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the west corner of Lot 36 of said Meadows of Quail Run Section One and the north corner of the herein described tract of land;

THENCE along the common line of said residue of a called 279.69-acre tract of land and said Meadows of Quail Run Section One as follows:

(40)      South 30°33'05" East, 439.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(41)      South 45°10'35" East, 638.61 feet to the POINT OF BEGINNING and containing 152.88 acres (6,659,424 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.



---

**Instrument Number:** 141143

Real Property Recordings

Recorded On: March 26, 2024 04:18 PM                    Number of Pages: 30

---

**" Examined and Charged as Follows: "**

Total Recording: $137.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                   **Record and Return To:**

Document Number:      141143                            SASHA GARZA

Receipt Number:       20240326000033                    4600 FULLER AVE STE 400

Recorded Date/Time:   March 26, 2024 04:18 PM

User:                 Liliana L                         IRVING TX 75038

Station:              cclerk01

---



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

Genevieve Martinez
Wilson County Clerk
Floresville, TX

# EXHIBIT E

**Fill in this information to identify the case:**

Debtor name    **RIC (Lavernia) LLC**

United States Bankruptcy Court for the:   **WESTERN DISTRICT OF TEXAS**

Case number (if known)   **24-51195**

☐ Check if this is an amended filing

Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **July 17, 2024**     X **/s/ Mary Gianfriddo**
Signature of individual signing on behalf of debtor

**Mary Gianfriddo**
Printed name

**Authorized Representative**
Position or relationship to debtor

Official Form 202     Declaration Under Penalty of Perjury for Non-Individual Debtors

**Fill in this information to identify the case:**

Debtor name      **RIC (Lavernia) LLC**

United States Bankruptcy Court for the:    WESTERN DISTRICT OF TEXAS

Case number (if known)    **24-51195**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    12/15

Part 1:    **Summary of Assets**

1.    *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*.................................................................................    $ _____ 0.00

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*.............................................................................    $ _____ 0.00

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*...............................................................................    $ _____ 0.00

Part 2:    **Summary of Liabilities**

2.    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
      Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................................    $ _____ 6,171,431.70

3.    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................    $ _____ 0.00

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...............................    +$ _____ 0.00

4.    Total liabilities .......................................................................................................
      Lines 2 + 3a + 3b    $ _____ 6,171,431.70

**Fill in this information to identify the case:**

Debtor name     **RIC (Lavernia) LLC**

United States Bankruptcy Court for the:   WESTERN DISTRICT OF TEXAS

Case number (if known)   **24-51195**

☐ Check if this is an amended filing

## Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property          **12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

■ No.  Go to Part 2.
☐ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.

| Debtor | **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
|---|---|---|
| | Name | |

☐ Yes Fill in the information below.

## Part 7:   Office furniture, fixtures, and equipment; and collectibles

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

## Part 8:   Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

## Part 9:   Real property

**54. Does the debtor own or lease any real property?**

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

**55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1.  **Property located in Wilson County, Texas** | Owner | Unknown | | Unknown |

| 56. | **Total of Part 9.** Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. | **$0.00** |
|---|---|---|

**57.    Is a depreciation schedule available for any of the property listed in Part 9?**
   ■ No
   ☐ Yes

**58.    Has any of the property listed in Part 9 been appraised by a professional within the last year?**
   ■ No
   ☐ Yes

## Part 10:   Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

## Part 11:   All other assets

**70. Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

| Debtor | **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
| | Name | |

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

| Debtor | **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
|---|---|---|
| | Name | |

<hr>

**Part 12:**   **Summary**

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.......................................................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B**. Add lines 91a+91b=92 | | $0.00 |

**Fill in this information to identify the case:**

Debtor name **RIC (Lavernia) LLC**

United States Bankruptcy Court for the: WESTERN DISTRICT OF TEXAS

Case number (if known) **24-51195**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | **Amount of claim** | **Value of collateral that supports this claim** |
| | | Do not deduct the value of collateral. | |

**2.1** **Milestone Capital CRE 1, LLC**
Creditor's Name

Describe debtor's property that is subject to a lien
**Property located in Wilson County, Texas**

$5,900,000.00          Unknown

**2704 Joanel Street
Houston, TX 77027**
Creditor's mailing address

Describe the lien
**Disputed lien claim**

Is the creditor an insider or related party?
■ No
☐ Yes

**stanton@pstantonlaw.com**
Creditor's email address, if known

Is anyone else liable on this claim?
☐ No
■ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No
■ Yes. Specify each creditor, including this creditor and its relative priority.
**1. Wilson County Tax Collector**
**2. Milestone Capital CRE 1, LLC**

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

**2.2** **Wilson County Tax Collector**
Creditor's Name

Describe debtor's property that is subject to a lien
**Property located in Wilson County, Texas**

$271,431.70          Unknown

**Attn: Dawn P. Barnett
1 Library Lane
Floresville, TX 78114**
Creditor's mailing address

Describe the lien
**Delinquent property taxes for various lots located in The Meadows at Quail Run**

Is the creditor an insider or related party?
■ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
■ No

**Date debt was incurred**

| Debtor | RIC (Lavernia) LLC | Case number (if known) | 24-51195 |
|---|---|---|---|
| | Name | | |

Last 4 digits of account number

☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**

☐ No

☑ Yes. Specify each creditor, including this creditor and its relative priority.

**Specified on line 2.1**

**As of the petition filing date, the claim is:**
Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.   $6,171,431.70

---

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **OTISCO RDX, LLC**<br>**412 West Polk Street**<br>**#1**<br>**Houston, TX 77019** | Line  **2.1** | |
| **Peter J. Stanton**<br>**The Law Offices of Peter J. Stanton**<br>**111 Soledad**<br>**Suite 470**<br>**San Antonio, TX 78205** | Line  **2.1** | |
| **The Wilson County Tax Collector**<br>**c/o Linebarger Goggan Blair & Sampson**<br>**Terrace 2**<br>**2700 Via Fortuna Drive, Suite 500**<br>**Austin, TX 78746** | Line  **2.2** | |

---

**Fill in this information to identify the case:**

Debtor name ___**RIC (Lavernia) LLC**___

United States Bankruptcy Court for the: ___WESTERN DISTRICT OF TEXAS___

Case number (if known) ___**24-51195**___

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507)**.**

   ■ No. Go to Part 2.

   ☐ Yes. Go to line 2.

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* |
|---|---|---|
| | | ☐ Contingent |
| | | ☐ Unliquidated |
| | Date or dates debt was incurred ____ | ☐ Disputed |
| | Last 4 digits of account number ____ | **Basis for the claim:** _____ |
| | | Is the claim subject to offset? ☐ No  ☐ Yes |

### Part 3:    List Others to Be Notified About Unsecured Claims

4. **List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

   **If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

### Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 0.00 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. $ | 0.00 |

**Fill in this information to identify the case:**

Debtor name _____ **RIC (Lavernia) LLC**

United States Bankruptcy Court for the: WESTERN DISTRICT OF TEXAS

Case number (if known) _____ **24-51195**

☐ Check if this is an amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**

    ■ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.

    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| 2.1 State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.2 State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.3 State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.4 State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |

**Fill in this information to identify the case:**

Debtor name    **RIC (Lavernia) LLC**

United States Bankruptcy Court for the:    WESTERN DISTRICT OF TEXAS

Case number (if known)    **24-51195**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | **OTISCO RDX, LLC** | **1001 West Loop South Suite 700 Houston, TX 77027** | **Milestone Capital CRE 1, LLC** | ☑ D   **2.1**<br>☐ E/F _____<br>☐ G _____ |
| 2.2 | **OTISCO RDX, LLC** | **412 West Polk Street #1 Houston, TX 77019 Additional codebtor address** | **Milestone Capital CRE 1, LLC** | ☑ D   **2.1**<br>☐ E/F _____<br>☐ G _____ |

# EXHIBIT F

**Fill in this information to identify the case:**

Debtor name __**RIC (Lavernia) LLC**__

United States Bankruptcy Court for the: __WESTERN DISTRICT OF TEXAS__

Case number (if known) __**24-51195**__

■ Check if this is an amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property
**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:    Cash and cash equivalents**

**1. Does the debtor have any cash or cash equivalents?**

■ No. Go to Part 2.
□ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

**Part 2:    Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

■ No. Go to Part 3.
□ Yes Fill in the information below.

**Part 3:    Accounts receivable**

**10. Does the debtor have any accounts receivable?**

■ No. Go to Part 4.
□ Yes Fill in the information below.

**Part 4:    Investments**

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
□ Yes Fill in the information below.

**Part 5:    Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
□ Yes Fill in the information below.

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.

| Debtor | **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
|---|---|---|
| | Name | |

☐ Yes Fill in the information below.

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No. Go to Part 8.
☐ Yes Fill in the information below.

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

■ No. Go to Part 9.
☐ Yes Fill in the information below.

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
■ Yes Fill in the information below.

**55.** Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **Real property located in Wilson County, Texas. See attached property description.** | Owner | $440,000.00 | Appraisal | $440,000.00 |
| 55.2. **Real property located in Wilson County, Texas. See attached property description.** | Owner | $1,620,000.00 | Appraisal | $1,620,000.00 |
| 55.3. **Real property located in Wilson County, Texas. See attached property description.** | Owner | $960,000.00 | Appraisal | $960,000.00 |
| 55.4. **Real property located in Wilson County, Texas. See attached property description.** | Owner | $2,060,000.00 | Appraisal | $2,060,000.00 |
| 55.5. **Real property located in Wilson County, Texas. See attached property description.** | Owner | $2,310,000.00 | Appraisal | $2,310,000.00 |

| Debtor | **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
|---|---|---|
| | Name | |

| 56. | **Total of Part 9.** | |
|---|---|---|
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.<br>Copy the total to line 88. | $7,390,000.00 |

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☐ No
■ Yes

| Part 10: | **Intangibles and intellectual property** |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

■ No.  Go to Part 12.
☐ Yes Fill in the information below.

| | |
|---|---|
| Debtor **RIC (Lavernia) LLC** | Case number *(If known)* **24-51195** |
| Name | |

**Part 12:** Summary

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*........................................................> | | $7,390,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* + | $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $0.00 + 91b. | $7,390,000.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $7,390,000.00 |

# EXHIBIT G

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

WESTERN DISTRICT OF TEXAS

Case number *(if known)*  **24-51195**          Chapter  **11**

■ Check if this an amended filing

Official Form 201

# Amended Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | | |
|---|---|---|---|
| 1. | **Debtor's name** | **RIC (Lavernia) LLC** | |
| 2. | **All other names debtor used in the last 8 years** Include any assumed names, trade names and *doing business as* names | | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **35-2856655** | |

4.  **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| **162 Cumberland Street, Suite 300 Toronto, ON M5R 3N5 CANADA** Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Ontario** County | **Location of principal assets, if different from principal place of business** **See property description in attached Trustee's Deed** Number, Street, City, State & ZIP Code |

5.  **Debtor's website** (URL)          **None**

6.  **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | RIC (Lavernia) LLC | Case number (*if known*) | 24-51195 |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

<u>5313</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| District | | When | | Case number | |

| Debtor | **RIC (Lavernia) LLC** | Case number (*if known*) | **24-51195** |
|---|---|---|---|
| | Name | | |

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

■ No
☐ Yes.

List all cases. If more than 1, attach a separate list

Debtor _____  Relationship _____
District _____ When _____ Case number, if known _____

**11.** **Why is the case filed in *this district*?**

Check all that apply:

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____
Contact name _____
Phone _____

---

**Statistical and administrative information**

**13.** **Debtor's estimation of available funds**

Check one:

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14.** **Estimated number of creditors**

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**15.** **Estimated Assets**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

■ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**16.** **Estimated liabilities**

☐ $0 - $50,000

☐ $1,000,001 - $10 million

☐ $500,000,001 - $1 billion

| Debtor | **RIC (Lavernia) LLC** | | Case number (*if known*) | **24-51195** |
|--------|------------------------|--|--------------------------|--------------|
| | Name | | | |

- ☐ $50,001 - $100,000
- ■ $100,001 - $500,000
- ☐ $500,001 - $1 million

- ☐ $10,000,001 - $50 million
- ☐ $50,000,001 - $100 million
- ☐ $100,000,001 - $500 million

- ☐ $1,000,000,001 - $10 billion
- ☐ $10,000,000,001 - $50 billion
- ☐ More than $50 billion

| Debtor | RIC (Lavernia) LLC | Case number (*if known*) | 24-51195 |
|---|---|---|---|
| | Name | | |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    __July 10, 2024__
                        MM / DD / YYYY

**X** __/s/ Mary Gianfriddo__                          __Mary Gianfriddo__
        Signature of authorized representative of debtor        Printed name

Title    __Authorized Representative__

**18. Signature of attorney**

**X** __/s/ Kyle S. Hirsch__                          Date    __July 10, 2024__
        Signature of attorney for debtor                                MM / DD / YYYY

__Kyle S. Hirsch 24117262__
Printed name

__Bryan Cave Leighton Paisner LLP__
Firm name

__Dallas Arts Tower__
__2200 Ross Avenue, Suite 4200W__
__Dallas, TX 75201__
Number, Street, City, State & ZIP Code

Contact phone    __(214) 721-8000__          Email address    __kyle.hirsch@bclplaw.com__

__24117262 TX__
Bar number and State

SCANNED

## SUBSTITUTE TRUSTEE'S DEED AND BILL OF SALE

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF WILSON** | § |

<u>Date:</u>  March 22, 2024

<u>Borrower:</u>  Galleria Loop Note Holder LLC, a Texas limited liability company

<u>Borrower's Address:</u>  2500 West Loop South, Suite 255, Houston, Texas 77027

<u>Holder:</u>  RIC (LAVERNIA), LLC

<u>Holder's Address:</u>  162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5

<u>Substitute Trustees:</u>  Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone

<u>Substitute Trustees' Address:</u>  c/o Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201

<u>Deed of Trust:</u>  Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing

> Date:  August 18, 2023
>
> Grantor:  OTISCO RDX, LLC, a Texas limited liability company
>
> Lender:  TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership
>
> Trustee:  Randa Barton
>
> Secures:  Loan Agreement (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder.

After recording, return to:
**ServiceLink, ASAP**
4600 Fuller Ave, Suite 400
Irving, TX 75038

4813054

1

| | |
|---|---|
| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in the Notice of Substitute Trustee's Sale filed and posted in connection with the Foreclosure Sale (as defined below) or this Substitute Trustee's Deed and Bill of Sale, it being the intent that the Foreclosure Sale cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |

Foreclosure Sale

| | |
|---|---|
| Date of Sale: | Tuesday, February 6, 2024 |
| Time of Sale: | 12:00 p.m. local time (that being within three hours of the earliest time of the sale of the Property at the public sale (the "Foreclosure Sale" as stated in the Notice of Substitute Trustee's Sale. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |
| Grantee: | RIC (LAVERNIA), LLC |
| Grantee's Mailing Address: | 162 Cumberland Street, Suite 300 Toronto, Ontario M5R 3N5 CANADA |

2

Purchase Price:                        $100,000 (which payment, in accordance with applicable law
                                       and the terms of the Deed of Trust, was made by crediting the
                                       Purchase Price against amounts due on or with respect to the
                                       indebtedness secured by the Deed of Trust, including the Note)

Grantor conveyed to Trustee the Property for the purposes of securing and enforcing payment of, among other things, the Note.

Holder is the owner and holder of the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing encumbering the Property.

Borrower defaulted under the terms of the Note, and the maturity of the entire principal balance of the Note either had come due by the express terms of the Note or had been accelerated by Lender in accordance with the terms thereof, and the same remains due and payable as of the date hereof.

Lender appointed Substitute Trustees, and each of them acting alone, under the circumstances and in the manner set forth in the Deed of Trust. Lender instructed Substitute Trustees, and each of them acting alone, as authorized by and provided in the Deed of Trust, to enforce the trust due to the occurrence of the foregoing events and sell the Property at the Foreclosure Sale.

As evidenced by executed affidavits held in Lender's file, at the request of Lender, Substitute Trustees (i) filed, or caused to be filed, written notice ("Notice") of the earliest time, place and terms of the Foreclosure Sale with the county clerk of Wilson County, Texas, and (ii) posted, or caused to be posted, the Notice at the location in Wilson County, Texas designated for such notices by the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, the county in which the Property is situated. In addition, also as evidenced by executed affidavits held in Lender's file, counsel to Lender served, or caused to be served, the Notice by certified mail, return receipt requested, on each debtor obligated to pay the Note according to the records of Lender and as required by law.

All prerequisites required by law, the Deed of Trust and/or other documents creating, evidencing, describing or securing the Note have been duly satisfied by Lender and by Trustee.

The Foreclosure Sale was held by the undersigned pursuant to the terms of the Deed of Trust and in accordance with the laws of the State of Texas on the Date of Sale, Time of Sale and at the Place of Sale. The Foreclosure Sale commenced at the Time of Sale and was concluded by 4:00 p.m. on the Date of Sale.

Grantee, having been assigned all of Lender's right, title and beneficial interest in and to the Deed of Trust by and through that certain Assignment Of Beneficial Interest Under Deed Of Trust with an effective date of February 5, 2024, being the highest bidder at the Foreclosure Sale, did purchase the Property for the Purchase Price.

The undersigned Trustee, in consideration of the foregoing and of the payment of the Purchase Price, by the authority conferred on the undersigned Trustee by the Deed of Trust, GRANTS, SELLS and CONVEYS to Grantee, its legal representatives, successors and assigns,

the Property, together with, all and singular, the rights, privileges, and appurtenances thereto, subject, subordinate and inferior to any senior encumbrances and other exceptions to conveyance and warranty in the Deed of Trust (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with the rights, privileges and appurtenances thereto, subject, subordinate and inferior to the Permitted Exceptions, to Grantee, its legal representatives, successors and assigns, forever. Substitute Trustee binds Borrower and Borrower's legal representatives, successors and assigns to warrant and defend the Property to Grantee, its legal representatives, successors and assigns forever, against the claims or claims of all persons claiming or to claim the same or any part thereof, except as to the Permitted Exceptions. Substitute Trustee has not made, and does not make, any representation, express or implied, with respect to the personal property and the personal property is sold to Buyer "as is, where is, and with all faults." There is no warranty relating to title, possession, quiet enjoyment, or the like in this disposition of personal property.

Cassie Martin , Substitute Trustee

4

STATE OF TEXAS      §
                      §
COUNTY OF _Comal_   §

    This instrument was acknowledged before me on this 22nd day of March, 2024, by
_Cassie Martin_____, as Substitute Trustee.

[SEAL]

      MEGAN JONES
      Notary Public
      State of Texas
      ID # 12600385-8
      My Comm. Expires 03/28/2027

Notary Public, State of Texas

My Commission Expires:

_3/28/2027_____

_Megan Jones_____
Printed Name of Notary

After recording return to:

Kyle S. Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

5

## EXHIBIT A

### LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.


Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.


Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, siutated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

A-1

Tract 4:
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

Tract 5:
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

Tract 6:
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivision, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

Tract 7:
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

Tract 8:
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

Tract 9:
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

Tract 10:
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

THENCE North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

THENCE North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(1)     North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2)     South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 24°55'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 118 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

Page 1 of 4

A-3

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(4)     THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5)     South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6)     South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8)     North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9)     in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10)    South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11)    South 60°37'55" East, 89.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12)    South 59°36'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)    South 68°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 401
Wilson County, Texas

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14) South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15) South 66°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16) South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17) North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18) In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19) South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20) South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21) North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22) North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23) In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

Page 3 of 4

24.92 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(24)     North 18°28'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)     North 11°09'17" West, 431.99 feet to a found iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26)     In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)     North 19°58'55" West, 368.24 feet to the POINT OF BEGINNING and containing 24.92 acres (1,085,697 square feet) of land.  This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

A-6

# EXHIBIT "B"

METES AND BOUNDS DESCRIPTION
TRACT 2
120.18 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.18-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

COMMENCING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

THENCE South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

THENCE South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the POINT OF BEGINNING of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 4 as follows:

(1)      In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.96 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2)      South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4360";

(3)      South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.19 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(4)  North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5)  South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6)  South 39°39'46" West, 261.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)  South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)  South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9)  In a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)  South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)  South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)  South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)  In a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)  South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)  South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16)  In a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 55°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17)  South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 2 of 5

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(18)     South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19)     North 68°36'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20)     In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21)     North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23)     THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24)     South 68°08'43" East, 903.67 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25)     North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26)     North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27)     THENCE North 13°11'49" East, 76.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

Page 3 of 5

A-9

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(28)    North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)    North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30)    North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31)    North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32)    in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33)    North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)    North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35)    South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36)    North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37)    in a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38)    North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(39)      North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and
          containing 120.18 acres (5,235,106 square feet) of land. This description
          accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying,
          LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 66°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3)     South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 21°46'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5)     In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

Page 1 of 4

A-12

80.14 Acres
II. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 401
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)     South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)     North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8)     North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9)     In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10)    South 01°50'06" East, 449.55 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)    South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)    South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13)    In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14)    South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15)    South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16)    South 02°52'11" West, 834.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    South 18°25'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(18)     South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19)     THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20)     North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21)     North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22)     North 89°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)     North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24)     in a northwesterly direction, 206.58 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25)     North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26)     North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27)     North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 3 of 4

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(28)     North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29)     North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30)     in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31)     North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)     North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33)     **THENCE** North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

METES AND BOUNDS DESCRIPTION
TRACT 3B
0.456 ACRE IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1)     THENCE North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)     South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3)     South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)     South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

Page 1 of 2

A-16

0.456 Acre
W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(5)  THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 278.69-acre tract of land as follows:

(6)  North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7)  North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8)  North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1)     THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2)          South 59°28'12" West, 5.00 feet to a found 5/8-inch iron rod with aluminum cap stamped" PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3)          North 75°31'48" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4)          South 59°28'12" West, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5)          In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

Page 1 of 2

A-18

1.924 Acres
W. H. L. Jackson Survey No. 40, Abstract 481
and A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6)  South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 253.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7)  in a southwesterly direction, 112.68 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.68 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8)  North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9)  in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,535.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10)  North 59°28'12" East, 80.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11)  North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12)  North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

METES AND BOUNDS DESCRIPTION
TRACT 3D
152.88 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY
NO. 40, ABSTRACT 401, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H.
STEPHENS SURVEY, ABSTRACT 505
WILSON COUNTY, TEXAS

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO.
SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40,
ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON
COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE
TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD
(TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON
COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING
MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS,
(BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH
CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-
TECH" in the north line of a called 131.73-acre tract of land described in a deed to
Scott D. & Sharon E. Garrett recorded in Volume 925, Page 506 of the Wilson
County Official Public Records marking the southwest corner of Lot 42 of the
Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson
County Plat Records and the east corner of said residue of a called 279.69-acre
tract of land;

THENCE along the common line of said 131.73-acre tract of land and said residue
of a called 279.69-acre tract of land as follows:

(1)     South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap
        stamped "RPLS 6465";

(2)     South 59°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3)     South 48°28'19" West, 95.16 feet to a fence post for corner marking the
        northwest corner of said called 131.73-acre tract of land and a reentrant
        corner of the herein described tract of land;

(4)     South 31°03'66" East, 706.81 to a found 3-inch metal fence post for corner;

(5)     South 06°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the
        northwest corner of a called 960.00-acre tract of land described in a deed
        to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386
        of the Wilson County Official Public Records and the southwest corner of
        said 131.73-acre tract of land;

THENCE along the common line of said called 960.00-acre tract of land and the
said residue of a called 279.69-acre tract of land and of the herein described tract
of land as follows:

Page 1 of 6

A-20

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6)    South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W, DOVE 4143";

(7)    South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8)    THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9)    North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10)   North 84°04'23" West, 830.86 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11)   North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12)   South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13)   North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14)   North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

162.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(15)    in a northeasterly direction, 49.47 feet, along the arc of said curve to the left, having a radius of 141.84 feet, a central angle of 19°58'56" and a chord which bears North 83°06'21" East, 49.22 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of tangency;

(16)    North 67°03'57" East, 662.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17)    North 14°11'45" East, 214.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of a called 0.93-acre tract of land (Tract 3) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737;

(18)    THENCE South 89°19'04" East, 196.37 feet along the common line of said Tract 3 and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 marking the southeast corner of said Tract 3;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(19)    South 12°37'41" East, 369.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20)    South 08°14'34" East, 473.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(21)    In a southeasterly direction, 376.31 feet, along the arc of said curve to the left, having a radius of 140.25 feet, a central angle of 153°43'51" and a chord which bears South 81°49'43" East, 273.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(22)    South 68°37'11" East, 362.70 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23)    South 38°22'03" East, 100.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(24)    North 60°11'44" East, 834.41 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25)    North 14°58'30" East, 487.63 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

Page 3 of 5

A-22

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(26)   In a northwesterly direction, 188.40 feet, along the arc of said curve to the left, having a radius of 139.26 feet, a central angle of 77°30'46" and a chord which bears North 30°42'23" West, 174.35 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27)   North 20°50'49" East, 325.87 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28)   North 50°22'32" East, 100.16 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29)   North 31°03'54" West, 604.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(30)   In a northwesterly direction, 87.29 feet, along the arc of said curve to the left, having a radius of 136.59 feet, a central angle of 36°36'58" and a chord which bears North 57°29'20" West, 85.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(31)   North 06°32'22" East, 372.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32)   North 86°04'12" East, 79.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(33)   North 04°41'13" East, 834.64 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34)   North 07°45'05" East, 288.10 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point of curvature of a curve to the left;

(35)   In a northwesterly direction, 67.40 feet, along the arc of said curve to the left, having a radius of 144.70 feet, a central angle of 26°41'22" and a chord which bears North 02°41'58" West, 66.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(36)   North 65°02'37" East, 358.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(37)   South 40°13'05" East, 79.18 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(38)   North 58°27'33" East, 834.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

Page 4 of 5

A-23

152.88 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(39)     North 29°34'17" East, 305.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the west corner of Lot 36 of said Meadows of Quail Run Section One and the north corner of the herein described tract of land;

THENCE along the common line of said residue of a called 279.69-acre tract of land and said Meadows of Quail Run Section One as follows:

(40)     South 30°33'05" East, 439.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(41)     South 45°10'35" East, 638.61 feet to the POINT OF BEGINNING and containing 152.88 acres (6,659,424 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.



**Wilson County**
**Genevieve Martinez**
**Wilson County Clerk**

*VG-1554-2024-141143*

---

**Instrument Number:** 141143

Real Property Recordings

Recorded On: March 26, 2024 04:18 PM          Number of Pages: 30

---

**" Examined and Charged as Follows: "**

Total Recording: $137.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

Document Number: 141143
Receipt Number: 20240326000033
Recorded Date/Time: March 26, 2024 04:18 PM
User: Liliana L
Station: cclerk01

**Record and Return To:**

SASHA GARZA
4600 FULLER AVE STE 400

IRVING TX 75038

---



**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time
printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

*Genevieve Martinez*

Genevieve Martinez
Wilson County Clerk
Floresville, TX