# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 24-51195-mmp |
| | ) | CHAPTER  11 |
| | ) | |
| RIC (LAVERNIA), LLC, | ) | San Antonio, Texas |
| | ) | |
| | ) | Monday, June 2, 2025 |
| Debtor. | ) | 2:21 p.m. to 3:29 p.m. |
| OTISCO RDX, LLC, | ) | |
| Plaintiff, | ) | CASE NO: 25-ap-05040-mmp |
| vs. | ) | ADVERSARY |
| RIC (LAVERNIA), LLC, ET AL, | ) | |
| Defendants. | ) | |
| RIC (LAVERNIA), LLC, | ) | |
| Plaintiff, | ) | CASE NO: 24-ap-05043-mmp |
| vs. | ) | ADVERSARY |
| MILESTONE CAPITAL CRE 1, | ) | |
| LLC, ET AL, | ) | |
| Defendants. | ) | |

HEARING RE:

MOTION TO STRIKE DOCUMENT [DKT.NO.83];

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT [DKT.NO.4];

STATUS HEARING ON MOTION FOR SANCTIONS [DKT.NO.83]

BEFORE THE HONORABLE MICHAEL M. PARKER,
UNITED STATES BANKRUPTCY JUDGE

**APPEARANCES:**          SEE PAGE 2

Court Reporter [ECRO]:   Danny Paez; Digital

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES:**


For Debtor:                 KYLE HIRSCH, ESQ.
                            Bryan Cave Leighton Paisner
                            Two North Central Ave.
                            Suite 2100
                            Phoenix, AZ 85004
                            602-364-7170

                            ROBERT L. GRAHAM, ESQ.
                            Bryan Cave Leighton Paisner
                            2200 Ross Ave.
                            Suite 4200W
                            Dallas, TX 75201


For Otisco RDX:             KIERNAN MCALPINE, ESQ.
                            McAlpine Law Firm
                            606 Leverkuhn St.
                            Houston, TX 77007
                            832-314-1383


Also present:               GIA SAMAVATI

Courtroom Deputy:           DEANNA CASTLEBERRY

3

1                                    **INDEX**

2  **WITNESS TESTIMONY**                                          **NONE**

3

4  **DEBTOR'S EXHIBITS**                                      **RECEIVED**

5  **A THROUGH G**                                               **28**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1           **San Antonio, Texas; Monday, June 2, 2025; 2:21 p.m.**

2                             --oOo--

3           **THE CLERK:**  The last matters on the docket is on page

4     6, Adversary 24-5043, RIC Lavernia versus Milestone Capital.

5           **THE COURT:**  Good afternoon, Mr. Hirsch.

6           **MR. HIRSCH:**  Good afternoon, Your Honor, Kyle Hirsch

7     and Luke Graham on behalf of debtor and debtor in possession,

8     RIC Lavernia LLC in this particular adversary proceeding.

9           **THE COURT:**  Okay.

10          **MR. HIRSCH:**  I think we have another adversary

11    proceeding and a motion in the main bankruptcy case that are

12    also set for a hearing today as well as a motion to file by the

13    other side.

14          **THE COURT:**  That's correct.  We're calling them all,

15    trying to hold them altogether, so I'll call it the Milestone

16    adversary, 24-5043 and it is also the --

17          **THE CLERK:**  Page 13.

18          **THE COURT:**  Yeah, page -- the Otisco adversary, 25-

19    5040 and then motion in the case 24-51195.  And then we had a

20    motion for continuance filed this morning.  Come on up, come on

21    up, share the podium.

22          **MR. HIRSCH:**  And in addition to representing RIC

23    Lavernia as debtor and debtor in possession and plaintiff in

24    the Milestone adversary, we also represent TIG Romspen US

25    Master Mortgage LP, which is a co-defendant in the Otisco

1   adversary.

2         **THE COURT:**  I saw your supplemental disclosure on

3   that.  Thank you, Mr. Hirsch.  Please.

4         **MR. MCALPINE:**  Thank you, Your Honor, my name is

5   Kiernan McAlpine and in this proceeding today I'm representing

6   Otisco RDX, LLC and I do not represent Milestone.

7         **THE COURT:**  Okay.

8         **MR. MCALPINE:**  I don't know if they have counsel.

9         **THE COURT:**  Okay.  Flurry of pleadings this morning.

10  Good afternoon, Mr. McAlpine, correct?

11        **MR. MCALPINE:**  Yes, Your Honor.

12        **THE COURT:**  And so I know you have a motion for

13  continuance but you just filed the motion for continuance in

14  the case and so when you ask for that to be set, the Court

15  agreed to set the motion for continuance, that's a motion for

16  continuance on Mr. Hirsch's motion to strike.  But you never

17  filed -- you later filed a notice of motion but not a motion

18  for continuance in the Otisco adversary proceeding.

19        And so I don't really have a motion for continuance

20  pending in that proceeding, nor did I grant a setting for this

21  afternoon because nothing was filed in the case.  You filed a

22  notice.  So our procedures and maybe you're unfamiliar with

23  them, but our procedures the clerk's office has to go with kind

24  of what you file.  And so we've been trying to figure out

25  everything that you want.

6

1          And then I also finally saw a motion to withdraw as

2  counsel.  That has not been set this afternoon either.  So

3  we'll hear that in the normal course unless you file some

4  motion to expedite the hearing, but otherwise we'll hear that

5  in the normal course.

6          **MR. MCALPINE:**  I understand, Your Honor.

7          **THE COURT:**  Okay.

8          **MR. MCALPINE:**  I was filing the motion to continue on

9  an emergency basis in the main case, with the understanding

10  that it would be -- erroneous understanding that it would be

11  treated as a motion to consider both hearings that are both set

12  for today.

13          When I realized the potential issue that Your Honor

14  just explained to me about not having filed one in the

15  adversary directly, I filed a notice of motion in an effort to

16  incorporate it by reference because it's the same issues and

17  the same argument.  If it's procedurally improper to have done

18  it that way, I -- that's on me.  But I tried to address the

19  issue and get on the road to get here as soon as I -- as best

20  as I could, Your Honor.

21          **THE COURT:**  Understood.  So procedurally improper but

22  let's go forward as if we're proceeding first on the motion to

23  continue, both the motion to strike, and the hearing on the

24  motion to dismiss in the Otisco adversary.

25          All right.  So I'll let you go first.

1          **MR. MCALPINE:**  Thank you, Your Honor.  This is a

2     situation where there's an alignment of interest between

3     Milestone and Otisco RDX, LLC.  The lawyer that was both

4     official counsel of record for Milestone as well as strategic

5     lead counsel for Otisco RDX, LLC is Mr. Mercer, who passed away

6     on May 13 of this year tragically.

7          And the sort of -- the pursuit of both Otisco and

8     Milestone's interests in this proceeding was done under a joint

9     prosecution and defense agreement between those two parties.

10    And essentially Mr. Mercer was the one who was calling the

11    shots.

12         And, you know, the objection that I filed on March

13    26th as well as the adversary filed by Mr. Rayome under

14    Mercer's direction on May 1 at 2025 were done under the

15    supervision, with the oversight of Mr. Mercer.

16         I'm not a bankruptcy attorney.  I'm a personal injury

17    attorney from Houston.  The closest analogy to the situation

18    that we're in, Your Honor, that I can think of would be like an

19    indemnitor and indemnitee situation where the indemnitee has

20    friendly counsel that's not the counsel for the indemnitor, but

21    they're under the strategic direction of them.

22         Essentially what's occurred is following Mr. Mercer's

23    tragic passing, the client has been both looking for new

24    counsel, both as counsel of record for Milestone, as well as

25    counsel of record for Otisco.  And what I've been told is that

8

1  it's likely they believe that they'll be able to find a

2  suitable replacement counsel within the next seven days.

3         Another problem that I've been aware of is that

4  retrieval of files from Mr. Mercer's office has been

5  complicated and delayed slightly.  They've got a custodian now

6  with the State Bar who's helping them get his files from his

7  office.  So that is still ongoing, but as I've been told that

8  the client expects to be able to have replacement counsel

9  that's able to move forward on this within the next week or so.

10        And we've asked for a continuance for 30 days from

11  today.  And one of the reasons that we want Your Honor to

12  consider about why that would be just and fair relief under the

13  circumstances is it's my understanding that the plan

14  confirmation hearing is on August the 2nd.  And, you know,

15  regarding the motion to dismiss, potentially the pleadings

16  deficiencies that are argued in the motion to dismiss can be

17  cured with leave of the Court to file an amended pleading and

18  anything that is left over from sort of the process of

19  conferring with opposing counsel could be set 30 days from

20  today.

21        And then the Court can, you know, grant RIC

22  Lavernia's motion to dismiss and sustain its objection, and

23  then move forward on August 2nd or if the Court would be able

24  to agree with what we think the Court should do, which is, you

25  know, overrule the objection, deny the motion, and then enter

1   an order consistent with that ruling.

2           So, in other words, we don't think that there's

3   prejudice to RIC Lavernia if this is continued briefly under

4   these somewhat extraordinary and unusual circumstances.

5           **THE COURT:**  Okay.  Mr. Hirsch?

6           **MR. HIRSCH:**  Thank you, Your Honor.  Kyle Hirsch for

7   both RIC Lavernia and TIG Romspen.

8           I'm still a little baffled why the motions were filed

9   yesterday and today.  Mr. Mercer's passing was on May 13th.

10  These hearings have been set and noticed both before and after

11  Mr. Mercer's passing.  I wasn't contacted by anybody on the

12  Otisco side until Friday when I heard from Mr. McAlpine asking

13  for the continuance.

14          So in the initial instance, I don't know that there

15  is an emergency necessarily that could not have been raised

16  sooner, for which we all may have had opportunity to adequately

17  prepare and investigate what these circumstances are.

18          With that said, I am also baffled by the argument

19  that Mr. Mercer was integral to the Otisco side.  First of all,

20  as Mr. McAlpine noticed, there was an objection that was filed

21  under his signature.  It was filed under a lawyer named Shea

22  Calavan (phonetic).  The adversary was signed by an individual

23  named Justin Rayome.  It was filed under an ECF credential for

24  Paul Kirkland.  Those are four different lawyers at four

25  different law firms, all of whom appear to represent Otisco in

10

1  some way, shape or form.

2          Not one of those is a Kel Mercer colleague from his

3  firm, Mr. Mercer practiced at his own firm.  As we discussed

4  last week when I was here on the fee application, we understand

5  that as it relates to Milestone where Mr. Mercer was the lead

6  counsel was counsel of record, setting this for a continued

7  hearing made sense.

8          But on the Otisco side, it's hard for me to even say

9  it, because it seems so emotionally uncomfortable, but it seems

10  like using Mr. Mercer's passing as an excuse to buy more time

11  may be what's at issue here.

12          The motion to strike was filed in April and the

13  response was due prior to Mr. Mercer's passing and there was no

14  response filed.  So I'm not sure, to the extent Mr. Mercer was

15  providing guidance and oversight and litigation strategy, if

16  that means anything other than the motion to strike is

17  unopposed.  So I don't know why we need a continuance on an

18  unopposed motion.

19          With respect to the adversary proceeding, I

20  respectfully disagree with Mr. McAlpine as far as whether there

21  are pleading defects that can be cured.  I won't get into the

22  merits, but the allegations in the adversary proceeding for

23  which Mr. Graham is prepared to argue are clear and concise and

24  wrong.  And there is evidence showing to the contrary.

25          Additional delay on a continuance basis for a

1   complaint that was signed by one lawyer and was filed by

2   another lawyer, neither of whom were Mr. Mercer again just

3   seems to be an opportunity for a replay or a redo or a pause

4   that shouldn't have anything to do.

5           And I also want to provide a little bit of context.

6   And I did this somewhat when I was here before, just to explain

7   the fees that had been incurred by the estate.

8           The Milestone litigation is an attempt to strip away

9   a lien that was asserted by a purported lender to the prior

10  owner of the property before the debtor.  And that owner was

11  Otisco.  It seems a little nonsensical that the lender and the

12  borrower would be under the same litigation strategy as it

13  relates to whether the lien given by the borrower should be

14  stripped away from the property that the borrower no longer

15  owns.

16          And whether the borrower's allowance of the property

17  to be lost at foreclosure should be unwound because of a

18  lender's lien.  And with both the borrower and the lender under

19  the same rubric it seems to add a lot of credibility to our

20  arguments on Milestone that this is a sham lien and as to

21  Otisco, as to whether the foreclosure ever happened.

22          So again, I don't want to get ahead of myself on the

23  legal arguments, but the suggestion that Mr. Mercer had some

24  critical element of involvement on the Otisco side of things

25  seems pretty difficult to believe.

12

1          Mr. McAlpine did not refer to the other element in

2    his motion, which was the hospitalization and the medical

3    issues from Mr. Rayome, who was the lawyer that was involved in

4    filing the adversary.  I made a list of several filings that

5    Mr. Rayome has been involved in since May 9th in other matters.

6    I'm happy to go through if you'd like.

7          **THE COURT:**  Please.

8          **MR. HIRSCH:**  So the hospitalization, according to his

9    declaration was on May 9th.  On May 9th in a case Jetal

10   Capital, In Re Jetal Capital that's pending in the Southern

11   District of Texas Bankruptcy Court before Judge Norman that's

12   24-35761.  On May 9th Mr. Rayome filed a notice of appeal, a

13   motion for leave to appeal and a motion to stay pending appeal.

14          On May 14th, he signed a request for a transcript of

15   a hearing.  On May 22nd, he filed an emergency motion for a

16   continuance.  And I have these docket numbers if that would be

17   helpful, I can add those.

18          **THE COURT:**  Why don't you put them in the record.

19          **MR. HIRSCH:**  Yeah.  So the May 9th pleadings, notice

20   of appeal, Docket entry 205; motion for leave to appeal, Docket

21   entry 207; motion for stay pending appeal, Docket entry 208.

22          On May 14, signed request for a transcript, Docket

23   entry 225.  On May 22nd, an emergency motion for a continuance

24   of a hearing on May 23rd was filed at Docket entry 239, again

25   that was filed under somebody else's ECF credentials by

1   Mr. Rayome.

2           And on May 27th, Mr. Rayome filed five notices of

3   appearance or notices of appeal, it looks like they're all

4   notices of appeal, maybe some were misfiled.  Those are Docket

5   entries 246, 47, 48, 49 and 50.

6           Meanwhile in another case, the Galleria 2425 Owner

7   LLC case, that's also pending in the Southern District of Texas

8   Bankruptcy Court before Judge Norman that is bk-23-34815.  On

9   May 28th there was a notice of appeal that was filed at Docket

10  entry 1037, signed by a different lawyer, G.S. Salavadi

11  (phonetic) but using Mr. Rayome's filing credentials.

12          So to say that from May 9th until today Mr. Rayome

13  somehow has medical conditions that prevented him to prepare

14  for today's hearing, given at least those, I didn't go back

15  what was happening in state court or other courts, those are

16  the ones that -- the cases that I knew he had some involvement

17  in.  But it seems a little difficult to comprehend why he's

18  able to appear and be active in those cases, but he can't be

19  here today.

20          **THE COURT:**  Okay.

21          **MR. HIRSCH:**  I would ask that the motions for

22  continuance be denied and that we proceed today on the merits.

23          **THE COURT:**  Okay.  Thank you.

24          **MR. MCALPINE:**  Your Honor, may I respond briefly to

25  the point that were raised?

1        **THE COURT:**  Please.

2        **MR. MCALPINE:**  With regards to their first claim,

3    there is an opportunity to file this earlier unless this motion

4    was filed on May 13, 2025, any date that it would have been

5    filed subsequently it could have been filed earlier.

6        The -- based on the circumstances that I was

7    referencing earlier regarding the custodian with the State Bar

8    where the client's been attempting to retrieve his file,

9    there's a Mr. Cleveland and a Mr. Rudd who have been engaged

10   with to complete that.

11       The client has advised that they believe they will

12   have replacement counsel within seven days.  Additionally,

13   there was some thought that Mr. Rayome would be out of the

14   hospital.

15       Now, regarding the points that Mr. Hirsch was just

16   raising about the multiple other matters that Mr. Rayome has

17   made filings in since May 9th, the date of his hospitalization.

18   First of all, I'm relying on the unsworn declaration of

19   Mr. Rayome that he's been hospitalized and has not been able to

20   act as -- in the role of essentially Mr. Mercer's understudy on

21   this case.

22       The arguments about Mr. Mercer being essential still

23   apply to the fact that he's able to file things in other cases.

24   The fact is -- I can show Your Honor in camera e-mails for

25   example between myself and Mr. Mercer where the objection to

15

1   the plan confirmation was essentially ghost written by

2   Mr. Mercer and I agreed to file it, as -- based on sort of

3   indemnitor/indemnitee friendly attorney situation where

4   Mr. Mercer didn't want to appear in this matter.

5         And I didn't see any red flags associated with doing

6   that at that time, based on Mr. Mercer's reputation and based

7   on my few brief conversations with him.  Suffice to say, he's

8   been acting as the strategic lead for Milestone and Otisco in

9   this case.  And although there's been 18, 19 days since his

10  passing during which time the motion could have been filed, it

11  sort of came to a head at the end of last week when I was

12  notified of this.  That the client had not been able to obtain

13  somebody to, you know, make that appearance for him and serve

14  in that role for him.

15        So, in other words, we're simply asking for a little

16  bit of latitude under the circumstances.  I don't believe that

17  this will encumber or prejudice RIC Lavernia in any way, based

18  on the timing of the plan confirmation hearing and, you know,

19  the brief continuance that we're requesting, as well as the

20  fact that we think we may be able to resolve the issues

21  regarding alleged pleading deficiencies.

22        I simply don't understand why it wouldn't be

23  warranted under these rather extraordinary circumstances of his

24  unexpected passing, which nobody could have or reasonably would

25  have or did anticipate occurring beforehand.  I mean, it's a

1  terrible situation and I understand what Mr. Hirsch was saying,

2  about how he felt like it was insensitive to imply that there

3  was exploitation of his death to try to get a delay.  I mean,

4  Your Honor, frankly the client both Milestone who I'm not

5  representing, as well as Otisco have been scrambling and doing

6  everything that they can to try to deal with this frankly

7  bombshell that unexpectedly came 19 days ago.

8           So I believe the last point that I want to respond to

9  is that there wasn't a response to the motion to strike the

10 objection and that came due prior to Mr. Mercer's passing.

11 Well, that -- there may not be a document in the file that

12 states response to motion to strike, and the sole basis for the

13 objection was a lack of a judiciable interest, and therefore,

14 lack of standing, which has since, as of May 1, 2025 been

15 rectified by filing the adversary complaint, which raises the

16 issues that are laid out briefly in the objection.

17          So to the extent, the standing issue is mooted.  The

18 circumstances explain why there was no response that was filed,

19 the stated standing is mooted due to the filing of the

20 adversary complaint.  And, Your Honor, I need to fall on my

21 sword a little bit, I'm a personal injury attorney if I'm wrong

22 about that, I believe that it resolves the standing issue.  But

23 if I'm wrong about that, I apologize.  It's not intentional on

24 my part.

25          So, Your Honor, this is a situation that we have and

17

1   I'm asking the Court to exercise its discretion to allow for a

2   brief continuance for new counsel to be enrolled for the

3   resolvable matters without the Court's involvement to be

4   resolved and for any issues that remain before the Court to be

5   adjudicated in 30 days, at which point the Court can, you know,

6   grant the relief that it sees appropriate and then move forward

7   with the plan confirmation hearing in August.

8           **THE COURT:**  Okay.  Mr. Hirsch.

9           **MR. HIRSCH:**  Nothing further, Your Honor.

10          **THE COURT:**  Okay.  A couple of things.  First, the

11  Court will deny both motions for continuance.  The oral one as

12  to the Otisco adversary proceeding and the written one filed

13  yesterday as to the motion to strike.

14          The -- I'm having a lot of trouble believing

15  Mr. Rayome.  I would note that the unsworn declaration filed is

16  not signed by Mr. Rayome.  A /s/ signature is not sufficient

17  and, Mr. McAlpine, your continued use and the Court already is

18  working on its show cause order about this, you can't sign

19  pleadings under your name and then have someone else use their

20  CMECF entry to file things.  And I found those this morning

21  looking through the Court's docket.  That's not an effective

22  filing.

23          And so as a practical matter, the Court will likely

24  strike your existing objection to plan confirmation as filed

25  inappropriately under your name by a Sean Calvin (phonetic) or

18

1    something like that.  Bottom line is, that motion itself was

2    not effective because it's not signed by the person who

3    actually filed it.

4           So on a strategic -- procedural matter, it's out of

5    bounds.  Also, I agree with Mr. Hirsch, number one, Mr. Mercer

6    is not counsel of record.  And the fact that the parties might

7    have been relying upon him in no way should have affected your

8    obligation to file a motion for continuance well beyond the day

9    before the hearing on the matter.

10          Mr. Mercer was a fantastic attorney and this Court

11   will acknowledge that and I can understand why the parties

12   might have relied on his knowledge, but you are counsel of

13   record, Mr. McAlpine, and you are the one responsible going

14   forward.

15          Let me see.  So let's proceed on the -- well, let's

16   first talk about the status hearing on the Milestone adversary

17   proceeding.  That one Mr. Mercer was involved in, and so that

18   one the Court will reset to another time period and,

19   Mr. McAlpine, you want 30 days?

20          **MR. MCALPINE:**  30 days?

21          **THE COURT:**  On the -- so on the Milestone adversary

22   proceeding, there is a pending motion for sanctions.  And

23   Mr. Mercer was involved in that one and so I want to give --

24   you said your client Milestone, not your client, I'm sorry,

25   that's not your -- you're just here on the other two is what

1  you're saying.

2        **MR. MCALPINE:**  I do not represent Milestone.

3        **THE COURT:**  But you said someone was going to be able

4  to get counsel, is that just Otisco?

5        **MR. MCALPINE:**  No, Your Honor, I believe both

6  Milestone and Otisco need counsel and --

7        **THE COURT:**  Okay.

8        **MR. MCALPINE:**  -- they can both get it.

9        **THE COURT:**  Okay.  All right.  So I think what the

10  Court would like to do with respect to the motion to strike in

11  Milestone is push that out to --

12        **MR. HIRSCH:**  The motion for sanctions on Milestone.

13        **THE COURT:**  The motion for sanctions in Milestone,

14  that's correct, I think it's Docket 83.

15        **MR. HIRSCH:**  Yes.

16        **THE COURT:**  The motion for sanctions in Milestone

17  we'll reset that out to how about July 2nd at 9:30 a.m.?

18        **MR. HIRSCH:**  That should work, Your Honor.  My

19  colleague Justin Hanna will be handling it.  If he's

20  unavailable, then I'll make myself available.

21        **THE COURT:**  Okay.  All right.

22        **MR. HIRSCH:**  And you said 9 a.m.?

23        **THE COURT:**  9:30.  9:30 a.m.

24        **MR. HIRSCH:**  Okay.

25        **THE COURT:**  Okay.  And then --

20

1          **MR. HIRSCH:**  Is it possible to have that one

2    scheduled for the afternoon?

3          **THE COURT:**  Yes.

4          **MR. HIRSCH:**  If we schedule that for the afternoon,

5    that would allow some flexibility.

6          **THE COURT:**  Yeah, we'll set it then at July 2nd at

7    1:30 p.m.

8          **MR. HIRSCH:**  Thank you, Your Honor.

9          **THE COURT:**  Okay?  And then on the motion to

10   strike --

11         **MR. HIRSCH:**  And I'm sorry to interrupt, Your Honor.

12   Should I be giving notice of that?  I think it's a little

13   difficult at this point to give notice because I don't know who

14   I'm giving notice to.

15         **THE COURT:**  Yeah.  Well, you have -- was there anyone

16   other than Mr. Mercer on the file?

17         **MR. HIRSCH:**  There was prior counsel, Mr. Stanton.

18         **THE COURT:**  Yeah, I remember Mr. Stanton.

19         **MR. HIRSCH:**  But he had withdrawn and Mr. Mercer had

20   taken over from -- I believe he had withdrawn.  I know

21   Mr. Stanton has some personal issues that he had been dealing

22   with, which is why Mr. Mercer got involved.  So, yeah, I

23   suppose I could notice the principal of Milestone or the folks

24   in the disclosure statement that were identified as Milestone

25   principals.

21

1          **THE COURT:**  Yeah, why don't --

2          **MR. HIRSCH:**  Not lawyers.

3          **THE COURT:**  Understood.  But why don't you send them

4    notice.  Mr. McAlpine, anyone else that he should send notice

5    to?

6          **MR. MCALPINE:**  Your Honor, I honestly don't know.

7          **THE COURT:**  Okay.

8          **MR. HIRSCH:**  So we'll send those.

9          **THE COURT:**  Yeah, send notice to the principals.

10          **MR. HIRSCH:**  Thank you.

11          **THE COURT:**  Thank you.

12          **THE CLERK:**  (Inaudible)

13          **THE COURT:**  No, we're talking about the motion to

14   strike today.  We're -- yeah, let me make sure.  Yeah, we're

15   resetting the motion for sanctions, the motion for sanctions,

16   Docket 83 in the Milestone adversary proceeding, we're going to

17   reset that to July 2nd at 1:30 p.m.

18          **THE CLERK:**  (Inaudible)

19          **THE COURT:**  We're going to hear those right now.

20          **THE CLERK:**  (Inaudible)

21          **THE COURT:**  That's correct, we're going to hear those

22   right now, the motion to strike and the motion to dismiss.

23          **MR. HIRSCH:**  And, Your Honor, on the Milestone matter

24   I did notice that Mr. Ali Choudhri is in the courtroom who is

25   one of the principals of Milestone.

1          **THE COURT:**  Okay.

2          **MR. HIRSCH:**  So I do intend to notice Mr. Choudhri

3   formally in writing of the notice of hearing, but I did just

4   want to make the record that he is here.

5          **THE COURT:**  Okay.  Mr. Choudhri, did you want to say

6   anything?  Did you understand?  If you want to say something,

7   you have to come up to get on the audio record.

8          Good afternoon, Mr. Choudhri.  Did you understand

9   what's going on?

10          **MR. CHOUDHRI:**  A little bit, yes, Your Honor.

11          **THE COURT:**  Okay.  So in the Milestone adversary

12   proceeding, the Court has reset a motion for sanctions that was

13   set for today, reset it for July 2nd at 1:30 p.m.

14          **MR. CHOUDHRI:**  Yes, Your Honor.

15          **THE COURT:**  Okay.

16          **MR. CHOUDHRI:**  And the attorney I was working with is

17   Mr. Mercer --

18          **THE COURT:**  Yeah.

19          **MR. CHOUDHRI:**  And he unfortunately passed and

20   there's some commonality with Otisco and Milestone and

21   Mr. Mercer was assisting in helping and it's just -- I want to

22   request Your Honor if Your Honor can just allow a little bit of

23   time so we can get counsel for Otisco and Milestone.

24          **THE COURT:**  The Court's already ruled on the motion

25   for continuance as to those issues.  Okay?

23

1      **MR. CHOUDHRI:**  Thank you.

2      **THE COURT:**  Thank you, Mr. Choudhri.

3      All right.  So both your motions, Mr. Hirsch, and I

4  would suggest we start with the motion to dismiss since it

5  implicates the motion to strike.

6      **MR. HIRSCH:**  My colleague Mr. Graham will be handling

7  these motions.

8      **THE COURT:**  Okay.  Mr. Graham.

9      **MR. GRAHAM:**  Good afternoon, Your Honor, Robert

10  Graham for the debtor RIC Lavernia LLC and its co-defendant TIG

11  Romspen US Master Mortgage.

12      We're here on a motion to dismiss or in the

13  alternative for summary judgment on the plaintiff's complaint.

14  Before I begin I think in the interest of efficiently if my --

15  if it pleases the Court I might to move to admit all of the

16  debtor's and TIG Romspen's exhibits into evidence.  Those are

17  Exhibits A, B, C, D, E, F and G.  I have binders ready for the

18  Court.

19      **THE COURT:**  Okay.  Have you given a copy to

20  Mr. McAlpine?

21      **MR. MCALPINE:**  Your Honor, I would object to this.  I

22  haven't been served with any of the papers in relation to the

23  adversary proceeding.  I have no notice.  I didn't have no

24  notice that it was even filed, there was a motion to dismiss

25  that was even filed until Friday when I spoke to Mr. Hirsch.

24

1          If I'm not -- I wasn't served with any of the

2     documents related to this.  I didn't file it.  So I haven't

3     seen this to know if I have any objections to it.

4          **MR. GRAHAM:**  Your Honor, if I may respond?

5          **THE COURT:**  Please.

6          **MR. GRAHAM:**  We filed a witness and exhibit list on

7     Wednesday of last week.  Those were served on counsel of record

8     for Otisco.  Mr. McAlpine just made his appearance in this

9     adversary proceeding this morning with his motion to continue,

10    so that is why he did not receive service of the witness and

11    exhibit list.  But the counsel of record, as of Wednesday, who

12    appears to not be here today did receive the witness and

13    exhibit list.

14         **THE COURT:**  Mr. Rayome?

15         **MR. GRAHAM:**  Yes, Your Honor.  Mr. Rayome, it's kind

16    of unclear who is counsel because we have the same issue here.

17    Mr. Rayome signed the complaint.  Paul Kirkland filed it under

18    his CMECF credentials.  So it is again unclear who is counsel

19    of record.

20         **THE COURT:**  Okay.  Your exhibit list shows it was

21    served via e-mail on both Mr. Rayome and Mr. Kirkland, correct?

22         **MR. GRAHAM:**  Right, right, just as a matter of

23    caution.

24         **THE COURT:**  Okay.  Go ahead.

25         **MR. MCALPINE:**  Your Honor, I would renew our motion

25

1   for continuance on this basis.  Mr. Rayome is not here, he's

2   indisposed and I'm in the position of having to represent this

3   party without -- in the adversary proceeding without having any

4   prior notice of the exhibits or basis for them.

5          **MR. HIRSCH:**  Your Honor, we would oppose that renewed

6   motion to continue.

7          **MR. MCALPINE:**  Your Honor, may I have a minute?

8          **THE COURT:**  Please.

9      **(Pause)**

10         **MR. MCALPINE:**  Your Honor, I just -- I renew our

11  motion and you may oppose the --

12         **THE COURT:**  So give me just a second.

13     **(Pause)**

14         **THE COURT:**  When did you become counsel for Otisco,

15  Mr. McAlpine?

16         **MR. MCALPINE:**  I filed one document on -- to answer

17  your question, March 26th.  But that was in the bankruptcy case

18  and the adversary case I didn't appear in today.  I did not

19  appear in it until today when I filed my notice of motion,

20  which was filed -- because I was erroneously assuming that by

21  filing in the main case that it would be treated as having been

22  filed in both, but I wanted to try to correct that issue as

23  much as I could, but Your Honor has already ruled on that.  But

24  I was not counsel of record in the adversary proceeding until

25  this morning.

26

1          **THE COURT:**  Okay.  So I'm going to overrule the

2    objection.  Mr. Rayome got notice and it appears as if

3    Mr. Kirkland got notice.  If they were not going to show up

4    today and if you were going to show up at the last minute, they

5    certainly had the opportunity to send you these documents and

6    to ask you to do things on behalf of Otisco.  So I'm going to

7    overrule that objection.

8          **MR. MCALPINE:**  And, Your Honor, I would object to the

9    Exhibits A, B, C, D, E, F and G as hearsay.

10          **THE COURT:**  Can I see them please?

11          **MR. GRAHAM:**  Yes, sorry, Your Honor.

12          **THE COURT:**  Are they the same as what's attached to

13    the motion?

14          **MR. GRAHAM:**  Yes, Your Honor.  May I approach?

15          **THE COURT:**  Please.

16          Okay.  Hearsay objection, Mr. Graham?

17          **MR. GRAHAM:**  Your Honor, these are certified copies

18    of public records which are self-authenticating under Federal

19    Rule of Evidence 902, subsection 4.  And for which the Court

20    may take judicial notice for purposes of 12(b)(6) motion

21    pursuant to Federal Rule of Evidence 201.

22          **MR. MCALPINE:**  May I respond?

23          **THE COURT:**  Please.

24          **MR. MCALPINE:**  There's no certificate associated with

25    any of these that would establish their authenticity, that's

1    first of all.  And second of all, a Rule 12(b)(6) motion is a

2    motion to dismiss based on a pleadings defect.  The Court

3    shouldn't and does not need to consider evidence of this nature

4    in deciding whether or not the pleadings -- whether the case

5    should be dismissed based on the pleadings.

6           **MR. GRAHAM:**  Your Honor, to his first point, the last

7    pages of Exhibits A, B, and D contain the certification of the

8    Wilson County Clerk.  And in our motion we cited a plethora of

9    case law supporting our argument that the Court may take

10   judicial notice of these certified copies of public records for

11   purposes of a 12(b)(6) motion.

12          **MR. MCALPINE:**  Your Honor, I had not seen, due to the

13   abbreviated time that I've had to review these documents, I had

14   not seen those certificates on the last page, I didn't

15   recognize them as such.  I'll withdraw my objections to A, B,

16   C, and D and not to E, F or G.

17          **THE COURT:**  Okay.  So, Mr. Graham, as to E, F and G?

18          **MR. GRAHAM:**  Your Honor, Exhibit E, F and G were all

19   of the documents that were filed on this Court's docket, so

20   we'd ask that the Court take judicial notice of its own

21   records.

22          **MR. MCALPINE:**  Your Honor, the filing of a document

23   into the court clerk's record doesn't establish an exception to

24   the rule against hearsay.  Judicial notice is for things that

25   are common knowledge like how many days in a year there are or

28

1   other facts that can just be established through judicial

2   notice.

3           You know, the authenticity of the document or that

4   it's a self-authenticating public record or business record or

5   what have you is not something that can be -- in other words,

6   you can't do an end run around the rule against hearsay just by

7   filing a document.

8           **MR. GRAHAM:**  Your Honor, I can go through each

9   exhibit and respond to the hearsay objection if you wish.

10  Exhibit E is --

11          **THE COURT:**  No, don't.  Don't.  The Court's going to

12  overrule the objection, but with the caveat that the Court is

13  going to accept these into evidence, but not necessarily for

14  the truth of the matter asserted.  That's what the debtor

15  believes assets are in its estate and there are schedules filed

16  in this case.  And so beyond that, the Court will admit them.

17          **(Debtor's Exhibits A through G received in evidence)**

18          **MR. GRAHAM:**  Thank you, Your Honor.

19          **THE COURT:**  Okay.  All right.

20          **MR. GRAHAM:**  All right.  So I think it's helpful to

21  get --

22          **THE COURT:**  All right.  Mr. McAlpine, would you

23  please have a seat for a second now while he proceeds?  I think

24  if we're done with evidence.  Okay.  Thank you.  Go ahead,

25  Mr. Graham.

1          **MR. GRAHAM:**  Yes, Your Honor.  I think it may be

2   helpful to give this Court some context about the background of

3   this bankruptcy case and Otisco's involvement or lack thereof.

4          The debtor's bankruptcy case has been pending for

5   nearly a year now.  And since the beginning, the debtor has

6   maintained that its sole asset is certain real property located

7   in Wilson County, Texas.

8          You will see on Exhibit G attached to the debtor's

9   amended petition which is Exhibit G is a description of that

10  property and the debtor also scheduled that property on

11  Exhibits E and F.

12         Until recently nobody questioned the debtor's

13  ownership of the property.  Early last month however Otisco the

14  prior owner of the Wilson County property initiated this

15  adversary proceeding, contending that the debtor does not own

16  the Wilson County property, and instead Otisco is the rightful

17  owner.

18         The evidence I'll walk through today will establish

19  conclusively that that is not true.  The debtor is the rightful

20  owner of this property and Otisco -- any interest Otisco had in

21  the property was extinguished by way of a non-judicial

22  foreclosure sale that was properly noticed.

23         So to that point, Your Honor, Otisco indeed owned

24  this disputed property at one time.  It owned the property

25  subject to a deed of trust in favor of TIG Romspen, which is

1   the co-defendant in this matter, to secure a portion of

2   indebtedness by Otisco's affiliate, which is the Galleria Loop

3   Noteholder LLC.  Exhibit B is a copy, a certified copy of that

4   deed of trust executed by Otisco.

5          When Galleria Loop Noteholder defaulted on its

6   indebtedness TIG Romspen initiated foreclosure proceedings.  To

7   that end, TIG Romspen among other things appointed substitute

8   trustees, which is evidenced by Exhibit A, a certified copy of

9   the appointment of substitute trustees.

10          The debtor gave proper notice of the foreclosure

11  sale, which is evidenced by Exhibit C.  And ultimately through

12  its appointed substitute trustee, TIG Romspen, sorry, conducted

13  the foreclosure sale on February 6th, 2024 and that's evidenced

14  by Exhibit D, the deed of trust conveying the property to the

15  debtor.

16          When the debtor acquired the property through the

17  foreclosure sale any interest that Otisco had in that property

18  was extinguished.  Fast forward over a year later and here we

19  are for the first time Otisco by its complaint, is asserting

20  the foreclosure sale was defective and that the debtor and the

21  estate cannot truly own the property.

22          Now, Otisco's entire complaint stands on one single

23  factual allegation.  It's claim that TIG Romspen's foreclosure

24  against the property was invalid because, according to Otisco,

25  TIG Romspen conducted the sale without a duly appointed

31

1    substitute trustee.

2            Exhibit A which has already been admitted into

3    evidence conclusively proves otherwise.  That is the document

4    through which TIG Romspen appointed its substitute trustee and

5    it was properly recorded in the Wilson County property records

6    on January 3rd, 2024, weeks before the foreclosure sale.

7            I think it's important to note that all of these

8    publicly reported records that have been admitted into evidence

9    were easily accessible by Otisco and its attorneys prior to

10   filing this complaint.  Yet, via a very simple on line search

11   of the Wilson County public records, yet they filed this

12   complaint anyways, apparently without having doing their

13   homework first.

14           Because the only alleged defect that the foreclosure

15   sale asserted in Otisco's complaint is that TIG Romspen did not

16   properly appoint a substitute trustee to denote the foreclosure

17   sale, and because the evidence I just walked through

18   establishes that that is untrue, their complaint is left with

19   no factual basis on which to stand.

20           Therefore, dismissal, under Rule 12(b)(6) is

21   appropriate here.  And I think it's important to also note

22   dismissal with prejudice is proper here because the other

23   exhibits establish not only that Otisco's allegation that the -

24   - that TIG Romspen did not appoint a substitute trustee is

25   false, but the other exhibits also establish that the

1   foreclosure sale was conducted appropriately and there were no

2   defects.

3          So dismissal with prejudice, we would ask for

4   dismissal with prejudice under Rule 12(b)(6).  Sorry, Your

5   Honor, I just want to point out, there's been no response filed

6   to the motion to dismiss.  It's a dispositive motion, and so

7   responses were due within 21 days as required by Local Rules

8   7007-1, Subsection (b)(2) and 7012-1, no response was filed.

9   So I take it the motion appears to be unopposed.

10         **THE COURT:**  Okay.  Thank you.

11         **MR. GRAHAM:**  Thank you, Your Honor.

12         **THE COURT:**  Mr. McAlpine?

13         **MR. MCALPINE:**  Well, Your Honor, I can't argue that

14  there wasn't any response filed.  I was not of record, there is

15  an opposition to the motion.  I'd like to renew our motion for

16  continuance on -- to rectify the issues that have been raised

17  previously.  I'm guessing the Court's going to deny that.

18         **THE COURT:**  Denied.

19         **MR. MCALPINE:**  Thank you, Your Honor.  So there's a

20  couple of things.  First of all, the factual allegations claim

21  to be false is no grounds for a Rule 12(b)(6) motion.  The sole

22  purpose of, you know, pleading is to raise legal theories and

23  provide sufficient factual enhancement to show what those legal

24  theories are based on, as a factual matter, and then state

25  claims for relief just in general.

1           And when there's a dispute about a material fact

2    that's the purpose of either an evidentiary hearing or a motion

3    for summary judgment.  And they disagree with the factual

4    allegation that's in the pleading does not fail to state a

5    claim that merely means there's a dispute about the claim,

6    which is the reason why the petition was filed.

7           So the fact that they don't agree with one of the

8    contentions in the adversary complaint is no basis for

9    dismissal.  At best, the Court should deny the motion entirely

10   and state that it's a fact issue to be raised at a later date

11   after discovery or, alternatively, given opportunity to replead

12   if it's somehow an actual pleadings issue.

13          So that's the first point that I'd like to make.

14   Second of all, I don't believe that it's the only allegation

15   that's made that there's a lack of an appointment of a

16   substitute or a subsequent trustee.  There's allegations that

17   the foreclosure itself was improper and fraudulent based on the

18   initial sale of the property for $100,000 and then TIG Romspen

19   calling in and getting them to take a mulligan on it and sell

20   it for I believe $2 million.

21          And I believe Mr. Choudhri would be able to testify

22   today that he has an e-mail from Mr. Hirsch that states that if

23   the property was sold for $100,000 which is significantly less

24   than the amount that was stated on the claims registry, as far

25   as I can tell.

34

1          So there's additional arguments that are stated in

2   the petition, including improper foreclosure and fraud that --

3   I mean, establishing the existence of a subsequent trustee

4   doesn't even address all of the allegations that are made.

5          So at most, if the Court converts the 12(b)(6) motion

6   to a motion for summary judgment, then the theory based on

7   subsequent trustee would have to be contradicted by a witness.

8   Would the Court permit us to call a witness to give testimony

9   on this issue, under the circumstances?

10          **THE COURT:**  No.

11          **MR. MCALPINE:**  Okay.

12          **THE COURT:**  I'm sorry, but I've got no exhibit and

13   witness list, I've got nothing in advance of the hearing and

14   there was no response to the motion.  And I'm looking at the

15   complaint itself.  You said there were other causes of action.

16   I see two causes of action.  One is declaratory judgment

17   request, that essentially says that the foreclosure was

18   improperly done.  And the second is a constructive trust cause

19   of action.  What am I missing?

20          **MR. MCALPINE:**  Your Honor, I don't know.  I don't

21   believe that you're missing anything.  I don't have a copy of

22   the adversary petition in front of me and I believe though that

23   the constructive trust argument doesn't depend on the

24   employment of a subsequent trustee point or am I mistaken about

25   that as well?

35

1          **THE COURT:**  No, it does.

2          **MR. MCALPINE:**  It does.

3          **THE COURT:**  Paragraph 30, the foreclosure was

4   conducted without a properly appointed trustee, violating Texas

5   Property Code 51.0075, fundamental principles of trust law and

6   due to the defective nature of that trust debtor was unjustly

7   enriched and so you're asking for a constructive trust over the

8   property.

9          **MR. MCALPINE:**  Okay.

10          **THE COURT:**  Or the complaint is.

11          **MR. MCALPINE:**  Understood.

12          **THE COURT:**  So they're both tied into the legitimacy

13   of foreclosure proceeding.

14          **MR. MCALPINE:**  Understood, Your Honor.

15          **THE COURT:**  Anything else?

16          **MR. MCALPINE:**  No, Your Honor, I don't have anything

17   further.  I mean, I would simply reiterate that we filed a

18   motion for continuance based on the circumstances we've already

19   discussed and that has encumbered our ability to make a

20   meaningful opposition to these motions.

21          **THE COURT:**  Understood.  Again, you didn't file one

22   in the adversary proceeding.  You showed up here at the hearing

23   and that's the first time I had any official notice that you

24   wanted a continuance in the adversary proceeding.  You file the

25   motion for continuance in the case.

36

1          **MR. MCALPINE:**  Understood, Your Honor.

2          **THE COURT:**  Okay.  Thank you.  Mr. Graham, rebuttal?

3          **MR. GRAHAM:**  Your Honor, I really don't have much

4    further to say, though I'm happy to address any questions that

5    the Court has.  I would ask that the Court grant our motion to

6    dismiss this case with prejudice under Rule 12(b)(6) or if the

7    Court finds it necessary to do so, to convert this to a motion

8    for summary judgment and grant summary judgment in the

9    defendant's favor against the complaint also with prejudice.

10         **THE COURT:**  How do you think I can do this under

11   12(b)(6) without the evidence you put in to place?

12         **MR. GRAHAM:**  Sure, Your Honor.  The Fifth Circuit has

13   already settled this issue in <u>Norris v Hearst Trust</u>, that's 500

14   F3d 454.  The Fifth Circuit says it is clearly proper in

15   deciding a 12(b)(6) motion to take judicial notice of the

16   matters of public record.

17         Exhibit A is really the only thing the Court needs.

18   It's a matter of public record, certified copy so it's self-

19   authenticating and it conclusively proves that the one factual

20   allegation as part of the complaint is false.

21         **THE COURT:**  Okay.

22         **MR. GRAHAM:**  That is all, Your Honor.

23         **THE COURT:**  Thank you.  Mr. McAlpine?

24         **MR. MCALPINE:**  Your Honor, I don't have anything to

25   add.

37

1          **THE COURT:**  Nothing more?  Okay.

2          All right.  The Court is going to grant the motion to

3   dismiss under 12(b)(6), taking judicial notice and actually

4   having taken into evidence these other exhibits to the extent

5   it doesn't work under 12(b)(6), the Court will grant it as a

6   summary judgment motion.

7          All right.  Let's hear the motion to strike.

8          **MS. SAMAVATI:**  Your Honor?

9          **THE COURT:**  I'm sorry, are you a lawyer?

10         **MS. SAMAVATI:**  Yes, I am.  Gia Samavati --

11         **THE COURT:**  Please come near a microphone.

12         **MS. SAMAVATI:**  Gia Samavati, Your Honor.

13         **THE COURT:**  Uh-huh.

14         **MS. SAMAVATI:**  Mr. Choudhri would like to address the

15   Court, is that permitted?

16         **THE COURT:**  Not just yet.  Not just yet.  Let me hear

17   the motions and then maybe after that.  Okay?

18         **MS. SAMAVATI:**  Thank you, Your Honor.

19         **THE COURT:**  Okay.

20         **THE CLERK:**  (Inaudible)

21         **THE COURT:**  Is the order in the file all right,

22   Mr. Graham?

23         **MR. GRAHAM:**  Sorry, Your Honor?

24         **THE COURT:**  Is the order in the file all right on

25   that one?

1          **MR. GRAHAM:**  Yes, Your Honor.

2          **THE COURT:**  Okay.

3          **MR. GRAHAM:**  And just to clarify, was that a

4    dismissal with prejudice?

5          **THE COURT:**  That is a dismissal with prejudice.

6          **MR. GRAHAM:**  Okay.  Thank you, Your Honor.

7          On the motion to strike, I'd like to again move to

8    admit Exhibits A, B, C, D, E, F, G for purposes of the motion

9    to strike.

10         **THE COURT:**  Mr. McAlpine?

11         **MR. MCALPINE:**  No objections.

12         **THE COURT:**  Okay.  The Court will admit the same

13   exhibits for purposes of the motion to strike in the case.

14     **(Debtor's Exhibits A through G received)**

15         **MR. GRAHAM:**  So Otisco's objection to confirmation of

16   the debtor's Chapter 11 plan really stems from the same thought

17   premise as its complaint in the adversary proceeding, its

18   incorrect assertion of a defective foreclosure sale, and

19   therefore a dispute about the debtor's ownership of the

20   property.

21         Crucially, before really getting to the merits of

22   whether the foreclosure sale was proper or not, Otisco lacks

23   standing to object to confirmation of the debtor's plan in the

24   first place.  It's not a party in interest to this bankruptcy

25   case.  Under Section 1109(b) of the Bankruptcy Code there's a

1    list of enumerated categories under which Otisco does not fall.

2              **THE COURT:**  Non-exclusive list.

3              **MR. GRAHAM:**  Non-exclusive list, you're right, Your

4    Honor.  And I'll address that as well.  But first Otisco's not

5    scheduled as a creditor.  You'll see that in Exhibits E and F.

6              **THE COURT:**  Does it matter that they filed a lawsuit?

7              **MR. GRAHAM:**  Your Honor, as of now the lawsuit has

8    been dismissed.

9              **THE COURT:**  I got it, but had the lawsuit not been

10   dismissed?

11             **MR. GRAHAM:**  No, Your Honor, because the evidence

12   that I intended to present conclusively establishes that the

13   foreclosure was proper and that any property interest that

14   Otisco had in this Wilson County property was extinguished.  So

15   Otisco has no direct pecuniary interest that would be affected

16   by the plan confirmation.

17             Second, I would just point out that Otisco has not

18   filed a proof of claim in this case and the bar date for doing

19   so has long past.  So I would just ask that the Court take

20   judicial notice of its claim register to that end.

21             **THE COURT:**  The Court will take judicial notice of

22   the claims register.

23             **MR. GRAHAM:**  Accordingly, Otisco is not an estate

24   creditor impacted by the plan.  Now, it is true that Section

25   1109(b) is a non-exclusive list.  Courts have recognized in

1    exceptional cases that a party may have standing even though

2    they do not fall in that enumerated list of parties in interest

3    under Section 1109(b).  But for such non-enumerated parties to

4    establish standing, they must show pecuniary interest that are

5    directly affected by the bankruptcy proceeding.

6            So this is an even more, you know, exacting standard

7    requiring a higher causal nexus between act and injury, the

8    case law reads.  Otisco could not meet this exacting standard

9    because as demonstrated by Exhibits A, B, C and D Otisco has no

10   remaining interest in the property.  Any interest it once had

11   was extinguished by the foreclosure sale.  Because Otisco lacks

12   standing, we would ask that its objection to the plan be

13   stricken.

14           **THE COURT:**  Okay.  Mr. McAlpine?

15           **MR. MCALPINE:**  Very briefly, Your Honor.  I mean my

16   understanding is that the Court made a ruling already on the

17   issue of the existence of a subsequent trustee under the Rule

18   12(b)(6) motion and the premise of the objection is the

19   accuracy of the allegations that are stated in the adversary

20   complaint.

21           So the point -- and I assume that the Court took

22   these in that order intentionally, based on that.  I mean,

23   essentially the issue is moot, all we can do is object to the

24   ruling on the motion to dismiss, which I assume Your Honor is

25   going to overrule.  And the -- I mean, absent an adversary

41

1   complaint that is viable, there's no standing to object.

2          So pursuant to the Court's ruling from ten minutes

3   ago, I don't have a response other than what I've already

4   stated, which I would restate at this point.

5          **THE COURT:**  Okay.  And then let me talk to

6   Mr. Graham.

7          Mr. Graham, I didn't see truck insurance cited in

8   here at all.  Did you look at truck insurance?

9          **MR. GRAHAM:**  Truck insurance, no, Your Honor, it's

10  not ringing a bell.

11         **THE COURT:**  U.S. Supreme Court case a couple of years

12  ago, a year or two ago.  So the -- I went back and I looked at

13  the objection itself and there are several things in there, let

14  me find it.  I had it here.

15         Okay.  The objection cites other provisions,

16  paragraph 8 cites 1129(a)(3), paragraph 9 cites 1129(a)(5).  It

17  talks about other rights that Otisco might have vis a vis the

18  plan other than just this right under their foreclosure

19  interest, we'll call it, right?

20         And so are you saying that they don't have the right

21  to assert those objections?

22         **MR. GRAHAM:**  Well, Your Honor, the entire objection

23  is premised on this idea that Otisco has property interests in

24  estate property and we've established through the evidence

25  today that Otisco has no property interest in this -- in the

42

1   property of the estate.  And because Otisco is neither a

2   scheduled creditor nor a party who has filed a proof of claim

3   it's not impacted in any way by confirmation of the plan.

4          So, you know, if it does happen in interest, a plan

5   objection was not the way to assert that interest.

6          **THE COURT:**  Okay.  All right.  Anything else?

7          **MR. GRAHAM:**  That is all, Your Honor.

8          **THE COURT:**  All right.  So the -- did you have any

9   follow up, Mr. McAlpine?

10         **MR. MCALPINE:**  No, Your Honor.

11         **THE COURT:**  Okay.  So the Court is going to grant in

12  part and deny in part the motion to strike.  I will grant it to

13  the extent that the objection raises any issue related to the

14  improper foreclosure sale, but the Court's view of the

15  objection is much broader than that and Otisco might have

16  reason to object to the injunction that's in the plan or other

17  discharge provisions in the plan.  And so I'm not going to

18  strike it as to those other things that don't deal with the

19  impropriety of the initial foreclosure sale.  Okay?

20         **MR. HIRSCH:**  Your Honor, if I may be heard?

21         **THE COURT:**  Please.

22         **MR. HIRSCH:**  Just on that last piece, Your Honor,

23  it's not the debtor's position that for example the provisions

24  you cited, 1129(a)(3), 1129(a)(5), it's not our position that

25  in striking the objection that the Court is concluding that the

43

1  plan as to those provisions are acceptable and confirmable.

2       **THE COURT:**  No, that's correct.  I'm not saying

3  they're appropriate objections.  All I'm saying is they're

4  entitled to raise them, that they have the standing to raise

5  those objections.

6       **MR. HIRSCH:**  And I think our -- and again, you've

7  made your ruling clear, I just want to make sure that we

8  understand that from our perspective the way that we read their

9  objection, is that the only standing that they bring to raise

10 any objections is through their purported interest in the

11 property.

12      And once their purported interest in the property is

13 deemed non-existent, then their ability, their standing to

14 raise prejudice as to any portions of the plan we believe also

15 is non-existent.  So maybe we'll address that more at

16 confirmation --

17      **THE COURT:**  Understood.

18      **MR. HIRSCH:**  -- and that may be the more appropriate

19 time.  I just wanted to make sure the record is clear on that.

20      **THE COURT:**  That's correct.

21      **MR. HIRSCH:**  Thank you, Your Honor.

22      **THE COURT:**  Thank you.

23      Yeah, the Court will do the order on that one.

24      **THE CLERK:**  Thank you.

25      **THE COURT:**  All right.  Anything else?  Mr. Choudhri?

44

1              Mr. Hirsch, let me hear from the counsel first.

2         **MR. HIRSCH:**  Yeah, I -- the debtor and TIG Romspen

3    don't have anything further.  I'm not sure what position

4    Mr. Choudhri has, so hopefully that's the first question from

5    the Court.  So --

6         **THE COURT:**  Okay.

7         **MR. HIRSCH:**  -- I am a little eager to stand up and

8    object when I hear things that I may feel are worthy of

9    objection, but I'll let the Court take the first guidance on

10   that.

11        **THE COURT:**  Okay.  Mr. McAlpine?

12        **MR. MCALPINE:**  No, Your Honor, I don't -- it's my

13   understanding that Mr. Choudhri wants to speak.

14        **THE COURT:**  Okay.  All right.  Mr. Choudhri, I'm --

15   yeah, I'm going to do that.  I'm going to swear you in, please

16   state your name for the record first and spell your last name.

17        **MR. CHOUDHRI:**  Ali Choudhri, A-L-I first name.  Last

18   name is C-H-O-U-D-H-R-I.

19        **THE COURT:**  Thank you.  Get your hand up, keep it up.

20                    **ALI CHOUDHRI, SWORN**

21        **THE COURT:**  Okay.  Go ahead.

22        **MR. CHOUDHRI:**  Your Honor, I just wanted to bring a

23   few things to your attention.  I would plead to the Court and I

24   have communications with Mr. Eric Taube and Mr. Mercer and

25   Mr. Mercer drafted and was in the process, and I also have

45

1  videos of the auction and e-mails I've had personally with

2  Mr. Hirsch about the auction.  I was at this auction.  This is

3  approximately 2,000 lots in Wilson County in Lavernia.  This

4  started off as a cross-collateralized deal where TIG Romspen

5  convinced Otisco to provide additional collateral behind

6  Milestone's first lien against the property.

7         And the minute it did, it immediately posted both the

8  other property, the 1001 WL property and the Lavernia property

9  for foreclosure.  And I was at this auction, Your Honor, and

10  the trustee stated that she was going to credit bid the entire

11  amount.  It was crossed to another property --

12         **MR. HIRSCH:**  Your Honor --

13         **THE COURT:**  Mr. Hirsch?

14         **MR. HIRSCH:**  I need to object first of all.  There's

15  hearsay coming in but I don't understand to what extent this

16  testimony is being --

17         **THE COURT:**  The evidence is closed.  The Court has

18  already ruled on the other things and so Mr. Choudhri is I

19  think just trying to educate me.

20         **MR. HIRSCH:**  Okay.  Thank you.

21         **MR. CHOUDHRI:**  Thank you, Your Honor.  And, Your

22  Honor, my only request, Your Honor, would be that if there's a

23  way I could present to Your Honor maybe some communications and

24  -- between Mr. Mercer and myself and Otisco and the situation

25  and kind of what -- and there was a foreclosure sale that I was

46

1    at where the property was struck sold to another buyer for

2    $550,000 buy this trustee.  And the trustee then got -- spoke

3    to Mr. Wes Roitman for Romspen and then started the sale again

4    and sold it for $2 million and it's on video.  I have this on

5    video.  And I e-mailed Mr. Hirsch and I asked him what did the

6    property sell for, what happened at the sale.  And he said it

7    went back to TIG Romspen for 100,000.

8              Subsequent TIG Romspen created a new entity called

9    RIC Lavernia and threw it into bankruptcy.  After the

10   injunction by Milestone was or the injunction that TIG Romspen

11   requested was denied, allowing Milestone to foreclose.  And RIC

12   Lavernia transferred, which I believe is like a runaway debtor,

13   back date filing and I'm just requesting, Your Honor, just a

14   week or two weeks, or at the very minimum, Your Honor, if the

15   ruling can be without prejudice to allow counsel to actually

16   correctly and I apologize, Mr. -- the circumstance is very

17   unique and it's not in any way delay.  It -- there's a lot on

18   the line here, and I would just ask Your Honor if Your Honor

19   would at the very minimum consider it without prejudice so the

20   information could be put forth and I wish things could have

21   been different and I wish the unforeseen events didn't take

22   place.

23             Mr. Mercer was representing me in many cases as a

24   creditor, and I have a real party interest in this and he was

25   in the process of bringing in some additional help.

47

1    Unfortunately, earlier we had another great lawyer who got ill,

2    Mr. Peter Stanton (phonetic) and he shut down his practice and

3    then this circumstance with Mr. Mercer.  And if Your Honor

4    would allow maybe a little bit of time I would present to you

5    the communications and you would see that Mr. Mercer was

6    instrument and integral to the representation and the direction

7    for Otisco.  And this was very unexpected and things could have

8    been done differently, that's the only thing I would mention,

9    Your Honor.

10          And Mr. Hirsch is -- there is some real disclosure

11   issues on these other bankruptcies with Romspen has filed

12   bankruptcy and transferred and it's a lot and I can't say it

13   all, articulate it correctly.  I would just request, Your

14   Honor, if Your Honor would consider a short recess or some time

15   for counsel for Otisco to present these things to you and some

16   evidence or at the very minimum where Romspen is now getting a

17   windfall because this property they did not foreclose it

18   properly.

19          I have been to several hundred sales myself.  I've

20   been in -- started to go to RTC and SML as a child with my dad,

21   as a young man and I've bought properties at the First Tuesday

22   as a teenager and I can tell Your Honor that the evidence that

23   Mr. Hirsch has represented to you and Mr. Roitman have

24   represented about what the property sold for at the auction to

25   other courts it's not factual and I can bring that forward and

48

1   prove that, Your Honor, because I have the video of the

2   auction.  And I just would ask Your Honor to not make it with

3   prejudice, so there's an opportunity to present to Your Honor.

4           **THE COURT:**  So, Mr. Choudhri, that opportunity was

5   today, right.  And no response was made to the motion that was

6   filed and Mr. Mercer again the Court will note is a fantastic

7   attorney, but Mr. Mercer was not counsel for Otisco.

8           Mr. Mercer was not on the pleadings anywhere and

9   counsel didn't respond.  Mr. McAlpine showed up here the last

10  day and did a yeoman's job trying to do his best to get this

11  done, but nonetheless that time has passed.  And so the Court

12  has closed the evidence and the Court's dismissal on the Otisco

13  matter is with prejudice.  Okay?

14          **MR. CHOUDHRI:**  And --

15          **THE COURT:**  I'm not taking evidence.  I'm not going

16  to look at any of that stuff.  Anything that you want to

17  present, please present through an attorney.

18          **MR. CHOUDHRI:**  Yes, Your Honor, yes, I'll do that, I

19  just wanted to apologize for any inconvenience.

20          **THE COURT:**  I'm not looking for an apology, but I'm

21  just telling you I'm sorry that your attorney was unable to

22  accomplish what it was that you wanted to try and communicate

23  today during the hearing.

24          **MR. CHOUDHRI:**  Yes, Your Honor, and I have a medical

25  record of Mr. Rayome.  He's -- unfortunately that's just --

49

1   that's the --

2          **THE COURT:**  So Mr. Rayome has number one, been in

3   since May 9th, no motion for continuance was filed until

4   actually not in the case, none was ever filed.  And as

5   Mr. Hirsch went through a whole plethora of other pleadings

6   were filed by Mr. Rayome.  And so I have trouble judging the

7   credibility of him without him being here, but I -- even the

8   declaration, the unsworn declaration was unsigned.  You can't

9   sign with a /s/ when it's not your pleading.  There was nothing

10  there for me to rely on as to Mr. Rayome.

11         And based upon the fact that he filed a bunch of

12  other things, he lacks any sort of credibility, even if I was

13  to try and rely on it.  And so I am -- I understand what it is

14  you're trying to communicate, but I'm not changing my mind.

15  All right?

16         **MR. CHOUDHRI:**  Thank you, Your Honor.  If you would

17  consider a motion I'm assuming if -- once counsel --

18         **THE COURT:**  Get counsel.  You're entitled to appeal

19  my order, you're entitled to do whatever you want to do.

20         **MR. CHOUDHRI:**  If you'd reconsider -- consider

21  reconsidering I guess, if a proper motion is brought forth by

22  counsel, Your Honor?

23         **THE COURT:**  You're entitled to file whatever it is

24  you'd like to file, Mr. Choudhri.

25         **MR. CHOUDHRI:**  Thank you, Your Honor.

50

1          **THE COURT:**  All right?

2          **MR. CHOUDHRI:**  Thank you.

3          **THE COURT:**  All right.  Thank you.  Anyone else?  You

4    may be excused.

5          **MR. HIRSCH:**  Thank you, Your Honor.

6          **THE CLERK:**  All rise.

7          **THE COURT:**  Thank you.  We'll be in recess.

8       **(Proceedings concluded at 3:29 p.m.)**

9                         * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

51

## CERTIFICATION

     I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          **June 4, 2025**

          Signed                           Dated

          *TONI HUDSON, TRANSCRIBER*