**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| RIC (LAVERNIA) LLC, | ) | Case No. 24-51195 (MMP) |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S CHAPTER 11 REORGANIZATION PLAN**
**DATED DECEMBER 9, 2024 (~~SECOND~~THIRD AMENDMENT)**

**BRYAN CAVE LEIGHTON PAISNER LLP**
Kyle S. Hirsch
Texas Bar No. 24117262
Dallas Arts Tower
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone:  (214) 721-8000
Facsimile:  (214) 721-8100
Email:  kyle.hirsch@bclplaw.com

*Counsel to Debtor and Debtor in Possession*

# TABLE OF CONTENTS

**Page**

ARTICLE I
DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW

| | | |
|---|---|---|
| 1.1 | Scope of Definitions; Rules of Construction | 1 |
| 1.2 | Definitions | 1 |
| 1.3 | Rules Of Interpretation | 5 |
| 1.4 | Computation Of Time | 6 |
| 1.5 | Governing Law | 6 |

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS

ARTICLE III
TREATMENT OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 3.1 | Class 1 -Allowed Administrative Claims | 6 |
| 3.2 | Class 2 - Secured Claim of Wilson County | 7 |
| 3.3 | Class 3 - Secured Claims of Milestone | 7 |
| 3.4 | Class 4 – Other Secured Claims | 7 |
| 3.5 | Class 5 - Unsecured Claims | 8 |
| 3.6 | Class 6- Equity Interests | 8 |
| 3.7 | Reservation of Rights Regarding Claims | 8 |

ARTICLE IV
ACCEPTANCE OR REJECTION OF THE PLAN

| | | |
|---|---|---|
| 4.1 | Impaired Classes Entitled To Vote | 9 |
| 4.2 | Acceptance By An Impaired Class | 9 |
| 4.3 | Presumed Acceptances | 9 |
| 4.4 | Confirmation Pursuant To Section 1129(b) of The Bankruptcy Code | 9 |

ARTICLE V
PLAN IMPLEMENTATION

| | | |
|---|---|---|
| 5.1 | Funding For The Plan | 9 |
| 5.2 | Effectuating Documents; Further Transactions | 9 |
| 5.3 | Closing of The Chapter 11 Case | 10 |

ARTICLE VI
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| | | |
|---|---|---|
| 6.1 | Executory Contracts and Unexpired Leases | 10 |

6.2     Rejection Damages Bar Date..................................................................10

ARTICLE VII
PROVISIONS GOVERNING DISTRIBUTIONS

7.1     Distributions..........................................................................................10

7.2     Interest On Claims.................................................................................10

7.3     Means Of Cash Payment........................................................................10

7.4     Date of Distributions.............................................................................10

7.5     No Recourse............................................................................................11

7.6     Transactions On Business Days.............................................................11

7.7     No Distribution In Excess Of Allowed Amount Of Claim...................11

ARTICLE VIII
PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND DISTRIBUTIONS WITH
RESPECT THERETO

8.1     Prosecution Of Objections To Claims...................................................11

ARTICLE IX
CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN

9.1     Conditions to Confirmation...................................................................11

9.2     Conditions to Effective Date.................................................................11

9.3     Waiver of Conditions.............................................................................12

9.4     Notice of Effective Date........................................................................12

ARTICLE X
RETENTION OF JURISDICTION

10.1    Provisions with Respect to Retention of Jurisdiction...........................12

ARTICLE XI
MISCELLANEOUS PROVISIONS

11.1    Deadline For Filing Administrative Expense Priority Claims; Objections To
        Administrative Expense Priority Claims...............................................14

11.2    Payment of Statutory Fees....................................................................14

11.3    Modifications and Amendments............................................................14

11.4    Severability of Plan Provisions.............................................................14

11.5    Successors and Assigns.........................................................................15

11.6    Discharge of Claims..............................................................................15

11.7    Release Of Assets..................................................................................15

11.8    Intentionally Ommitted..........................Error! Bookmark not defined.15

11.9    Revocation, Withdrawal, Or Non Consummation................................15

11.10   Notices .................................................................................................................... 16

11.11   Headings .................................................................................................................. 16

# INTRODUCTION

RIC (Lavernia), LLC "(Debtor" or "Plan Proponent"), the debtor and debtor-in-possession in the above-captioned case, hereby proposes *Debtor's Chapter 11 Reorganization Plan Dated December 9, 2024* (as may be amended or modified, the "Plan") to resolve Debtor's outstanding creditor Claims (as defined herein) and Equity Interests (as defined herein). Reference is made to the Disclosure Statement (as defined herein) for a discussion of the Debtor's history, property, a summary and analysis of the Plan, and related matters. The Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. This is the ~~first~~third amendment to the Plan.

All holders of Claims and Interests are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Fed. R. Bankr. P. 3019 and Article XII, Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to its substantial consummation.

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### 1.1    Scope of Definitions; Rules of Construction

For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.2    Definitions

"**Administrative Expense Priority Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor, including compensation for services rendered after the commencement of the Chapter 11 Case, (ii) Professional Fee Claims, and (iii) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

"**Adversary Proceeding**" means Adversary Proceeding 24-05043, styled RIC (Lavernia), LLC v Milestone Capital CRE 1, LLC; Lori Daves and John Daves, as Substitute Trustee; Andres Cedillos.

"**Affiliate**" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1

"**Allowed**" (**and** "**Allowed Claim**") means, with regard to any Claim other than an Administrative Expense Priority Claim, a Claim or any portion thereof (i) that has been allowed by a Final Order; or (ii) as to which, on or by the Effective Date, (a) no Proof of Claim has been filed with the Bankruptcy Court and (b) the liquidated and noncontingent amount of which is listed on the Schedules, other than a Claim that is listed on the Schedules as zero, in an unknown amount, or as disputed; or (iii) for which a Proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (a) no objection to its allowance has been filed by the Objection Deadline or by such other applicable period of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (b) any and all objections to its allowance have been settled or withdrawn or have been denied by a Final Order; or (iv) that is expressly allowed in a liquidated amount in the Plan.  With regard to an Administrative Expense Priority Claim, "Allowed" means an Administrative Expense Priority Claim or any portion thereof (i) incurred or arising after the Petition Date and prior to the Effective Date, (ii) as to which a request for payment has been timely filed with the Bankruptcy Court in a liquidated amount, and (iii) as to which either (a) no objection to its allowance has been filed by the Objection Deadline or by such other applicable period of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (b) any and all objections to its allowance have been settled or withdrawn or have been denied by a Final Order.

"**Assets**" means all right, title and interest of the Debtor in and to any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the Estate.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division or such other court as may have jurisdiction over the Chapter 11 Case.

"**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" means October 29, 2024, or such other date designated by the Bankruptcy Court as the last date for filing Proofs of Claim against the Debtor.

"**Business Day**" means any day except for Saturday, Sunday or a "legal holiday" (as defined in Fed. R. Bankr. P. 9006(a)).

"**Cash**" means legal tender of the United States or equivalents thereof.

"**Chapter 11 Case**" means the Chapter 11 case of RIC (Lavernia), LLC, Case No. 24-51195.

"**Claim**" means a "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, whether or not asserted.

"**Class**" means a category of holders of Claims or Interests, as described in Article II of the Plan.

"**Collateral**" means the Assets subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

"**Confirmation**" means entry by the Bankruptcy Court of the Confirmation Order.

"**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

"**Confirmation Hearing**" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan.

"**Creditor**" means any Entity who holds a Claim against any of the Debtors.

"**Cure**" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable nonbankruptcy law.

"**Debtor**" means RIC (Lavernia), LLC.

"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017.

"**Disputed**" means, with respect to a Claim, such Claim or any portion thereof that is not an Allowed Claim, and includes, without limitation, Claims (other than Allowed Claims) that (i) have not been listed on the Schedules or have been listed on the Schedules at zero, or as contingent, unliquidated or disputed, or (ii) are the subject of an objection filed in the Bankruptcy Court and which objection has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

"**Disputed Claim**" means any Claim as to which the Trustee or any other party in interest has interposed a timely objection or request for estimation in accordance with the Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

"**Effective Date**" means the Business Day on which all conditions to the consummation of the Plan as set forth in Section 9.2 of the Plan have been satisfied or waived as provided in Section 9.3 of the Plan.

"**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code and also means, without limitation, a person, joint venture, trust, estate, unincorporated association or organization, limited liability company, governmental entity or political subdivision, agency or representative thereof, or any other entity.

"**Estate**" means the legal entity created to administer the property of the Debtor by the commencement of the Chapter 11 Case pursuant to 11 U.S.C. § 541 with respect to the Debtor.

"**File(d)**" means file(d) with the Bankruptcy Court in the Chapter 11 Case.

"**Final Order**" means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired or, if an appeal has been timely filed as to which no stay pending appeal has been granted.

"**FNA**" means FNA VII, LLC, together with its agents, representatives, attorneys, employees, members, managers, and anyone acting on its behalf.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means an ownership interest in any of the Debtors and any rights to any dividends or distributions as a result of such ownership.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Milestone**" means Milestone Capital CRE 1, LLC or Milestone Capital CRE I, LLC; together with its agents, representatives, attorneys, employees, members, managers, and anyone acting on its behalf.

"**Objection Deadline**" means the date that is 60 days after the Effective Date, which date shall be extended for an additional 30 days upon notice to the Bankruptcy Court by the Debtor/Reorganized Debtor.

"**Other Priority Claim**" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Expense Priority Claim.

"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means June 27, 2024, the date on which the Debtor filed its petition for relief in this Case under the Bankruptcy Code.

"**Plan**" means this Chapter 11 plan of liquidation and all exhibits and schedules attached hereto or referenced herein, as the same may be amended, modified or supplemented from time to time.

"**Plan Exhibit**" means any exhibit or schedule attached hereto.

"**Priority Claim**" means a Claim that is entitled to priority pursuant to section 507 of the Bankruptcy Code.

"**Pro Rata**" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class.

"**Professional**" means any professional person employed in the Chapter 11 Cases pursuant to section 327 of the Bankruptcy Code or otherwise and any professional persons seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses pursuant to sections 327, 328, 330, 331, 503(b), or 543(c)(2) of the Bankruptcy Code for services rendered after the Petition Date and prior to the Effective Date.

"**Proof of Claim**" means any written statement filed under oath in the Chapter 11 Cases by a Creditor in which such Creditor sets forth an amount owed in sufficient detail to identify the basis for a Claim.

"**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

"**Secured Claim**" means a Claim that is secured by a Lien on Collateral or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such Collateral or to the extent of the amount subject to setoff, as applicable.

"**Unimpaired**" means, when used with reference to a Claim, a Claim that is not Impaired.

"**Unsecured Claim**" means a Claim against any of the Debtors that is not a/an (i) Administrative Expense Priority Claim, (ii) Secured Claim, or (iii) Other Priority Claim.

"**Voting Record Date**" means the voting record date for voting to accept or reject the Plan, as determined by the Bankruptcy Court.

1.3    **Rules Of Interpretation**

For purposes of the Plan (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (iii) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan; (iv) the words "herein", "hereof", "hereunder", "hereto" and other words of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (v) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (vi) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

1.4    **Computation Of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

1.5    **Governing Law**

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class.  A Claim or Interest may be and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| | |
|---|---|
| Class 1 | Allowed Administrative Claims. |
| Class 2 | Secured Claim of Wilson County. |
| Class 3 | Claim of Milestone. |
| Class 4 | Other Secured Claims. |

Class 5          General Unsecured Claims.

Class 6          Equity Interests.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1     **Class 1 -Allowed Administrative Claims**

(a)     Each holder of an Administrative Expense Claim shall receive the full amount of its Allowed Claim on the Effective Date.

(b)     Class 1 is not Impaired.

3.2     **Class 2 - Secured Claim of Wilson County**

(a)     Class 2 ~~consists of the~~pertains to the Allowed Secured Claim of Wilson County (and for those taxing entity which Wilson County collects ad valorem taxes) in the amount of $368,288.78.
~~(b) Class 2 shall retain its liens.~~
~~(c) Class 2 shall receive payment in full of the amount of its Allowed Claim including post-petition interest at the statutory rate of 1% per month, in four (4) quarterly installments with the first payment due at the end of the first quarter after the Effective Date. Upon payment in full of all Class 2 Plan payments, the lien will be deemed extinguished and released.~~

(b)     All statutory tax liens held by Wilson County shall be retained until the Allowed Secured Claim of Wilson County is paid in full, in accordance with 11 U.S.C. § 1129(b)(2)(A)(i)(I).  The Plan shall not be construed to modify or impair Wilson County's lien rights under the Texas Property Code.

(c)     The Allowed Secured Claim of Wilson County in the amount of $368,288.78 shall be paid in full, in cash, on the Effective Date. Such payment shall be funded through post-confirmation financing committed to the Reorganized Debtor by a lender affiliated with the Debtor's sole member.  To the extent that such lender provides funding used to satisfy any portion of the Allowed Secured Claim of Wilson County, the lender shall be deemed fully subrogated—by operation of law, equity, and/or contract—to all rights, liens, and remedies of Wilson County, including any statutory tax lien rights under the Texas Tax Code.  Such subrogation shall be automatic and effective upon payment, without further need for action or documentation, and all liens or security interests securing such Allowed Secured Claim of Wilson County shall continue in favor of the lender with the same priority and enforceability presently held by Wilson County.

7

(d)      In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are the collateral of the Wilson County claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to Wilson County to be applied to the tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing prior to any disbursement of the sale proceeds to any other person or entity.

(e)      The Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2025 and subsequent tax years) owing to Wilson County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the taxing authorities to file an administrative expense claim and/or request for payment.

(f)      Should the Reorganized Debtor fail to make any payments as required in this Plan, Wilson County shall provide written notice of that default and provide the Reorganized Debtor with a period of fifteen (15) days to cure the default.  In the event the default is not cured within fifteen (15) days, Wilson County may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. Wilson County shall provide Reorganized Debtor with written notice of that default and afford a fifteen (15) day opportunity to cure said default.  In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, Wilson County may, without further order of this court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than three (3) Notices of Default.  In the event of a fourth (4th) default, Wilson County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtor.

(g)      (d) Class 2 is Impaired.

## 3.3   **Class 3 - Secured Claims of Milestone**

(a)      Class 3 consists of the secured claim of Milestone.

(b)      Class 3 shall retain any valid lien as determined in the Adversary Proceeding.

(c)      Class 3 is not Impaired.

(d)     The Debtor/Reorganized Debtor does not assume any obligation for payment of Milestone's underlying debt. In the event Milestone establishes the validity and enforceability of its lien in the Adversary Proceeding, Milestone will be entitled to enforce its rights thereunder to the extent set forth in the controlling lien documents and applicable non-bankruptcy law. In the event the Debtor successfully defeats Milestone's claim of a valid, enforceable lien, the lien will be removed and Milestone will no longer hold an interest in the Property.

3.4     **Class 4 – Other Secured Claims**

(a)     Class 4 shall consist of all other Allowed Claims of Secured Creditors. The only holder of a Class 4 claim is FNA.

(b)     Each Class 4 creditor, to the extent Class 4 votes in favor of the Plan, shall receive payment totaling seventy-five percent (75%) of the Allowed amount of its Claim, without interest, paid in equal quarterly installments over two (2) years. Each Class 4 creditor, to the extent Class 4 votes to reject the Plan, shall receive payment, in cash, totaling one hundred percent (100%) of the Allowed amount of its Claim, without interest, amortized over twenty (20) years with the final balloon payment due at the conclusion of ten (10) years after the first quarterly installment payment came due. Claim payment will be determined on a parcel-by-parcel basis. Payment begins at the end of the first quarter after the later to occur of (i) Claim allowance and (ii) the Effective Date. Upon payment in full of all Class 4 Plan payments, the liens associated with the paid parcel(s) will be deemed extinguished and released. In the discretion of the Debtor/Reorganized Debtor, parcels encumbered by valid liens held by the holder of Class 4 Allowed Claims may be abandoned, in which case no payment will be due as to the abandoned parcel(s) through two payments. The first payment shall be paid on the Effective Date in an amount of not less than fifty percent (50%) of the Allowed amount of its Claim, and the second payment consisting of the remaining unpaid Allowed amount of its Claim shall be paid within thirty (30) days after the Effective Date. Such payments shall be funded through post-confirmation financing committed to the Reorganized Debtor by a lender affiliated with the Debtor's sole member. To the extent that such lender provides funding used to satisfy any Class 4 Allowed Claim secured by a transferred tax lien, including but not limited to claims asserted by FNA, the lender shall be deemed fully subrogated—by operation of law, equity, and/or contract—to all rights, liens, and remedies of the paid Creditor, including any statutory tax lien rights under the Texas Tax Code. Such subrogation shall be automatic and effective upon payment, without further need for action or documentation, and all liens or security interests securing such Class 4 Allowed Claims shall continue in favor of the lender with the same priority and enforceability as the original Creditor.

(c)     All liens held by Class 4 creditors (FNA) shall be retained until the Allowed Secured Claim is paid in full, in accordance with 11 U.S.C. § 1129(b)(2)(A)(i)(I). The Plan shall not be construed to modify or impair FNA's lien rights under the Texas Property Code.

(d)    (c) Class 4 is Impaired.

(e)    (d) Other than as set forth in the Plan, the Debtor/Reorganized Debtor does not assume any obligation for payment of the underlying debt asserted by the holders of Class 4 claimsClaims.

3.5    **Class 5 - Unsecured Claims**

(a)    Class 5 shall consist of all Allowed Claims of Unsecured Creditors.

(b)    Class 5 is not Impaired.

(c)    There are no creditors holding Claims in Class 5.

3.6    **Class 6- Equity Interests**

(a)    Class 6 shall consist of the Debtor's Equity Interests.

(b) The holder of the Debtor's Equity Interests will contribute new value (the "New Value Contribution") estimated in the amount of $950,000. The New Value Contribution is calculated as the amount of unpaid Allowed Administrative Claims (estimated at $100,000); the Class 2 Claim (estimated at $310,000); the Class 4 Claim (estimated at $230,000); and such additional amounts as necessary to fund payments for future taxes and development of the Property during the Plan term (estimated at $310,000). Funding of the New Value Contribution will occur as required over the duration of the Plan term to make all Plan payments when due.

(b)    The holder of the Debtor's Equity Interests shall retain such Interests as of the Effective Date.

(c)    Class 6 is not Impaired.

3.7    **Reservation of Rights Regarding Claims**

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**ARTICLE IV**
**ACCEPTANCE OR REJECTION OF THE PLAN**

4.1    **Impaired Classes Entitled To Vote**

Subject to Sections 4.3 and 4.4 of the Plan, holders of Claims in each Impaired Class of Claims (Class 2, and Class 4) are entitled to vote as a class to accept or reject the Plan.

4.2     **Acceptance By An Impaired Class**

In accordance with section 1126(c) of the Bankruptcy Code, an Impaired Class accepts the Plan if, except as to any entity designated under section 1126(e) of the Bankruptcy Code, creditors holding at least two-thirds in amount and more than one-half in number of the voting Allowed Claims of such Class approve the Plan.

4.3     **Presumed Acceptances**

Classes 1 and, 3, 5, and 6 are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claim holders are conclusively presumed to accept the Plan, and the votes of such Claim holders will not be solicited.

4.4     **Confirmation Pursuant To Section 1129(b) of The Bankruptcy Code**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtor may request confirmation of the Plan, as it may be modified, under section 1129(b) of the Bankruptcy Code.

**ARTICLE V**
**PLAN IMPLEMENTATION**

5.1     **Funding For The Plan**

The Debtor will fund the Plan and expenses for developing and maintaining Estate Assets though post-confirmation financing committed by a lender affiliated with the Debtor's sole member. To the extent that such loan funds payments to satisfy Class 2 and/or Class 4 Allowed Claims (*e.g.*, tax claims of Wilson County and tax lien claims of FNA), the lender shall be deemed fully subrogated—by operation of law, equity, and/or contract—to all rights, liens, and remedies of the paid claimant, including any statutory tax lien rights under the Texas Tax Code. Such subrogation shall be automatic and effective upon payment, without need for further action or documentation, and any liens or security interests securing such Class 2 and/or Class 4 Allowed Claims shall continue in favor of the lender with the same priority and enforceability as the original creditor.

The Debtor will fund the Plan  though the New Value Contribution. The Debtor will also proceed with the Adversary Proceeding to determine the validity of Milestone lien, and pursue any other Claim Objections. At this time, other than the Adversary Proceeding and other Claim Objections, the Debtor does not believe the estate has any Chapter 5 causes of action or other claims. However, to the extent the Debtor/Reorganized Debtor identifies and pursues any Chapter 5 causes of action or other claims, the successful pursuit and recovery therefrom will provide additional funding.

5.2     **Effectuating Documents; Further Transactions**

Prior to the Effective Date, an estate representative shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or

documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 5.3    Post-Confirmation Management

On and after the Effective Date, the Reorganized Debtor shall continue to be managed by Romspen (Reomaster II) Holdings, Inc., its sole member and managing member.  No changes to the Debtor's management structure are proposed in connection with confirmation of the Plan.  The continued service of Romspen (Reomaster II) Holdings, Inc. is consistent with the best interests of creditors and public policy, as it has overseen the Debtor's operations during the Chapter11 Case and is familiar with the Debtor's assets and obligations.  No compensation is proposed to be paid to Romspen (Reomaster II) Holdings, Inc.

### 5.4    5.3 Closing of The Chapter 11 Case

The Court may enter an order closing the Chapter 11 case(s) on application at any time after the Effective Date on such notice as the Court may prescribe.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1    Executory Contracts and Unexpired Leases

All executory contracts and unexpired leases not assumed by the Debtor shall be deemed rejected as of the Effective Date.

### 6.2    Rejection Damages Bar Date

If the rejection of an executory contract or unexpired lease during the Chapter 11 Case (including any rejection of an executory contract or unexpired lease pursuant to Article VI of the Plan) results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or the Estate, unless a Proof of Claim is filed with the clerk of the Bankruptcy Court and served upon the Debtor's counsel as appropriate, by the earliest to occur of (i) 30 days following entry of the order authorizing the rejection of the executory contract or unexpired lease, and (ii) 45 days after the Effective Date.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    Distributions

All distributions under the Plan shall be made by the Debtor/Reorganized Debtor pursuant to the terms and conditions contained in the Plan.

### 7.2    Interest On Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable law, including section 1129(a) of the Bankruptcy Code, post-petition

interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Notwithstanding the foregoing, the Debtor stipulates that the Class 2 and Class 4 Secured Creditors—Wilson County and FNA, respectively—are oversecured within the meaning of section 506(b) of the Bankruptcy Code and are entitled to post-petition interest and other amounts provided by section 506(b) of the Bankruptcy Code as part of their Allowed Secured Claims to the extent permitted by applicable law.

### 7.3     **Means Of Cash Payment**

Any payment to be made by the Debtor or Reorganized Debtor pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Debtor, by draft, check, electronic funds transfer, or as otherwise required or provided in any relevant agreement or applicable law.

### 7.4     **Date of Distributions**

Distributions by the Debtor/Reorganized Debtor shall be made on the Effective Date or any other payment or deliver date set forth in this Plan.

### 7.5     **No Recourse**

Notwithstanding that the Allowed amount of any particular Claim may be reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or Allowed in an amount for which there is insufficient Cash in the relevant account to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no such holder shall have recourse to the Estate or any of its professionals, or the holder of any other Claim, or any of their respective property.  Nothing in the Plan, however, shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

### 7.6     **Transactions On Business Days**

If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day and shall be deemed to have been completed as of the required date.

### 7.7     **No Distribution In Excess Of Allowed Amount Of Claim**

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO**

8.1    **Prosecution Of Objections To Claims**

(a) Objections to Claims.

(a)    Objections to Claims. All objections to Claims (other than Administrative Expense Priority Claims) must be filed and served on the holders of such Claims by the Objection Deadline.

# ARTICLE IX
# CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1    **Conditions to Confirmation**

Confirmation of the Plan shall not occur unless and until the Confirmation Order is in form and substance reasonably acceptable to the Plan Proponent.  This condition is subject to waiver according to Section 9.3.

9.2    **Conditions to Effective Date**

The Effective Date of the Plan shall not occur, and the Plan shall not be binding upon any party, unless and until each of the following conditions has been satisfied or waived in accordance with this Section:

(i)    The Confirmation Order shall have been entered and become a Final Order.

(ii)    All actions, documents and agreements necessary to implement the Plan shall have been effected or executed or are ready to be executed.

(iii)    The Adversary Proceeding shall have been resolved by final judgment.

(iv)  The Effective Date shall have occurred not more than 90 days after the Confirmation Date.

9.3    **Waiver of Conditions**

The Debtor may waive any condition set forth in this Article at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action.

9.4    **Notice of Effective Date**

The Reorganized Debtor shall file and serve an appropriate notice of the Effective Date.

# ARTICLE X
# RETENTION OF JURISDICTION

10.1   **Provisions with Respect to Retention of Jurisdiction**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i)      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Expense Priority Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(ii)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code;

(iii)    Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(iv)     Effectuate performance of and payments under the provisions of the Plan;

(v)      Hear and determine any and all claims, adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

(vi)     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(vii)    Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(viii)   Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(ix)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(x)      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(xi)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(xii)    Enforce all orders, judgments, injunctions, releases, indemnifications and rulings entered in connection with the Chapter 11 Case;

(xiii)   Except as otherwise limited herein, recover all assets of any Debtor and property of the Consolidated Estate, wherever located;

(xiv)   Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xv)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(xvi)   Enter a final decree closing the Chapter 11 Case.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

## 11.1     Deadline For Filing Administrative Expense Priority Claims; Objections To Administrative Expense Priority Claims

~~All~~Unless otherwise provided herein or by order of the Court, all requests for payment of Administrative Expense Priority Claims incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on Debtor's counsel no later than 30 days after the Effective Date.  Objections to requests for payment of Administrative Expense Priority Claims must be filed and served on counsel for the Debtor by the later of:  (i) the Objection Deadline, and (ii) 30 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request was served.  In the event that a party in interest objects to an Administrative Expense Priority Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Priority Claim.

## 11.2     Payment of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation shall be paid on or before the Effective Date.

## 11.3     Modifications and Amendments

(i)      The Debtor reserve the right, and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order upon such notice as the Court may require.  After the entry of the Confirmation Order, the Debtor may amend or modify the Plan, in accordance with

16

section 1127 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of an Allowed Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

        (ii)     In the event that any Impaired Class shall not accept the Plan, at the written election of the Plan Proponent filed with the Bankruptcy Court with respect to any one or more of said nonaccepting Classes and any Classes junior to such nonaccepting Classes, the Plan shall be modified and amended automatically and without further notice to provide such treatment, as determined necessary by the Bankruptcy Court, sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Classes rejecting the Plan, and, in particular, the treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code with respect to (i) the rejecting Classes and (ii) any other Classes adversely affected by such modifications.  In particular, the treatment of any nonaccepting Classes or adversely affected Classes shall be modified and amended from that set forth in Article III, even if less favorable, to the minimum treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code.

11.4    **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.5    **Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

11.6    **Discharge of Claims**

Upon confirmation of the Plan the injunction of 11 U.S.C. §524, and the discharge provisions of 11 U.S.C. § 1141(d) shall take effect.  In addition, except as otherwise provided herein or in the Confirmation Order, entry of the Confirmation order acts as a discharge, as of the Effective Date, of any and all debts, liabilities or claims, contingent or non-contingent, liquidated

or unliquidated that arose on or before the Effective Date, including, but not limited to all interests of the Debtors, pursuant to section 1141 of the Bankruptcy Code.  The discharge of Debtor shall be effective as to each Claim, whether or not (i) a proof of claim with respect thereto was filed; (ii) the Claim is an Allowed Claim; or (iii) whether the holder of such Claim voted to accept or reject the Plan.

11.7    **Release Of Assets**

Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor and the Assets.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article X of the Plan, and the Reorganized Debtor shall perform its duties and obligations pursuant to the Plan.

11.8    **Intentionally Omitted**

11.9    **Revocation, Withdrawal, Or Non Consummation**

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date and to file subsequent bankruptcy plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity, (b) prejudice in any manner the rights of the Plan Proponent or any Entity in any further proceedings involving the Debtor, or (c) constitute an admission of any sort by the Debtor or any other Entity.

11.10    **Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Plan Proponent under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**RIC (LAVERNIA) LLC**
C/O Vince Berry
Romspen Investment Corporation, Suite 300
162 Cumberland Street
Toronto, Ontario M5R 3N5

-with a copy to-

**Bryan Cave Leighton Paisner LLP**
C/O Kyle Hirsch
Dallas Arts Tower
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Email:  kyle.hirsch@bclplaw.com

11.11  **Headings**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

[Remainder of Page Blank]

Dated: ~~January~~ July 18, 2025 **RIC (LAVERNIA), LLC**
By:  Romspen (Reomaster II) Holdings, Inc., its sole
member and managing member


*/s/ Vince Berry*
By:  Vince Berry
Its:  Manager



**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Kyle S. Hirsch*
Kyle S. Hirsch (Texas Bar No. 24117262)
Dallas Arts Tower
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone:  (214) 721-8000
Facsimile:  (214) 721-8100
Email:  kyle.hirsch@bclplaw.com

*Counsel for the Debtor and Debtor in Possession*

| Summary report:<br>Litera Compare for Word 11.11.0.158 Document comparison done on<br>7/18/2025 11:23:56 AM | |
|---|---|
| **Style name:** Firm | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://bclp.cloudimanage.com/usa/616351710/5 - 1.30.25 - SECOND AMENDMENT RIC (Lavernia) - Revised (1.13.25)  FINAL Draft of Plan.docx | |
| **Modified DMS:** iw://bclp.cloudimanage.com/usa/616711128/9 - RIC (Lavernia) - Plan - Third Amended.docx | |
| **Changes:** | |
| Add | 46 |
| Delete | 35 |
| Move From | 10 |
| Move To | 10 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 101 |