IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ' | CASE NO. 24-51195-MMP |
| | ' | |
| RIC (LAVERNIA) LLC, | ' | |
|     DEBTOR | ' | CHAPTER 11 |

**MILESTONE CAPITAL 1, LLC, AND OTISCO RDX, LLC'S
AMENDED EMERGENCY MOTION TO DISMISS BANKRUPTCY CASE**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Parties-in-Interest Milestone Capital CRE 1, LLC, ("Milestone") and Otisco RDX, LLC, ("Otisco") (collectively "Movants") ask the Court to dismiss Debtor RIC (LaVernia) LLC's ("Debtor") Chapter 11 Bankruptcy Petition ("Motion") based upon bad faith, cause, and bankruptcy fraud.

**I.    INTRODUCTION AND SUMMARY OF RELIEF REQUESTED**

1. Debtor's entire bankruptcy case is premised on fraud committed before and during its bankruptcy case, including making misrepresentations to this Court regarding its alleged assets and the circumstances that led to the filing.

2. "Congress designed Chapter 11 to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability." *In re Cedar Short Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000). Thus, the Bankruptcy Code mandates dismissal of a Chapter 11 case that is filed not for the purpose of reorganizing, but instead for nothing more than to obtain a litigation advantage and more importantly, is based on fraud. In fact, the Fifth Circuit has explained that a solvent company cannot manipulate the Bankruptcy Code for an illicit purpose and failure to file a petition in good faith requires dismissal of the proceeding.

1

3. As shown below, Debtor admits that it filed for bankruptcy solely to thwart a foreclosure sale and to obtain a more favorable forum against Movants. Further, Debtor's own admissions and the evidence submitted with this Motion shows that that Debtor committed fraud on the Court, which exemplifies their bad faith conduct and motives in pursuing this proceeding. Debtors actions warrant the Court granting Movants' Motion to dismiss the above-captioned bankruptcy case.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the Bankruptcy Case and Motion under 28 U.S.C. §§ 157 and 1334.

5. This Motion constitutes a core proceeding per 28 U.S.C. § 157(b)(2).

6. The legal predicates for relief are §§ 105, 1104 and 1112 of the Bankruptcy Code and Rules 1017, 2002, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

7. About 2019, 1001 WL, LLC ("1001 WL") owned one piece of real property located at 1001 West Loop South, Houston, Texas 77027 ("Office Building").[1] Midfirst Bank had a lien on the Office Building.

8. Midfirst Bank assigned its note and lien to Galleria Loop Noteholder who borrowed $18,500,000 million from TIG Romspen US Master Mortgage, LP ("Romspen") and executed a promissory note to that effect ("Note").[2]

9. 1001 WL is currently in bankruptcy as In re 1001 WL, LLC Styled Case No. 24-10119 ("1001 WL Bankruptcy").[3]

---

[1] See Schedule A/B in the 1001 WL, LLC Bankruptcy Case, 24-10119, attached as Exhibit "1."
[2] See Amended Proof of Claim in the 1001 WL, LLC Bankruptcy Case, 24-10119, attached as Exhibit "2."
[3] See Docket for In re 1001 WL, LLC, Styled Case No. 25-10119.

10. Otisco, owns and/or owned undeveloped property in La Vernia, Wilson County, Texas ("La Vernia Property").[4]

11. On or about January 2, 2023, Milestone acquired a first lien on the La Vernia Property.[5]

12. On August 18, 2023, Otisco gave a Deed of Trust to Romspen as additional collateral to secure the Original Note. Thus, thus Romspen's Original Note was allegedly cross-collateralized by 1001 WL's Office Building and Otisco's La Vernia Property.

13. On February 6, 2024, Romspen, as the purported lienholder, sought to foreclose on the La Vernia Property ("February 2024 Sale").[6] There is uncontroverted video evidence that the foreclosure sale of the La Vernia Property was struck sold for $550,000 to a third party bidder not to Romspen.

14. Moreover, after the February 2024 Sale was completed, a trustee's deed and bill of sale was issued ("Deed").[7] As shown in the Deed, the holder of the Original Note was listed as Debtor—not Romspen.[8] Further stated in the Deed, Debtor purchased the property—not Romspen.[9]

15. In addition, Romspen and Debtor's counsel testified in a deposition that the Deed of Trust was assigned to Debtor at about the time of the February 2024 Sale.[10]

16. But that is an impossibility because Debtor had not been formed on the date of the February 2024 Sale. So nothing could have been assigned before the sale occurred.[11]

17. Yet, Debtor listed the La Vernia Property as its only asset.

---

[4] *See* Notice of Removal filed in the related adversary proceeding 24-05043-MMP, attached hereto as Exhibit "3."
[5] *Id.*
[6] *See* Notice of Sale, attached hereto as Exhibit "4."
[7] *See* Bill of Sale, attached hereto as Exhibit "5."
[8] *Id*.
[9] *Id.*
[10] *See* Deposition of Wesley Roitman, attached hereto as Exhibit "6" and Deposition of Kyle Hirsch, attached hereto as Exhibit "7."
[11] *See* Certificate of Formation, attached hereto as Exhibit "8."

3

18. Debtor's $18,500,000 Original Note that was allegedly assigned to it prior to the February 2024 Sale was not included as an asset of the estate.[12]

19. Moreover, in the 1001 WL Bankruptcy, Romspen filed a proof of claim and subsequently amended the proof of claim asserting it (not Debtor) is the holder of the Original Note and thus owns the debt.[13] This evidence shows that Debtor committed fraud in this case and the February 2024 Sale is void.

20. After the February 2024 Sale, Milestone took action to foreclose on the La Vernia Property.[14]

21. On April 24, 2024, Debtor filed an Original Petition against Milestone to void Milestone's lien on the La Vernia Property in Wilson County Texas. That case is *RIC (LaVernia) LLC v. Milestone Capital CRE 1, LLC et al.*, Cause No. CVW-2404240 ("State Court Case").[15]

22. On June 27, 2024, Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11, United States Code beginning this bankruptcy case ("Bankruptcy Case").[16]

23. On June 28, 2024, Debtor removed the State Court Case to the Bankruptcy Court, which began the adversary proceeding of RIC (Lavernia) LLC against Milestone Capital CRE 1, LLC, John Daves, Lori Daves, Andres Cedillos ("Milestone Adversary") or ("Milestone") in Case No. 24-05043.[17]

24. On May 1, 2025, Otisco began an adversary proceeding against Debtor and Romspen. It is named Adversary Case No. 25-05040 ("Otisco Adversary").[18]

---

[12] *See* Schedule A/B in the 1001 WL, LLC Bankruptcy Case, 24-10119, attached as Exhibit "1."
[13] *See* Amended Proof of Claim in the 1001 WL, LLC Bankruptcy Case, 24-10119, attached as Exhibit "2."
[14] *See* Notice of Removal filed in the related adversary proceeding 24-05043-MMP, attached hereto as Exhibit "3."
[15] *Id.*
[16] *See* the docket for the above-captioned bankruptcy case.
[17] *See* Notice of Removal filed in the related adversary proceeding 24-05043-MMP, attached hereto as Exhibit "3"
[18] *See* docket for the adversary case no. 25-05040-MMP.

25. In the Bankruptcy Case, the only disputes to resolve are the disputes in the Milestone Adversary and Otisco Adversary, which arise from the Note and the February 2024 Sale. As shown on Debtor's schedules, Milestone is the only significant creditor.[19]

26. Debtor's schedules fail to show that Debtor was insolvent when the Bankruptcy Case was filed and had significant disputes to resolve through reorganization.[20]

27. Finally, and most importantly, Debtor's counsel testified that the Bankruptcy Case was filed for the sole purpose of stopping Milestone's foreclosure sale as shown in the below except from Mr. Hirsch's deposition:[21]

```
21     Q.   So RIC Lavernia, LLC, Kyle Hirsch, counsel
22  for RIC Lavernia, the debtor, files bankruptcy to
23  stop what you claim is an improper foreclosure.  Is
24  that what I just heard you say?
25     A.   Yes.
```

## IV. LEGAL ARGUMENT

### A. Applicable Legal Standards

28. The Bankruptcy Court mandates that, on request of a party interest, a court "shall convert" a Chapter 11 bankruptcy case to Chapter 7 "or *dismiss a case…*whichever is in the best interests of the creditors and the estate, *for cause.*" 11 U.S.C. § 1112(b)(1) and (4) (emphasis added). The Fifth Circuit has held that a bankruptcy filed without "good faith" should be dismissed under the "cause" standard in Section 1112(b) of the Bankruptcy Code. *See*, *e.g.*, *In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991); *In re Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992).

---

[19] See Schedules filed in the above-captioned bankruptcy case, attached hereto as Exhibit "9."
[20] *Id.*
[21] Deposition of Kyle Hirsch, attached as Exhibit "7."

29. "[G]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." *In re Cedar Short Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) (quoting *In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970)). The Fifth Circuit has made clear that this "good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *Elmwood Dev.*, 964 F.2d at 510 (5th Cir. 1992). Further, the good faith standard maintains the integrity of the bankruptcy process by providing equitable bankruptcy relief only to debtors with "clean hands.").

30. As the Fifth Circuit has noted, determining whether a petition was filed in good faith "depends largely upon the bankruptcy court's on-the spot evaluation of the debtor's financial condition, motives and the local financial realities." *See In re Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir. 1986). In *Little Creek*, the Court of Appeals set forth a series of factors which are indicative of bad faith. These factors include: (a) The debtor has only one asset, such as a tract of undeveloped or developed real property; (b) The secured creditor's lien encumbers the debtor's sole asset; (c) The debtor has no employees, other than the debtor's principals; (d) The debtor has little or no cash flow and no available resources to file a plan or make adequate protection payments; (e) There are few general unsecured claims whose claims are relatively small; and (f) The debtor's property had been posted for foreclosure based upon the debtor's arrearages on its debt. Id. at 1073. Seeking "protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id*

6

31. Further, the bankruptcy court, as "a court of equity, is enabled to frustrate fraud and work complete justice" with "broad statutory power" pursuant to 11 U.S.C. § 105(a) to dismiss a bankruptcy proceeding *sua sponte*. *See* 11 U.S.C. § 105(a); *Pipkins-Thomas v. United States*, 223 Fed. Appx. 310, 313 (5th Cir. 2007) (internal quotations omitted) (explaining that the Bankruptcy Code vests bankruptcy courts with latitude to carry out provisions of the Code and prevent abuses of process). Accordingly, the Fifth Circuit has also provided the following rule when determining whether a filing has been made in good faith:

> The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.

*Elmwood Dev.*, 964 F.2d at 510. This is a totality of the circumstances test. *See, e.g.*, *Cedar Shore*, 235 F.3d at 379.

32. After the movant satisfies the initial burden to make a prima facie showing of bad faith, the burden shifts to the bankruptcy petitioner to demonstrate good faith. *In re Sherwood Enters., Inc.*, 112 B.R. 165, 172 (Bankr. S.D. Tex. 1989) (describing the burden shifting analysis).

33. In addition to dismissing a bankruptcy pursuant to the *Little Creek* standard above, bad faith is also routinely found in this Circuit when the debtor files a petition merely to secure a litigation advantage, forum shop, and/or when there is no financial need for bankruptcy. *See Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) ("[B]ad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal."); *See* No. 12-39321-H3-11, 2013 Bankr. LEXIS 2499, at *4 (Bankr. S.D. Tex. Jun. 19, 2013) (the bankruptcy court dismissed a bad faith filing, where the debtor operated profitably pre- and post-petition because "[t]here was no financial need" to file the Chapter 11 bankruptcy other than to gain unfair advantage in litigation).

34. The Fifth Circuit's case *In In re Antelope Techs., Inc*, is an example of a case where the Fifth Circuit found dismissal was appropriate when a filing is guided by litigation tactics. 431 Fed. Appx. 272, 273 (5th Cir. 2011). In this case, the Fifth Circuit evaluated whether the bankruptcy court erred in denying a motion to dismiss a bad faith filing where a chapter 11 bankruptcy was initiated by the controlling shareholders of the debtor who had been sued. *Id.* The bankruptcy court had "found that the petition was filed to gain advantage in the shareholder litigation rather than for a reorganization" and held that "there was no clear error in the finding that the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action." *Id.* at 275.

  **B.**  **Because Each of the *Little Creek* Factors is Present in this Case, the Court Should Find Cause Exists to Dismiss the Bankruptcy Case.**

35. Here, Each of the *Little Creek* factors is present in this case, which supports a finding of bad faith filing. The Property is the Debtor's sole asset. Milestone's deed of trust encumbers the Property. The Debtor has no employees. The Debtor has no cash flow. The Debtor operates no business. As stated above, Milestone is Debtor's only significant creditor. Based upon these undisputed facts, the Court should find that the Debtor's Chapter 11 petition was filed in bad faith pursuant to *Little Creek*.

  **C.**  **The Totality of the Circumstances Shows that Debtor's Bankruptcy Case was Filed in Bad Faith and Must be Dismissed.**

36. As shown in detail above, the Bankruptcy Case was only filed to stop a foreclosure to gain an improper litigation advantage in the Bankruptcy Court and to forum shop. The simple reality is that the State Court Case was pending before the Debtor's bankruptcy filing and was being resolved in the Texas State Court. Despite this, Debtor engaged in forum shopping by filing the Bankruptcy Case and removing the State Court Case

to this Court. Debtor was not insolvent at the time the Bankruptcy Case was filed and its only disputes were with Milestone and Otisco. This unequivocally shows that the Debtor's filing was done for a litigation advantage and forum shopping, such that the filing was in bad faith and dismissal is warranted.

### D. Debtor's Fraud on the Court Further Justifies Dismissal of the Bankruptcy Case.

37. Finally, Debtor has repeatedly committed fraud not only in its February 2024 Sale but in filings with this Court and the Court in the 1001 WL Bankruptcy. As the evidence shows, Debtor was not formed at the time of the February 2024 Sale nor did it hold the debt, and thus Debtor could not have credit bid or purchased the La Vernia Property. Debtor has failed to disclose its purported asset, the Note, which it claims to have been the holder of during the February 2024 Sale (or alternatively disclose that the Note was transferred to Romspen). At the same time, Romspen asserts it is the holder of the Note in the 1001 WL Bankruptcy Case.

38. Therefore, Debtor has committed fraud on the Court and filed dishonest pleadings. This fraud coupled with the fact that Debtor improperly filed bankruptcy to game the system support a finding that the Bankruptcy Case was filed in bad faith and must be dismissed.

## V. CONCLUSION

WHEREFORE, Movants request that the Court grant the Motion and for any further relief as may be just and proper.

August 26, 2025

Respectfully submitted,

*/s/ Justin Rayome*
JUSTIN RAYOME
SBN: 24130709
1001 West Loop South, Suite 700
Houston, Texas 77027

9

214-934-9345
justin.rayome.law@gmail.com

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

Counsel Steve Cennamo contacted Mr. Hirsch, counsel for Plaintiff regarding the Motion. Mr. Hirsch is opposed to the relief sought.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this motion and proposed order were served by ECF, US Mail Postage Prepaid, Hand Delivery, or Email on August 5, 2025, to the following:

*VIA ECF*
Kyle S. Hirsch
**BRYAN CAVE LEIGHTON PAISNER LLP**
Dallas Arts Tower
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone: (214) 721-8000
Facsimile: (214) 721-8100

*VIA EMAIL* brigid.ndege@bclplaw.com
Brigid K. Ndege (*Pro Hac Vice*)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
Telephone: 312.602.5104

/s/ Steven G. Cennamo
Steven G. Cennamo