1

1        IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE WESTERN DISTRICT OF TEXAS

3                  AUSTIN DIVISION

4

5   In re: 1001 WL LLC,

6          Debtor.

7                                CASE NO. 24-10119

8                                    CHAPTER 11

9

10

11

12

13

14

15          REMOTE STREAMING DEPOSITION OF

16

17              WESLEY NOAH ROITMAN

18

19                            TAKEN ON

20              THURSDAY, JULY 31, 2025

21                          11:05 A.M.

22

EXHIBIT 12
Page 1 of 110

23                              141 HEATH STREET E

24                    TORONTO, ON M4T 1S6, CANADA

25


                                              2


1                  REMOTE APPEARANCES

2

3  Appearing on Behalf of the Creditor,

4  Jetall Capital:

5  ALI CHOUDHRI

6  Jetall Capital

7  1001 West Loop South, Suite 700

8  Houston, Texas  77027

9  (281) 630-6627

10  ali@jetallcapital.com

11

12  Appearing on Behalf of the Creditors,

13  TIG ROMSPEN US MASTER MORTGAGE LP:

14  KYLE S. HIRSCH, ESQUIRE

15  BRIGID NDEGE, ESQUIRE

16  Bryan Cave Leighton Paisner

17  Two North Central Avenue, Suite 2100

EXHIBIT 12
Page 2 of 110

18    Phoenix, Arizona   85004

19    (602) 364-7000

20    kyle.hirsch@bclplaw.com

21    brigid.ndege@bclplaw.com

22

23

24

25

3

1                          EXAMINATION INDEX

2                                                        PAGE

3

4    EXAMINATION BY MR. CHOUDHRI                          7

5

6

7

8

9

10

11

**EXHIBIT 12**
**Page 3 of 110**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                    EXHIBIT INDEX

2  EXHIBIT                            PAGE

3

4   1   Notice                       10

5   2   Documents                    16

6   3   Copy of USB                  62

**EXHIBIT 12**
**Page 4 of 110**

7    4    Copy of USB                              63

8    5    Copy of USB                              63

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

EXHIBIT 12
Page 5 of 110

1          REMOTE STREAMING DEPOSITION OF

2              WESLEY NOAH ROITMAN

3                  TAKEN ON

4          THURSDAY, JULY 31, 2025

5                 12:03 P.M.

6

7          THE REPORTER:  We're on the record, 12:03

8    p.m. Mr. Roitman, will you please raise your right

9    hand.  Do you affirm, under penalty of perjury, that

10   the testimony you are about to give will be the

11   truth, the whole truth, and nothing but the truth?

12          THE DEPONENT:  I do.

13          THE REPORTER:  Thank you.  Will each

14   attorney please state their name and whom they

15   represent.

16          MR. HIRSCH:  This is Kyle Hirsch.  I

17   represent TIG Romspen US Master Mortgage LP.  My

18   colleague, Brigid Ngege, is also here, but she is

19   observing.  I do want to make a couple prepatory

20   comments after Mr. Choudhri announces himself.

21          MR. CHOUDHRI:  Ali Choudhri, here on

22   behalf of Ali Choudhri.

23          MR. HIRSCH:  This is Kyle Hirsch.  Per the

24   parties' agreement, the scope of this deposition is

25   limited to the pending application to approve a

EXHIBIT 12
Page 6 of 110

6

1   compromise between the Chapter 11 Trustee and TIG

2   Romspen, which is scheduled to be heard on August

3   4th, 2025.  TIG Romspen reserves the right, and

4   reserves the right to instruct the witness not to

5   answer, questions that are outside of that agreed

6   scope.

7           In addition, this deposition is taken

8   pursuant to Federal Rule of Civil Procedure 30,

9   which is applicable to this contested matter

10  pursuant to Federal Rules of Bankruptcy Procedure

11  9014(t)(1) and 7030.  Federal Rule of Civil

12  Procedure 30(b) requires, "reasonable notice,

13  written" -- sorry -- "reasonable written notice to

14  every other party", and specifies what is written in

15  the notice.  The party taking this deposition has

16  not provided any notice to parties in this

17  bankruptcy case, other than the witness and his

18  counsel.  Therefore, TIG Romspen objects to this

19  deposition as to the lack of notice and reserves all

20  other objections relating thereto

EXHIBIT 12
Page 7 of 110

21          MR. CHOUDHRI:  Okay.

22  WESLEY NOAH ROITMAN, having been duly affirmed to

23  tell the truth, was examined and testified as

24  follows:

25  EXAMINATION

7

1  BY MR. CHOUDHRI:

2      Q.   Mr. Roitman, could you -- are you planning

3  on being present on the August 4th hearing in front

4  of Judge Robinson?

5      A.   I wasn't planning to be there.

6      Q.   Are you going to be there?

7      A.   I don't expect to be there.

8      Q.   Mr. Roitman, can you give a little

9  background about yourself and your position in this

10  case, which party you're with and what relationship

11  you have with that party.

12      A.   Well, I represent -- go ahead, Kyle.

13          MR. HIRSCH:  Objection as to form.

14          You can answer if you understand the

EXHIBIT 12
Page 8 of 110

15  question.

16      A.   Yeah, it's not 100 percent clear, but I

17  represent the lender in this case.

18          MR. CHOUDHRI:  Can you all hear me okay?

19          THE REPORTER:  Now we can.

20          MR. HIRSCH:  Yes.

21          MR. CHOUDHRI:  And I want to mark as

22  Exhibit 1 --

23  BY MR. CHOUDHRI:

24      Q.   Mr. Wesley Roitman, what relation -- so

25  you're here on behalf of TIG Romspen.  Is that

                                    8

1  correct?

2          MR. HIRSCH:  Objection to form.

3  BY MR. CHOUDHRI:

4      Q.   You can answer.

5      A.   Well, you asked me to attend this

6  deposition, so I'm here.

7      Q.   And what is your relation to TIG Romspen?

8      A.   I'm not exactly sure.  I'd have to ask

9  Joel how they've organized it.  But I have some role

**EXHIBIT 12**
**Page 9 of 110**

10   in the general partner, I believe, of that limited

11   partnership.

12       Q.   -- cuts off and is back in --

13            THE REPORTER:  I see your lips moving, but

14   -- oh, now we hear you.

15            MR. CHOUDHRI:  Okay.  Can you hear me now?

16   Okay. Good.

17   BY MR. CHOUDHRI:

18       Q.   I'm going to share -- so Mr. Roitman, Mr.

19   Kyle Hirsch is your attorney.  Is that correct?

20       A.   Yes.

21       Q.   And is he here representing you

22   individually today?

23       A.   Not that I'm aware of.

24       Q.   So who is Mr. Hirsch representing?

25       A.   He's representing the lender in the case.

9

1        Q.   And what is the name of the lender?

2        A.   Kyle, can you answer?  I think it's TIG

3   Romspen Master -- a number of words.

EXHIBIT 12
Page 10 of 110

4          MR. CHOUDHRI:  I'm going to share my

5     screen here. Madam Court Reporter, did you receive

6     this document -- can you see my screen here?

7          THE REPORTER:  I did receive an email, and

8     I can see your screen.

9     BY MR. CHOUDHRI:

10         Q.   Okay.  Mr. Hirsch -- I'm sorry. Mr.

11    Roitman, Mr. Hirsch has -- any actions he takes in

12    this case -- and again, let's clarify.  The case

13    we're here on is 1001 WL LLC, the debtor, case

14    number 24-10119.  Do you agree with that?

15         MR. HIRSCH:  Objection to form.

16    BY MR. CHOUDHRI:

17         Q.   Mr. Roitman, you can answer.

18         A.   I don't know.  I'm not a lawyer.  I have

19    lawyers who deal with that stuff.

20         Q.   So do you know what we're here about

21    today, what case we're here about today?

22         A.   We're here about the West Loop case.

23    We're here about the property on West Loop, yes.

24         Q.   What is the -- can you see the screen here

25    on the shared screen?  Can you read into the record

EXHIBIT 12
Page 11 of 110

10

1  what is the case number that's on the caption?

2       A.   It says case number 24-10119.

3       Q.   And what is the name of the debtor?

4       A.   WL -- 1001 WL LLC.

5       Q.   And you understand that we're here

6  relating to this case.  Correct?

7       A.   Okay.  If you tell me so, sure.

8       Q.   Well, do you not know what case we're here

9  about?

10       A.   It's the bankruptcy case over West Loop,

11  yes.

12            MR. CHOUDHRI:  And I want to admit -- I'd

13  offer this as Exhibit 1.  It's document 845 in the

14  24-10119 case, which is TIG Romspen --

15            (WHEREUPON, Exhibit 1 was marked for

16  identification.)

17  BY MR. CHOUDHRI:

18       Q.   Mr. Roitman, would you read what is the

19  heading in the document number, what's on the screen

20  that's now Exhibit 1 of the deposition?

21       A.   Yeah, TIG Romspen --

22            MR. HIRSCH:  I'm going to make a brief

23  objection that Mr. Choudhri commented that certain

EXHIBIT 12
Page 12 of 110

24  documents were emailed in advance to the court

25  reporter.  I just want to make the record clear that

11

1  no documents were forwarded to me in advance of this

2  deposition.

3      You can answer the question, Mr. Roitman,

4  if you understand it.

5      THE DEPONENT:  He just asked me to read

6  it, from what I understand.

7      A.  TIG Romspen US Master Mortgage LP.  That's

8  the exhibit and witness list.

9  BY MR. CHOUDHRI:

10     Q.  So am I reading this correct? TIG Romspen

11 US Mortgage -- I'm sorry.  TIG Romspen US Master

12 Mortgage LP's Exhibit and Witness List for August 4,

13 2025 Hearing.  Did I read that correctly?

14     A.  Yes.

15     Q.  And could you read the ECF numbers that

16 are stated on this witness and exhibit list?

17     A.  ECF 33, ECF 234, ECF 699, 717, 837, 838,

**EXHIBIT 12**
**Page 13 of 110**

18  and 839.

19      Q.   Anyone else?

20      A.   On the next page?

21      Q.   Yes.

22      A.   840, and 568.

23      Q.   And what is the next item that's on the

24  list?

25      A.   Adversary Proceeding 24-01062, ECF 1.

                                              12

1      Q.   And it says "Complaint" after that?

2      A.   Yeah.

3      Q.   Thank you.  And I'm going to scroll down.

4  And this is document -- on top it says, Document

5  845.  Right?

6      A.   I don't know what you're referring to.

7      Q.   You understand this is Document 845 in

8  case number 24- --

9      A.   This is the first time I've seen this

10  document.  I don't know anything about this

11  document.

12      Q.   Mr. Roitman, is Mr. Hirsch authorized, on

**EXHIBIT 12**
**Page 14 of 110**

13    behalf of TIG US Master Mortgage LP, to make filings

14    in this bankruptcy?

15        A.    Yes.  He's our lawyer.  That's what

16    lawyers do.

17        Q.    And Mr. Roitman -- so this is -- I'll

18    represent to you this is a witness and exhibit list

19    filed by Mr. Hirsch, and it says, Attorneys for TIG

20    Romspen Mastro US Master Mortgage LP.  Do you see

21    that?

22        A.    Yes.

23        Q.    What is the date?

24        A.    The 30th of July.

25        Q.    And would you read the names on the

                                                13

1    witness list? How many witnesses do you see on this

2    witness list?

3        A.    14 are designated.

4        Q.    So 14 witnesses are designated on behalf

5    of Romspen.  Is that correct?

6        A.    That's what it says.

**EXHIBIT 12**
**Page 15 of 110**

7      Q.   So let's go down this witness and exhibit

8  list.

9          And if you can explain to me what -- why

10  -- or what is the testimony -- why is Kyle Hirsch on

11  this witness list?

12          MR. HIRSCH:  Objection, form.  The witness

13  already explained that he has not seen this document

14  before.

15  BY MR. CHOUDHRI:

16      Q.   Mr. Roitman, do you have any knowledge of

17  what is being heard on August the 4th in front of

18  Judge Robinson?

19      A.   My understanding is it's the settlement

20  with the Chapter 11 Trustee.

21      Q.   And what are these witnesses -- what is

22  the relevance of these witnesses for the hearing on

23  Monday?

24          MR. HIRSCH:  Objection, form, calls for

25  legal conclusion.  To the extent the witness has

14

1  knowledge, it's subject to attorney/client

EXHIBIT 12
Page 16 of 110

2    protection privilege, as well as work product.

3         To the extent you can answer the question,

4    Mr. Roitman, please proceed.

5    A.   I don't know.  Without divulging -- it's

6    not something --

7         THE REPORTER:  One at a time.  What was

8    the end of your objection, please, Mr. Hirsch?

9         MR. HIRSCH:  I said he can an answer to

10   the extent that he understands without divulging

11   attorney/client or otherwise protected information.

12        THE REPORTER:  And what did you say, Mr.

13   Roitman?

14   A.   I said I don't know why these names are on

15   the list.  That's -- I'm not a lawyer.  My lawyers

16   take care of that.  Our legal department takes care

17   of that, not me.

18   BY MR. CHOUDHRI:

19   Q.   So you have no knowledge why these

20   witnesses are on the list, nor can you tell me why

21   these witnesses are on the list and what testimony

22   they will provide at the hearing.  Is that correct?

23   A.   Yes.

24   Q.   And so if I went down this list of

25   witnesses, you could not tell me anything or any

EXHIBIT 12
Page 17 of 110

15

1  information about any of these witness and what they

2  would testify on Monday.  Is that correct?

3          MR. HIRSCH:  Objection to form.

4      A.   How can I know what they will testify?

5  They're other people.

6      Q.   But you don't have any knowledge about

7  these witnesses and what their role or what their

8  relevance --

9          MR. HIRSCH:  Objection to form.

10      A.   A lot of these names are your lawyers, my

11  lawyers, the Trustee, other people.  So no, I don't

12  -- I can't say I know what they're going to say or

13  why they're on the list.

14  BY MR. CHOUDHRI:

15      Q.   Can you explain to me what is -- what is

16  it that Romspen is seeking to prove on Monday? What

17  is the relief Romspen is seeking from Judge Robinson

18  on the August 4th hearing?

19          MR. HIRSCH:  Objection to form.

20      A.   We're asking him to approve a settlement

**EXHIBIT 12**
**Page 18 of 110**

21  with the Trustee so the Trustee can sell the

22  property.

23  BY MR. CHOUDHRI:

24      Q.   Hold on.

25           Can you explain to me what specifically is

16

1  it that Romspen seeks to get approved?

2      A.   I just answered that.

3           MR. HIRSCH:  Objection to form.

4  BY MR. CHOUDHRI:

5      Q.   And you can answer that, Mr. Roitman.

6      A.   I said I just answered that.

7      Q.   And is -- are --

8           MR. CHOUDHRI:  And I would move to admit

9  Exhibit 2.

10           THE REPORTER:  Exhibit 2.

11           (WHEREUPON, Exhibit 2 was marked for

12  identification.)

13           MR. CHOUDHRI:  Which is 497 pages, which

14  is the exhibit -- the exhibits that go with the

15  witness and exhibit list.  Do you have any objection

EXHIBIT 12
Page 19 of 110

16  to that, Mr. Hirsch?  And again, I'm going off what

17  you filed, Mr. Hirsch, or what was emailed to me.

18  Can you --

19          MR. HIRSCH:  I mean, this is your

20  deposition.  If you want to admit exhibits, you can.

21  My objection previously was to a document that you

22  had not -- that you had sent to the court reporter

23  that you had not sent to me. I will make it clear

24  for the record that the exhibit list that was

25  delivered to the parties and to chambers relates to

17

1  all the matters that are set for hearing on August

2  4th, not just the 9019 motion.  And this deposition

3  scope is limited to the 9019 motion.

4  BY MR. CHOUDHRI:

5      Q.   Mr. Roitman, are you aware if the stay was

6  lifted to allow Romspen to foreclose --

7          THE REPORTER:  Please repeat.  It cut out.

8  BY MR. CHOUDHRI:

9      Q.   Mr. Roitman, do you have any knowledge

**EXHIBIT 12**
**Page 20 of 110**

10    that Judge Robinson lifted the stay, and Romspen was

11    allowed to foreclose, pursuant to applicable law, on

12    the 1001 property in late 2024?

13          A.    I believe that's correct.

14          Q.    And who communicates with the substitute

15    trustee -- walk me through the process.  How does

16    Romspen engage substitute trustees to sell property?

17                MR. HIRSCH:  I object to the question,

18    Ali.  None of this has to do with the scope of the

19    9019 motion.

20    BY MR. CHOUDHRI:

21          Q.    Mr. Roitman, is the premise of the 9019 --

22    so let me ask you this, Mr. Roitman.  Did Romspen

23    conduct a foreclosure sale on October 1, 2024, of

24    the subject property, 1001 WL?

25                MR. HIRSCH:  Objection.  How does this

                                                      18

1    have to do with the scope of the 9019, Mr. Choudhri?

2                MR. CHOUDHRI:  Mr. Hirsch, you can -- I'm

3    not here to answer your questions.  I'm here to ask

4    questions today. You can make your objections.  Your

**EXHIBIT 12**
**Page 21 of 110**

5  9019 is premised -- you've reviewed the objections

6  on the 9019, and your 9019 is premised on the

7  property being sold.  And if the property was

8  foreclosed, that goes to the heart and is a

9  component of the 9019 that you're here seeking

10  approval on.

11      MR. HIRSCH:  I disagree with your

12  characterization of the papers.  I find this line of

13  questioning outside the scope of the agreed topics,

14  and I'm instructing the witness not to answer

15  questions regarding a October 2024 foreclosure sale

16  process.  That's outside the scope.

17  BY MR. CHOUDHRI:

18      Q.  So Mr. Roitman, what is TIG Romspen trying

19  to compromise with the trustee?

20      A.  Well, there were a number of things in the

21  agreement.  We were going to end the dispute over

22  the claims, end the disputes over the validity.  We

23  were going to provide some kind of funding for --

24  not some kind -- for expenses and such, and arrange

25  for the Trustee to have the property sold through a

**EXHIBIT 12**
**Page 22 of 110**

19

1   brokerage.

2        Q.   Who owns the property, 1001 West Loop?

3        A.   I imagine it's 1001 WL LLC at this time.

4   You transferred it to that on the eve of the

5   bankruptcy.

6             MR. CHOUDHRI:  Objection, non-responsive.

7   BY MR. CHOUDHRI:

8        Q.   So Mr. Roitman, how much is -- are the

9   unsecured creditors to receive if your 9019 is

10  approved?

11       A.   I can't remember exactly.  I'm sure it's,

12  you know --

13            MR. HIRSCH:  Hang on real quick.

14  Objection to form.

15            You can answer if you understand.

16       A.   I don't remember exactly.  It's got to be

17  whatever's spelled out in the agreement.

18            MR. CHOUDHRI:  So just so the record is

19  clear, Mr. Hirsch, you are instructing -- hang on.

20  BY MR. CHOUDHRI:

21       Q.   Mr. Roitman, are you going to take the

22  instruction of your counsel and not answer the

23  question about the October 2024 foreclosure sale?

**EXHIBIT 12**
**Page 23 of 110**

24    A.   Yes.  I follow my legal advice.

25    Q.   Hold on.



                                        20

1         MR. CHOUDHRI:  Sorry, guys.  I'm having

2    some technological issues here.

3    BY MR. CHOUDHRI:

4         Q.   So let me understand it.  So Romspen is

5    settling the claims with the debtor as part of this

6    9019.  Is that correct?

7         A.   I don't think that's technically correct.

8         Q.   Well, what is your understanding?

9         A.   It's typical in bankruptcies, when you

10   have a sale, there's some carve-out for the estate

11   and its creditors.  That's what this is about.

12        Q.   So what is Romspen providing to the estate

13   -- let me ask this, is Romspen getting a release

14   from the estate?

15        A.   I'm not sure.  You'd have to look at the

16   agreement.

17        Q.   Do you know what consideration Romspen is

18   providing the estate for the 9019?

**EXHIBIT 12**
**Page 24 of 110**

19      A.   It's the carve-out --

20           MR. HIRSCH:  Objection to form.

21           THE REPORTER:  What was the end of your

22 sentence, Mr. Roitman?

23      A.   It's the carve-out, generally, and that's

24 what's done in these things.

25 BY MR. CHOUDHRI:

                                             21

1       Q.   And Romspen filed a proof of claim under

2 penalties of perjury in this case.  Correct?

3       A.   I believe so.

4       Q.   And is that proof of claim accurate and

5 correct?

6       A.   As far as I know, yeah.

7       Q.   Did you authorize for the proof of claim

8 to be filed in this case?

9       A.   I'm not sure if it was me or one of my

10 partners, but one of us would have.

11      Q.   And so the filings made in this case by

12 your attorney, Kyle Hirsch, are authorized by TIG

**EXHIBIT 12**
**Page 25 of 110**

13   Romspen.  Is that correct?

14       A.   Yes.

15       Q.   And you stand behind those filings.  Is

16   that correct?

17       A.   Yes.

18       Q.   And --

19           MR. CHOUDHRI:  Hey Kyle, on your exhibits,

20   do you have the 9019 on there?

21           MR. HIRSCH:  I don't know.  I don't have

22   the exhibits in front of me.  I'm paying attention

23   to the deposition.  But you can probably look at

24   Exhibit 1 to this deposition, which is the witness

25   and exhibit list.

                                                    22

1            MR. CHOUDHRI:  Thank you.

2    BY MR. CHOUDHRI:

3        Q.   Romspen provided an offset to the debt

4    based on a foreclosure sale that happened on the La

5    Vernia property.  Is that correct?

6        A.   Yes.

7            MR. HIRSCH:  Objection to form.

**EXHIBIT 12**
**Page 26 of 110**

8   BY MR. CHOUDHRI:

9       Q.   And that is reflected in your proof of

10  claim.  Is that correct?

11      A.   I'm not sure.  I believe so.

12           MR. CHOUDHRI:  I'm going to share my

13  screen.  And Kyle, I have emailed you and the court

14  reporter your 497 pages of exhibits.  Did you

15  receive that email?

16           MR. HIRSCH:  I received an email from you

17  at 12:27 p.m., and another email from you at 12:29

18  p.m.  It looks to be the exhibit compilation that I

19  had circulated to the parties.

20  BY MR. CHOUDHRI:

21      Q.   And Mr. Roitman, can you see the screen

22  here?  And can you read what it says on top here?

23      A.   Exhibit 1.

24      Q.   And how many pages do you see that this

25  compilation is?

                                              23

1       A.   From the little thing at the bottom, it

**EXHIBIT 12**
**Page 27 of 110**

2    says page 1/497.

3        Q.    So would that mean that this is 497 pages?

4        A.    Probably.  I don't know what software

5    you're using.

6        Q.    I'm going to scroll down here.  And do you

7    see Exhibit -- the first -- this is -- who is Blake

8    Cassidy?

9        A.    He's partner of mine.

10       Q.    And you authorized the filing of this

11   document, which is proof of claim 1-1?

12       A.    It looks like Blake did.  So Blake

13   authorized it. He has the authority to do that.

14       Q.    And you stand by the authority of Blake

15   Cassidy?

16       A.    Yeah.

17       Q.    And I'm going to read to you here -- so

18   tell me a little bit about TIG Romspen US Mortgage.

19   It is a Cayman Islands Limited Partnership.  Is that

20   correct?

21       A.    Yes.

22       Q.    And what is the address of TIG Romspen US

23   Master Mortgage LP?

24            MR. HIRSCH:  Object.  Object.  This is

25   outside the scope.  This has nothing to do with the

**EXHIBIT 12**
**Page 28 of 110**

24

1  9019 motion.

2  BY MR. CHOUDHRI:

3      Q.  Are you going to answer that, Mr. Roitman?

4      A.  No.

5      Q.  You're refusing the question on the

6  address for TIG Romspen US Master Mortgage LP?

7      A.  I hear my lawyer objecting to it, and it's

8  outside the scope.  So I'm not going to answer.

9      Q.  So you're refusing to answer my question?

10     A.  Yes.

11     Q.  And so what was the offset off the amended

12 -- or off the proof of claim for the La Vernia

13 property sale?

14     A.  I imagine it's whatever the La Vernia

15 trustee told us was the sale price of that.

16     Q.  And who would that be?

17     A.  I'm not sure what the La Vernia trustee

18 was.

19     Q.  And so you understand that you're -- the

20 entity in this case is TIG Romspen US Master

21 Mortgage LP.  Is that correct?

**EXHIBIT 12**
**Page 29 of 110**

22          THE REPORTER:  What was the last few

23  words?

24  BY MR. CHOUDHRI:

25          Q.   You understand that the creditor here in

25

1  this case is TIG Romspen US Master Mortgage LP?

2          A.   Yes.

3          Q.   And could you read -- let me go down to

4  it.  Can you explain to me the relationship of

5  Otisco and the La Vernia deed of trust that's

6  spelled out on the amended proof of claim?

7          A.   I think Otisco was the owner of the

8  collateral property.

9          Q.   And what is the collateral property?

10          A.   It's the undeveloped real estate near San

11  Antonio.

12          Q.   And so what did TIG Romspen get in

13  relation to its debt that it purports it acquired

14  from foreclosure sale? Can you explain how that

15  transaction connects with the debtor?

**EXHIBIT 12**
**Page 30 of 110**

16          MR. HIRSCH:  Objection to form.

17     A.   Yeah.  It was a term to one of the loan

18  amendments or forebearance agreements, one of the

19  many loan amendments and forebearance agreements.I

20  granted you, Ali.

21          MR. CHOUDHRI:  Objection, non-responsive.

22  Court reporter, can you read the question again,

23  please?

24          THE REPORTER:  Please stand by.

25          (WHEREUPON, the requested question was

                                      26

1  played.)

2          MR. HIRSCH:  Object to the question as to

3  form.

4  BY MR. CHOUDHRI:

5     Q.   You can answer.

6          MR. HIRSCH:  You can answer if you

7  understand it, Wes.

8     A.   I don't understand what you're asking.

9  You know this already.  You know it was -- this was

10  part of one of the forebearance agreements.  You

EXHIBIT 12
Page 31 of 110

11   granted this as additional collateral.

12   BY MR. CHOUDHRI:

13      Q.   So it's your contention that the La Vernia

14   property was foreclosed by TIG Romspen.  Is that

15   correct?

16           MR. HIRSCH:  Objection to form.

17      A.   That's correct.

18   BY MR. CHOUDHRI:

19      Q.   What was your answer?

20      A.   It was foreclosed by one of our

21   affiliates.

22      Q.   Which affiliate?

23      A.   RIC La Vernia, it says here.

24      Q.   And so who foreclosed the property?  Which

25   entity foreclosed the property?

27

1            MR. HIRSCH:  Objection, form, calls for a

2    legal conclusion.

3    BY MR. CHOUDHRI:

4       Q.   You can answer, Mr. Roitman.

**EXHIBIT 12**
**Page 32 of 110**

5      A.   Yeah, again, you're asking legal

6   questions.  You know, I don't know.  I know that

7   there was a foreclosure, and RIC La Vernia was the

8   bidder, the winning bidder, who is one of our

9   affiliates.  It says here, For a successful bid in

10  the amount of $100,000.  That's what the Trustee

11  told us, and that's what we credit bid.

12  BY MR. CHOUDHRI:

13      Q.   And what is RIC La Vernia LLC?  Who owns

14  RIC La Vernia LLC?

15      A.   I'm not sure.  It's someone in our

16  corporate structure.  We have a large corporate

17  structure.

18      Q.   Do you have any ownership in RIC La Vernia

19  LLC, indirectly or directly?

20          MR. HIRSCH:  Objection to form, and this

21  is going outside the scope of the 9019.

22          You can answer if you can, Mr. Roitman.

23          But Mr. Choudhri, I'm just letting you

24  know that these lines of questions are getting close

25  to the edge of the scope, outside.

**EXHIBIT 12**
**Page 33 of 110**

1      A.   I own some shares in the fund, but I would

2  otherwise have no interest in this personally.

3  BY MR. CHOUDHRI:

4      Q.   What fund?  You own shares in what fund?

5      A.   Feeder funds that flow into TIG Romspen US

6  Master Mortgage LP.

7      Q.   And so what is your connection to RIC La

8  Vernia, LLC?

9      A.   Well, RIC La Vernia also ultimately flows

10  into -- it's the same fund.  They're all part of the

11  same fund. They all flow up to the same fund.

12      Q.   So how did RIC La Vernia -- so who owns --

13  or what entity -- who was the ultimate owner of RIC

14  La Vernia LLC?

15          MR. HIRSCH:  Object.  Instruct the witness

16  not to answer.  This is outside the scope of the

17  9019 motion, Mr. Choudhri.  If you can explain how

18  this is relevant to the 9019 motion, I'll listen and

19  maybe I'll instruct the witness otherwise.  But at

20  this point, there is a 9019 motion that was

21  submitted by the Chapter 11 Trustee.  This question

22  relating to other litigation involving other parties

23  is outside the scope of the 9019 application

24  submitted by the Chapter 11 Trustee.

EXHIBIT 12
Page 34 of 110

25          Can you explain how this is relevant to

29

1    the 9019 motion, Mr. Choudhri?

2          MR. CHOUDHRI:  Mr. Hirsch, this is your

3    exhibit that you've attached to approve the 9019.

4    This is an amended proof of claim that calculates

5    the amount of the debt that your client is

6    contending they're owed.  I'm entitled to get into

7    this and ask questions about the calculations and

8    how this debt -- and what the amount of the debt is

9    and what the offsets are.

10          MR. HIRSCH:  Mr. Choudhri, you don't know

11   -- you don't know why this exhibit is included in

12   our exhibit list. There are several matters that are

13   set for hearing.  If you can articulate how you

14   believe your line of questioning about an entity

15   that is not a party to this bankruptcy case is

16   relevant to the application to approve a compromise

17   and settlement between TIG Romspen and the Chapter

18   11 Trustee, I will listen to your explanation.  But

**EXHIBIT 12**
**Page 35 of 110**

19  at this point, delving into an entity that is not a

20  party to this proceeding is outside the scope of the

21  9019 motion.  And I'm instructing the witness not to

22  answer unless you can provide an adequate

23  explanation.

24      MR. CHOUDHRI:  I'm entitled to get into

25  this and ask questions about a credit bid that

                                            30

1  aggects the debt that is being settled as part of

2  the 9019.  So Mr. Hirsch --

3      MR. HIRSCH:  So you can talk about -- so

4  go ahead and talk about the settlement between the

5  Trustee as it relates to this particular proof of

6  claim.  I have no problem with those questions.  I

7  do have a problem with you delving into the identity

8  of non-parties to this case.

9  BY MR. CHOUDHRI:

10     Q.  Mr. Roitman, are you representing to the

11  bankruptcy court that the La Vernia property was

12  sold to RIC La Vernia on February the 6th, 2024?

13  It's a "yes" or "no" question.

**EXHIBIT 12**
**Page 36 of 110**

14      A.   It says in here, On February 6th, the La

15  Vernia property was sold to Romspen's assignee, RIC

16  La Vernia LLC, for successful bid in the amount of

17  $100,000.

18      Q.   I'm sorry, Mr. Roitman.  We were talking

19  over each other.  Why don't you read what you were

20  -- I was trying to ask you a question, and you're

21  reading a document.  So let's try this again.  Can

22  you read me what you just read again into the

23  record?  And I don't want to upset the court

24  reporter and talk over each other, so let me allow

25  you to read what you were reading.  And I'm sorry if

31

1  I interrupted you.

2          Go ahead, Mr. Roitman.

3      A.   What this says is on February 6th, 2024,

4  the La Vernia property was sold to Romspen's

5  assignee, RIC La Vernia LLC, for a successful bid in

6  the amount of $100,000.

7      Q.   And so just so record is clear, it says

EXHIBIT 12
Page 37 of 110

8    that Romspen now amends the proof of claim to deduct

9    its $100,000 credit bid, reducing the amount due and

10   owing as of the petition date.  Is that correct?

11       A.   That's correct.

12       Q.   And so the -- has Romspen taken all lawful

13   offsets and credits to its debt that it's

14   representing to the bankruptcy court that it's owed

15   in the proof of claim?

16       A.   Yes.

17       Q.   And is RIC La Vernia LLC a debtor in

18   bankruptcy in Judge Parker's court, as we sit here

19   today?

20           MR. HIRSCH:  Object.  Object, outside the

21   scope of the 9019.  Mr. Choudhri, if you can explain

22   how that question relates to the 9019, I'll consider

23   it.  But at this point, the question is outside the

24   scope.  RIC La Vernia is not a party to the

25   settlement between Romspen and the Chapter 11

                                                    32

1    Trustee of the 1001 WL bankruptcy estate.

2    BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 38 of 110**

3      Q.    You can answer, Mr. Roitman.

4            MR. HIRSCH:  No.  If you can explain how

5   your question relates to the 9019, otherwise, I'm

6   advising the witness not to answer.  And it's

7   outside the scope.

8            MR. CHOUDHRI:  Mr. Hirsch, are you

9   instructing the witness not to answer my question?

10           MR. HIRSCH:  I'm pretty sure my objection

11  was clear.  We had an agreed scope.  This question

12  is outside the scope.  I asked you if you would

13  provide an explanation as to how your question fits

14  within the scope of the 9019, and if you're unable

15  to provide such an explanation, I am instructing the

16  witness not to answer the question as outside the

17  agreed scope.

18  BY MR. CHOUDHRI:

19     Q.    Mr. Roitman, you understand that we are

20  here regarding a 9019 and matters that are set on

21  August the 4th, 2024, in front of Judge Robinson.

22  You're aware of that.  Right?

23     A.    Yes.

24     Q.    And you're going to take your attorney's

25  instruction and not answer my questions when he

**EXHIBIT 12**
**Page 39 of 110**

33

1  instructs you not to answer.  Is that correct?

2          MR. HIRSCH:  Objection, form.

3  BY MR. CHOUDHRI:

4      Q.  Is that correct, Mr. Roitman?

5      A.  Yes.  I follow my legal advice.  I told

6  you that before.

7      Q.  So Mr. Roitman, the collateral that was

8  provided to TIG Romspen to secure its debt, I think

9  -- what is the principal amount of the debt that

10  Romspen contends is the loan amount?

11      A.  The original principal amount was

12  $18,500,000, according to this.

13      Q.  And this is according to what we're

14  reading as the -- what does it say on top?

15      A.  Amended Proof of Claim.

16      Q.  Mr. Roitman, so the borrower -- who is the

17  borrower for TIG Romspen in this case?

18          MR. HIRSCH:  Objection to form.

19      A.  According to this, it says we made a loan

20  to Galleria Loop Note Holder, GLNH.

21  BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 40 of 110**

22      Q.   Did TIG Romspen make a loan to 1001 WL

23 LLC?

24      A.   I can't be sure.  Maybe before Galleria

25 Loop Note -- no, I don't think so.  I don't think

34

1 so.  I'm not sure.

2      Q.   So the record is clear, the borrower that

3 Romspen contends in this bankruptcy is Galleria Loop

4 Note Holder, LLC.  Is that correct?

5      A.   Yeah.  I think what happened here, Ali --

6 and you know this better than I do --

7      Q.   It's a "yes" or "no" question.  Who is the

8 borrower in this case?

9      A.   Galleria Loop Note Holder.

10      Q.   Thank you.  Mr. Roitman --

11      A.   That's not the debtor in this case.  The

12 debtor in this case is the former owner that you

13 transferred it back to on the eve of bankruptcy.  So

14 that's the debtor in this case.  So our loan was --

15 we went over this --

16      MR. CHOUDHRI:  Objection, non-responsive.

**EXHIBIT 12**
**Page 41 of 110**

17  BY MR. CHOUDHRI:

18      Q.   And Mr. Roitman, I'm trying to move along,

19  but there's --

20      A.   Well, you know you're not.

21      Q.   So Mr. Roitman, as part of this debt that

22  Romspen is claiming it's owed, it was cross-

23  collateralized by the Otisco -- by the San Antonio

24  land, which then your contention is RIC La Vernia --

25  RIC La Vernia LLC acquired on February the 6th,

                                          35

1  2024, at the foreclosure sale.  Is that correct?

2          MR. HIRSCH:  Objection to form.

3      A.   We've answered this already.

4  BY MR. CHOUDHRI:

5      Q.   Please answer the question.

6          MR. HIRSCH:  You can answer the question

7  if you understand it.

8      A.   I believe I've answered this question

9  already. There was a foreclosure sale.  We read it.

10  BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 42 of 110**

11     Q.   So the record is clear, Romspen got two --

12   so initially Romspen got one piece of property as

13   collateral, which is 1001 West Loop.  Is that

14   correct?

15     A.   I can't remember all the collateral we

16   had.  We got the property on West Loop originally,

17   yes.

18     Q.   And then Romspen also got additional

19   collateral in San Antonio, which is the Otisco

20   property.  Is that correct?

21     A.   We had a bunch of collateral.  We had

22   stuff in Virginia.  We had stuff in Georgia.  We had

23   a bunch of stuff that you gave us over the various

24   forebearances in that. Those sold, and then this one

25   came in, then this one was foreclosed.  So yes.

36

1     Q.   And did Romspen provide truthful and

2   accurate offsets to all the collateral -- for the

3   various pieces of collateral that you just mentioned

4   in Virginia and Georgia and other areas.  Did

5   Romspen provide all the offsets to its debt?

**EXHIBIT 12**
**Page 43 of 110**

6     A.   Yes, every time.

7     Q.   It's accurate and correct?

8     A.   Absolutely, yes.

9     Q.   And is it true that Mr. Hirsch is the

10    debtor's counsel for RIC La Vernia LLC?

11          MR. HIRSCH:  Objection, outside the scope.

12    If you can explain, Mr. Choudhri, how that question

13    relates to the pending 9019 motion, then I will

14    consider allowing or advising the witness to answer

15    the question.  Without an explanation, I'm advising

16    the witness not to answer.

17          MR. CHOUDHRI:  Are you instructing the

18    witness not to answer?

19          MR. HIRSCH:  If you're not going to

20    explain how this relates to the 9019.

21          MR. CHOUDHRI:  I don't have to explain,

22    Mr. Hirsch.  You can object -- you limit your

23    objections to form or instruct the witness not to

24    answer.

25          MR. HIRSCH:  Play by the rules.  If you're

37

EXHIBIT 12
Page 44 of 110

1   asking questions outside the scope, then I'm

2   instructing the witness not to answer.

3        MR. CHOUDHRI:  There's no if.  You're

4   either objecting or you're instructing.  I'm not --

5        MR. HIRSCH:  The question was outside the

6   scope. I am instructing him not to answer unless you

7   can adequately explain how the question falls within

8   the scope.  If you're refusing to provide that

9   explanation, then my instruction to the witness is

10  not to answer the question.

11  BY MR. CHOUDHRI:

12       Q.   Mr. Roitman, are you going to refuse --

13  are you refusing to answer the question?

14       A.   As I said many times now, I'm following my

15  lawyer's advice.

16       Q.   And you're taking the instruction from

17  your lawyer and you're refusing to answer my

18  question?

19       A.   That's right.

20       Q.   My next question, Mr. Roitman, is so

21  Romspen was provided additional collateral to its

22  original debt.  Is that correct?  Which included the

23  land owned by Otisco, which then subsequently, you

24  assert that RIC La Vernia acquired at a foreclosure

**EXHIBIT 12**
**Page 45 of 110**

25  sale.  Is that correct?

38

1        MR. HIRSCH:  Objection to form, asked and

2  answered.

3  BY MR. CHOUDHRI:

4      Q.   You can answer, Mr. Roitman.

5      A.   You've asked this already, Ali.  It's been

6  answered already.  Are you just wasting time now?

7  What's the point?

8      Q.   Mr. Roitman, is it true that you have

9  refused to provide deposition longer than -- that

10  you've refused to provide your deposition longer

11  than two hours?

12        MR. HIRSCH:  Objection to form.

13      A.   We made accommodations to give you two

14  hours today.  We're trying our best.  And you're

15  wasting those two hours.  So I don't know what else

16  to say.

17  BY MR. CHOUDHRI:

18      Q.   Mr. Roitman, my question is are you

19  refusing to provide more than two hours for your

**EXHIBIT 12**
**Page 46 of 110**

20  deposition?

21          MR. HIRSCH:  Objection, form.

22  BY MR. CHOUDHRI:

23      Q.   You can answer, Mr. Roitman. Please answer

24  the question.

25      A.   I only have two hours today.  That's what

                                        39

1  we offered you.

2      Q.   So you're refusing to provide more than

3  two hours for your deposition.  Is that correct?

4          MR. HIRSCH:  Objection to form, asked and

5  answered.

6  BY MR. CHOUDHRI:

7      Q.   Is that correct?  It's a "yes" or "no",

8  Mr. Roitman.

9      A.   I've answered.

10      Q.   Is it a "yes" or a "no", sir?

11          MR. HIRSCH:  Objection, form, asked and

12  answered, argumentative.

13  BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 47 of 110**

14        Q.  So the record is clear, Mr. Roitman, you

15   are refusing to provide more than two hours for your

16   deposition?

17            MR. HIRSCH:  So the record is clear, Mr.

18   Choudhri has now spent more than two minutes asking

19   about timing of depositions.

20            You can answer the question, Mr. Roitman,

21   if you have an answer.

22       A.  I did answer.

23   BY MR. CHOUDHRI:

24       Q.  And your answer, Mr. Roitman, so the

25   record is clear, are you refusing to provide more

                                                    40

1    than two hours for your deposition?

2             MR. HIRSCH:  Objection, form.

3             MR. CHOUDHRI:  Court reporter, please time

4    the lapse of time that's going by that the witness

5    is not answering the question.

6        A.  I answered this question already.  You're

7    not moving on.  I told you we had two hours

8    available today.  We gave you those two hours.

**EXHIBIT 12**
**Page 48 of 110**

9          MR. HIRSCH:  Let the record reflect, 55

10   minutes has already lapsed.

11          MR. CHOUDHRI:  Can you all hear me?

12          THE REPORTER:  Yes.

13   BY MR. CHOUDHRI:

14      Q.   So Romspen did not provide additional

15   funding when it obtained additional collateral for

16   the La Vernia property.  Is that correct?

17          MR. HIRSCH:  Objection to form.

18   BY MR. CHOUDHRI:

19      Q.   Mr. Roitman, you can answer that question.

20      A.   It was provided in connection with a

21   forebearance agreement, if I recall correctly.

22          MR. CHOUDHRI:  Objection, non-responsive.

23   BY MR. CHOUDHRI:

24      Q.   Mr. Roitman, was there any additional

25   funding provided by Romspen when they obtained

                                              41

1   additional collateral on the La Vernia property?

2      A.   I can't remember that.

**EXHIBIT 12**
**Page 49 of 110**

3          MR. HIRSCH:  Objection to form.

4    BY MR. CHOUDHRI:

5       Q.   Is it true that Romspen got additional

6    collateral and did not provide additional funding to

7    the borrower?

8       A.   I think you would have to go back and look

9    at the forebearance --

10         MR. HIRSCH:  Hang on, Mr. Roitman.

11   Objection to form.

12         You can answer if you have an answer.

13      A.   I think I answered already.  It was

14   provided as part of the forebearance agreement.

15   You'd have to read the forebearance agreement to see

16   what consideration was granted.

17   BY MR. CHOUDHRI:

18      Q.   I'm asking, Mr. Roitman, was there any

19   additional funding provided by Romspen in exchange

20   for the additional collateral it obtained?

21      A.   Again, I do not remember.  You have to

22   read the forebearance agreement to see.  It's all in

23   there.

24   BY MR. CHOUDHRI:

25      Q.   What is the value, in your opinion, of the

EXHIBIT 12
Page 50 of 110

42

1 La Vernia property, Mr. Roitman?

2          MR. HIRSCH:  Objection to form.  Objection

3 to foundation.

4 BY MR. CHOUDHRI:

5     Q.   You can answer, Mr. Roitman.

6     A.   I don't have any opinion of the value.

7 I've never seen the land.  I don't know.

8     Q.   You've never been to La Vernia?

9     A.   No.

10     Q.   You have no information on the value of

11 the La Vernia property?

12     A.   I'm not aware --

13          MR. HIRSCH:  Objection, form.

14 BY MR. CHOUDHRI:

15     Q.   Finish your answer, Mr. Roitman.  Mr.

16 Hirsch keeps objecting and obstructing the

17 deposition continuously.

18          MR. HIRSCH:  I oppose that

19 characterization.  I have a right to object to

20 questions, and I'll continue to object to improperly

21 posed questions.

22 BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 51 of 110**

23    Q.   Mr. Roitman, do you have any information

24  or knowledge, in any way, shape, or form, as it

25  relates to the valuation of the La Vernia property?

43

1    A.   I don't recall.  My team would work on

2  that, not me.

3    Q.   And Mr. Roitman, what is your email

4  address?

5         MR. HIRSCH:  Objection, form, irrelevant,

6  has nothing to do with the 9019 motion.  I'm

7  instructing the witness not to answer.  And Mr.

8  Choudhri, you know his email address.  You've used

9  it many times.  This is badgering the witness.

10  Please move on.

11  BY MR. CHOUDHRI:

12    Q.   Are you, Mr. Roitman, going to refuse to

13  answer what your email address is?

14    A.   You know my email address, Ali.  You just

15  emailed me this morning.

16    Q.   I emailed you the deposition notice.  Is

EXHIBIT 12
Page 52 of 110

17  that correct?

18      A.   Yes.

19      Q.   And you can't tell, on the record here --

20  we're here on the record, right, Mr. Roitman?  And

21  you and I communicate via email.  Is that correct?

22      A.   I try not to communicate with you anymore.

23      Q.   But you and I have communicated via email,

24  Mr. Roitman.  Is that correct?

25      A.   You know my email address, and you've sent

                                44

1  me emails.

2      Q.   So Mr. Roitman, for the record here --

3  because we're here to make sure everything is on the

4  record here and is done correctly -- I'm asking you

5  what is your email address, on the record.

6          MR. HIRSCH:  I'm instructing the witness

7  not to answer.  Mr. Choudhri, please explain how

8  that has any bearing on the 9019 motion.

9          It appears Mr. Choudhri has gone off

10  camera and has gone on mute.  I have to question

11  whether Mr. Choudhri has other people in his office

EXHIBIT 12
Page 53 of 110

12    with him.

13          But if you cannot explain how that has any

14    bearing on the 9019 motion, I'm instructing the

15    witness not to answer.  You're wasting valuable

16    time, Mr. Choudhri.

17    BY MR. CHOUDHRI:

18        Q.   Mr. Roitman, are you going to take your

19    attorney's instructions and refuse to answer what

20    your email address is?

21        A.   Yes.

22        Q.   And Mr. Roitman, did TIG Romspen -- are

23    you aware that Judge Robinson lifted the stay to

24    allow foreclosure sale to proceed -- a nonjudicial

25    foreclosure to proceed in October 2024?

                                                  45

1          MR. HIRSCH:  Objection to form, asked and

2    answered.

3          If you can answer the question, you can,

4    Mr. Roitman.

5        A.   I think I answered it already.  I believe

**EXHIBIT 12**
**Page 54 of 110**

6   he did.

7   BY MR. CHOUDHRI:

8       Q.   And did Romspen conduct a foreclosure sale

9   on October 1, 2024?

10          MR. HIRSCH:  Objection, instructing the

11  witness not to answer.  This is outside the scope of

12  the 9019. Mr. Choudhri, if you can explain how this

13  is within the scope of the 9019, then I'll

14  reconsider my instruction.

15          MR. CHOUDHRI:  Mr. Hirsch, let's talk

16  about it.  Is the 9019 premised on that -- is there

17  a determination -- if there was a foreclosure that

18  Romspen conducted, it's very relevant, because it is

19  one of the objections to the 9019, because the 9019

20  presumes and assumes that Romspen -- that there is

21  or is not or has been, potentially, a foreclosure

22  because it's premised about ownership.  And one of

23  the things that Romspen is seeking is to make a deal

24  with the Trustee to sell a property.  So it's very

25  determinate that was there a foreclosure or not by

46

EXHIBIT 12
Page 55 of 110

1  Romspen.

2        MR. HIRSCH:  Mr. Roitman already answered

3  that title to the property, to his understanding, is

4  held by 1001 WL LLC, the debtor in bankruptcy.

5  BY MR. CHOUDHRI:

6        Q.   Mr. Roitman, have you seen the October 1,

7  2024, foreclosure video?

8        A.   I don't believe so.

9        Q.   Have you seen the February the 6th, 2024,

10  La Vernia foreclosure sale.

11        A.   No, I wasn't at either.

12        Q.   Are you aware that your attorney, Kyle

13  Hirsch, has possession of these foreclosure videos?

14        MR. HIRSCH:  Objection.  You can answer if

15  you can, but that's still outside the scope.

16        A.   I'm not aware of that.

17  BY MR. CHOUDHRI:

18        Q.   So you're not aware that there is a

19  foreclosure video -- that there's a video of the La

20  Vernia -- when I say "La Vernia", we understand

21  we're talking about the additional collateral

22  Romspen got that was cross-collateral -- do you

23  understand, when I say La Vernia -- just so the

24  record is clear -- we're talking about the property

25  in San Antonio that Romspen got as additional

**EXHIBIT 12**
**Page 56 of 110**

47

1  collateral, several hundred acres.  Is that correct?

2      A.   All I remember of the videos was that you

3  tried to show one at the hearing when I was

4  testifying, and I think Judge Robinson didn't allow

5  it.  And I never even saw it. So I don't know about

6  these videos.

7          MR. CHOUDHRI:  Court reporter, if I email

8  you -- hang on.

9  BY MR. CHOUDHRI:

10     Q.   Mr. Roitman, are you aware that your

11  attorney, Kyle Hirsch, has in his possession videos

12  of the February 6th, 2024 foreclosure sale for the

13  La Vernia property?

14     A.   He may.  I don't know.  I've never seen

15  them.

16     Q.   You've never seen them.  Is that correct?

17     A.   That's right.

18     Q.   And are you aware that Mr. Hirsch has in

19  his possession the foreclosure video of the October

EXHIBIT 12
Page 57 of 110

20  1, 2024 sale of the 1001 property?

21        MR. HIRSCH:  Objection to form.

22     A.    I'm not aware of that.

23        MR. HIRSCH:  And again, this is outside

24  the scope of the 9019.

25  BY MR. CHOUDHRI:

                                    48

1      Q.    And Mr. Roitman, you have not seen those

2  videos, either of those videos, for 1001 or La

3  Vernia.  Is that correct?

4      A.    That's right.

5        MR. CHOUDHRI:  Madam Court Reporter, if I

6  email you a video, are you able to display that

7  video and play it for the witness?

8        THE REPORTER:  You'll be able to share

9  your screen if you'd like.  I'll be busy typing.

10        MR. CHOUDHRI:  So I don't know how that

11  works. Right?  Because if we have a video, I don't

12  know how we'd get the audio on Zoom.  That's kind of

13  my objection to the Zoom.  So if I was to email you

14  the video, do you think you could play it?  Or how

**EXHIBIT 12**
**Page 58 of 110**

15   would that work, technologically wise, so we could

16   display the audio and the video.

17        THE REPORTER:  I'm not 100 percent sure.

18   I would imagine the video -- it would play the

19   audio.  But I am not sure on that.  I apologize.

20   BY MR. CHOUDHRI:

21     Q.   Mr. Roitman, are you aware that -- do you

22   know who Sandy Dasigenis is?

23     A.   No.

24     Q.   Who hired the substitute trustee to

25   conduct the foreclosure for 1001?

49

1     A.   I imagine our lawyers did.  I don't have

2   any firsthand knowledge of who did.

3     Q.   And who would have firsthand knowledge of

4   who did it?

5     A.   Whichever lawyer we hired.

6     Q.   And so do you have any knowledge of who

7   the substitute trustee was who conducted the 1001

8   West Loop foreclosure?

**EXHIBIT 12**
**Page 59 of 110**

9      A.   No.

10          MR. HIRSCH:  Objection to form.

11   BY MR. CHOUDHRI:

12      Q.   Mr. Roitman, are you aware that the 1001

13   property was struck, sold back to Romspen, as a

14   credit bid on October 1, 2024?

15          MR. HIRSCH:  Objection to form.  I'm

16   instructing the witness not to answer.  This is

17   outside the scope of the 9019.  Mr. Choudhri, if you

18   can adequately explain how this relates to the 9019,

19   I may reconsider my instruction.

20   BY MR. CHOUDHRI:

21      Q.   Mr. Roitman, are you going to take your

22   attorney's instructions and refuse to answer the

23   question as it relates to the October 2024

24   foreclosure sale or the substitute trustee that was

25   appointed by Romspen?

                                              50

1      A.   Yes.  You keep asking the same question.

2      Q.   So Mr. Roitman, if the property was sold

3   at a foreclosure sale on October 1, 2024 as a credit

EXHIBIT 12
Page 60 of 110

4    bid to Romspen, how can Romspen -- how could the

5    9019 be confirmed if it's premised on -- assume for

6    a second, Mr. Roitman, that the property was struck

7    off and sold on October 1, 2024, the 1001 property.

8           MR. HIRSCH:  Objection, form.

9    BY MR. CHOUDHRI:

10    Q.    So Mr. Roitman, let me back up.  You're

11   seeking the court to approve the 9019 to sell the

12   1001 property.  Is that correct?

13    A.    The Trustee is going to sell the property.

14    Q.    And if Romspen foreclosed on the property

15   on October 1, 2024, how could the Trustee sell the

16   property?

17           MR. HIRSCH:  Objection to form.

18    A.    1001 West Loop still owns the property.

19   It's a hypothetical question.

20   BY MR. CHOUDHRI:

21    Q.    So how do you know 1001 West Loop still

22   owns the property?

23    A.    That's what the title --

24           MR. HIRSCH:  Objection to form.

25           Did we lost Mr. Choudhri?  Or he lost his

**EXHIBIT 12**
**Page 61 of 110**

51

1   audio?

2           MR. CHOUDHRI:  Can you hear me?

3           MR. HIRSCH:  Yes.

4           THE REPORTER:  We can hear you now.

5   BY MR. CHOUDHRI:

6       Q.  Mr. Roitman, did you authorize the sale --

7   let me back up.  Is it your contention that Romspen

8   acquired the property, La Vernia, at a February 6th,

9   2024 foreclosure sale?        MR. HIRSCH:  Objection

10  to form.  It is now 70 minutes after the

11  commencement of this deposition.  You have

12  approximately 50 minutes left of this deposition,

13  Mr. Choudhri.  The question that you're asking is

14  outside the scope of the 9019.  I'm instructing the

15  witness not to answer.

16  BY MR. CHOUDHRI:

17      Q.  Mr. Roitman, are you refusing to answer

18  the question?

19      A.  When my lawyer advises me not to answer, I

20  will not answer.

21      Q.  And you're taking --

22      A.  You don't have to ask that again.  You've

EXHIBIT 12
Page 62 of 110

23    asked that far too often.

24          THE REPORTER:  We're still viewing your

25    screen, just so you know.

52

1          MR. CHOUDHRI:  Okay, thank you.

2    BY MR. CHOUDHRI:

3      Q.   Mr. Roitman, would it surprise you that

4    the substitute trustee appointed by Romspen struck

5    the property sold, the 1001 West Loop property, on

6    October 1, 2024?

7          MR. HIRSCH:  Objection to form.

8          THE DEPONENT:  I don't understand the

9    point of all this.

10   BY MR. CHOUDHRI:

11     Q.   Mr. --

12     A.   1001 West Loop is still the owner of the

13   property.  I wasn't at any foreclosure sale.  I

14   don't know the answers to any of this stuff.

15          I don't know what this is on the screen

16   right now.  This is something to do with another

17   case, Texas REIT LLC.

**EXHIBIT 12**
**Page 63 of 110**

18        Q.   So -- can you all hear me?  Can you all

19   hear me okay?

20        MR. HIRSCH:  Yes.

21        MR. CHOUDHRI:  Sorry, guys, I'm having a

22   lot of video and audio problems.  That's why I don't

23   want to do Zoom.

24   BY MR. CHOUDHRI:

25        Q.   Mr. Roitman, you're aware that you refused

                                    53

1    to provide your deposition in person and insisted

2    that it be by Zoom only.  Are you aware of that?

3         MR. HIRSCH:  Objection to form,

4    mischaracterizes --

5         MR. CHOUDHRI:  Coaching the witnesses

6    continually.

7         MR. HIRSCH:  Yeah, I'm objecting to the

8    form because you're feeding facts that aren't in

9    evidence.

10        MR. CHOUDHRI:  You can object, but no

11   running helping the witness, which is what you've

EXHIBIT 12
Page 64 of 110

12  been doing, Mr. Hirsch, throughout the deposition.

13  You're coaching the witness, continually.

14        MR. HIRSCH:  No, Mr. Choudhri, I'm trying

15  to control the deposition because you obviously

16  cannot.

17  BY MR. CHOUDHRI:

18     Q.   Mr. Roitman, did you understand my

19  question?

20     A.   We were accommodating this.  You never

21  properly served the subpoena or any deposition

22  notice.  You asked for some assistance to get this

23  done quickly.  We are assisting.

24     Q.   So Mr. Roitman, my question is, have you

25  refused to provide your deposition in person?

                                          54

1     A.   I answered this question.

2     Q.   My question is, have you refused to

3  provide your deposition in person?

4     A.   I just answered this question.

5        MR. HIRSCH:  Objection to form.

6  BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 65 of 110**

7      Q.    Are you going to refuse to answer the

8  question?

9      A.    I just answered the question.

10     Q.    Have you refused to provide your

11  deposition in person, yes or no?

12          MR. HIRSCH:  Objection to form.

13  BY MR. CHOUDHRI:

14     Q.    You can answer, Mr. Roitman.  Yes or no.

15     A.    I have answered already.  I have answered

16  this question.

17     Q.    Mr. Roitman, will you agree to come to the

18  hearing in person in front of Judge Robinson?

19     A.    I was not asked to appear.  I was not

20  subpoenaed to appear.  I have no plans to appear.

21     Q.    Ms. Douglas, I'm going to send you a

22  video.

23          I want to go back to some of your answers,

24  Mr. Roitman.  You said you don't know what happened

25  on the foreclosure sale because you weren't there.

55

EXHIBIT 12
Page 66 of 110

1    Is -- is that a fair recap of your answer earlier?

2        A.   Yes.

3        Q.   And so you don't know one way or the other

4    if the property was sold or not sold at the

5    foreclosure sale?

6            MR. HIRSCH:  Objection to form.  What

7    property are you referring to?

8    BY MR. CHOUDHRI:

9        Q.   1001 West Loop.

10       A.   I have answered that 1001 West Loop is

11   owned by 1001 WL LLC.

12       Q.   That's not my question, Mr. Roitman.  My

13   question is --

14       A.   Well, it could not have been sold then.

15   If it's stilled own by WL, it's -- cannot have been

16   sold.  So.

17       Q.   How do you know it wasn't sold?  Do you

18   know that it was struck sold at the auction on

19   October --

20       A.   I don't know what happened, but it was

21   never sold.

22       Q.   But you don't know what happened, so how

23   do you know it wasn't --

24       A.   Right.

25       Q.   So you don't know what happened?

EXHIBIT 12
Page 67 of 110

56

1      A.   I know that the title is still held by

2   1001 WL LLC.   That's what I've been told.   Even

3   that, I don't know officially because I'm not the

4   title registrar and I haven't looked at the title

5   lately, but my lawyers have.

6      Q.   So who told --

7      A.   They know what's going on.

8      Q.   Who told you -- your answer was, that's

9   what you were told.   Who told you this information?

10     A.   Kyle.

11          MR. HIRSCH:  Objection.  Objection to the

12   extent that the answer divulges attorney-client

13   communications.  I'm instructing the witness not to

14   answer.

15          If you can answer without divulging

16   attorney-client communications, then please proceed.

17          THE DEPONENT:  I can't.  It's all

18   privileged.

19   BY MR. CHOUDHRI:

20     Q.   So you're refusing to answer the question

**EXHIBIT 12**
**Page 68 of 110**

21  on who told you that if the property was foreclosed

22  or not; is that right?

23      A.   Well, I think I slipped up, but yes, I'm

24  refusing to answer that.  My discussions with --

25  with Kyle are privileged.  So.

57

1      Q.   So Kyle told you, and the source of your

2  information is from Kyle; is that correct?

3          MR. HIRSCH:  Objection to form.

4  BY MR. CHOUDHRI:

5      Q.   So your answer is that you -- the

6  information you have is you can't answer because

7  it's attorney-client privilege; is that right?

8      A.   Yes.

9      Q.   So you really don't know if the property

10  was foreclosed or not foreclosed, but the only

11  source of that information would be from Kyle, and

12  you're refusing to answer; is that right?

13      A.   That's right.

14      Q.   Okay.  Ms. Douglas, I just sent you a

**EXHIBIT 12**
**Page 69 of 110**

15 video.  If you can mark this as -- how many exhibits

16 are we up to?

17          THE REPORTER:  This would be Exhibit 3.

18          MR. CHOUDHRI:  Okay.  If you can mark that

19 as Exhibit 3.  And let me know if that -- that you

20 can play that video, if there's a way to play that

21 on your end, and if there's a way we can show it

22 somehow to the witness, since the witness has never

23 seen this video, according to the witness.

24          THE REPORTER:  If it --

25          MR. HIRSCH:  How is this video relevant to

58

1 the 9019 motion, Mr. Choudhri?

2          MR. CHOUDHRI:  Well, why don't we do this.

3          Mr. Roitman, does the 9019, does it --

4 let's go and just take a bathroom break here, if we

5 can, and then we'll come back, okay?

6          Why don't we do this, while we're taking a

7 break, how did Mr. Hirsch -- let's stay on the

8 record for a second.  Mr. Hirsch, how about -- have

9 you -- you've received this video, right, Mr.

**EXHIBIT 12**
**Page 70 of 110**

10  Hirsch?  You've seen the video?

11          MR. HIRSCH:  I don't know what video

12  you're referring to.  There's 40 minutes left of Mr.

13  Roitman's availability.  I don't know what video

14  you're referring to.  You've mentioned several.

15          MR. CHOUDHRI:  Mr. Hirsch, have you seen

16  the foreclosure videos?

17          MR. HIRSCH:  Of what property?

18          MR. CHOUDHRI:  The 1001 property and the

19  La Vernia property.

20          MR. HIRSCH:  I have not seen from the 1001

21  property the October purported sale, no.

22          MR. CHOUDHRI:  Mr. Hirsch, have you

23  received that in the exhibits that were sent over

24  back in June?  All the videos?

25          MR. HIRSCH:  I don't know, and I'm not

                                                    59

1  your witness, so I mean, we've got now 39 minutes

2  left of Mr. Roitman's availability.  I still -- I

3  still don't understand the significance to the 9019

EXHIBIT 12
Page 71 of 110

 4   motion of these questions regarding an alleged

 5   October 2024 foreclosure when the application to

 6   compromise this file in March or April of 2025.

 7          MR. CHOUDHRI:  Mr. Hirsch, doesn't the

 8   9019 -- if it -- it presumes that property is owned

 9   by the debtor in the 9019.  Romspen is attempting to

10   sell the property through the bankruptcy court; is

11   that correct?  And it looks like Mr. --

12          MR. HIRSCH:  I'm not your -- I'm not your

13   witness, Mr. Choudhri.  You're now wasting more

14   time.  You've also asked for me to sit for a

15   deposition.  So while you're wasting Mr. Roitman's

16   time to ask me questions when you have my deposition

17   scheduled, I don't quite understand.

18          MR. CHOUDHRI:  I --

19          MR. HIRSCH:  But you're now down to 38

20   minutes of availability for Mr. Roitman.

21          MR. CHOUDHRI:  I got it, Mr. Hirsch,

22   you're just running the clock and talking.  I

23   understand, but no disrespect.

24          Mr. Roitman, I want the record to note he

25   got up and walked away.

**EXHIBIT 12**
**Page 72 of 110**

60

1          THE DEPONENT:  I went to fill up my water.

2   It's hot in here.

3          MR. CHOUDHRI:  So if it's hot in there,

4   Mr. Roitman, let's take a break and we'll let you

5   get some water, take a break.  Let's come back in --

6   let's come back in five minutes, okay?

7          THE REPORTER:  We're going off the record,

8   1:22 p.m.

9          (WHEREUPON, a recess was taken.)

10          THE REPORTER:  We're back on the record,

11   1:29 p.m.

12          MR. CHOUDHRI:  Okay.  Madam Court

13   Reporter, I wanted to make sure that Exhibit 3 is

14   the -- can you all hear this?

15          MR. HIRSCH:  I can hear you speaking.

16          MR. CHOUDHRI:  So you can't hear the

17   video?  Okay.  So why don't we do this.  Kyle, did

18   you get the three videos that I've emailed you?

19          MR. HIRSCH:  I got emails from you with

20   Google Drive links.

21          MR. CHOUDHRI:  Okay.  Can you click on

22   those, please?  And can you read into the record

23   what the Google Drive links say?  There's three

EXHIBIT 12
Page 73 of 110

24 links.  If you click on the -- one is -- Madam Court

25 Reporter, are you able to open the three links that

61

1 I sent you?  There are three videos in those three

2 links.  I'd like that to be Exhibit 3 and 4 and 5.

3      THE REPORTER:  I was able to open --

4      MR. HIRSCH:  These are videos --

5      THE REPORTER:  -- the first one --

6      MR. HIRSCH:  -- that the witness testified

7 -- these are videos that the witness testified he's

8 not seen, if I'm correct.

9      MR. CHOUDHRI:  Objection.

10      MR. HIRSCH:  I'm asking you, Ali.  Are

11 these the videos that the witness testified that he

12 had not seen?

13      MR. CHOUDHRI:  I believe he said he has

14 not seen any videos regarding the foreclosure sales

15 and had no information about the foreclosure sales,

16 right?  Is that right, Kyle?

17      MR. HIRSCH:  Okay.  So you're -- you're

**EXHIBIT 12**
**Page 74 of 110**

18  asking to admit three movies that are videos that

19  this witness has not seen.

20          MR. CHOUDHRI:  Okay.  Well, let me go

21  ahead and --

22          MR. HIRSCH:  At least that's what his

23  testimony was.  And you're now down to 29 minutes of

24  his availability.  And you want me to read into the

25  record the links of the three links that may be

62

1  videos that you just sent me?

2  BY MR. CHOUDHRI:

3      Q.   Mr. Roitman, did you -- do you have --

4  I've sent an email to Mr. Hirsch, Mr. Roitman, and

5  Ms. Douglas, and there are three videos on this

6  link.

7          Mr. Roitman, did you -- do you see the

8  email with these three videos?

9      A.   Not at Zoom -- when I do depositions, I

10  put Zoom on my whole screen and I don't look at

11  anything else.  I was told to do that.  I don't know

12  when.  Many, many, many, many depositions ago.

**EXHIBIT 12**
**Page 75 of 110**

13      Q.   Well, Mr. Roitman, would you -- Court

14   Reporter, would you identify, see if you, on your

15   end, Ms. Court Reporter, would you see if you can

16   open the videos that I've sent you and identify how

17   long they are?

18           So we can identify them by exhibits and

19   the time, the length.  There's three videos.

20           THE REPORTER:  Please stand by.

21           The first video has 23 minutes, 16

22   seconds.  Would you like that as Exhibit 3?

23           MR. CHOUDHRI:  Please.  Thank you.

24           THE REPORTER:  Please stand by.

25           (WHEREUPON, Exhibit 3 was marked for

63

1   identification.)

2           THE REPORTER:  The second video has 1

3   minute, 46 seconds.  Would you like that as Exhibit

4   4?

5           MR. CHOUDHRI:  Please.

6           (WHEREUPON, Exhibit 4 was marked for

EXHIBIT 12
Page 76 of 110

7   identification.)

8          THE REPORTER:  Please stand by.  The third

9   video has 26 seconds.  Would you like that as

10  Exhibit 5?

11         MR. CHOUDHRI:  Yes, please.

12         (WHEREUPON, Exhibit 5 was marked for

13  identification.)

14         MR. CHOUDHRI:  So here's what I'm going to

15  do, what I'm going to do is I'm going to go to

16  Exhibit 4, okay, which -- which I believe is -- let

17  me just make sure.

18         (WHEREUPON, the video was played.)

19         MR. CHOUDHRI:  Okay.  So I'm going to open

20  up, Madam Court Reporter, Exhibit 4 on my shared

21  screen, and what I would ask you to do is to play

22  the video so the witness can see the video and hear

23  the video, okay?

24         THE REPORTER:  We can certainly find out

25  if that works, yes.


                                                        64


1          MR. CHOUDHRI:  Thank you so much.

**EXHIBIT 12**
**Page 77 of 110**

2          (WHEREUPON, the video was played.)

3          THE REPORTER:  Can you hear the video?

4          MR. CHOUDHRI:  Yeah.

5  BY MR. CHOUDHRI:

6     Q.   Let me -- let's start from the beginning,

7  and Mr. Roitman, on my shared screen, do you see a

8  lady here with --

9     A.   Yes.

10     Q.   -- horizontal stripes, at a picnic table

11  with a tree in the back?  Can you see that, Mr.

12  Roitman?

13     A.   Yes.

14     Q.   I want to identify, Ms. Douglas, this

15  exhibit as Exhibit 4.  And Mr. Roitman, on the

16  bottom, what is the length of the video that you see

17  on the bottom of your screen?

18     A.   It says 1 colon 46.

19     Q.   So 1 minute, 46 seconds.  And Ms. Douglas,

20  is that what you're seeing as well?

21          THE REPORTER:  I do see that.

22          MR. CHOUDHRI:  Okay.  So I'm going to go

23  ahead and play on my end, and if you could do the

24  same so we can be sure we get audio and video, okay?

25  Go ahead.

EXHIBIT 12
Page 78 of 110

65

1          (WHEREUPON, the video was played.)

2    BY MR. CHOUDHRI:

3          Q.   Mr. Roitman, did you see the video here?

4          A.   I believe so.

5          Q.   And were you able to hear the video and

6    hear the trustee?

7          A.   I believe so.

8          Q.   And did you hear the trustee state that

9    the property's going once, going twice, and sold for

10   $550,000 to Drew?

11         MR. HIRSCH:  Objection to form.

12   BY MR. CHOUDHRI:

13         Q.   Answer the question, Mr. Roitman.

14         A.   I heard what the video said.  I know

15   nothing about this video or what happened there or

16   what it was, what it purports to be.  I wasn't in

17   this video.  I wasn't there.

18         Q.   So Mr. Roitman, can you explain to me why

19   the trustee struck the property sold for 550,000 --

20         MR. HIRSCH:  Objection to form.  And I'm

EXHIBIT 12
Page 79 of 110

21    still struggling with how this has anything to do

22    with the 9019 motion which is a compromise between

23    the trustee and Romspen.

24    BY MR. CHOUDHRI:

25        Q.   Mr. Roitman, you're aware that the debt

66

1    that is in the issues between Romspen and the debtor

2    are affected by the amount of the debt, and if

3    Romspen had a fraudulent foreclosure sale, they

4    conducted a fraudulent foreclosure sale and

5    misrepresented the facts to this court, are you --

6    so strike that.

7        So Mr. Roitman, you've seen the video and

8    you've seen what happened in the video, and you

9    heard -- did you hear in the video, and we can play

10   it again, but did you hear where the trustee started

11   the bid on behalf of the lender at 500,000?  Did you

12   hear that?

13       A.   I heard the --

14            MR. HIRSCH:  Objection to form.

15   BY MR. CHOUDHRI:

EXHIBIT 12
Page 80 of 110

16      Q.   Did you hear that?

17      A.   I heard this video, what this video -- the

18 video you presented.  I -- I -- I know nothing about

19 this video.  I wasn't there.  I have -- I have no

20 way of knowing anything about what happened there.

21      Q.   So I'm asking not if you were there, Mr.

22 Roitman.  I'm asking that you heard this trustee

23 strike the property sold at $550,000 to Drew.  Did

24 you hear that, Mr. Roitman?

25          MR. HIRSCH:  Objection -- objection to

67

1 form.  I think he's answered the question.

2          THE DEPONENT:  I have answered the

3 question.

4 BY MR. CHOUDHRI:

5      Q.   What's the answer, Mr. Roitman?

6      A.   I wasn't there.  I don't know what this

7 is.

8      Q.   So --

9      A.   Or why it's being presented.  The debt is

**EXHIBIT 12**
**Page 81 of 110**

10    -- is a huge number, way more than the value of the

11    property.  None of this is important or relevant to

12    the trustee motion to sell the property.  This is

13    just all time wasting.

14         Q.   So the value of the property, but Mr.

15    Roitman, you don't know what the value of this

16    property that's collateral that Romspen has, and

17    whether they foreclosed correctly or incorrectly.

18         A.   No, I'm talking about the West Loop

19    property.  La Vernia has nothing to do with West

20    Loop.  We're not here to talk about La Vernia.

21    There's another case.  La Vernia is a whole other

22    story.  This is West Loop we're here to talk about.

23         Q.   So Mr. Roitman, are you telling me that it

24    doesn't matter what La Vernia sold for?  It doesn't

25    affect the 1001 WL bankruptcy and the amount owed to

                                                    68

1    the debtor by the debt --

2         A.   I would say it probably doesn't affect it,

3    yeah, probably doesn't affect it at all.

4         Q.   So even though the property was cross-

EXHIBIT 12
Page 82 of 110

5  collateralized, then -- well, then, Mr. Roitman, why

6  are you --

7       A.   It might affect the amount of some

8  deficiency claim in the future, but won't affect

9  this property at all.

10      Q.   And you can't -- and you don't know what

11 the La Vernia property is worth?

12      A.   That's right.  I answered that.  I don't

13 know.  I don't have that information.  My office

14 does.  I don't have that answer.

15      Q.   Your office does?

16      A.   Yeah, the underwriters and whoever works

17 -- Scott and the other guys who work on this file

18 probably know it off the top of their head.  I

19 don't.  I didn't come here today to answer questions

20 about La Vernia.  We were here for 9019 on the

21 trustee settlement.

22      Q.   And you understand the trustee is settling

23 any claims it would have against Romspen, and if the

24 foreclosure was appropriate or not it would affect

25 the amount of the debt that the debtor owns.  You

**EXHIBIT 12**
**Page 83 of 110**

69

1   understand that, right?

2       A.   Yes.

3            MR. HIRSCH:  Objection to form.

4   BY MR. CHOUDHRI:

5       Q.   So -- so the relevance is very relevant

6   here.  If the property -- now, let me back up.  Mr.

7   Roitman, do you know who owns the La Vernia

8   property?

9            MR. HIRSCH:  Objection to form.  Asked and

10  answered.

11           MR. CHOUDHRI:  This has not been asked and

12  answered.

13  BY MR. CHOUDHRI:

14      Q.   Mr. Roitman, do you know who owns --

15           MR. HIRSCH:  It was.

16           MR. CHOUDHRI:  Mr. Hirsch, it wasn't.  Let

17  the record reflect Mr. Hirsch is answering questions

18  for the witness.

19  BY MR. CHOUDHRI:

20      Q.   Mr. Roitman, do you know who owns the La

21  Vernia property?

22           MR. HIRSCH:  Objection, form.  Asked and

23  answered.

EXHIBIT 12
Page 84 of 110

24  BY MR. CHOUDHRI:

25      Q.   You can answer, Mr. Roitman.

                                                    70

1       A.   RIC La Vernia, LLC, owns the property.

2       Q.   Who owned the property -- so how did RIC

3  La Vernia get the property through the foreclosure

4  sale on February 6, 2024; is that right?  Is that

5  your assertion?

6       A.   That's what the trustee told us, yes.

7       Q.   Who told you that?  The trustee told you

8  that?

9       A.   Yes.  The trustee didn't tell me

10 personally.  The trustee told our lawyers that, yes.

11      Q.   And which lawyers did the trustee tell

12 that to?

13      A.   My lawyers.

14           MR. HIRSCH:  Objection to form.

15           THE DEPONENT:  I paid.

16           THE REPORTER:  What was the last part of

17 your answer, please, Mr. Roitman?

18 BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 85 of 110**

19      Q.   Who did the trustee tell what the La

20  Vernia property sold for, to?

21          MR. HIRSCH:  Objection to form.

22          THE DEPONENT:  I imagine it was Bryan

23  Cave.

24  BY MR. CHOUDHRI:

25      Q.   Who at Bryan Cave did the trustee --

71

1       A.   I do not know.

2       Q.   So who would know, Mr. Roitman?

3       A.   The trustee would know.

4       Q.   And who is the trustee?

5       A.   Again, I don't know who the trustee is.  I

6  don't handle those things.

7       Q.   Who handles those things?

8       A.   Our lawyers.

9       Q.   Which lawyers handled those things?

10      A.   Bryan Cave.

11          MR. HIRSCH:  Objection to form.  Asked and

12  answered.

EXHIBIT 12
Page 86 of 110

13  BY MR. CHOUDHRI:

14      Q.   Who authorized this sale for La Vernia?

15      A.   Oh, God.

16      Q.   You can answer, Mr. Roitman.

17      A.   We would have instructed our lawyers to

18  foreclose on La Vernia.

19      Q.   And who is "we," Mr. Roitman?

20      A.   Romspen.

21          MR. HIRSCH:  Objection.  This is outside

22  the scope of a 9019.  If you want to talk about

23  what's being compromised as between the trustee and

24  Romspen, that's what we're here for, but this is

25  outside the scope.  You're wasting time.

72

1  BY MR. CHOUDHRI:

2      Q.   Let's -- let's go to -- so Mr. Roitman,

3  you can't explain to me why, in your amended proof

4  of claim, Romspen contends that the La Vernia

5  property sold for $100,000; is that correct?

6      A.   I told you already that was what we were

7  advised by the trustee.

**EXHIBIT 12**
**Page 87 of 110**

8      Q.   And you can't identify which trustee told

9   you this; is that right?

10     A.   That's right.  Again, answered, answered,

11  answered.

12     Q.   Okay.  Madam Court Reporter, let's go to

13  the one that's Exhibit 5.

14          (WHEREUPON, the video was played.)

15  BY MR. CHOUDHRI:

16     Q.   Did you hear that, Mr. Roitman?

17     A.   Not well, it was choppy.  Again, it's like

18  who -- I wasn't there.

19     Q.   I did not --

20     A.   So whatever went on, that's selective

21  clips of video, I don't know what the relevance is.

22     Q.   But you don't --

23     A.   And I don't know how I can testify about

24  this at all.  I wasn't even there.  You should be

25  asking questions like this to the people who were

                                        73

1   there, not me.

EXHIBIT 12
Page 88 of 110

2      Q.   Well, Mr. Roitman, I'm asking you because

3  you -- okay.  Who is the -- who does the buck stop

4  with at Romspen?  Aren't you --

5           MR. HIRSCH:  Objection, form.  This is

6  outside the scope of the 9019.  If you can explain

7  the relevance, then I will reconsider instructing

8  the witness not to answer your question.  This is

9  badgering the witness.

10  BY MR. CHOUDHRI:

11     Q.   Mr. Roitman, who is authorized on behalf

12  of Romspen?  Are you authorized on behalf of

13  Romspen?

14     A.   As I explained, I'm --

15           MR. HIRSCH:  Objection, form.

16           THE DEPONENT:  -- I have a role in the GP

17  of this Cayman LP, and I'm authorized to instruct

18  lawyers on behalf of the Cayman LP, and that's what

19  I did in this case.

20  BY MR. CHOUDHRI:

21     Q.   Mr. Roitman, let's -- Madam Court

22  Reporter, let's go to the -- to the video that is 23

23  minutes.

24           MR. HIRSCH:  If you're intending to play

25  the entire video, then it's going to exceed the time

EXHIBIT 12
Page 89 of 110

74

1  available for Mr. Roitman.  He has 12 minutes left

2  of availability.

3       THE DEPONENT:  I have a bunch of people in

4  the board room waiting for me.

5       MR. CHOUDHRI:  Madam Court Reporter, would

6  you go to -- well, I'm going to object to the

7  continuous objections, and coaching the witness, and

8  the constraints put on to have an adequate

9  deposition today.  And I want that to be known on

10  the record.

11       Madam Court Reporter, would you go to 22

12  minutes?  Since Mr. Hirsch is refusing to sit

13  throughout the deposition and watch the 23-minute

14  16-second video, we will go to 22 minutes and play

15  it.

16       Madam Court Reporter, please let me know

17  when you're ready and I will push the button.

18       THE REPORTER:  I'm ready.

19       MR. CHOUDHRI:  At 22 minutes, and I'm

20  going to hit play.

21       (WHEREUPON, the video was played.)

EXHIBIT 12
Page 90 of 110

22 BY MR. CHOUDHRI:

23    Q.  Okay.  Mr. Roitman, did you hear what the

24 trustee said?

25    A.  I heard bits and pieces of this video.  I

75

1 don't know who was who in this video.  I've never

2 met any of these people.  I don't recognize any of

3 them.

4    Q.  I didn't ask you, Mr. Roitman, if you met

5 them, recognize them, or anything like that.  My

6 question to you, Mr. Roitman, are you aware that

7 there was a TRO obtained in State Court to enjoin

8 Romspen from foreclosing on behalf of Galleria Loop

9 Note Holder?

10    A.  You went and got dozens of TROs --

11    MR. HIRSCH:  Object --

12    THE DEPONENT:  You would non-suit them

13 right after you got them.

14    MR. CHOUDHRI:  Objection, not responsive

15 --

**EXHIBIT 12**
**Page 91 of 110**

16          THE DEPONENT:  We would get TROs all the

17  time.

18          MR. CHOUDHRI:  Objection.

19  BY MR. CHOUDHRI:

20      Q.   Mr. Roitman, are you aware that Romspen

21  was enjoined from foreclosing on the October 2024 --

22      A.   I was not involved in this at all.

23      Q.   Who was?

24      A.   I am instructing my Counsel as I described

25  earlier, we did not have any participation or

                            76

1  involvement in this.

2      Q.   Who is "we" not having any --

3      A.   Romspen.  We instructed our Counsel they

4  handle it.  That's it.

5      Q.   So Mr. Roitman, who handled it?  Who

6  handled it?  You're not involved, that's your

7  answer, right?  Your answer is you're not --

8      A.   We were not -- we were not involved.

9  That's right.  I was not involved.  I was not there.

10  You don't see me in the video.  I don't recognize

**EXHIBIT 12**
**Page 92 of 110**

11  any of these people in this video.

12      Q.   Objection, nonresponsive.

13          That's not my question, Mr. Roitman.

14  You're saying, we were not involved, we were not

15  involved.  Who authorized --

16      A.   No, I said I was -- we authorized our

17  lawyers to conduct the fore -- we said foreclose.

18  What happens after that, you know, they report back,

19  but that's it.

20          THE REPORTER:  Please speak one at a time.

21  BY MR. CHOUDHRI:

22      Q.   So Mr. Roitman, they just do whatever they

23  want to do, you don't really instruct them and

24  direct them and call the shots?

25          MR. HIRSCH:  Objection to form.


                                        77


1          THE DEPONENT:  Other than instructing them

2  to start the foreclosure, no.  We're not -- we can't

3  be there every minute.  We're not there.

4  BY MR. CHOUDHRI:

EXHIBIT 12
Page 93 of 110

5      Q.   So who authorized this sale?

6           MR. HIRSCH:  Objection, form.

7           THE DEPONENT:  We authorized the posting.

8    BY MR. CHOUDHRI:

9      Q.   Who authorized so proceed on this

10   foreclosure sale on 1001 West Loop?

11     A.   I don't even know that that's what this

12   is.  It's just a video.

13     Q.   So Mr. Roitman, you said you're not

14   involved in the foreclosure process; is that right?

15     A.   That's right.

16     Q.   And you don't really know what happens,

17   you just authorize your attorneys and they do

18   whatever?  Is that basically it?

19     A.   That's --

20          MR. HIRSCH:  Objection to form.

21   BY MR. CHOUDHRI:

22     Q.   And do you instruct them what the credit

23   bid is?

24     A.   We typically give bidding instructions on

25   foreclosure sales, yes.

EXHIBIT 12
Page 94 of 110

78

1      Q.    And do you give those to the trustee, the

2   substitute trustee?

3      A.    No, we -- we typically give them to

4   Counsel.

5      Q.    And then Counsel gives them to the

6   substitute trustee?

7      A.    I imagine so.  I don't know how -- I don't

8   know how they do it, how they work.

9      Q.    And what is the -- so what are you

10  settling with the trustee is claims that the estate

11  has against Romspen as part of this 9019.  And we

12  can open up the 9019, but you're aware, you

13  understand.  You've been in a lot of these; is that

14  correct?

15     A.    Not like this, no.  I was not.

16     Q.    Objection.

17            How many 9019s or bankruptcy -- I -- I

18  don't know -- I'm not sure we've done another 9019.

19  Maybe.  I don't know.

20     Q.    How many bankruptcies --

21     A.    There's not a lot of cases like this one,

22  Ali.  I'll promise you that one.

23            THE REPORTER:  One at a time.

24  BY MR. CHOUDHRI:

EXHIBIT 12
Page 95 of 110

25      Q.    I would agree.  I haven't seen this

79

1   myself, Mr. Roitman.  How many foreclosures have you

2   been involved in, Mr. Roitman?

3       A.    I don't -- too many to count.  I don't

4   know the number.

5       Q.    Too many to count?  Is it more than ten?

6       A.    Yes.

7       Q.    Is it more than a hundred?

8       A.    I doubt it.  Could be close to a hundred.

9   I don't -- I just don't know.

10      Q.    And have you ever been involved where

11  foreclosures have been invalid or set aside later?

12      A.    It happened -- maybe.  Maybe.  Rarely, but

13  it does happen.

14      Q.    So Bryan Cave was in charge of conducting

15  this foreclosure sale; is that correct?

16          MR. HIRSCH:  Objection to form.

17          THE DEPONENT:  We instruct Counsel, and

18  then what they do -- they're the experts in this,

**EXHIBIT 12**
**Page 96 of 110**

19  not us.

20  BY MR. CHOUDHRI:

21      Q.   So other than just instructing them to go

22  foreclose, you have no other involvement; is that

23  correct?

24      A.   Yes.

25      Q.   So whether the sale is proper or improper,

80

1  you just don't know?

2      A.   That's right.

3      Q.   Only Counsel would know?

4      A.   Yes, and trustees --

5          MR. HIRSCH:  Objection to form.

6          THE DEPONENT:  -- et cetera, yes.

7          THE REPORTER:  What was the answer,

8  please?

9          THE DEPONENT:  I said yes, Counsel, the

10  trustee, whathaveyou.  Legal people.

11  BY MR. CHOUDHRI:

12      Q.   And what is the credit bid that Romspen

13  intends to make if the 9019 is confirmed and

EXHIBIT 12
Page 97 of 110

14  approved?

15          MR. HIRSCH:  Objection to form.

16          THE DEPONENT:  I don't think we should

17  disclose that.  That's going to affect the outcome

18  of the auction.

19  BY MR. CHOUDHRI:

20      Q.   What does Romspen contend they're owed?

21      A.   Whatever's in the proof of claim.

22      Q.   If the proof of claim is accurate and all

23  the offsets are accurate; is that correct?

24      A.   Yes.

25      Q.   And so what is the estate -- how is the

                                                    81

1  estate benefiting from the 9019?

2          MR. HIRSCH:  Objection to form.

3          THE DEPONENT:  I answered that earlier

4  too.  It's the carve-out.

5  BY MR. CHOUDHRI:

6      Q.   And how much does the carve-out equate to?

7      A.   Again, I -- you have to go back and read

EXHIBIT 12
Page 98 of 110

8   it.  I -- I do not know off the top of my head.

9        Q.   Is it more than $10,000?

10       A.   Again, I -- I don't want to answer

11  something I can't remember.  It's in the document.

12  You can read it.

13       Q.   Does --

14       A.   You don't need me to answer that.

15       Q.   Does Romspen have any liability to the

16  estate?

17            MR. HIRSCH:  Objection to form.

18            THE DEPONENT:  No, it's the opposite.  The

19  estate owes us money.

20  BY MR. CHOUDHRI:

21       Q.   And so why is the -- why is Romspen

22  settling?

23       A.   To end this all.  To get it all over with.

24  We're settling with the trustee so this property can

25  finally be sold and we can be done with all the

                                                    82

1   shenanigans and other obstruction activity that's

2   gone on in this case.  Have this property finally

EXHIBIT 12
Page 99 of 110

3  sold and end it.

4      Q.   Well, what if it was already sold in

5  October 2024?

6      A.   It wasn't.  It wasn't sold in October.

7      Q.   And how do you know that?

8      A.   Because it's still held -- again, we

9  answered this.  We're going back on the same old

10  thing.

11      Q.   But you don't know what happened on the

12  October 2024 sale, but you authorized it; is that

13  correct?

14      A.   Yes.

15          MR. HIRSCH:  Mr. Roitman's availability

16  expires in 2 minutes.

17          MR. CHOUDHRI:  I would object to

18  terminating this deposition, but Mr. Hirsch, you can

19  obviously, you know, do what you want, but I would

20  vocalize my objection on the record, that there's

21  not adequate time that's been provided, and there's

22  been a lot of interference, but I understand

23  everybody's trying to do the best they can, and I do

24  appreciate that.

25  BY MR. CHOUDHRI:

**EXHIBIT 12**
**Page 100 of 110**

83

1     Q.   Mr. Roitman, let me ask you this.  And I

2  understand the buck stops with you.  What -- what is

3  a good outcome that Romspen looks to achieve here

4  that you think would be fair and equitable?

5     A.   We're trying to get our money repaid.  We

6  have a debt that's been outstanding and in default

7  for a very long time.  We're trying to get the

8  property sold, get our money back.  That would be

9  fair and equitable.

10     Q.   And Mr. Roitman, are you aware that Xavier

11  moved out of the 1001 building, a tenant that

12  occupied over one full floor?

13     A.   Yes, they were present in the case

14  earlier.

15     Q.   And are you aware that their contention

16  was they were not provided tenant improvement

17  dollars?

18     A.   I think this is all water under the

19  bridge.

20     Q.   Objection.

21     A.   Your relationship with Xavier was a

**EXHIBIT 12**
**Page 101 of 110**

22  disaster, like it is with most of your counter

23  parties, and they left.  They got fed up and they

24  left.

25      Q.   Mr. Roitman, let's talk about

84

1  relationships and counter parties, because it seems

2  to me that you've -- you've brought in other

3  lawsuits and other cases into this case as part of

4  your exhibits.  Are you aware of that?

5          MR. HIRSCH:  Objection to form.  It is

6  2:00 p.m.  This is the end of the agreed time frame

7  that Mr. Roitman was willing to sit for his

8  deposition.  He has other business matters to attend

9  to, as was explained to Mr. Choudhri prior to

10  scheduling this deposition.

11          And accordingly, I am prepared to

12  terminate Mr. Roitman's presence as this deposition.

13          THE DEPONENT:  I have to go.  I have a

14  board room full of people that I pushed already for

15  this to occur.  So.

16          MR. CHOUDHRI:  I would object that this

**EXHIBIT 12**
**Page 102 of 110**

17  was an agreed amount of time.  This was the -- this

18  was a -- Mr. Hirsch, this is not something that I

19  agreed that was adequate, and so I would object to

20  that assertion.

21          And so it appears that Mr. Wesley Roitman

22  is going to terminate, Mr. Hirsch has terminated the

23  deposition, and ending the deposition even though I

24  have more questions.  And I reserve my right to

25  answer more questions -- or ask more questions.

85

1          Mr. Roitman, I have one more question.

2   Are you aware of the settlement agreement between

3   Romspen and the trustee?

4          MR. HIRSCH:  Object.  Time is up.

5          THE DEPONENT:  Bye, guys.

6          (WHEREUPON, Mr. Roitman exited the

7   proceedings.)

8          MR. HIRSCH:  You've had plenty of time to

9   ask your questions, Mr. Choudhri.

10          MR. CHOUDHRI:  Let the record reflect that

**EXHIBIT 12**
**Page 103 of 110**

11   Mr. Roitman has left the deposition, and we did not

12   conclude the deposition, and I did not pass the

13   witness.

14        He terminated unilaterally and has left

15   the deposition.  Ms. Douglas, let the record reflect

16   that.  And I reserve my rights, and we will suspend

17   the deposition.  We are not passing the witness or

18   concluding the deposition.

19        THE REPORTER:  Okay.

20        MR. HIRSCH:  And for the record, just to

21   make it clear, Mr. Roitman appeared voluntarily for

22   a limited period of time for a limited purpose.  He

23   arrived on time and was prepared to proceed on time.

24        He departed at -- at the conclusion of the

25   availability, which was an accommodation to Mr.

86

1   Choudhri whose request for a deposition was made

2   with insufficient notice and with inadequate time to

3   prepare, yet Mr. Roitman appeared.  He answered

4   questions that were presented for two hours on what

5   was intended to be a very limited scope, for which

**EXHIBIT 12**
**Page 104 of 110**

6  Mr. Choudhri repeatedly exceeded.

7       We object to any re-call.  We object to

8  the suspension, we believe that we have satisfied

9  all obligations to the extent any existed, given Mr.

10  Roitman was not subpoenaed, given there was no

11  notice of a deposition that was filed in this case.

12       MR. CHOUDHRI:  And let the record reflect

13  that Mr. Hirsch refused to cooperate with a

14  scheduled deposition or a continuance, and has

15  refused to cooperate and has made multiple

16  objections and running objections, and coaching the

17  witness, and instructing the witness not to answer

18  basic questions that go to the root and fundamental

19  of the matter that is in controversy.

20       But I think -- I think that's it.  Madam

21  Court Reporter --

22       MR. HIRSCH:  It is -- it is patently false

23  that I did not agree to cooperate.  That's why we're

24  here, and you know that, Mr. Choudhri.  My

25  objections were properly posed.  My objections were

87

EXHIBIT 12
Page 105 of 110

1 properly raised.  Answers were given to proper

2 questions.

3          MR. CHOUDHRI:  It's fine, Mr. Hirsch.  I

4 don't have to have the last word.  It's fine.  But I

5 do appreciate everyone's professionalism.  More

6 professionalism is always better.

7          And thank you, Madam Court Reporter.  I

8 appreciated it.  We can go off the record.  Is that

9 okay with you, Mr. Hirsch?

10          MR. HIRSCH:  Yeah.

11          THE REPORTER:  Okay.  Mr. Choudhri, would

12 you like to order the original?

13          MR. CHOUDHRI:  Yes.  Is it possible to get

14 it emailed as soon as possible?

15          THE REPORTER:  Yes.  Would you like it by

16 tomorrow at 5:00 p.m.?

17          MR. CHOUDHRI:  Yeah, that's fine.  If it

18 can be sooner, that would be better.  I would prefer

19 sooner would be better.

20          THE REPORTER:  Okay.  And Mr. Hirsch,

21 you'd like a copy?  And yours is due tomorrow at

22 5:00 p.m.?

23          MR. HIRSCH:  Yes, please.

24          THE REPORTER:  Yes.  Please stand by.

**EXHIBIT 12**
**Page 106 of 110**

25  We're off the record, 2:05 p.m.

88

1          (WHEREUPON, a recess was taken.)

2          MR. CHOUDHRI:  Getting back on the record

3  for sixty seconds.  Madam Court Reporter, we're back

4  on the record.  I believe we're going to get back on

5  at 3:00, so hopefully that's still the case, and

6  we'll go from there.

7          Thank you so much.  So I'll circulate the

8  same Zoom.

9          THE REPORTER:  Sounds good.

10          (WHEREUPON, the deposition of WES ROITMAN

11  was adjourned at 2:05 p.m.)

12

13

14

15

16

17

18

19

EXHIBIT 12
Page 107 of 110

20

21

22

23

24

25

89

1                    CERTIFICATE

2

3        I, Brittany Douglas, do hereby certify that I

4    reported all proceedings adduced in the foregoing

5    matter and that the foregoing transcript pages

6    constitutes a full, true and accurate record of said

7    proceedings to the best of my ability.

8

9        I further certify that I am neither related to

10    counsel or any party to the proceedings nor have any

11    interest in the outcome of the proceedings.

12

13        IN WITNESS HEREOF, I have hereunto set my hand

**EXHIBIT 12**
**Page 108 of 110**

14  this 1st day of August, 2025.

15

16

17

18

19  Brittany Douglas

20  Certificate No. 4235

21

22

23

24

25

                                                    90

1              CORRECTION SHEET

2  Deposition of: Wesley Roitman      Date: 07/31/25

3  Regarding: In Re: 1001 WL LLC, Debtor

4  Reporter: Douglas/Fiedler/Breezee

5  _____

6  Please make all corrections, changes or

7  clarifications to your testimony on this sheet,

8  showing page and line number.  If there are no

**EXHIBIT 12**
**Page 109 of 110**

9    changes, write "none" across the page.  Sign this

10   sheet and the line provided.

11   Page  Line  Reason for Change

12   ____  ____  _____

13   ____  ____  _____

14   ____  ____  _____

15   ____  ____  _____

16   ____  ____  _____

17   ____  ____  _____

18   ____  ____  _____

19   ____  ____  _____

20   ____  ____  _____

21   ____  ____  _____

22   ____  ____  _____

23   ____  ____  _____

24            Signature: _____

25                       Wesley Roitman

**EXHIBIT 12**
**Page 110 of 110**