# AGENCY AGREEMENT

THIS AGENCY AGREEMENT is effective as of the 13th day of April, 2022 (this "**Agreement**"), by and between ALI CHOUDHRI ("**Principal**"), and DREW G. DENNETT and the entities listed in Exhibit A attached hereto and made part hereof for all purposes formed by Drew G. Dennett (collectively, "**Agent**").

## RECITALS:

A. The "**Agency Entities**" (as defined in Exhibit A) have been formed and are held by Drew G. Dennett ("**Dennett**"), as the organizer or manager or member under various articles of organization and other organizational documents, including, without limitation, regulations and company agreements to purchase various properties on behalf of the Principal, including, without limitation, holding record title to the properties ("**Investment Properties**") owned by any of the Agency Entities and the parties agree that Principal owns (directly or indirectly) one hundred percent (100%) of each of the Agency Entities. The Agent is holding the Agency Entities and Investment Properties solely as the trustee for, or as the nominee of, Ali Choudhri, an individual residing in Texas (the "**Beneficial Owner**"), who is, and has been since the Agency Entities' formation, the beneficial owner of 100% of the Agency Entities and Investment Properties and whatever rights, privileges and benefits held, or duties, detriments and obligations owned by the Agency Entities and Investment Properties, belong to, and since the formation of the Company, have belonged to, the Beneficial Owner.

B. Until otherwise terminated, Principal intends that record title to the "**Investment Properties**" be acquired and held by Agent on behalf of Principal and appoints Agent as Principal's agent and nominee for the express purpose of holding record title to the Investment Properties and administering the Investment Properties on Principal's behalf.

## AGREEMENT:

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto do hereby agree as follows:

1. **Purpose of this Agreement; Appointment of Agent.** Principal hereby designates and appoints Agent as Principal's agent for the express purpose of acquiring and holding record title to the Investment Properties and acting on Principal's behalf in connection with the administration of the Investment Properties, and Agent accepts such designation and agrees to act pursuant to Principal's specific written directions with regard to the Investment Properties, but not otherwise. Agent shall hold record title with respect to the Investment Properties, and will take such action with respect to the Investment Properties as Principal may direct. Principal shall bear the responsibility for all expenses incurred by Agent in fulfilling these responsibilities. Notwithstanding that Agent holds record title to the Investment Properties and acts as Principal's agent with respect to the Investment Properties, Principal shall possess all of the benefits and burdens of ownership of the Investment Properties, including the ownership of the Investment Properties for U.S. federal, and applicable state, local and other, income tax

1

purposes. In furtherance of the preceding provisions, the parties hereto expressly provide as follows:

(a) Principal hereby constitutes and appoints Agent as nominee and agent for Principal with respect to the ownership of the Investment Properties, including the acquisition, management, operation and disposition of all or any portion of the Investment Properties as agent for Principal, the execution of documents or other instruments with respect thereto and the making or granting of any election, determination, waiver, consent or other similar action with respect thereto.

(b) Notwithstanding anything herein or Exhibit A to the contrary, the Agency Entities shall include all entities organized or formed or owned or managed by the Agent within 24 months immediately prior to the date hereof and after the date hereof unless Agent and Principal enter a separate written agreement specifically releasing any such entity as an Agency Entity.

(c) Notwithstanding anything herein or Exhibit A to the contrary, the Agency Entities shall be deemed to include all entities organized by the Agent on or after the date hereof unless Agent and Principal enter a separate written agreement specifically releasing any such entity as an Agency Entity.

(d) Principal hereby ratifies, reconfirms and agrees to any actions of and any agreements and transactions entered into by Agent prior to the date of this Agreement on Principal's behalf as its nominee and agent with respect to the Investment Properties.

(e) Agent, with the specific written authorization of Principal, but not otherwise, may appoint any person, firm or corporation to act as its agent or representative for the purpose of performing any function that Agent is or may be authorized by Principal to perform.

Principal and Agent intend that Principal shall have the sole and exclusive right and control to make and direct all decisions relating to the Agency Entities and Investment Properties, including, without limitation:

(a) the sale, pledge, assignment, transfer, conveyance, encumbrance and/or alienation of any and all assets held by the Agency Entities;

(b) the approval of any and all Leases, including amendments thereto, related to any and all real estate held by the Agency Entities;

(c) the sale, pledge, assignment, transfer, conveyance and/or alienation of any or all ownership or membership interests in the Agency Entities;

(d) the approval of any financing, including refinancing, of any debt associated with any and all real estate held by the Agency Entities;

(e) the placement of any additional debt on any and all real estate held by the Agencies Entities;

(f) the filing, prosecution or defense of any lawsuit related to or concerning the Investment Properties; and

(g) the approval of any and all budgets as required of, or contemplated by, the organizational documents of the Agent.

2. **Cooperation; Actions.** Agent will cooperate with Principal in taking such action as is practicable to cause all income and other revenues from the Investment Properties to inure to the sole benefit of Principal and communications from others with respect thereto to be directed to Principal at such address as Principal may furnish to Agent. Agent shall execute any documents or instruments as authorized by Principal.

3. **Furnishing of Information.** Upon Principal's request, Agent will furnish to Principal true and correct copies of all title information, conveyances, agreements and other documents and all pertinent accounting and historical information in Agent's possession relating to the Investment Properties. Upon Agent's request, Principal will furnish to Agent written authorization to act on behalf of Principal as shall be necessary to the performance by Agent of its duties under this Agreement. Principal will be available to and will cooperate with Agent to furnish information relating to the Investment Properties.

4. **Bank Account; Collection of Revenues and Proceeds.** Agent shall maintain bank accounts and handle the collection of revenues and proceeds with respect to the Investment Properties. In this connection, it is contemplated that all income and other revenues and distributions from the Investment Properties shall be paid to Principal and Agent shall deposit such funds into a bank account held by Agent or as otherwise provided in writing by Principal.

5. **Books and Records.** Agent shall maintain books and records related to the Investment Properties, including such books and records as are necessary to document record title or as relate to the agency arrangement described herein or as is otherwise required for Principal or Agent to comply with all applicable laws, rules and regulations with respect to their contemplated activities and the existence of the agency relationship pursuant to this Agreement.

6. **Liability and Reimbursement.** Principal shall be liable for all costs, expenses, taxes and other charges arising in connection with Agent's holding record title to the Investment Properties. In this connection, Principal shall pay directly for Agent any such costs, expenses, taxes and charges that Agent is required to pay and for the actual cost to Agent of any services for which Agent contracts for the purpose of complying with the directions of Principal, including the costs of legal, accounting and other professional services and advice, administrative and management costs and franchise and other U.S. federal, state and local taxes.

7. **Agent's Compliance Obligations.** Agent shall (i) with respect to the Investment Properties, act solely as an agent and nominee for and on behalf of the Principal as set forth herein, (ii) function as agent and not principal with respect to the Investment Properties for all purposes, (iii) hold itself out as the agent and not principal in all dealings with third parties relating to the Investment Properties and (iv) otherwise carry on the normal duties of an agent.

8. **Amendment of Agreement.** This Agreement may be amended or modified at any time by a document in writing, executed by Principal and Agent.

9. **Termination of Agreement.** (a)

(i) Principal may terminate this Agreement by giving one (1) day written notice to Agent. The termination shall be effective one (1) day after the date of such written notice by Principal. All actions taken pursuant to the terms of this Agreement by Agent prior to the receipt of the written notice of termination shall be valid and binding upon Principal.

(ii) Agent may terminate this Agreement by giving ten (10) days written notice to Principal. The termination shall be effective ten (10) days after the date of such written notice by Agent. All actions taken pursuant to the terms of this Agreement by Agent prior to the receipt of the written notice of termination by Principal shall be valid and binding upon Principal.

(b) Upon termination of this Agreement, Agent shall immediately convey, assign and transfer to Principal, or another U.S. entity, as determined by Principal, Agent's all of Agent's rights, title, and interests, including any beneficial ownership, of the Investment Properties, including all benefits and burdens of ownership thereto, and all funds and other assets of every kind and nature held by Agent on behalf of Principal, with such conveyance to be made in the manner reasonably agreed by Principal and Agent or other recipient U.S. entity, it being the intention of Principal and Agent that upon termination of this Agreement full record and beneficial ownership shall immediately be transferred or otherwise vested in Principal or other recipient U.S. entity.

(c) Unless sooner terminated, this Agreement and all provisions hereof shall remain in full force and effect for as long as any Investment Properties is held by Agent for the benefit of Principal, and until terminated beneficial ownership of such Investment Properties shall be held by Principal in accordance with this Agreement.

10. **Governing Law.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REFERENCE TO THE CONFLICT OF LAWS PROVISIONS THEREUNDER.

11. **Notices.** All notices hereunder shall be sufficiently given for all purposes hereunder if in writing and delivered personally or sent by documented overnight delivery service, United States mail, email or other electronic transmission service to the applicable address set forth opposite the names of the parties on the signature pages to this Agreement or to such other address as may be designated in writing to the other parties from time to time.

12. **No Assignments; Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns, and may not be assigned by Agent in whole or in part by any party without the prior written consent of all other affected parties. Principal my assign its rights under this Agreement without the prior written consent of the Agent.

13. **Interpretation; Severability.** This Agreement shall be construed to meet the requirements stated in the decision of the U.S. Supreme Court in *Commissioner v. Bollinger*, 485 U.S. 340 (1988), for the establishment of a nominee relationship between Principal and Agent for U.S. federal, and applicable state, local and other, income tax purposes. Any ambiguities within this Agreement shall be resolved in favor of complying with these requirements. Subject to the preceding sentences, should any part of this Agreement for any reason be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion thereof eliminated. The intention of the parties is that they would have executed the remaining portion of this Agreement including therein any such part, parts or portion which may, for any reason, be hereafter declared invalid.

14. **Survival of Provisions After Termination.** The provisions of <u>Paragraph 6</u> of this Agreement shall survive the termination of this Agreement for any reason with respect to liabilities or obligations under such provisions that accrue or arise during the period of time that this Agreement, including any amendments, replacements or renewals of this Agreement, is valid and in effect.

15. **Nondisclosure.** It is agreed that the parties will keep this Agreement and the terms of this Agreement strictly confidential and will not release or disclose same to third parties unless necessary to effectuate the purpose of this Agreement, required for legitimate tax reporting, or ordered to do so by a court of competent jurisdiction.

16. **Effect of Agreement.** This Agreement shall not be deemed to have the effect of creating a joint venture, partnership or association relationship between or among any of the parties hereto. So long as the agency continues with respect to Principal, (i) no interest hereunder of Principal shall be assignable or transferable except with the consent of Agent and (ii) no interest hereunder of Agent shall be assignable or transferable except with the consent of Principal.

17. **Further Assurances.** Each party hereto agrees that it shall execute and deliver or cause to be executed and delivered from time to time such instruments, documents, agreements, consents and assurances and take such other action as the other party may reasonably request to consummate the transactions contemplated hereby, including without limitation, any conveyances of the property owned by an Agent to an entity designated by Principal. Such documents shall be executed and delivered to the requesting party within three business days following delivery of the requested documents.

18. **Multiple Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument.

19. **References and Construction.**

    (a) All references in this Agreement to articles, sections, subsections and other subdivisions refer to corresponding articles, sections, subsections and other subdivisions of this Agreement unless expressly provided otherwise.

(b)     Titles appearing at the beginning of any such subdivisions are for convenience only and shall not constitute part of such subdivisions and shall be disregarded in construing the language contained in such subdivisions.

(c)     The words "this Agreement", "this instrument", "herein", "hereof", "hereby", "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

(d)     Words in the singular form shall be construed to include the plural and vice versa, unless the context otherwise requires.  Pronouns in masculine, feminine and neuter genders shall be construed to include any other gender.

(e)     Examples shall not be construed to limit, expressly or by implication, the matters they illustrate.

(f)     The word "includes" and its derivatives means "includes, but is not limited to" and corresponding derivative expressions.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK--
SIGNATURE PAGE FOLLOWS**



IN WITNESS WHEREOF, Agent and Principal have executed this Agreement on the day and year first written above.

**AGENT:**

**DREW DENNETT**

**Address for Notice:**
2450 Wickersham Lane, Unit 202
Austin, Texas 78741

By: _____
Name: Drew Dennett

**PRINCIPAL:**

**ALI CHOUDHRI**

**Address for Notice:**
1001 West Loop Suite 700
Houston, Texas 77027
Attn: Ali Choudhri

By: _____
Name: Ali Choudhri

7

## **EXHIBIT A**

**Investment Properties**

1. STV ATX LLC, a Texas Limited Liability Company, formed on March 31st, 2022, bearing Texas Secretary of State File Number 0804499920;
2. NIA ATX LLC, a Texas Limited Liability Company, formed on March 31st, 2022, bearing Texas Secretary of State File Number 0804499932;
3. SAL ATX LLC, a Texas Limited Liability Company, formed on March 31st, 2022, bearing Texas Secretary of State File Number 0804499913;
4. Maya J ATX LLC, a Texas Limited Liability Company, formed on March 31st, 2022, bearing Texas Secretary of State File Number 0804499887; and
5. MJT ASSETS LLC, a Texas Limited Liability Company, formed on April 1, 2021, bearing Texas Secretary of State File Number 0804008404.



8