**Trey White**

| | |
|---|---|
| **From:** | Jennifer MacGeorge <jmac@jlm-law.com> |
| **Sent:** | Monday, June 27, 2022 10:03 AM |
| **To:** | drew@jagocorp.com; treywhite@villawhite.com |
| **Subject:** | Company Agreement |
| **Attachments:** | NIA ATX Company Agreement.pdf |

Trey,

Attached is the company agreement for your records.


Jennifer MacGeorge
ATX Tenant Law
512.215.4129
Jmac@jlm-law.com

# COMPANY AGREEMENT

## OF

## NIA ATX LLC
### (A Texas Limited Liability Company)

THE MEMBERSHIP INTEREST REFERENCED HEREIN HAS BEEN ACQUIRED FOR INVESTMENT AND HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE SECURITIES LAWS. WITHOUT REGISTRATION, THIS SECURITY MAY NOT BE SOLD, PLEDGED, HYPOTHECATED, OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT ON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE MANAGERS OF THE COMPANY THAT REGISTRATION IS NOT REQUIRED FOR THE TRANSFER, OR THE SUBMISSION TO THE MANAGERS OF THE COMPANY OF OTHER EVIDENCE SATISFACTORY TO THE MANAGERS TO THE EFFECT THAT ANY TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND APPLICABLE STATE SECURITIES LAWS OR ANY RULE OR REGULATIONS PROMULGATED THEREUNDER.

# COMPANY AGREEMENT

## OF

## NIA ATX LLC

### (A Texas Limited Liability Company)

THIS LIMITED LIABILITY COMPANY AGREEMENT, dated effective as of the Effective Date (as defined below), is hereby duly adopted as the Company Agreement of NIA ATX LLC, a Texas limited liability company, by the Managers (as defined below), and is hereby ratified, confirmed and approved as such by the sole Member (as defined below).

## ARTICLE 1

## DEFINITIONS

1.1. **Definitions.** The following terms used in this Company Agreement shall have the following meanings (unless otherwise expressly provided herein):

"*Act*" means the Texas Business Organizations Code, as amended.

"*Affiliate*" means any person controlling or controlled by or under common control with the Company including, without limitation (i) any person who has a familial relationship, by blood, marriage or otherwise with any partner or employee of the Company, or any affiliate thereof and (ii) any person which receives compensation for administrative, legal or accounting services from this Company, or any affiliate. For purposes of this definition, "control" when used with respect to any specified person, means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"*Business Day*" means a day other than a Saturday, Sunday or other day that is a nationally recognized holiday.

"*Capital Contribution*" means any contribution to the capital of the Company in cash or property by the Member whenever made.

"*Certificate*" means the Certificate of Formation filed on behalf of the Company with the Secretary of State of the State of Texas in accordance with all applicable statutes.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Company*" means NIA ATX LLC, a Texas limited liability company.

"*Company Agreement*" means this Company Agreement of NIA ATX LLC, as originally adopted and as amended.

"*Covered Person*" means each Manager and, to the extent provided by the Managers, any other employee or agent of the Company.

"*Effective Date*" means the date the Certificate was filed with the Secretary of State of the State of Texas.

"*Fiscal Year*" means the Company's fiscal year, which shall be the calendar year.

"*Indemnifiable Losses*" has the meaning set forth in Section 3.14.

"*Lender*" means the holder of a first mortgage lien encumbering the "Property" (hereafter defined) that secures the indebtedness of the Company to the Lender.

"*Majority*" means, with respect to any referenced group of Managers, a combination of any of such Managers constituting more than fifty percent (50%) of the number of Managers of such referenced group who are then elected and qualified.

"*Manager*" means the Person designated as Manager on Exhibit A, or any other Person or Persons that succeed such Person in that capacity or are elected to act as additional Managers of the Company as provided herein.

"*Member*" means the Person designated as the Member on Exhibit A.

"*Membership Interest*" means the entire equity interest of the Member in the Company and all rights and liabilities associated therewith including, without limitation, rights to distributions (liquidating or otherwise) and allocations.

"*Person*" means a natural person or any corporation, limited liability company, partnership, limited partnership, joint venture, trust, estate, governmental entity or other entity.

"*Proceeding*" has the meaning set forth in Section 3.14.

1.2. **Other Definitional Provisions.** All terms used in this Company Agreement that are not defined in this Article 1 have the meanings contained elsewhere in this Company Agreement.

### ARTICLE 2

### FORMATION

2.1. **Name and Formation.** The name of the Company is NIA ATX LLC. All business of the Company must be conducted in that name or in one or more other names that comply with applicable law and that are selected by the Managers from time to time. The Company was formed as a limited liability company upon the issuance of the Certificate of Formation to the Company from the Secretary of State of the State of Texas, pursuant to the Act.

2.2. **Principal Place of Business.** The principal office and place of business of the Company are set forth on Exhibit A. The Company may locate its place of business and principal office at any other place or places as the Managers may from time to time deem necessary or advisable.

**Receiver Exhibit 2-A**

2.3. **Registered Office and Agent.** The registered office and registered agent of the Company shall be the registered office and registered agent named in the Certificate and set forth on Exhibit A. The Company may change the registered office and registered agent as the Managers may from time to time deem necessary or advisable.

2.4. **Duration.** The period of duration of the Company is perpetual from the date its Certificate was filed with the Secretary of State of the State of Texas, unless the Company is earlier dissolved in accordance with either the provisions of this Company Agreement or the Act.

2.5. **Purposes and Powers.**

The nature of the business and the purposes to be conducted and promoted by the limited liability company are to engage solely in the following activities:

(a) To acquire certain parcels of real property or first lien debt, together with all improvements thereon.

(b) To own, hold, sell, assign, transfer, develop, operate, lease, mortgage, pledge and otherwise deal with the Property.

(c) To exercise all powers enumerated in the Act or necessary or convenient to the conduct, promotion or attainment of the business or purposes otherwise set forth herein.

2.6. **The Company.** The Company shall only incur indebtedness in an amount necessary to acquire, operate and maintain the Property. For so long as any mortgage lien or deed of trust lien ("First Mortgage") in favor of the Lender exists on any portion of the Property, the Company shall not incur, assume, or guaranty any other secured indebtedness. For so long as the First Mortgage exists on any portion of the Property, the Company shall not dissolve or liquidate, or consolidate or merge with or into any other entity, or convey or transfer its properties and assets substantially as an entirety or transfer any of its Company interests to any entity. For so long as the First Mortgage exists on any portion of the Property, the Company will not voluntarily commence a case with respect to itself, as debtor, under the Federal Bankruptcy Code or any similar federal or state statute without the unanimous consent of all of the partners of the Company. For so long as the First Mortgage exists on any portion of the Property, no material amendment to this partnership agreement may be made without first obtaining approval of the mortgagee or beneficiary holding the First Mortgage on any portion of the Property.

2.7. **Foreign Qualification.** The Managers shall cause the Company to comply, to the extent legally possible, with all requirements necessary to qualify the Company as a foreign limited liability company in each jurisdiction in which the Company conducts business. To the extent required by law or as the Managers determine is otherwise advisable, the Managers shall execute, acknowledge, swear to and deliver all certificates and other instruments conforming with this Company Agreement that are necessary or appropriate to qualify, continue and terminate the Company as a foreign limited liability company in all jurisdictions in which the Company conducts business.

2.8. **Taxation as a Disregarded Entity.** Solely for federal income tax purposes, the Company shall be disregarded as an entity separate from its Member so long as the Company is deemed to have a single Member under the Code. If necessary, the Member shall make an election to that effect on behalf of the Company in accordance with the Code and the Treasury Regulations promulgated thereunder. In the event that the Company has more than one Member for federal income tax purposes and can no longer be classified as a disregarded entity, the Company's new classification for federal

income tax purposes shall be determined by the unanimous consent of all Members, and the Members shall take any and all necessary and appropriate actions to effect such classification.

### ARTICLE 3

### RIGHTS AND DUTIES OF MANAGERS

3.1. **Management.** The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under, its designated Manager or Managers. In addition to the powers and authorities expressly conferred by this Company Agreement upon the Managers, the Managers may exercise all such powers of the Company and do all such lawful acts and things as are not directed or required to be exercised or done by the Member by the Act or this Company Agreement, including, but not limited to, contracting for or incurring debts, liabilities and other obligations on behalf of the Company.

3.2. **Number and Qualifications.** The number of Managers shall not be less than one (1), as may be determined by the Member from time to time, but no decrease in the number of Managers shall have the effect of shortening the term of any incumbent Manager. Managers need not be residents of the State of Texas. The Managers in their discretion may elect a chairman of the Managers who shall preside at meetings of the Managers.

3.3. **Election.** At the first annual meeting of the Member and at each annual meeting thereafter, the Member shall elect one or more Managers to hold office until the next succeeding annual meeting. Unless removed in accordance with this Company Agreement, each Manager shall hold office for the term for which such Person is elected and until such Person's successor shall be elected.

3.4. **Vacancy.** Any vacancy occurring for any reason in the number of Managers shall be filled by the Member. A Manager elected to fill a vacancy shall be elected for the unexpired term of the predecessor in office.

3.5. **Removal.** At a meeting called expressly for such purpose, all or any lesser number of Managers may be removed at any time, with or without cause, by the Member.

3.6. **Place of Meetings.** All meetings of the Managers may be held either within or without the State of Texas.

3.7. **Annual Meetings.** The annual meeting of Managers shall be held, without further notice, immediately following the annual meeting of the Member, and at the same place, or at such other time and place as shall be fixed with the consent in writing of all the Managers.

3.8. **Regular Meetings.** Regular meetings of the Managers may be held without notice at such time and place either within or without the State of Texas as shall from time to time be determined by the Managers.

3.9. **Special Meetings.** Special meetings of the Managers may be called by any Manager on three (3) Business Days' notice to each Manager, either personally or by mail, by telephone or by facsimile transmission.

NIA ATX LLC Company Agreement 4

3.10. **Quorum**. At all meetings of the Managers, the presence of a Majority of all the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business unless a greater number is required by law. At a meeting at which a quorum is present, the act of a Majority of the Managers present at the meeting shall be the act of the Managers, except as otherwise provided by law or this Company Agreement. If a quorum is not present at any meeting of the Managers, the Managers present at the meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

3.11. **Attendance and Waiver of Notice.** Attendance of a Manager at any meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Managers need be specified in the notice or waiver of notice of such meeting.

3.12. **Compensation**. Managers, as such, shall not receive any stated salary for their services, but shall receive such compensation for their services as may be from time to time agreed upon by the Member. In addition, a fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Managers, provided that nothing contained in this Company Agreement shall be construed to preclude any Manager from serving the Company in any other capacity and receiving compensation for such service.

3.13. **Officers**.

(a) Officers of the Company may be appointed by the Managers. The Managers may appoint a President, one or more Vice Presidents, a Secretary, a Treasurer and any other officer or assistant officer as they deem appropriate. Any two or more offices may be held by the same person. Each officer shall be appointed for such term and shall exercise such powers, perform such duties and have such authority as determined from time to time by the Managers.

(b) The following officers of the Company, if appointed, shall have such powers and duties, except as modified by the Managers, as generally pertain to their offices, respectively, as well as such powers and duties as from time to time shall be conferred by the Managers and by this Company Agreement:

(i) President. The President of the Company, subject to the control of the Managers, shall have the responsibility for the general direction of the operational and other affairs of the Company, general supervision over its other officers, and general overall responsibility for the day-to-day operations of the Company. The President may sign in the name of the Company (1) all contracts or other instruments authorized by the Managers and (2) all contracts or instruments in the usual and regular course of business of the Company, except in cases where the signing thereof shall be expressly delegated by the Managers or by this Company Agreement to some other officer or agent of the Company or when the Managers shall have expressly provided that the President shall not have such authority. In addition, the President shall perform all duties incident to the office of chief executive officer and such other duties as from time to time may be assigned to him or her by the Managers or as prescribed by this Company Agreement.

(ii) Vice Presidents. At the request of the President, or in his or her absence or disability, the Vice Presidents, in the order of their election, shall perform the duties of

the President, and, when so acting, shall have all the powers of, and be subject to all restrictions upon, the President. The Vice Presidents shall perform such duties as may from time to time be assigned to them by the Managers or President.

(iii) <u>Secretary</u>. The Secretary shall keep the minutes of all meetings of the Members and shall have general charge of such books and records of the Company as the Managers may direct, and in general shall perform all duties and exercise all powers incident to the office of Secretary and such other duties and powers as the Managers or the President may from time to time assign to or confer on the Secretary.

(iv) <u>Treasurer</u>. The Treasurer shall keep (or cause to be kept) full and accurate accounts of receipts and disbursements in the Company's books, deposit all money and other valuable effects in the name and to the credit of the Company, disburse Company funds, taking proper vouchers for all disbursements, and perform all such other duties as, from time to time, may be assigned to him or her by the Managers.

(c) The officers of the Company shall perform their duties with ordinary prudence and in a manner reasonable under the circumstances.

(d) The compensation of all officers of the Company shall be determined by the Managers.

(e) Each officer of the Company shall hold office until his successor is chosen and qualified in his stead or until his resignation or removal from office. Any officer appointed by the Managers may be removed either with or without cause by the Managers, but such removal shall be without prejudice to the contract rights, if any, of the individual so removed. If the office of any officer becomes vacant for any reason, the vacancy may be filled by the Managers.

3.14. **Indemnification; Insurance.**

(a) Each Covered Person who was or is made a party or is threatened to be made a party or is involved in any threatened, pending or completed action, suit or proceeding, whether formal or informal, whether of a civil, criminal, administrative or investigative nature (hereinafter a "***Proceeding***"), by reason of the fact that such Covered Person is or was a Covered Person or is or was serving as a manager, director, officer, employee or agent of any other entity at the request of the Company, whether the basis of such proceeding is an alleged action or inaction in an official capacity or in any other capacity while serving in that official capacity, shall be indemnified and held harmless by the Company against all costs, charges, expenses, liabilities and losses, including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid or to be paid in settlement (collectively, "***Indemnifiable Losses***") reasonably incurred or suffered by the Covered Person in connection therewith if with respect to the subject matter of such Proceeding the Covered Person acted in good faith and in a manner reasonably believed by such Person to be (i) in or not opposed to the best interests of the Company and, with respect to any criminal action or proceeding, such Person had no reasonable cause to believe such Person's conduct was unlawful, and (ii) within the scope of the authority conferred by this Agreement or by law or by the consent of the Managers or all Members in accordance with the provisions of this Company Agreement. Such indemnification shall continue as to a Covered Person who has ceased to serve in such capacity and shall inure to the benefit of the Covered Person's successors, heirs, executors and administrators. The Managers shall make the determination (or shall appoint independent legal counsel to make the determination) as to whether or not the Covered Person and

his or her actions have met the requirements set forth herein for indemnification; provided, however, that the Company shall indemnify any Covered Person who has been successful on the merits or otherwise in the defense of a Proceeding or any claim, issue or matter therein, against any Indemnifiable Losses incurred in connection therewith.

(b) The Company shall pay expenses actually and reasonably incurred by a Covered Person in connection with any Proceeding in advance of its final disposition; provided, however, that the payment of such expenses incurred in advance of the final disposition of a Proceeding shall be made only upon delivery to the Company of an undertaking, by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined that such Covered Person is not entitled to be indemnified.

(c) If a Covered Person is entitled to payment under Section 3.14(a) and is not paid in full by the Company within thirty (30) days after a written claim has been received by the Company, such Covered Person may at any time thereafter bring suit against the Company to recover the unpaid amount of the claim and, if successful in whole or in part, the Covered Person shall be entitled to be paid also the expense of prosecuting such claim.

(d) To the extent that any Manager, officer, or employee of the Company is by reason of such position, or position with another entity at the request of the Company, a witness in any Proceeding, such Person shall be indemnified against all costs and expenses actually and reasonably incurred by such Person in connection therewith.

(e) The Company may purchase and maintain insurance, at its expense, to protect itself and any Manager, officer, or employee of the Company against any Indemnifiable Losses, whether or not the Company would have the power to indemnify such Person against such Indemnifiable Losses.

(f) The Company may enter into agreements with any Manager, officer, employee or agent of the Company providing for indemnification to the fullest extent permissible under the laws of Texas.

(g) Each and every term and provision of this Section 3.14 is separate and distinct, so that if any term or provision of this Section 3.14 is held to be invalid or unenforceable for any reason, such invalidity or unenforceability shall not affect the validity or enforceability of any other term or provision hereof. To the extent required, any term or provision of this Section 3.14 may be modified by a court of competent jurisdiction to preserve its validity and to provide the Covered Person with, subject to the limitations set forth in this Section 3.14 and any agreement between the Company and the Covered Person, the broadest possible indemnification consistent with the intent hereof.

(h) Each of the rights conferred on a Covered Person by subsections (a), (b), (c), and (d) of this Section 3.14 and on officers and employees of the Company by Section 3.14(d) shall be a contractual right and any repeal or amendment of the provisions of this Section 3.14 shall not adversely affect any right hereunder of any Person existing at the time of such repeal or amendment with respect to any act or omission occurring prior to the time of such repeal or amendment, and, further, shall not apply to any proceeding, irrespective of when the proceeding is initiated, arising from the service of such Person prior to such repeal or amendment.

Receiver Exhibit 2-A

(i) The rights conferred in this Section 3.14 shall not be exclusive of any other rights that any Person may have or hereafter acquire under any statute, agreement, consent of the Managers, consent of the Members or otherwise.

(j) No Member shall have any obligation to contribute to the capital of the Company or otherwise provide funds to enable the Company to fund its obligations under this Section 3.14.

(k) A Covered Person shall not be denied indemnification in whole or in part under this Section 3.14 because the Covered Person had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise permitted by this Agreement.

(l) **THE FOREGOING INDEMNIFICATION SPECIFICALLY INCLUDES THOSE CLAIMS THAT ARISE OUT OF THE COVERED PERSON'S SOLE, JOINT OR CONTRIBUTORY NEGLIGENCE, BUT SPECIFICALLY EXCLUDES THOSE CLAIMS THAT ARISE OUT OF THE COVERED PERSON'S WILLFUL MISCONDUCT, FRAUD OR GROSS NEGLIGENCE. THE MEMBER AND MANAGER WOULD NOT HAVE ENTERED THIS AGREEMENT IF NOT FOR THIS INDEMNIFICATION.**

(m) Any indemnification of the Company's Members and Managers shall be fully subordinated to any obligations respecting the Property (including, without limitation, the First Mortgage) and such indemnification shall not constitute a claim against the Company in the event that cash flow in excess of amounts necessary to pay holders of such obligations is insufficient to pay such obligations.

3.15. **Actions Without a Meeting.** Notwithstanding any provision contained in this Article 3, all actions of the Managers provided for herein may be taken by written consent without a meeting. Any such action that may be taken by the Managers without a meeting shall be effective only if the consent is in writing, states the action to be taken and is signed by the number of Managers necessary to have at least the minimum number of votes that would be necessary to take the action at a meeting at which each Manager entitled to vote on the action is present and votes.

## ARTICLE 4

### RIGHTS AND DUTIES OF THE MEMBER

4.1. **Place of Meetings.** All meetings of the Member shall be held at the principal office of the Company or at such other place within or without the State of Texas as may be determined by the Member and set forth in the respective notice or waivers of notice of such meeting.

4.2. **Annual and Special Meetings.** The annual and special meetings of the Member for the election of Managers and the transaction of such other business as may properly come before the meeting shall be held at such time and date as shall be designated by the Member from time to time.

4.3. **Actions Without a Meeting.** Notwithstanding any provision contained in this Article 4, all actions of the Member provided for herein may be taken by written consent without a meeting. Any such action that may be taken by the Member without a meeting shall be effective only if the consent is in writing, sets forth the action so taken, and is signed by the Member.

4.4. **Number.** There shall be only one (1) Member of the Company, that being NIA ATX LLC, his successor or assignee.

## ARTICLE 5

## CAPITALIZATION

5.1. **Capital Contributions.**

(a) The Member has contributed cash or property to the Company in the amount set forth as the Capital Contribution of such Member on Exhibit A. Such cash or property shall be the Capital Contribution of the Member and, in connection with such contribution, the Member shall receive his Membership Interest.

(b) If at any time the Member determines that the Company has insufficient funds to carry out the purposes of the Company, the Member may make additional Capital Contributions.

(c) The Member shall not be paid interest on any Capital Contribution.

5.2. **Withdrawal or Reduction of Capital Contributions.**

(a) The Member shall not receive out of the Company's property any part of his Capital Contribution until all liabilities of the Company have been paid or there remains property of the Company sufficient to pay such liabilities.

(b) Except as may be otherwise specifically provided in this Company Agreement, the Member shall have the right to withdraw all or any part of his Capital Contribution.

5.3. **Liability of the Member.** The Member shall not be liable for the debts, liabilities or obligations of the Company beyond his Capital Contributions. The Member shall not be required to contribute to the capital of, or to loan any funds to, the Company.

## ARTICLE 6

## DISTRIBUTIONS

6.1. **Distributions.** Subject to Section 6.2, the Company shall make all distributions at such times as determined by the Member.

6.2. **Limitation Upon Distribution.** No distribution shall be declared and paid unless, after the distribution is made, the value of assets of the Company exceeds the liabilities of the Company, excluding liabilities to the Member on account of his Capital Contributions.

## ARTICLE 7

## BOOKS AND ACCOUNTS

7.1. **Records and Reports.** At the expense of the Company, the Managers shall maintain records and accounts of all operations and expenditures of the Company.

7.2. **Returns and Other Elections.** The Managers shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed

**Receiver Exhibit 2-A**

necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information therefrom, shall be furnished to the Member as soon as practicable after the end of each Fiscal Year. All elections permitted to be made by the Company under federal or state laws shall be made by the Managers with the consent of the Member.

## ARTICLE 8

## DISSOLUTION AND TERMINATION

8.1. **Dissolution**.

(a) The Company shall be dissolved upon the first of the following to occur:

(i) Upon the election to dissolve the Company by the Member;

(ii) Upon the death, retirement, resignation, expulsion, bankruptcy, legal incapacity or dissolution of the Member, or the occurrence of any other event that terminates the continued membership of the Member; or

(iii) The entry of a decree of judicial dissolution under the Act.

(b) Upon dissolution of the Company, the business and affairs of the Company shall terminate, and the assets of the Company shall be liquidated under this Article 8.

(c) Dissolution of the Company shall be effective as of the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until there has been a winding up of the Company's business and affairs, and the assets of the Company have been distributed as provided in Section 8.2.

(d) Upon dissolution of the Company, the Managers may cause any part or all of the assets of the Company to be sold in such manner as the Managers shall determine in an effort to obtain the best prices for such assets; *provided, however* the Managers may distribute assets of the Company in kind to the Member to the extent practicable.

(e) So long as the Company remains owner of the Property subject to the First Mortgage, the Company shall not terminate or dissolve solely as a consequence of the bankruptcy or insolvency of any Member or Manager, but a successor Manager shall be elected pursuant to Article 3 of this company Agreement.

(f) Subject to applicable law, dissolution of the Company shall not occur so long as the Company remains owner of any portion of the Property subject to the First Mortgage.

8.2. **Distribution of Assets Upon Dissolution**. In settling accounts after dissolution, the assets of the Company shall be paid in the following order:

(a) First, to creditors, in the order of priority as provided by applicable law; and

(b) Second, any remainder shall be distributed to the Member.

NIA ATX LLC Company Agreement 10

Receiver Exhibit 2-A

8.3. **Certificate of Termination**. When all liabilities and obligations of the Company have been paid or discharged, or adequate provision has been made therefor, and all of the remaining property and assets of the Company have been distributed to the Member according to his respective rights and interests, the Certificate of Termination shall be executed on behalf of the Company by the Managers or the Member and shall be filed with the Secretary of State of the State of Texas, and the Managers and the Member shall execute, acknowledge and file any and all other instruments necessary or appropriate to reflect the dissolution and termination of the Company.

## ARTICLE 9

## TRANSFERS OF THE MEMBERSHIP INTEREST

The Member may sell, assign or otherwise transfer all or any portion of his Membership Interest at any time to any Person as long as such transfer would not result in a violation of applicable law, including U.S. federal or state securities laws.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

10.1. **Notices**.

(a) Any notice, notification, demand or request provided or permitted to be given under this Company Agreement must be in writing and shall have been deemed to have been properly given, unless explicitly stated otherwise, if sent by (i) FedEx or other comparable overnight courier, (ii) registered or certified mail, postage prepaid, return receipt requested, or (iii) via facsimile transmission during normal business hours to the place of business of the recipient.

(b) For purposes of all notices, the addresses and facsimile numbers of the Manager and the Member are set forth on Exhibit A.

(c) All notices, notifications, demands or requests so given shall be deemed given and received (i) if sent via FedEx or other comparable overnight courier, the next Business Day after being deposited with such carrier; (ii) if mailed, five (5) Business Days after being deposited in the mail; or (iii) if sent via facsimile transmission, the next Business Day after being so transmitted.

10.2. **Application of Texas Law**. This Company Agreement and the application or interpretation hereof, shall be governed exclusively by the laws of the State of Texas, and specifically by the Act.

10.3. **Headings and Sections**. The headings in this Company Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Company Agreement or any provision hereof. Unless the context requires otherwise, all references in this Company Agreement to Sections or Articles shall be deemed to mean and refer to Sections or Articles of this Company Agreement.

10.4. **Amendments**. This Company Agreement and the Certificate may be amended, supplemented or restated only upon the written consent of the Member. Upon obtaining the approval

of any amendment to the Certificate, the Managers shall cause a Certificate of Amendment in accordance with the Act to be prepared, and such Certificate of Amendment shall be executed by at least one (1) Manager and shall be filed in accordance with the Act.

  10.5. **Number and Gender.** Where the context so indicates, the masculine shall include the feminine (and vice versa), the neuter shall include the masculine and feminine (and vice versa), and the singular shall include the plural (and vice versa).

  10.6. **Binding Effect.** Except as herein otherwise provided to the contrary, this Company Agreement shall be binding upon and inure to the benefit of the Member, his distributees, heirs, legal representatives, executors, administrators, successors and assigns.

  10.7. **Counterparts.** This Company Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and shall be binding upon the Member and Manager who executed the same, but all of such counterparts shall constitute the same Company Agreement.

  10.8. **Separateness Covenants.** For so long as the First Mortgage exists on any portion of the Property, in order to preserve and ensure its separate and distinct identity, in addition to the other provisions set forth in this Company Agreement, the Company shall conduct its affairs in accordance with the following provisions:

  1. It shall maintain partnership records and books of account separate from those of any Affiliate.

  2. It shall observe all partnership formalities.

  3. It shall not commingle assets with those of any Affiliate.

  4. It shall conduct its own business in its own name.

  5. It shall maintain financial statements separate from any Affiliate.

  6. It shall pay any liabilities out of its own funds, including salaries of any employees, not funds of any Affiliate.

  7. It shall maintain an arm's length relationship with any Affiliate.

  8. It shall not guarantee or become obligated for the debts of any other entity, including any Affiliate, or hold out its credit as being available to satisfy the obligations of others.

  9. It shall use stationary, invoices and checks separate from any Affiliate.

  10. It shall not pledge its assets for the benefit of any other entity, including any Affiliate.

  11. It shall hold itself out as an entity separate from any Affiliate.

  12. It shall not acquire any real or personal property other than the Property.

  13. It shall not operate any business unrelated to the Property

14. It shall not maintain its assets in a way difficult to segregate and identify.

15. It shall acknowledge that the entity is a single asset / single purpose entity.

*Remainder of Page Intentionally Left Blank.*
*Signature Pages To Follow.*

IN WITNESS WHEREOF, the undersigned, being the sole Manager of the Company, has caused this Company Agreement to be duly adopted by the Company effective as of the Effective Date.

**SOLE MANAGER:**

_____
Drew Guy Dennett

The undersigned, being the sole Member of the Company, does hereby ratify, confirm and approve the adoption of this Company Agreement as the limited liability company agreement of the Company, and does hereby assume and agree to be bound by and to perform all of the terms and provisions set forth in this Agreement effective as of the Effective Date.

_____
Drew Guy Dennett, Sole Member

## COMPANY AGREEMENT

## OF

## NIA ATX LLC

### (A Texas Limited Liability Company)

### EXHIBIT A

| | | |
|---|---|---|
| 1. | Name of Company: | NIA ATX LLC |
| 2. | Address of Company: | 2450 Wickersham Lane, Unit 202<br>Austin, Texas 78741 |
| 3. | Registered Agent and Registered Office: | Dr. Debra L. Dennett<br>2110 Travis Heights Blvd.<br>Austin, Texas 78704 |
| 4. | Name of Manager: | Drew Dennett<br>2450 Wickersham Lane, Unit 202<br>Austin, TX 78741 |
| 5. | Name of Member: | Drew Dennett<br>2450 Wickersham Lane, Unit 202<br>Austin, TX 78741 |

Capital Contribution: $1,000.00

Date Became Member: March 31, 2022