**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RIC (LAVERNIA) LLC,** | § | **Case No. 24-51195-mmp** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**Related: Adv. Nos. 24-05043 and 25-05040**

**MOTION OF ARABELLA PH 3201 LLC, OTISCO RDX, LLC, AND MILESTONE CAPITAL CRE 1, LLC, JOINED BY ALI CHOUDHRI, UNDER BANKRUPTCY RULE 9024 TO REOPEN FOR A LIMITED PURPOSE AND TO VACATE THE ORDER GRANTING THE RECEIVER'S MOTION TO SHOW AUTHORITY [ECF NO. 304] OR, IN THE ALTERNATIVE, TO CLARIFY ITS SCOPE, AND TO VACATE THE JUDGMENTS ENTERED FOR RIC (LAVERNIA), LLC IN ADVERSARY NOS. 24-05043 AND 25-05040 AND THE STIPULATED ORDER OF CASE DISMISSAL [ECF NO. 348]**

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

Travis B. Vargo, the purported receiver, is referred to here as "Vargo." The judgment is on appeal, and Choudhri contends it is void. Referring to him by name or as the purported receiver concedes nothing.

Arabella PH 3201 LLC ("Arabella"), an interested party, Otisco RDX, LLC ("Otisco"), and Milestone Capital CRE 1, LLC ("Milestone"), through their counsel, and Ali Choudhri, individually and pro se, who joins in this motion (together, "Movants"), move under Federal Rule of Civil Procedure 60(b)(1), (3), (4), (5), and (6), and Rule 60(d)(3), made applicable by Federal Rule of Bankruptcy Procedure 9024, to reopen this case for the limited purpose of this motion and to vacate the Order Granting the

Receiver's Motion to Show Authority [ECF No. 304] (the "Authority Order") or, in the alternative, to clarify its scope, and to vacate the judgments entered for RIC (Lavernia), LLC in Adversary Nos. 24-05043 and 25-05040 and the Stipulated Order of Case Dismissal [ECF No. 348], and respectfully shows:

Arabella is an interested party because Vargo relies on the "three Authority Orders entered by the Bankruptcy Courts in the Western District of Texas," including this Court's ECF No. 304, to claim control over companies related to Choudhri, Motion for Relief from Stay ¶ 7, *In re Ali Choudhri*, No. 25-90797, ECF No. 22 (Ex. H), and he has used those orders to claim control of Arabella, a different company related to the condominium where Choudhri lives. Receiver's Reply, Cause No. 2012-27197-A (June 23, 2026) (Ex. A). Arabella was not a party to the proceedings that produced ECF No. 304 and received no notice of them. Arabella reserves all rights, claims, and defenses, and nothing in this motion is an admission concerning title to or interests in any property.

Otisco and Milestone are parties bound by the Authority Order. Counsel appears for Otisco and Milestone at the direction of Shahnaz Choudhri and Ali Choudhri. Shahnaz Choudhri is not a judgment debtor in Cause No. 2012-27197-A or Cause No. 2012-27197-D. The Authority Order gives Vargo only "all rights that the judgment debtors have" in Otisco and Milestone, "exclusive of the judgment debtors only," and expressly does not give him those rights "to the exclusion of all others." ECF No. 304 at 6 n.7. It therefore does not reach her authority. To the extent either entity's authority rests on Choudhri, Movants ask that it be recognized upon vacatur of the Authority Order. Movants will submit declarations confirming that authority if the Court requests them.

**REQUEST FOR PROMPT CONSIDERATION.** This Court's Authority Order is being used right now to obtain a final state-court judgment of $42,371,306.88, plus $16,612.89 per day and 15.25% post-judgment interest, against Choudhri personally. On October 7, 2026, TIG Romspen US Master Mortgage LP, through counsel who also represents RIC (Lavernia), LLC, submitted a revised proposed Final Judgment to the 333rd District Court of Harris County that is "unopposed by Travis Vargo" on Choudhri's behalf and asks that court to find that two United States Bankruptcy Judges gave Vargo "exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri," quoting this Court's ECF No. 304 at page 6. The state court has set the matter for an in-person hearing on December 3, 2026, and Romspen's counsel has stated that Romspen will request entry of the judgment at that hearing. The proposed judgment is not only a money award: it recites seventeen findings, entered without evidence on Vargo's non-opposition, including that Vargo's exclusive authority over "Choudhri and entities controlled by Choudhri" was found by this Court, and that Romspen "is the current holder of the Note." That finding cannot be squared with the deeds of record. The March 2024 substitute trustee's deed for the La Vernia property recites that the May 31, 2019 note is "currently held by" RIC (Lavernia), LLC. The December 2, 2025 substitute trustee's deed for 1001 West Loop, Harris County Instrument No. RP-2025-478391, recites that the same note is "currently held by Lender," Romspen. Once signed, those findings will be offered as preclusive in other proceedings, including against this motion. Movants therefore ask the Court to consider

this motion promptly and, pending a ruling, to confirm that ECF No. 304 does not authorize Vargo to consent to, or decline to oppose, a money judgment against Choudhri.

## I. SUMMARY

1. The Authority Order was entered on four days' notice. Vargo had testified under oath months earlier that his orders gave him distributions, not the LLCs, and he did not disclose that to this Court. The Court itself limited the order to this case, to the judgment debtors' own rights, and to no turnover of any interest. Vargo has since cited it in other courts for more. The order should be vacated.

## II. JURISDICTION, TIMELINESS, AND REOPENING

2. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and retains jurisdiction to interpret its own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Authority Order was entered October 17, 2025. This motion is filed within one year, as Rule 60(c)(1) requires for grounds (1) through (3), and within a reasonable time for the remaining grounds. The one-year period ended on Saturday, October 17, 2026, and therefore ran until the end of Monday, October 19, 2026. Fed. R. Bankr. P. 9006(a)(1)(C). The timeliness of the relief sought as to the judgments and ECF No. 348 is addressed in Part IV-B.

3. This case was dismissed and terminated on December 5, 2025, on a stipulated dismissal. Vargo had agreed in his settlement with Romspen "not to oppose, and to consent to, any motion by RIC to dismiss the RIC BK Case," Settlement Agreement § II.7 (Exhibit M), and dismissal satisfied one of the two conditions for

Romspen's $225,000 payment to Vargo, *id.* § II.10. Choudhri's own motion to vacate the Authority Order [ECF No. 325] was dismissed as moot on December 4, 2025, two days after his counsel withdrew his application for admission pro hac vice, without any ruling on the merits. ECF Nos. 342, 344. The case was dismissed the next day on a stipulated order resolving Milestone and OTISCO's own motion to dismiss, a motion their prior counsel had filed and that Vargo, once he controlled them, stipulated to. ECF Nos. 237, 346–348. To the extent necessary, Movants ask that the case be reopened, together with Adversary Nos. 24-05043 and 25-05040, under 11 U.S.C. § 350(b) and Bankruptcy Rule 5010 for the sole purpose of deciding this motion.

## III. BACKGROUND

4. After an October 8, 2025 hearing, the Court held that the Amended Orders' Debtor's Business and Ancillary Litigations provisions give Vargo exclusive authority, "at least in this case," to litigate on behalf of Milestone, Otisco, and Choudhri. ECF No. 304 at 6–7. The Court grounded that authority in Choudhri's own rights, reaching "where Mr. Choudhri has the right to manage and operate," *id.* at 6, and declined to rely on *WC 4th & Colorado* because the Amended Orders except the Choudhri LLCs from turnover, *id.* at 6 n.6.

5. Since then, Vargo has cited this order and orders of this kind in the 333rd Judicial District Court (Ex. A) and sought dismissal of the Chapter 11 case of *In re MCITBE, LLC*, No. 26-32580-mvl11 (Bankr. N.D. Tex.), on a claim that he controls that debtor, whose sole member of record is Shahnaz Choudhri (Ex. B).

At the September 23, 2026 hearing in that case, his counsel told the court that Judges Robinson, Bradley, and Parker "have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs." Hearing Tr. 51:19–22 (Exhibit C). On cross-examination, shown paragraph 8 of the A Case Order, Vargo answered, "That's what it says here." *Id.* at 170:14–21. Asked for his proof that Choudhri owns MCITBE, he said, "I'm relying upon Judge Wilson's orders." *Id.* at 178:14.

6. This motion does not re-urge the arguments decided in the Authority Order. It does not re-argue the supersedeas, the appeals of the original turnover orders, abstention, or the *WC 4th* and *Heckert* charging-order argument. It rests on grounds the Court has not considered: Vargo's undisclosed prior sworn account of his authority, the notice actually given, the factual premise of the order, and events since entry.

7. The judgments the Amended Orders enforce remain on appeal. Choudhri, Dalio Holdings I, and Dalio Holdings II appealed the A-Case judgment, and Choudhri appealed the D-Case judgment; Vargo himself so stated in this Court. Choudhri does not ask this Court to address those appeals or the supersedeas question. Two consequences follow. First, if either judgment is reversed or vacated, Rule 60(b)(5) independently authorizes relief from an order "based on an earlier judgment that has been reversed or vacated," and Choudhri reserves that ground. Second, the equities of continued prospective application weigh differently while the judgments are under review: Vargo has used the Authority Orders to stipulate to

new personal liability, void a lien, and obtain possession and sale of Choudhri's residence, steps that cannot readily be undone if the judgments fall.

## IV. GROUNDS FOR VACATUR

***A. Rule 60(b)(3): the Authority Order was obtained through fraud, misrepresentation, and misconduct. Vargo presented the Amended Orders as granting control he had disclaimed under oath, and concealed his own contrary sworn statements and filings.***

8. Vargo's representations were material and knowing. He made them to obtain relief in this Court after telling the Bankruptcy Court in Austin under oath that he held "a right to his distributions only," after writing that he held "a charging order over the LLCs only," and after telling this Court itself, on September 17, 2025, through the same counsel, that his control was "excluding management rights in the Choudhri LLC's." ECF No. 240 ¶ 8. He did not disclose any of those statements when he sought the Authority Order. And while defending the Authority Order in November 2025, he concealed from this Court that he had just settled with Romspen, the debtor's affiliate, for a payment conditioned on his authority being upheld. *See* ¶ 32 below. Those are misrepresentations of material fact made with knowledge of their falsity, and omissions of facts he had a duty to disclose to the Court, and they prevented Choudhri from fully and fairly presenting his case. Fed. R. Civ. P. 60(b)(3); *see Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). Movants ask the Court to find so.

9. Rule 60(b)(3) permits relief for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The movant

must show by clear and convincing evidence that the adverse party engaged in misrepresentation or misconduct that prevented the movant from fully and fairly presenting his case. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005). Relief does not require that the result would have been different.

10. The Receiver's Motion to Show Authority asked this Court to find that Choudhri lacks authority over Milestone and Otisco and that counsel he retained could not represent them. ECF No. 304 at 1 (describing ECF No. 277 at 8–9). This Court rejected any reading of the Amended Orders as transferring ownership or exclusive control: it held that the Amended Orders "expressly and unconditionally except the Choudhri LLCs from turnover," and that it was "not saying the Amended Orders give the Receiver all rights to manage and operate Milestone and Otisco to the exclusion of all others." ECF No. 304 at 6 nn.6–7.

11. That representation was contrary to Vargo's own sworn account. On April 3, 2025, under oath before Judge Robinson in *WCW Houston Properties v. Texas REIT*, Adv. No. 24-01045-smr, Vargo testified that the turnover orders entitled him to distributions on Choudhri's LLC interests and did not turn over the LLCs themselves. The Court told him it was "taking everything as you're saying right now under oath." Tr. 13:16–20 (Apr. 3, 2025), *In re Texas REIT, LLC*, No. 24-10120, and Adv. No. 24-01045 (Exhibit D). Asked, "Are you seeking to exercise control over those LLC interests?" he answered, "No." *Id.* at 19:19–23. He testified that "[t]his order does not turn over his LLC interest to me," *id.* at 21:17–19; agreed that he was "not taking the position that this order allows [him] to take

possession of Mr. Choudhri's LLC interest," *id.* at 22:19–22; stated that "there's only a charging order" and that he was "entitled to distributions from his LLC interests to the extent that they're made," *id.* at 27:1–6; and said, "I have a right to his distributions only," *id.* at 35:6. Counsel for the judgment creditors then told the Court, "we'll submit an amended order to Judge Wilson" that "[i]t'll address all of the issues that you addressed." *Id.* at 52:11–23. The next day, Vargo confirmed the same position in writing to Choudhri's bankruptcy counsel. Apr. 4, 2025 email from Vargo to Kell Mercer (Exhibit E). The Amended Orders, entered days later on April 8 and 9, 2025, narrowed Vargo's reach further by expressly excluding Choudhri's "ownership interests in any limited liability company" from Receivership Assets. On September 23, 2026, he confirmed that his April 2025 position predated *WC 4th & Colorado* and that the opinion post-dates the Amended Orders. Hearing Tr. 141:4–21 (Exhibit C).

12. Vargo's own counsel said the same thing to Judge Robinson eight days later. At the April 11, 2025 hearing in *In re Texas REIT, LLC*, Brian Cumings, appearing "for Travis Vargo," said his reading of the receivership order was that

> it is not intended to do anything other than be a charging order as to the entities. In other words, the judgment creditor, in this case the receiver, doesn't have control of any of the bankrupt entities.

Tr. 47:13–21 (Apr. 11, 2025), No. 24-10120 (Exhibit P). He added that Vargo "never intended to and will not be taking any actions that would disrupt what the trustee in this case will be intended to do or, for that matter, 1001." *Id.* at 42:2–5.

Mr. Cumings was at the same time counsel to John Patrick Lowe, the trustee in *In re 1001 WL, LLC*, No. 24-10119, a debtor the amended receivership order itself names among the receivership's defined "bankrupt LLCs." *Id.* at 37:12–16 ("That does include 1001 WL, LLC"). He was thus representing Vargo under an order that lists the very estate whose trustee he also represented. The Court asked him, "How is this not a conflict of interest in 1001?" *Id.* at 47:2–8. He answered that if the trustee shared Mr. Mercer's concern, "I think I would have to withdraw." *Id.* at 48:1–3.

13. Vargo's authority theory, in his own words, comes in three steps. First, under oath before the Bankruptcy Court on April 3, 2025, he disclaimed any control of the LLC interests: "I have a right to his distributions only." Tr. 35:6. Second, at the hearing on the Authority Order, he invoked *WC 4th & Colorado*, an appellate opinion issued after those orders, which he had told the Austin bankruptcy court in August 2025 "likely impacts" the orders and would require their modification. This Court rejected that reading: "the Amended Orders expressly and unconditionally except the Choudhri LLCs from turnover." ECF No. 304 at 6 n.6. It granted relief instead under the orders' general business clause, while stating it was "not saying" Vargo had management rights "to the exclusion of all others." *Id.* at 6 n.7. He has since described the order to other courts as a determination that he "is in charge of and has control over the Choudhri LLCs." Third, on September 23, 2026, again under oath and shown paragraph 8, he could not identify any provision of the orders giving him authority over an LLC ("No. We'd have to go

through this," Tr. 154:1–4), agreed the orders exclude Choudhri's LLC ownership interests ("That's what it says here," Tr. 170:14–21), and acknowledged that *WC 4th* "post-dates" them (Tr. 141:19–21). The Authority Order was thus obtained without disclosure of Vargo's own sworn disclaimer, and is now being described elsewhere as granting what this Court expressly declined to grant. That is the circumstance Rule 60(b)(3) addresses, and it warrants prompt correction.

14. Vargo said the same thing to Choudhri directly. In a recorded telephone call on August 1, 2025, asked about his April 2025 statement to Mr. Mercer that he did not direct the Choudhri entities, Vargo answered that "there was some changes in the law subsequent to that," identifying only "the decision in the W.C. Colorado case." He said he had authorized counsel for Milestone and Otisco "to continue objecting for the time being while I'm in limbo, and I get clarification as to my authority," and that he was "trying to get clarification on the legal rights that I'm allowed to pursue and negotiate and advocate for." Asked whether he would represent Choudhri, he said: "I can never represent you. I would have a conflict of interest representing you." He also confirmed that Romspen's counsel, Kyle Hirsch, had contacted him about the motion Romspen then filed to bar Choudhri from representing himself: "Kyle's the one who reached out to me first." Recording and transcript of call, Aug. 1, 2025 (Exhibit Q). Two months later, without the clarification he said he lacked, and while his application under *WC 4th & Colorado* remained pending before the receivership court, Vargo asked this

Court to declare his authority, and on that authority later stipulated to a $42 million judgment against the man he said he could "never represent."

15. Vargo's own conduct confirms he knew the orders did not give him the LLC interests. In July 2025, he sent Choudhri a proposed "Agreed Order of Turnover" for the receivership court, reciting that "[u]pon agreement of the Judgment Debtor, Ali Choudhri," "one hundred percent (100%) of the ownership, equity, units, interest, and/or shares" in Dalio Holdings LLC, Galleria West Loop Investment LLC, Meandering Bend LLC, Memorial Glen Cove LLC, and PBAC 507 Holdings, LLC "are turned over to Receiver Travis Vargo for liquidation." Proposed Agreed Order of Turnover, Cause No. 2012-27197-A (unsigned and undated) (Exhibit R). Choudhri did not sign it. On the recorded August 1, 2025 call, Choudhri told Vargo he had never agreed to sign documents Vargo had sent. A receiver who already held those ownership interests under the Amended Orders would need neither the judgment debtor's agreement nor a new order to obtain them. Within weeks Vargo was telling bankruptcy courts that the existing orders already gave him that control.

16. The same theme runs through how Vargo presents himself to third parties. On August 19, 2026, his counsel wrote to the taxing authorities' counsel in a suit against Arabella PH 3201 LLC that "I represent Travis Vargo, who is the Court-Appointed Attorney for Ali Choudhri and two of his entities. The turnover orders are attached. They were entered in April 2025." The orders he attached are the April 2025 Amended Orders, whose ¶ 8 excludes Choudhri's "ownership interests

in any limited liability company," yet the same email calls Arabella PH 3201 LLC a receivership asset "in custodia legis." The attached orders list "ARABELLA PH 3201 LLC" first among the "Choudhri LLC's" that are subject only to a charging order (A-Case Order ¶ 9(a); D-Case Order ¶ 16(a)). Their only "attorney" language is a limited power of attorney to sign the Debtor's name "to transfer real property titled in the names of Debtor" (A-Case Order ¶ 27; D-Case Order ¶ 33). Nothing in either order appoints Vargo as anyone's attorney. Email of Aug. 19, 2026, *City of Houston v. Arabella PH 3201 LLC*, No. 2023-67381 (Exhibit O). And on August 1, 2025 Vargo told Choudhri: "I can never represent you. I would have a conflict of interest representing you."

17. He relies on the authority orders in the same way in other courts. His July 14, 2026 motion to dismiss the MCITBE, LLC Chapter 11 states that "[t]he Receivership Orders determined that MCITBE is a 'Choudhri LLC' and the Authority Orders determined that the Receiver has the exclusive power and authority to manage and operate the businesses of Choudhri," and that he was given exclusive control "[p]ursuant to the terms of the [Receivership Orders] as confirmed by the Authority Orders," defined as ECF No. 996 in 1001 WL, ECF No. 784 in Texas REIT, and ECF No. 304 in RIC (Lavernia), "entered by three judges in four separate Choudhri related matters." *In re MCITBE, LLC*, No. 26-32580 (Bankr. N.D. Tex.), ECF No. 21 ¶¶ 4, 8 & n.8 (Exhibit B). A "Choudhri LLC" is, under both Receivership Orders, an entity subject only to a charging order and excluded from Receivership Assets. A-Case Order ¶¶ 8–9; D-Case Order ¶¶ 14, 16.

18. The Court had Vargo's April 4, 2025 email before it: counsel filed it as Exhibit 1 to ECF No. 288. It did not have the April 3, 2025 sworn testimony. Vargo's motion nonetheless asserted "sole ownership and operational control" without acknowledging that he had sworn to the contrary before a federal judge six months earlier, and while telling this Court that the application of *WC 4th* to the Amended Orders was "presently pending before the Hon. Randy Wil[s]on for determination." ECF No. 277.

19. Vargo's prior contrary position was not limited to the April 2025 testimony and email. On August 29, 2025, Vargo, through the same counsel who filed the Motion to Show Authority, told Judge Robinson in writing in *In re Meandering Bend, LLC*, No. 25-11334-smr, that under the Amended Orders "the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management rights in the Choudhri LLC's, as defined in the Receivership Orders." Meandering Bend ECF No. 28 ¶ 7 (Exhibit F). He told that court that *WC 4th & Colorado* "likely impacts the scope of the Receivership Orders," that "clarification of the scope of the Receivership Orders is required," and asked for leave to "[s]eek and obtain a modification of the Receivership Orders to conform, as applicable," to that opinion. *Id.* ¶¶ 7, 10 & prayer ¶ B. Two days earlier, he had filed the same orders in this case under the title "Notice of Filing Orders Regarding Appointment of Receiver and Charging Orders." ECF No. 208 (Aug. 27, 2025). He made the same representation to this Court on September 17, 2025, eighteen days before filing the Motion to Show Authority:

under Receivership Orders "the Receiver was given exclusive control over all of the Choudhri Receivership Assets, as therein defined, excluding management rights in the Choudhri LLC's as defined in the Receivership Orders," and the application of *WC 4th* "is presently pending before the Hon. Randy Willson [sic] for determination." ECF No. 240 ¶¶ 1, 8 (Exhibit N). He also told this Court he had obtained stay relief to seek "modification of the Receivership Orders to conform" to WC 4th. *Id.* ¶ 14. No modification preceded the Authority Order.

20. Judge Robinson granted that leave on September 12, 2025, explaining that he issued the order "to allow the Receivership Court (or such other court with proper jurisdiction) to determine the issue of the scope of the Receivership and the authority of the Receiver," and stating: "This Court is not ruling upon any of the issues outlined above by virtue of this Order." Meandering Bend ECF No. 65 at 2–3 (Exhibit F). Vargo had obtained no such determination or modification when he filed the Motion to Show Authority. Less than four weeks later, his Motion to Show Authority asked this Court to find that Choudhri lacked authority over Milestone and Otisco, and he told this Court only that the application of *WC 4th* was pending before Judge Wilson. He did not tell this Court that he had already conceded, in writing, that the Amended Orders as written exclude management rights in the Choudhri LLCs. He did not disclose ECF No. 28, ECF No. 65, or that the scope question he had asked leave to take to Judge Wilson remained undecided. A written admission by the movant, filed by the same counsel weeks earlier in a case before a judge of this District, is independent of and more specific

than the April 2025 testimony, and its omission is the kind of material nondisclosure Rule 60(b)(3) reaches.

***B. Rule 60(b)(4): the order is void to the extent it adjudicated rights without the notice Vargo's own motion promised, and to the extent it purports to bind other courts.***

21. A judgment is void under Rule 60(b)(4) if the court acted in a manner inconsistent with due process. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). The Receiver's Motion to Show Authority was filed October 4, 2025, with 21-day negative-notice language. ECF No. 277. Respondents were ordered to respond by 4:00 p.m. on October 7, and the Court heard the motion October 8, 2025, four days after filing. ECF No. 304 at 1–2 (citing ECF No. 285).

22. Vargo has since cited this order in other courts as one of "similar orders on other Choudhri LLC's" supporting his claim to control entities not before this Court. (Ex. A.) To the extent the order is read to operate outside this case, it exceeds what the Court decided, which was expressly limited to authority "in this case." ECF No. 304 at 7–9.

***C. Rule 60(b)(1): the order rests on a factual premise that is mistaken.***

23. The order rests on the premise that Choudhri "controls" Milestone and Otisco, and on the Amended Orders' listing of both as Choudhri LLCs. ECF No. 304 at 1, 2 n.2. By the order's own terms, Vargo holds only "all rights that the judgment debtors have" to manage and operate those entities. *Id.* at 6 n.7. The record before the Court showed otherwise as to Otisco. The sworn affidavit of Lyndel Anne Vargas, filed October 7, 2025, states that Otisco RDX, LLC is solely owned by

Shahnaz Choudhri and is not a judgment debtor. ECF No. 288 ¶ 4. Because Vargo holds only the rights the judgment debtors have, *id.* at 6 n.7, and no judgment debtor holds a membership interest in Otisco, the order has nothing to operate on as to Otisco and should be vacated as to it.

***D. Rule 60(b)(5) and (6): changed circumstances make continued prospective application inequitable.***

24. The order operates prospectively: it directs that future filings be stricken. Rule 60(b)(5) permits relief where "applying it prospectively is no longer equitable," and a significant change in circumstances can warrant revision. *Horne v. Flores*, 557 U.S. 433, 447 (2009). Rule 60(b)(6) permits relief in extraordinary circumstances. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

25. Circumstances have changed since the order was entered. First, Vargo now presents this order and its companions as broader than they are. At the September 23, 2026 hearing in the MCITBE case, his counsel described them as "determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs," and as the source of "the authority generally that was vested in the Receiver pursuant to the terms and conditions of the receivership orders as interpreted by Judges Robinson, Parker, and Bradley." Hearing Tr. 51:19–22, 101:6–8 (Exhibit C). He offered them to seek dismissal of a Chapter 11 case whose debtor's sole member of record is not a judgment debtor. Second, at the same hearing Vargo conceded that paragraph 8 excludes Choudhri's LLC ownership interests ("That's what it says here"), and testified that *WC 4th &*

*Colorado*, the basis of his current position, post-dates the Amended Orders. *Id.* at 141:4–21, 170:14–21. Third, whether a charging order is a receiver's exclusive remedy against LLC interests is pending before the Supreme Court of Texas in No. 26-0267. The receivership court's September 3, 2026 order denying Choudhri's motion to clarify the Amended Orders, which contains no findings and does not amend them, is addressed in ¶¶ 41–42 below.

26. Since entry, Vargo has used this order and its two companion orders, ECF No. 996 in *In re 1001 WL, LLC* and ECF No. 784 in *In re Texas REIT, LLC* (with ECF No. 304, the orders he calls the "Authority Orders"), to obtain relief that none of them decided:

27. **(a) Meandering Bend.** On December 5, 2025, on three days' notice of an expedited setting, Vargo obtained dismissal of *In re Meandering Bend, LLC*, No. 25-11334-smr, a case Judge Parker had transferred to Austin, after his counsel told the court that "pursuant to the receivership orders" Vargo had "sole control" over the Choudhri assets, "including the Meandering Bend membership interest." Meandering Bend Hr'g Tr. 8:12–19 (Dec. 5, 2025) (Exhibit G). This Court's own order holds the opposite: the Amended Orders except the Choudhri LLCs from turnover, and Vargo holds only the rights the judgment debtors themselves have. ECF No. 304 at 6 nn.6–7. Earlier that day, Choudhri had filed an individual Chapter 11 petition; Vargo's counsel had written notice of it by 1:17 p.m. (Exhibit H). Choudhri's petition was filed at 11:13 a.m. In this case, the Stipulated Order of

Case Dismissal, reciting Vargo's "authority to direct litigation on behalf of Ali Choudhri," was entered at 12:06 p.m. the same day. ECF No. 348.

28. **(b) Choudhri's individual Chapter 11.** On December 10, 2025, in *In re Ali Choudhri*, No. 25-90797 (Bankr. S.D. Tex.), Vargo told Judge Lopez that the Amended Orders, "as confirmed by the Authority Orders," transferred "the interests and management rights of Choudhri in all Choudhri LLC's," and that he holds "litigation rights on behalf of the Choudhri LLC's" generally. No. 25-90797 ECF No. 21 ¶¶ 4, 9 & n.7; ECF No. 22 ¶ 7 (Exhibit H). None of the Authority Orders so holds. ECF Nos. 996 and 784 each state that "the Choudhri LLCs are exempt from turnover in the Amended Orders," ECF No. 996 at 8 n.36; ECF No. 784 at 8 n.36, and ECF No. 304 limits Vargo to the rights the judgment debtors themselves hold, ECF No. 304 at 6 & n.7. The same motion cited the Meandering Bend dismissal as evidence of Choudhri's bad faith. ECF No. 21 at 5 nn.10, 12; *id.* ¶ 16.

29. **(c) A $42 million stipulated judgment against Choudhri personally.** On December 19, 2025, TIG Romspen US Master Mortgage LP filed a proposed Final Judgment against Choudhri individually and Galleria Loop Note Holder, LLC, jointly and severally, for $42,371,306.88 plus $16,612.89 per day, stipulated "by and through Travis Vargo as state court-appointed receiver" and signed by his counsel. *TIG Romspen US Master Mortgage LP v. Galleria Loop Note Holder, LLC*, No. 2023-84714 (80th Dist. Ct., Harris County) (Exhibit I). The only authority it cites for Vargo's power to consent is that he "has been found by two

United States Bankruptcy Judges" to hold exclusive authority, citing ECF No. 304 (Parker, J.) and ECF No. 996 (Bradley, J.). *Id.* at 4. Neither order addresses settlement, compromise, or consent to a money judgment against Choudhri personally. The stipulation was filed the day Choudhri's Chapter 11 case was dismissed, while Vargo's own motion for relief from the stay in that case, which sought leave only to respond to matters in Receivership Court, remained pending. No. 25-90797 ECF Nos. 22, 33. Vargo has since told the receivership court how this came about: a bankruptcy court in this District "adjudicated Receiver as being in control of Galleria Loop Note Holder LLC based on this Court[']s Receivership Orders," and "[i]n reliance [on the] same, Receiver resolved a dispute with the Plaintiff, TIG Rompsen [sic] Master Mortgage LP, through the bankruptcy court in exchange for valuable consideration paid to the Receiver." Receiver's Report to Court ¶ 6(a) (June 9, 2026), Cause No. 2012-27197-A/D (Exhibit L). In other words, Vargo consented to a $42 million judgment against the judgment debtor personally in exchange for a payment to the receivership, from which he seeks a 25% fee. The settlement agreement, executed as of November 21, 2025, obligates Vargo to "reasonably cooperate with Romspen in connection with entry of a judgment in the Romspen Enforcement Action" in the attached form, and provides for Romspen to pay Vargo $225,000 once Romspen takes title to 1001 West Loop and the RIC (Lavernia) case is resolved. Settlement Agreement §§ II.4, II.10 (Exhibit M). Vargo later told the receivership court that, "in exchange for the dismissal of the unmeritorious appeals, and an agreement not to oppose the entry

of meritorious judgments against Mr. Choudhri, the Receivership estate received a payment of $250,000.00." Receiver's Omnibus Response ¶ 12 (Apr. 15, 2026), Cause No. 2012-27197-A (Exhibit M). The agreement says $225,000, the same amount Vargo booked as a "[s]ettlement . . . on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC." No order in the RIC (Lavernia) case approved this settlement. The only Rule 9019 application pending there that touched Romspen (RIC ECF No. 225, concerning corrective deed documents) was never ruled on and was dismissed as moot when the case was dismissed on December 5, 2025. RIC ECF Nos. 348, 350. Vargo nonetheless told the receivership court that the settlement followed "Bankruptcy Court approval in the RICL Bankruptcy." Omnibus Response ¶ 12. Nor does the 1001 WL docket reflect any motion by Vargo or Romspen to approve it. The only Rule 9019 motion there involving Romspen was the Chapter 11 trustee's (In re 1001 WL, ECF No. 699), which was granted in part and denied in part on November 4, 2025 (ECF No. 1009) and then finally denied on January 9, 2026 (ECF No. 1037). On October 7, 2026, Romspen's counsel submitted a proposed Final Judgment in the same case (envelope no. 120894748), served on Vargo and his counsel. The revised form drops the stipulation: it is now "unopposed by Travis Vargo as state court-appointed receiver . . . on behalf of Defendants," and his counsel signs "[a]greed as to form only." It still seeks $42,371,306.88 plus $16,612.89 per day from June 16, 2025, against Choudhri and Galleria Loop Note Holder. And its paragraph Q asks the state court to find that "Travis Vargo has been found by two United States

Bankruptcy Judges to have the exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri," citing RIC (Lavernia) ECF No. 304 and 1001 WL ECF No. 996 by name. Proposed Final Judgment ¶ Q (Exhibit I). The Authority Orders are thus being offered to a state court as the basis for a $42 million judgment against Choudhri personally and for a finding about every entity "controlled by Choudhri." The proposed judgment quotes this order at page 6 for the proposition that Vargo may "manage and operate where Mr. Choudhri has the right to manage and operate," and pairs it with a finding that Vargo has "exclusive authority to represent the interests of Choudhri and entities controlled by Choudhri." It omits the same page's footnote 7 (

> the Court is not saying the Amended Orders give the Receiver all rights to manage and operate Milestone and Otisco to the exclusion of all others, nor that the Amended Orders turn over any of the judgment debtors' ownership interest

) and the next page's limitation: "at least in this case." ECF No. 304 at 6 n.7, 7. This order does not mention Galleria Loop Note Holder, LLC.

30. Vargo's coordination with Romspen began before he sought the Authority Orders. His own counsel's invoices, filed by Vargo in the receivership court, record: September 10 and 22, 2025: calls and a Zoom with Romspen's counsel (Lynn Butler and Kyle Hirsch) about RIC (Lavernia), the OTISCO deed of trust, the RIC Rule 9019 motion, and the Milestone adversary; October 1, 2025: "Telephone conference with K. Hirsch regarding Motion to Show Authority and Strike Pleadings - RIC Lavernia, Texas REIT, and 1001 WL," three days before Vargo

filed those motions; October 20, 2025, three days after this Court entered the Authority Order: "Zoom meeting with K. Hirsch and L. Butler regarding framework of deal on RIC (Lavernia) and 1001 WL"; and October 28, 2025: "Telephone conference with L. Butler regarding TIG Romspen resolution opportunities - RIC (Lavernia) and 1001 WL." Receiver's Report, Accounting, and Motion to Distribute, Ex. 2 (Luttrell + Carmody invoices) (Exhibit J). The Court was not told that Vargo was coordinating his motion with the party that would pay him to settle once the order was entered, or that the settlement would rest on the order.

31. **What the order was used to give up.** Before the Authority Order, Milestone and Otisco were contesting RIC (Lavernia)'s title in this case and the related adversary proceeding. Their position, presented in August 2025, was that the February 6, 2024 foreclosure sale was void: the trustee struck the property off to a third-party bidder, the sale was later reported as a credit bid by RIC (Lavernia), LLC, and RIC (Lavernia), according to its certificate of formation, did not exist until February 16, 2024 though the recorded trustee's deed says the assignment of Romspen's rights was "effective" February 5, 2024. They also pointed out that Romspen's amended proof of claim in *In re 1001 WL, LLC* deducted that same credit bid. Milestone/Otisco presentation (Aug. 2025) (Exhibit S). A video of the sale bears that out: the person conducting the sale announced that a buyer had to bid "over 500,000," announced "a bid from the lender," and declared the property "sold to

Drew for 550,000." Video of Feb. 6, 2024 sale and transcript (Exhibit T). Romspen's own settlement agreement with Vargo gives a different account:

> Choudhri attended the sale; Romspen did not. After the sale, the substitute trustee reported to Romspen that the sale had closed and Romspen had acquired the Lavernia Property for its opening bid of $100,000. Romspen then caused to be formed RIC (Lavernia) LLC ('RIC'), to serve as Romspen's designee of the successful credit bid.

Settlement Agreement § I.C.2 (Exhibit M at 6). The Substitute Trustee's Deed and Bill of Sale, recorded March 26, 2024 as Wilson County Document No. 141143 (Ex. S at 6; Ex. X) and issued by substitute trustees in care of Romspen's counsel, which recites an assignment to RIC "with an effective date of February 5, 2024," names Galleria Loop Note Holder LLC as "Borrower," Otisco RDX, LLC as grantor of the deed of trust, and RIC (LaVernia), LLC as "Holder" of the May 31, 2019 loan, "currently held by Holder." After the Authority Order, Vargo, acting for Milestone, abandoned that position. On November 24, 2025, three days after signing his settlement with Romspen, he stipulated to a judgment in Adv. No. 24-05043 declaring Milestone's $5.9 million deed of trust "invalid, void, and of no force or effect," acting "by and through" the authority this Court's order conferred. Adv. No. 24-05043, ECF Nos. 194–195 (Exhibit U). The party on the other side was RIC (Lavernia), which is wholly owned by a Romspen entity: its petition lists its "100% Sole Member" as "Romspen (Reomaster II) Holdings Inc.," at the same Toronto address as TIG Romspen, and its counsel also represents TIG Romspen. ECF No. 1 at 6, 13–14 (June 27, 2024) (Exhibit V). Romspen paid Vargo

$225,000 under the same settlement. The order that let Vargo speak for Milestone and Otisco was used to end their challenge to the foreclosure on terms favorable to the party paying him. That result also inverts the reason this Court gave for Vargo's authority. The Court found that Vargo had an interest in this litigation because Milestone and Otisco claimed the property, and "any real-property income becomes distributions or proceeds to Mr. Choudhri, and through him to the Receiver." ECF No. 304 at 7. Three days after agreeing to receive $225,000 from Romspen, Vargo extinguished Milestone's claim to that property. Romspen's own lien on that property conceded Milestone's priority. The deed of trust Otisco gave Romspen in August 2023, the only lien through which RIC claims title, provides:

> Notwithstanding anything contained herein to the contrary, the rights, liens and obligations created hereunder are expressly subject and subordinate to the prior perfected security interest of Milestone Capital CRE I, LLC pursuant to that Deed of Trust and Security Agreement dated January 2, 2023 in an amount not to exceed $5,900,000 filed of record in Wilson County, Texas under Document No. 132703.

Otisco–Romspen Deed of Trust § 2.4 (Exhibit W). The stipulated judgment Vargo signed declared that same instrument, Document No. 2023-132703, "invalid, void, and of no force or effect." Adv. No. 24-05043, ECF No. 195. Vargo thus gave Romspen's affiliate, for Milestone, a result Romspen had expressly disclaimed in its own lien. By then Milestone held more than a lien: it had foreclosed its senior deed of trust on April 2, 2024 and taken a substitute trustee's deed to the La

Vernia property (Wilson County Doc. No. 141408), which RIC's counsel had demanded it rescind. Letter of K. Hirsch (Apr. 17, 2024) (Exhibit X).

31A. Romspen's own account confirms it. In the settlement agreement Vargo signed, Romspen recites that "Choudhri attended the sale; Romspen did not"; that the substitute trustee reported Romspen had acquired the property "for its opening bid of $100,000"; and that "Romspen then caused to be formed RIC (Lavernia) LLC ('RIC'), to serve as Romspen's designee of the successful credit bid," after which Romspen assigned its rights to RIC. Settlement Agreement, Recitals § C ¶ 2 (Exhibit M). That is the opposite of what RIC told this Court when it removed its suit against Milestone: that it "acquired the Property as the successful bidder at a non-judicial foreclosure sale on February 6, 2024." Notice of Removal ¶ 3, Adv. No. 24-05043, ECF No. 1. RIC's counsel, who also represents Romspen, testified that the assignment occurred "[a]round the time of the foreclosure sale" and that "[s]ometimes the assignment doesn't happen until after the sale." Hirsch Dep. 60:6–24, 113:21–24 (July 31, 2025) (Exhibit CC). And RIC did not schedule in this case the $18.5 million note its own deed says it held. ECF Nos. 20, 21, 28.

32. Vargo did not tell this Court about the settlement while he was defending this order. On November 24, 2025, he filed his response opposing Choudhri's motion to vacate the Authority Order, arguing that neither Choudhri nor any Choudhri LLC had authority to take a position "in any proceeding affecting the assets of those entities," relying on Receivership Orders and *WC 4th & Colorado*. ECF No. 337. The response, filed at 10:43 a.m. that day, does not mention the settlement,

Vargo's agreement with Romspen, or any payment to the receivership; Romspen appears only on the certificate of service. ECF No. 337 at 1–9. It also concedes that Choudhri's first motion to vacate was filed on "the 14th day following the entry of the Authority Order." *Id.* ¶ 5. By then the settlement with Romspen had been executed as of November 21, 2025; his counsel's invoices record its negotiation on November 16–20; the parties had agreed to convert the November 24 hearing to a status conference; and that same day Vargo withdrew the Milestone, OTISCO, and Choudhri filings and stipulated to judgment against Milestone in Adversary No. 24-05043, as the settlement required. ECF No. 338; Adv. ECF Nos. 194–195; Settlement Agreement §§ II.5, II.7 (Exhibit M). The settlement makes Vargo's authority "derived exclusively from" this order and the other Authority Orders, and requires Romspen's payment to be returned if a court finally rules that he lacked authority to bind Choudhri, OTISCO, or Milestone and released claims are then pursued against Romspen. *Id.* § II.13(m), (o). Vargo therefore had a direct financial stake in defeating the motion he was opposing, and he did not disclose it. That omission was material. Whether Vargo could bind Milestone, Otisco, and Choudhri was the question before the Court; Vargo had just agreed, for a $225,000 payment that could have to be returned if he lost, to use that authority to void Milestone's lien, withdraw their objections, and stipulate to a $42 million judgment against Choudhri. He asked this Court to uphold his authority without telling it what he had agreed to do with it. He never sought this Court's approval of the settlement, yet he later told the state court that it was made

"[f]ollowing Bankruptcy Court approval in the RICL Bankruptcy." Receiver's Omnibus Resp. at 5, Cause No. 2012-27197-A (Apr. 15, 2026) (Exhibit M). In his sworn March 3, 2026 report to the receivership court, Vargo went further, listing the $225,000 as received for

> [s]ettlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP . . . as authorized by Judge Michael Parker and Case # 24-10119-SMR . . . as authorized by Judge Christopher Bradley.

Receiver's Report, Accounting, and Motion to Distribute ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026) (sworn) (Exhibit J). No order of this Court or of Judge Bradley authorized that settlement. Choudhri's motion was then dismissed as moot without a hearing on the merits. ECF No. 344.

33. Ten days later Vargo used the same authority to end this case on Romspen's affiliate's terms. On December 4, 2025, the Debtor submitted a "Stipulated Order of Case Dismissal" signed by Vargo's counsel as "Attorneys for Travis Vargo, Receiver over Ali Choudhri, OTISCO RDX, LLC, and Milestone Capital CRE 1, LLC," and reciting that Vargo has "authority to direct litigation on behalf of" all three. ECF No. 347-1 at 1, 3 (Exhibit Y). The Court entered the order as submitted at 12:06 p.m. that day. ECF No. 348 (Exhibit Y). It resolved the motion at ECF No. 237 "without any findings or admissions as it relates to the allegations set forth therein," mooted "all outstanding motions/applications filed on behalf of . . . the Choudhri Parties," including ECF Nos. 225, 237, and 315, vacated the

December 16, 2025 hearing, and vacated "[t]he briefing schedule ordered to take place in the Court's order entered at ECF 328." *Id.* at 2. ECF No. 237 was Milestone's and Otisco's Second Amended Emergency Motion to Dismiss this case, which alleged that RIC (Lavernia) "is not the owner of the real estate in Wilson County," that the case "is based upon false attestations of ownership," and that RIC "did not exist as of the foreclosure sale" because it "was not formed until February 16, 2024." ECF No. 237 at 1–2 (Sept. 17, 2025) (Exhibit Z). Faced with that bad-faith dismissal motion, RIC and Vargo did not let it be decided. They stipulated to dismiss the case instead, "without any findings or admissions," and vacated the December 16, 2025 hearing, so that no finding was ever made on whether RIC owned the property it scheduled, whether it existed when it claimed to have bought it, or whether its case was filed in bad faith. Vargo, purporting to act for the movants, gave up their motion. And neither he nor RIC told this Court that Vargo had, two weeks earlier, agreed with RIC's affiliate Romspen to do so in exchange for a $225,000 payment to the receivership. That concealment went to the integrity of the dismissal itself. Like his November 24 response, the stipulation does not disclose the settlement or the $225,000 payment that depended on it. And it describes Vargo as "Receiver over" Otisco and Milestone, a status this Court's order expressly declined to confer. ECF No. 304 at 6 n.7. Romspen's counsel signed as "[r]eviewed and approved." ECF No. 347-1 at 3.

34. The release Vargo gave was not limited to this case. Under section 11 of the settlement, Vargo, "for the receivership estate, Choudhri, GLNH, Milestone,

OTISCO, and all other Choudhri-related businesses and interests under the Receiver's control," released Romspen and its "past and present affiliates" from "any and all . . . claims . . . which the Receiver ever had, now has, or may have in the future." Settlement § II.11 (Exhibit M). That release reaches Otisco, an entity owned by a non-debtor, and claims against Romspen affiliates in transactions unrelated to this case. Choudhri contends that Otisco's August 18, 2023 deed of trust on the La Vernia property, the lien on which RIC (Lavernia) later claimed title, was obtained from Otisco as additional collateral in connection with a 2022 transaction in which Romspen's affiliate, RIC (Kula Ranch) LLC, agreed to sell land in Maui to PBAC 507 Holdings, LLC, and that Romspen did not perform that transaction. PBAC 507 Holdings, LLC is one of the entities Vargo asked Choudhri to agree to turn over in July 2025. Whatever the merit of those claims, Vargo released them on behalf of companies he did not own, in favor of the party paying him, without disclosure to this Court.

35. Vargo relies on the Amended Orders' general authority to "compromise and settle any disputes, claims and/or causes of action by and/or against Debtor within his discretion." A Case Order ¶ 42; D Case Order ¶ 48. Choudhri does not contend that Vargo lacks all settlement authority. But that authority is a fiduciary's discretion exercised for the receivership estate; it does not license consenting to $42 million of new personal liability for the judgment debtor in exchange for a $225,000 payment on which Vargo then seeks a 25% fee, and it does not enlarge

what the Authority Orders decided. This Court's order is not a source of authority for that settlement.

36. The settlement agreement makes this order load-bearing. It recites that the Authority Orders "confirmed that Receiver has the legal right and authority over the claims and assets of Choudhri, Milestone, OTISCO, BDFI and GLNH" and that his "authority includes the authority to settle claims," though none of the Authority Orders addresses settlement. Settlement Agreement § I.D.3. Vargo "warrants and represents that his authority to enter into this Agreement is derived exclusively from the A-Case Receivership Order, the D-Case Receivership Order and the Authority Orders," *id.* § II.13(o), and the agreement provides that Romspen's payment must be returned if a court finally rules that he lacked authority to bind Choudhri, OTISCO, Milestone, or GLNH and released claims are then pursued against Romspen, *id.* § II.13(m). Under it, Vargo, acting expressly "on behalf of . . . Choudhri," waived Choudhri's limitations defenses, acknowledged equitable tolling based on Choudhri's conduct, waived any objection to Romspen's $33 million lien claim, agreed to stipulate to an injunction against Choudhri, and released Romspen on Choudhri's behalf. *Id.* §§ II.3 & n.1, II.11. (Exhibit M.)

37. **(d) Collecting LLC money as receivership assets.** In a sworn report filed March 3, 2026, Vargo listed among his receivership "collections" $225,000 from the "[s]ettlement and resolution of claims on behalf of Milestone Capital CRE1 LLC and Otisco RDX LLC associated with Bankruptcy Case # 24-51195-MMP,"

describing it as "authorized by Judge Michael Parker," and asked the receivership court to pay him a 25% fee on all collections, including that sum. Receiver's Report, Accounting, and Motion to Distribute ¶¶ 1, 14, Cause No. 2012-27197-D (Exhibit J). This Court's order gave Vargo only "all rights that the judgment debtors have" in those entities, ECF No. 304 at 6 n.7, and the sworn record before the Court showed that Otisco is owned solely by Shahnaz Choudhri, who is not a judgment debtor. ECF No. 288 ¶ 4. An order deciding who may litigate for an entity does not make that entity's settlement proceeds the judgment debtor's property. The same agreement attached a stipulated judgment for this Court's Adversary No. 24-05043 in which Vargo, "by and through" his authority under this order, agreed on Milestone's behalf that the Milestone deed of trust securing a $5,900,000 note "is invalid, void, and of no force or effect," and that the allegations in the Sanctions Order [Adv. ECF 176] are "deemed to be true," citing ECF Nos. 304 and 305 as his authority (ECF No. 305 is the clerk's certificate of mailing of ECF No. 304). Settlement Agreement Ex. II.5 ¶¶ 2–3 & A (Exhibit M). The judgment was entered on November 24, 2025, the day the agreed motion was filed and three days after the settlement's execution date. Adv. ECF Nos. 194, 195. By then Milestone's own counsel had been permitted to withdraw (Adv. ECF No. 164 (Sept. 3, 2025)), and Milestone's pending motion to transfer was denied as withdrawn the same day (Adv. ECF No. 196). The Court's sanctions findings [Adv. ECF Nos. 176, 177] were entered October 10, 2025, a week before this order. On November 24, 2025, Vargo also filed a notice withdrawing Milestone's

and OTISCO's objections to RIC's plan and the response that Choudhri had filed in his own name to RIC's Rule 9019 application. ECF No. 338 (withdrawing ECF Nos. 254, 255, 256).

38. **(e) Telling the appointing court its orders say the opposite of their text.** On May 27, 2026, Vargo told Judge Wilson that the Amended Orders "listed MCITBE as an entity under the Receiver's control" and contain an "adjudication . . . that Ali Choudhri was the owner of MCITBE (and that MCITBE has been turned over to the Receiver)," and he called a $433,946.26 note held by MCITBE "a receivership asset." Receiver's Special Report on MCITBE, LLC ¶¶ 1, 7(b) & Conclusion, Cause No. 2012-27197-D (Exhibit K). The Amended Orders list MCITBE among the "Choudhri LLC's," whose ownership interests are excluded from Receivership Assets and subject only to a charging order. A Case Order ¶¶ 8, 9(n), 18. Four months later, shown paragraph 8 under oath, Vargo conceded: "That's what it says here." Hearing Tr. 170:14–21 (Sept. 23, 2026) (Exhibit C). The next day he asked Judge Wilson for a writ of possession of 2232 Swift Blvd., real property titled in MCITBE, not in Choudhri, on the ground that "the Swift Property has not been turned over to the Receiver as required by the Amended Receivership Orders," relying on the "Debtors' business" paragraph for an entity that is not a "Debtor" under either order. Receiver's Motion for Possession and Comfort Order ¶¶ 1, 3–5 (May 28, 2026) (Exhibit K); *see* A Case Order ¶ 2; D Case Order ¶ 7. A creditor of a member has no right "to obtain

possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company." Tex. Bus. Orgs. Code § 101.112(f).

39. **(f) Choudhri's residence.** On June 12, 2026, Vargo asked the receivership court for possession of 4521 San Felipe Street, Unit 3201, the condominium where Choudhri lives. Arabella PH 3201 LLC is a different company related to the condominium. He told that court that his control of the "Choudhri LLCs" "was later confirmed and ratified by United States Bankruptcy Judges Parker and Bradley." Vargo's Mot. ¶ 2, Cause No. 2012-27197-A (June 12, 2026) (Exhibit A). His reply, under the heading "The Court Should Affirm Receiver Control of Arabella," cited Texas REIT ECF No. 784 as "finding Receiver had the sole authority to prosecute Dalio Holdings I LLC and Choudhri himself" and 1001 WL ECF No. 996 as "finding Receiver had the sole authority to litigate on behalf of BDFI LLC, Galleria Loop Note Holder, LLC and Jetall Capital, LLC, and Choudhri himself," and argued that a ruling that he controls Arabella "is consistent with the past rulings in this matter and related bankruptcy matters." Receiver's Reply ¶¶ 2–3 (June 23, 2026) (Exhibit A). On July 28, 2026, ruling by submission without an evidentiary hearing, the receivership court granted the motion. It took "judicial notice of its docket and prior orders," found Vargo "entitled to possession of the Penthouse," ordered a writ of possession "to remove all occupants and personal property," authorized Vargo to hire a realtor "to market and sell the Penthouse," and ordered that the recorded "General Warranty Deed" (RP-2024-272170) and "Correction General Warranty Deed" (RP-2026-83776)

"are declared VOID and EXPUNGED." Order Granting Vargo's Mot. for Writ of Possession at 1–2 (July 28, 2026) (Exhibit A); Staub Decl. ¶¶ 3–4 (Exhibit A). None of the Authority Orders mentions Arabella, its property, or title to real estate.

40. Each of these uses depends on reading the Authority Orders as a transfer of control over every Choudhri LLC and over Choudhri's personal liabilities. The orders do not say that, and continued prospective application of an order being used this way is not equitable.

41. The receivership court has since been asked to clarify the Amended Orders and has declined, without explanation. On June 19, 2026, Choudhri and the Dalio entities moved Judge Wilson to declare that Vargo's authority over Choudhri's LLC membership interests is "limited exclusively to receiving distributions under the charging-order provisions," that Vargo has "no management, voting, possession, or compulsion rights over any Choudhri LLC," and that the "Debtors' Business" clause does not authorize him "to manage, control, possess, or sell property of any Choudhri LLC." Defs.' Mot. to Clarify & Enforce Charging-Order Limitations at 13 (Exhibit AA). Vargo opposed. He told Judge Wilson that *WC 4th & Colorado* recognizes "an exception to the charging order exclusivity when the company in question has no business operations and no third parties would be affected," and that he "has sought, and will continue to seek, express authority from the Court confirming his authority when necessary." Vargo's Resp. ¶¶ 6, 8 (Aug. 21, 2026) (Exhibit AA). On September 3, 2026, Judge Wilson denied the

motion in a one-line order, without findings or reasons. Order ¶ 2, Cause No. 2012-27197-A (Sept. 3, 2026) (Exhibit AA).

42. That order does not change the analysis here. It modifies nothing in the Amended Orders; paragraph 8 still excludes Choudhri's "ownership interests in any limited liability company." It applies *WC 4th & Colorado* to no entity. And it adopts no reading of the orders: Vargo opposed the motion on grounds including finality, lack of evidence, and that it sought an "advisory opinion," Vargo's Resp. ¶¶ 1, 3–5, 10, and a denial on any of those grounds decides nothing about scope. What the response does establish is Vargo's own account of how any exception works: entity by entity, on a showing that the company has no business operations and that no third parties would be affected, by "express authority from the Court." *Id.* ¶¶ 6, 8. No such order has been entered as to Milestone Capital CRE 1, LLC or Otisco RDX, LLC. Third parties were plainly affected: Vargo used this order to stipulate that Milestone's $5.9 million deed of trust was void. Adv. No. 24-05043, ECF Nos. 194–195. The Authority Order made neither finding. Yet Vargo has used it as if it were the entity-specific authority he told Judge Wilson he must obtain.

### *E. Rule 60(d)(3): fraud on the court.*

42A. Independently, Rule 60(d)(3) preserves this Court's power to "set aside a judgment for fraud on the court," and that power has no time limit. Fraud on the court is limited to misconduct directed at the judicial process itself, and Movants rely for this ground only on filings made in this Court: Vargo's pursuit of the

Authority Order without disclosing his sworn April 3, 2025 testimony or his September 17, 2025 written concession that the Receivership Orders exclude "management rights in the Choudhri LLC's" (ECF No. 240 ¶ 8); his November 24, 2025 response defending the order (ECF No. 337) without disclosing the settlement that depended on it; and the stipulated dismissal (ECF No. 347-1) submitted without disclosure of that settlement.

## IV-A. VARGO'S CONTINUING USE OF THIS COURT'S ORDER: WHAT HE KEEPS DOING

43. This was not a one-time misstatement. It is a pattern, and it continues. Each time a court order or a bankruptcy filing stands between Vargo and Choudhri's property, Vargo decides for himself what the orders allow, invokes this Court's order to justify it, and acts. These events occurred as recently as September 23, 2026, and this motion followed promptly.

44. **December 5, 2025: the Meandering Bend hearing.** Choudhri had filed his own Chapter 11 case that morning, *In re Ali Choudhri*, No. 25-90797 (Bankr. S.D. Tex.). His counsel told the court on the record that "the filing of the bankruptcy would obviate any authority that the receiver has to proceed . . . . we have an automatic stay at this point." Meandering Bend Hr'g Tr. 6:12–7:2 (Dec. 5, 2025) (Ex. G). Vargo, through counsel, nonetheless claimed "sole control" of Choudhri's Meandering Bend membership interest, *id.* at 8:12–19, and, after being told "I'm not going to swear you in, sir," adopted that unsworn proffer with three "Yes" answers. *Id.* at 15:13–16:24.

45. Judge Robinson left the stay question open and limited the ruling: "[P]erhaps there is a violation of the stay in Mr. Choudhri's case. But that's not for me to decide. That's for some other judge to decide." Tr. 10:7–10 (Ex. G). "All I'm finding is that this petition was not properly filed . . . . I'm not going to make any other findings." *Id.* at 23:14–24.

46. **December 10, 2025: he asks permission, then does not wait.** Vargo told the Southern District that, under the receivership orders "as confirmed by the Authority Orders," Choudhri's "non-exempt assets" were outside the stay, while asking that court to decide that very question "pending this Court's determination." His own stay motion warned: "IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS." It was never granted. He had already acted on December 5. *In re Ali Choudhri*, No. 25-90797, ECF Nos. 21, 22 (Ex. H).

47. **July 14, 2026: MCITBE.** The sole member of record of MCITBE, LLC is Shahnaz Choudhri, who is not a judgment debtor. Vargo told the Northern District of Texas that "MCITBE is a Choudhri LLC owned solely by Choudhri" and moved to dismiss its Chapter 11 case for "lack of authority," relying on the "Authority Orders." *In re MCITBE, LLC*, No. 26-32580, ECF No. 21 ¶ 13(a) (Ex. B). He also recorded a notice of receivership that clouds title to the property at 2232 Swift Blvd., Houston, in which MCITBE holds an interest. The receivership orders his own counsel filed in that case exclude Choudhri's ownership interests in any limited liability company. *Id.*, ECF No. 20 (Ex. BB).

48. **September 10 and 15, 2026: an on-the-record agreement, then execution despite it.** Before the Honorable Tracy Good, Vargo agreed: "I'm not removing him from the home"; the court confirmed no removal "until a hearing that's scheduled for the 14th," and closed: "I got everybody here. We're all in agreement and got it on the record." Reporter's Record, Cause No. 2026-63841, at 5:19–9:3 (Sept. 10, 2026) (Ex. BB). The hearing never occurred. On September 15, 2026, while Arabella's Chapter 11 case was pending and on a posted notice that had set execution for September 12, the writ was executed at the home. When Choudhri read the bankruptcy case number aloud, the response was: "the writ was issued before, the stay doesn't apply . . . That's correct. Google it." Video recorded September 15, 2026 (Ex. BB, lodged). The court described the agreement as protecting Choudhri and a family member residing with him "until you actually have a full-fledged hearing before the court." *Id.* at 7:2–5. At that same hearing, Vargo invoked this District's orders to the state court: "Mr. Poynter's going to go through Federal bankruptcy court orders, that also bolster my reading of the order." *Id.* at 4:6–8. In the same breath he accused Choudhri of the very thing he was doing: Choudhri, he said, "weaponizes any and all rulings by any Court and then tries to utilize them in the next court." *Id.* at 5:9–12.

49. **September 23, 2026: under oath.** Vargo's counsel told the Northern District that "Judge Robinson, Judge Bradley, Judge Parker have made determinations that Mr. Vargo is in charge of and has control over the Choudhri LLCs." MCITBE Hr'g Tr. 51:19–22 (Ex. B). Asked whether he approved those arguments, Vargo answered:

"I didn't say that." *Id.* at 145:11–16 (Ex. BB). Shown paragraph 8 of his own orders, which excludes Choudhri's ownership interests in any limited liability company, he testified: "That's what it says here." *Id.* at 170:14–21 (Ex. BB).

50. **Statements that federal courts approved what they never approved.** In a report signed under penalty of perjury, Vargo described $225,000 from TIG Romspen as "authorized by Judge Michael Parker" in Case No. 24-51195 and authorized in Case No. 24-10119. Report ¶ 1, Cause No. 2012-27197-D (Mar. 3, 2026) (Ex. J). He later told the same court the payment came "[f]ollowing Bankruptcy Court approval." Omnibus Resp. at 5 (Apr. 15, 2026) (Ex. M). No motion to approve that settlement was filed in either case, and no order approved it.

51. **Why this matters under Rule 60(b).** Rule 60(b)(3) reaches orders obtained or used through misrepresentation and misconduct, and Rule 60(b)(5) and (6) permit relief when continued prospective application is no longer equitable. An order that its beneficiary keeps re-describing to other courts, and invokes to justify acts taken during other courts' automatic stays, should not continue in force in its current form. It should be vacated.

## IV-B. <u>THE JUDGMENTS ENTERED FOR RIC (LAVERNIA) AND THE STIPULATED DISMISSAL SHOULD ALSO BE VACATED</u>

51A. Movants also seek relief from three orders entered on Vargo's authority: the stipulated judgment in Adversary No. 24-05043 declaring Milestone's deed of trust void (Adv. ECF No. 195, entered November 24, 2025); the judgment for RIC in Adversary No. 25-05040, Otisco RDX, LLC v. RIC (Lavernia) LLC (Adv. ECF

No. 126, entered October 15, 2025); and the Stipulated Order of Case Dismissal (ECF No. 348, entered December 5, 2025). This motion is filed within one year of the Milestone judgment and of ECF No. 348. As to the Otisco judgment, Movants proceed under Rule 60(b)(6) and 60(d)(3). Two days after that judgment, Vargo asserted control of Otisco's litigation in this Court under the Authority Order and used it to stipulate this case to dismissal rather than to challenge RIC's title.

51B. Each of those orders rests on RIC's claimed title, and the record shows that claim was misrepresented. RIC told this Court it "acquired the Property as the successful bidder" on February 6, 2024 (¶ 31A). Its certificate of formation was filed on February 16, 2024 and became effective on filing. Certificate of Formation, Tex. Sec'y of State Filing No. 805430834 (Exhibit GG). On the morning of the sale, Romspen, not RIC, was acting as holder: at 8:31 a.m. Romspen's counsel quoted the "[p]ayoff for LaVernia" as $2,266,000 in a thread captioned "Romspen – Wilson County sale," and at 12:24 p.m. wrote, "I expect the sale is going forward." RIC is not mentioned. Emails of K. Hirsch (Dec. 26, 2023 – Feb. 13, 2024) (Exhibit FF). The Otisco judgment rests on the finding that the foreclosure deed showed the sale was conducted by duly appointed substitute trustees, Adv. No. 25-05040, ECF No. 126 ¶ 2.2, the same deed whose recitals about RIC the record contradicts.

51C. **Rule 60(b)(3).** That misrepresentation, together with RIC's failure to schedule the note its own deed says it held (¶ 31A), kept the question of who held the debt, and therefore who could credit bid, from ever being tested. Milestone was prevented

from presenting its case at all: its judgment was entered on Vargo's stipulation three days after he agreed to accept payment from RIC's affiliate (¶¶ 31–32). ECF No. 348 then mooted Milestone's and Otisco's challenge to RIC's title "without any findings or admissions" (¶ 33).

51D. **Rule 60(b)(4).** Independently, the Milestone judgment and ECF No. 348 are void as to Movants. Both were entered on consent given by Vargo, who held only the judgment debtors' rights in Milestone and Otisco, not the right to act for them "to the exclusion of all others" or to dispose of their property. ECF No. 304 at 6 n.7. Otisco's sole member is not a judgment debtor (¶ 23). A stipulation surrendering Milestone's $5.9 million lien, given by a person without authority to give it while he had agreed to accept payment from the opposing side, did not afford Milestone or Otisco the notice and opportunity to be heard that due process requires. Espinosa, 559 U.S. at 271.

51E. **The automatic stay.** ECF No. 348 was entered at 12:06 p.m. on December 5, 2025, after Choudhri's 11:13 a.m. Chapter 11 petition, on a stipulation by Vargo purporting to direct litigation on Choudhri's behalf (¶ 27). The Fifth Circuit treats acts in violation of the stay as voidable rather than void, Sikes v. Global Marine, Inc., 881 F.2d 176, 178–79 (5th Cir. 1989), but an order entered on a stipulation given for the debtor by a custodian whose authority the petition suspended, 11 U.S.C. §§ 362(a)(3), 543(a), should not bind him. Whether the stay was willfully violated is pending in No. 25-90797, and Movants ask only that the timing be considered here.

51F. **Rule 60(d)(3) and 60(b)(6).** RIC's representation to this Court about its own existence and status on the sale date, made in its notice of removal and left uncorrected in its sworn schedules, was directed at the Court's process, and Rule 60(d)(3) has no time limit. Independently, judgments entered on the stipulations of a receiver who had agreed to accept $225,000 from the opposing party's affiliate, without disclosure to the Court, present extraordinary circumstances under Rule 60(b)(6).

51G. Choudhri is a party to and bound by ECF No. 348, which was entered on Vargo's stipulation as having "authority to direct litigation on behalf of Ali Choudhri" and which mooted Choudhri's pending motions. ECF No. 347-1 (Exhibit Y). Choudhri requested the payoff from Romspen's counsel on the morning of the sale, received the emails in Exhibit FF, and will testify to them.

## V. <u>ALTERNATIVE RELIEF: CLARIFICATION</u>

52. Only if the Court declines to vacate the Authority Order, Movants ask the Court to confirm the limits it already stated: the order is limited to authority to litigate in this case and its adversary proceedings; it does not adjudicate ownership or turnover of any interest in Milestone, Otisco, or any other LLC (ECF No. 304 at 6 nn.6–7); it gives Vargo, exclusive of the judgment debtors only, the rights the judgment debtors hold, and does not affect the rights of other members or managers (*id.* at 6 n.7); and it makes no determination as to any other entity or proceeding. Movants further ask the Court to confirm that the Authority Order

does not authorize Vargo to settle, compromise, or stipulate to a money judgment against Choudhri individually.

53. The record set out above, including Vargo's undisclosed sworn statements, the settlement he did not disclose while defending ECF No. 304, the stipulated dismissal entered without disclosure of that settlement, and his sworn report that the settlement was "authorized by Judge Michael Parker," warrants further inquiry. Movants ask that, after ruling on this motion, the Court on its own initiative under Bankruptcy Rule 9011(c)(3) and its inherent authority order Vargo, and RIC (Lavernia) LLC and TIG Romspen US Master Mortgage LP and their counsel as to the matters described in Parts IV and IV-A, to show cause why sanctions should not issue.

## VI. RELIEF REQUESTED

Movants respectfully ask the Court to reopen the case to the extent necessary; vacate the Authority Order and deny the Motion to Show Authority [ECF No. 277], or set it for a new evidentiary hearing on full notice; vacate the judgment in Adversary No. 24-05043 [Adv. ECF No. 195], the judgment in Adversary No. 25-05040 [Adv. ECF No. 126], and the Stipulated Order of Case Dismissal [ECF No. 348], after reopening those proceedings to the extent necessary; set an evidentiary hearing and order RIC (Lavernia) LLC and TIG Romspen US Master Mortgage LP to produce RIC's formation documents, every assignment between them and the consideration paid, any credit-bid authorization, the substitute trustee's records of the February 6, 2024 sale, and any recording of that sale; and enter the proposed order submitted as Exhibit DD. Only if the Court declines to

vacate the Authority Order, Movants ask the Court to enter the alternative order submitted as Exhibit EE. Pending a ruling, Movants ask the Court to confirm that the Authority Order does not authorize Vargo to consent to, or decline to oppose, a money judgment against Choudhri individually. Movants request such other relief as is just. Movants further ask that, after ruling, the Court issue an order to show cause as described above.

Date: October 19, 2026

Respectfully submitted,

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No.: 0403083
***Vincent Law, PLLC***
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832) 603-4444
**info@vincentlawpllc.com**

**COUNSEL FOR ARABELLA PH 3201 LLC, OTISCO RDX, LLC, AND MILESTONE CAPITAL CRE 1, LLC**

**JOINED BY:**

Ali Choudhri joins in this motion and in each request for relief in it.

*/s/ Ali Choudhri*
**Ali Choudhri, pro se**
4521 San Felipe, Unit 3201
Houston, Texas 77027
(281) 630-6627
**ali@jetallcapital.com**

*Vincent Law, PLLC represents Arabella PH 3201 LLC, Otisco RDX, LLC, and Milestone Capital CRE 1, LLC and does not represent Ali Choudhri individually.*

## CERTIFICATE OF CONFERENCE

I certify that on October 19, 2026, I conferred by email with counsel for Travis B. Vargo, Leslie M. Luttrell, regarding the relief requested in this motion. Later that evening, I sent a supplemental conferral email describing the expanded relief to Ms. Luttrell and to counsel for RIC (Lavernia) LLC and TIG Romspen US Master Mortgage LP, Kyle S. Hirsch, R. Luke Graham, Justin D. Hanna, and Lynn Hamilton Butler. No response was received before filing, and the motion is presented as opposed.

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**

## CERTIFICATE OF SERVICE

I certify that on October 19, 2026, this motion, its exhibits, and the proposed orders were filed through the Court's CM/ECF system, which will send notice of the filing to all parties registered to receive electronic notice in this case, including counsel for Travis B. Vargo.

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**

# EXHIBIT INDEX

| | |
|---|---|
| **Exhibit A** | Vargo's filings in the 333rd District Court citing the authority orders: Motion for Writ of Possession (June 12, 2026); Reply (June 23, 2026); Order (July 28, 2026); Declaration of Derek Staub (highlighting added) |
| **Exhibit B** | Transcript excerpts, *In re MCITBE LLC*, No. 26-32580 (Bankr. N.D. Tex.) (Sept. 23, 2026), pp. 51, 101; and the Receiver's Motion to Dismiss, ECF No. 21 (July 14, 2026) (highlighting added) |
| **Exhibit C** | Transcript excerpts, *In re MCITBE LLC*, No. 26-32580 (Bankr. N.D. Tex.) (Sept. 23, 2026) (highlighting added) |
| **Exhibit D** | Transcript, April 3, 2025 hearing, *In re Texas REIT, LLC*, No. 24-10120 (complete) (highlighting added) |
| **Exhibit E** | Email from Vargo to Kell Mercer (Apr. 4, 2025) (highlighting added) |
| **Exhibit F** | *In re Meandering Bend, LLC*, ECF Nos. 28 and 65; *In re 1001 WL, LLC*, ECF Nos. 935 and 954 (highlighting added) |
| **Exhibit G** | Transcript, December 5, 2025 hearing, *In re Meandering Bend, LLC*, No. 25-11334 (ECF No. 138) (highlighting added) |
| **Exhibit H** | Choudhri Chapter 11 filings and notice, No. 25-90797 (Dec. 5–19, 2025), including ECF Nos. 21, 22, 33 (highlighting added) |
| **Exhibit I** | *TIG Romspen v. Galleria Loop Note Holder, LLC*, No. 2023-84714: Motion for Entry of Stipulated Judgment and proposed Final Judgment (Dec. 19, 2025); revised proposed Final Judgment (Oct. 7, 2026); Order on Unopposed Motion to Lift Abatement (Apr. 14, 2026) (highlighting added) |
| **Exhibit J** | Receiver's Report, Accounting, and Motion to Distribute, Cause No. 2012-27197-D (Mar. 3, 2026) (sworn), with its Exhibit 2 (invoices) (excerpts) (highlighting added) |
| **Exhibit K** | Receiver's Special Report on MCITBE, LLC; Receiver's Motion for Possession and Comfort Order (May 28, 2026) (highlighting added) |
| **Exhibit L** | Receiver's Report to Court (June 9, 2026) (highlighting added) |
| **Exhibit M** | Settlement Agreement between TIG Romspen and Vargo (Nov. 21, 2025); Receiver's Omnibus Response (Apr. 15, 2026) (excerpts) (highlighting added) |

| | |
|---|---|
| **Exhibit N** | *In re RIC (Lavernia) LLC*, ECF No. 240 (Sept. 17, 2025) (highlighting added) |
| **Exhibit O** | Email from Michael Poynter to counsel for the taxing authorities, *City of Houston v. Arabella PH 3201 LLC*, No. 2023-67381 (Aug. 19, 2026) |
| **Exhibit P** | Transcript excerpts, April 11, 2025 hearing, *In re Texas REIT, LLC* (highlighting added) |
| **Exhibit Q** | Transcript of recorded telephone call between Choudhri and Vargo (Aug. 1, 2025) (highlighting added) |
| **Exhibit R** | Proposed "Agreed Order of Turnover," Cause No. 2012-27197-A (unsigned and undated) (highlighting added) |
| **Exhibit S** | Milestone Capital CRE 1, LLC and Otisco RDX, LLC presentation regarding RIC (Lavernia) LLC (Aug. 2025) |
| **Exhibit T** | Video of the February 6, 2024 La Vernia foreclosure sale: transcript and stills (highlighting added) |
| **Exhibit U** | Stipulated judgment, Adv. No. 24-05043, ECF No. 195 (Nov. 24, 2025) (highlighting added) |
| **Exhibit V** | Voluntary Petition, *In re RIC (Lavernia) LLC*, ECF No. 1 (June 27, 2024) (highlighting added) |
| **Exhibit W** | Deed of Trust from Otisco RDX, LLC to TIG Romspen (Aug. 2023) (highlighting added) |
| **Exhibit X** | Letter from Kyle Hirsch to Lori and John Daves (Apr. 17, 2024) (highlighting added) |
| **Exhibit Y** | Notice of Submission of Stipulated Order of Case Dismissal and proposed order, ECF No. 347 (Dec. 4, 2025); Stipulated Order of Case Dismissal, ECF No. 348 (Dec. 5, 2025) (highlighting added to ECF No. 347) |
| **Exhibit Z** | Milestone's and Otisco's Second Amended Emergency Motion to Dismiss, ECF No. 237 (Sept. 17, 2025) (highlighting added) |
| **Exhibit AA** | Defendants' Motion to Clarify and Enforce Charging-Order Limitations; Receiver's Response (Aug. 21, 2026); Order (Sept. 3, 2026), Cause No. 2012-27197-A (highlighting added) |
| **Exhibit BB** | Supplemental record: transcript excerpts, *In re MCITBE, LLC*, No. 26-32580 (Sept. 23, 2026), pp. 145, 170; *In re MCITBE, LLC*, ECF No. 20 |

| | |
|---|---|
| | (July 7, 2026); Reporter's Record, Cause No. 2026-63841 (Sept. 10, 2026); video recorded Sept. 15, 2026 (lodged) (highlighting added) |
| **Exhibit CC** | Deposition of Kyle S. Hirsch, *In re 1001 WL, LLC*, No. 24-10119 (July 31, 2025), excerpts (highlighting added) |
| **Exhibit DD** | Proposed Order (requested relief) Vacating ECF No. 304, the Judgments in Adversary Nos. 24-05043 and 25-05040, and ECF No. 348 (also uploaded separately under L. Rule 9013-1(b)) |
| **Exhibit EE** | Alternative Proposed Order Clarifying ECF No. 304, only if the Court declines to vacate (also uploaded separately under L. Rule 9013-1(b)) |
| **Exhibit FF** | Emails between Kyle Hirsch and Ali Choudhri, "Romspen – Wilson County sale" (Dec. 26, 2023 – Feb. 13, 2024) (highlighting added) |
| **Exhibit GG** | Certificate of Formation, RIC (Lavernia) LLC, Tex. Sec'y of State Filing No. 805430834 (Feb. 16, 2024) (highlighting added) |