**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RIC (LAVERNIA) LLC,** | § | **Case No. 24-51195-mmp** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

# EXHIBIT CC

Deposition of Kyle S. Hirsch, *In re 1001 WL, LLC*, No. 24-10119
(July 31, 2025), excerpts (highlighting added)

*Movants' Rule 9024 Motion as to ECF Nos. 304 and 348 and the Judgments in Adv. Nos. 24-05043 and 25-05040*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

In re: 1001 WL LLC,
Debtor.

CASE NO. 24-10119
CHAPTER 11

---

REMOTE STREAMING DEPOSITION OF

KYLE SYLVAN HIRSCH

TAKEN ON
THURSDAY, JULY 31, 2025
3:04 P.M.

A. I decline to provide you that information.

Q. You're refusing to answer the question about which lawyers at Cave -- let's back up. Is it



Bryan Cave Leighton Paisner? Is that right?

A. That's the name of the law firm, yes.

Q. And that's the law firm that represents TIG Romspen, correct?

A. In this matter, that's correct.

Q. And do you represent RIC (Lavernia), the debtor, in bankruptcy in Judge Parker's court?

MS. NDEGE: I'm going to object to the question. What does that have to do with the settlement agreement?

MR. CHOUDHRI: I'm not here to answer your questions, Ms. -- Ms. Ndege. You can instruct your client not to answer or object, and we can take it up with the judge.

But when you have a credit bid, and a debt, and claims that are being released as part of this 9019, and the value of those claims, and the

Q. What's her name?
A. I -- I -- I would have to research it. It's probably on the substitute trustee deed.
Q. And so the substitute trustee deed states that the sale happened -- let me back up a little bit. It's true that you represent RIC (Lavernia), LLC, and we've established that earlier. Is that correct?
A. Yes. What does that have to do with the 9019 motion?
Q. Because RIC (Lavernia), according to you, acquired the property at a foreclosure sale through a credit bid of $100,000 on February the 6th, 2024, correct?
A. As TIG Romspen's assignee, yes.
Q. Explain what you mean by that, "as TIG Romspen assignee."
A. TIG Romspen assigned its interest to RIC (Lavernia).
Q. When?
A. That's what an assignee is.
Q. When?

A. I don't know. Around the time of the foreclosure sale.

MR. CHOUDHRI: And the -- let's take a



five-minute break, please.

THE REPORTER: We'll go off the record, 4:30 p.m.

(WHEREUPON, a recess was taken.)

THE REPORTER: We're back on the record, 4:35 p.m.

BY MR. CHOUDHRI:

Q. So Mr. Hirsch, you testified earlier that RIC Lavernia acquired the Lavernia property through a credit bid for 100,000 at the February 6, 2024, foreclosure sale; is that correct?

A. As the assignee of TIG Romspen, yes.

Q. And what -- what consideration was provided in that transfer?

A. I'm not -- I'm not getting into the internal workings on those matters. They don't

appointment of the Chapter 11 trustee.

Q. So just so we're clear, Mr. Hirsch, so Mr. Taylor and his firm, Holland & Knight, would not get any money if your 9019 is approved, correct?

A. Not from Romspen's cash collateral. If there's unencumbered proceeds or unencumbered cash, then that's totally available to people. We can't control that. We're not intending to control that.

Q. Mr. Hirsch, can you explain why -- so would it be you, Mr. Hirsch -- now, I asked you the questions about Lavernia. Now, I want to move over to 1001 West Loop and the October 1, 2024, sale -- foreclosure sale. You're familiar with the October 1, 2024, foreclosure sale, right?

A. I'm familiar that there was a -- there was an attempt to conduct a sale that day.



Q. What do you mean "an attempt to conduct a sale," and how are you aware that there was an attempt to conduct a sale?

A. Well, as I testified earlier, we retained service to handle the notice and posting and recording and conduct of trustee sales, which we did in that case after Judge Robinson granted stay relief.

As you very well know, Galleria Loop Note Holder filed an improper lawsuit that was timely removed before there was a TRO signed by the state court judge. Then Kirklin Properties filed its lawsuit, which has since been non-suited, and I think was a frivolous and improper lawsuit. They sought an ex parte TRO, again, not notifying anybody that they knew were representing TIG Romspen, and they got a TRO.

And so the sale went forward, and my understanding is when the TRO was evaluated and the sale was considered, there was -- Romspen been declined to accept the sale as a valid sale because of the entry of the TRO.

Q. Mr. Hirsch, have you taken a position that the TRO was invalid, and Romspen proceeded forward with the foreclosure?

A. As an affiliate from the estate from Chapter 11 trustee. Just like other affiliates of Romspen and officers, it's standard provision. There's nothing unusual. This is how releases are drafted.

Q. Do you have any knowledge of what the value of the property in Lavernia is?

A. I do. I'm familiar with an appraisal that was performed.

Q. And how much is the value of the appraisal you've seen that was performed?

A. To my recollection, it was around 7 million, maybe seven and a half.

Q. And so Romspen didn't provide any funding to get that property. They provided 100,000 credit bid, right?



A. I'm not sure I understand your question.

Q. Romspen did not pay any money -- strike that.

How much money did RIC Lavernia pay to

obtain this Lavernia property that you claim is worth $7 million or whatever?

A. Yeah. I told you before, I'm not going to get into the inner workings of Romspen as to the assignment from one affiliate to another. You know, the deed of trust that was given to TIG Romspen was limited to the amount of 2,266,000. As you know, that amount approximated the property taxes paid by TIG Romspen and interest on those property taxes on the 1001 West Loop property.

When you asked for a forbearance, Romspen asked what you could offer in order to secure the forbearance. You said that this Otisco property in Lavernia was owned by your mother and some other investors, and therefore, because there were also investors in the West Loop property, it was valuable to them to preserve the West Loop property. And they were willing to give this deed of trust certainly on the limited basis of the $2,266,000.

Q. Anything else, Mr. Hirsch?

A. Anything else what?

spoke to at ServiceLink?



A. No, this has nothing to do with the 9019 motion. You are well outside the scope of why I'm here today.

Q. So Mr. Hirsch, you understand what evidence suppression is and witness tampering? Do you know what that is?

A. Of course.

Q. And you spoke to somebody at ServiceLink regarding testifying and avoiding a subpoena to testify regarding the Galleria Loop Note Holder foreclosure for October 2024 foreclosure sale.

A. Are you telling me that I did, or are you asking me a question because I don't recall that?

Q. Okay. So let's get the facts straight, okay?

A. Whose facts are these? Yours or mine?

Q. Well, I'm going to ask you. That's how we get facts, right? Hopefully, you're telling the

trustee's deed. Romspen declined to even proceed. I answered that very clearly.

Q. So Mr. Hirsch --

A. If you forgot, I'm sorry that your memory isn't very good, but that was my testimony.

Q. Mr. Hirsch, when I ask you for the name of the attorney that represents the company that conducted the foreclosure sale, you refused to provide that information, and that is very relevant information. So you're concealing that information, and you heard Mr. Roitman that you conducted and handled and hired and processed and directed the foreclosure sale.

So all of this is very relevant because you are also a beneficiary of a release, and it's



very relevant on who owns the property. Does Romspen own the property, or does the debtor own the property? And you're just refusing to --

A. Romspen does not take the position that Romspen owns the property.

2200 Ross Avenue, Suite 4200, West Dallas, Texas 75201.

Q. And it says "Holder," right? It says, "Holder, RIC Lavernia, LLC"?

A. Yes.

Q. So RIC Lavernia was the assignee of TIG Romspen before the February 6, 2024, foreclosure sale; is that correct?

A. I'm not sure exactly when the assignment took place, but it would have been sometime around the foreclosure sale.

Q. But it would have to take place before the foreclosure sale. Would you agree with me on that?

A. Not necessarily.

Q. Why not?

A. Sometimes the assignment doesn't happen until after the sale. And what's assigned is the trustee's deed and the credit bid right and the successful credit bid.

Q. And so basically, walk me through this.

amount of 18,500,000, executed by borrower, payable to the holder of lender and currently held by holder."

Q. And "Holder" is capital H, right?

A. Yes.

Q. And then read the next paragraph that says "Recording."

A. Recorded on August 22, 2023, as document number 135641 in the official public records of Wilson County, Texas, receipt number 20230822000016."

Q. Okay.

A. Okay.

Q. So this says the holder is RIC Lavernia, LLC, correct, on the substitute trustee's bill in sale.

THE DEPONENT: Mr. Choudhri, I've been



extremely patient with you today. I've offered you the opportunity to examine me as it relates to the limited issues of the 9019 motion. We started at

approximately 3:00 p.m. It's now 6:00 p.m. I'm unwilling to continue any further.

MR. CHOUDHRI: Well, I would object to that. I still have more questions, and I want to continue on and complete this deposition. So I would ask you to continue on and answer questions. And I'm pulling up the objections, and you've refused to answer the question on the holder.

BY MR. CHOUDHRI:

Q. This reflects the holder of the debt is RIC Lavernia. You saw that, right?

A. I'm declining to answer any further questions. I think I've provided ample opportunity for you to ask your questions. I'm here voluntarily on the limited purpose of the 9019. You've had three hours to ask questions. I am -- I am not willing to sit voluntarily for any further questions.

Q. Mr. Hirsch, you are seeking the court on Monday to not allow me to represent myself and be defenseless in front of the bankruptcy court and not have representation. That is your -- that is your

clarifications to your testimony on this sheet, showing page and line number. If there are no changes, write "none" across the page. Sign this sheet and the line provided.

Page Line Reason for Change

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

____ ____ ________________________________________

Signature: ___________________________

Kyle Hirsch