**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RIC (LAVERNIA) LLC,** | § | **Case No. 24-51195-mmp** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

# EXHIBIT Z

Milestone's and Otisco's Second Amended Emergency Motion to Dismiss, ECF No. 237 (Sept. 17, 2025) (highlighting added)

*Movants' Rule 9024 Motion as to ECF Nos. 304 and 348 and the Judgments in Adv. Nos. 24-05043 and 25-05040*

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ' | **CASE NO. 24-51195-MMP** |
| | ' | |
| **RIC (LAVERNIA) LLC,** | ' | |
| **DEBTOR** | ' | **CHAPTER 11** |

**Hearing Reset To:**
September 24, 2025
**Hearing Time:** 9:30am CST

---

**MILESTONE CAPITAL CRE 1, LLC, AND OTISCO RDX, LLC'S**
**SECOND AMENDED EMERGENCY MOTION TO DISMISS BANKRUPTCY CASE**

**TO THE HONORABLE MICHAEL M. PARKER,**
**UNITED STATES BANKRUPTCY JUDGE:**

Parties-in-Interest Milestone Capital CRE 1, LLC, ("Milestone") and Otisco RDX, LLC, ("Otisco") (collectively "Movants") hereby submit this Second Amended Emergency Motion to Dismiss. This pleading replaces the prior Amended Motion as former counsel did not properly present the same. Movants should not be prejudiced from pursuing their Motion to Dismiss this bankruptcy case due to the actions of an attorney who admitted, under oath, to his impaired disposition at the time of such filings. It is Movants' understanding that the Clerk was instructed by former counsel of this substitution and that the Clerk has stricken the prior amendment. [Doc. 207] Furthermore, as this has always been a dispositive motion, a conference with opposing counsel was not ever required.

Good grounds, however, exist for the Court to dismiss Debtor RIC (Lavernia) LLC's ("Debtor") Chapter 11 Bankruptcy Petition based upon the fact that RIC (Lavernia), LLC is not the owner of the real estate in Wilson County., the only scheduled asset.

This Chapter 11 is based upon false attestations of ownership and purported plans to develop the same real estate to pay creditors. RIC (Lavernia), LLC never took proper legal title to the Wilson County real estate. It holds no interest in that real property. Movant wishes to

present testimony to show who the legal owner is based upon the foreclosure sale and Texas property law.

## I. INTRODUCTION AND SUMMARY OF RELIEF REQUESTED

1. Debtor's entire bankruptcy case is premised on fraud committed before the bankruptcy case by seeking to redo a foreclosure after the sale had been struck to another bidder for $550,000. Thereafter, when the holder of the first mortgage (Milestone) commenced foreclosure proceedings, the Debtor filed this Chapter 11 and submitted sworn schedules misrepresenting itself as the owner of the real property.

2. Wilson County Appraisal District shows the original owner as Otisco RDX, LLC (see Exhibit 1).

3. As the evidence will show, RIC (Lavernia), LLC did not exist as of the foreclosure sale conducted by the second lienholder, Romspen. This Debtor was not formed until February 16, 2024 (see Exhibit 2).

4. Furthermore, the successful bidder at the sale was Drew Dennett, bidding for his client who now is the rightful owner of the Wilson County real estate, subject to the tax liens and first mortgage lien of Milestone. He has been prevented from clearing title and compelling the proper deed to be issued due these bankruptcy proceedings.

5. It is admitted that this case was filed to stop the foreclosure proceedings of Milestone on this same real estate. Since the Debtor was not the successful bidder at the Romspen foreclosure of its second lien, the Debtor also had no standing to challenge the Milestone first mortgage in this Court or any court.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over the Bankruptcy Case and Motion under 28 U.S.C. §§ 157 and 1334.

7. This Motion constitutes a core proceeding per 28 U.S.C. § 157(b)(2).

8. The legal predicates for relief are §§ 105and 1112 of the Bankruptcy Code and Rules 1017, 2002, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

9. About 2019, 1001 WL, LLC ("1001 WL") owned one piece of real property located at 1001 West Loop South, Houston, Texas 77027 ("Office Building"). Midfirst Bank had a lien on the Office Building.

10. Midfirst Bank assigned its note and lien to Galleria Loop Noteholder who borrowed $18,500,000 million from TIG Romspen US Master Mortgage, LP ("Romspen") and executed a promissory note to that effect ("Note").

11. 1001 WL is currently in bankruptcy as In re 1001 WL, LLC Styled Case No. 24-10119-smr ("1001 WL Bankruptcy").

12. Otisco, owned undeveloped property in La Vernia, Wilson County, Texas ("La Vernia Property").

13. On or about January 2, 2023, Milestone acquired a first mortgage lien on the La Vernia Property. The property is also subject to tax liens held by Propel Financial Services.

14. On August 18, 2023, Otisco gave a Deed of Trust to Romspen as additional collateral to secure the Original Note which was subject to the Milestone mortgage (See Exhibit 3). Thereafter Romspen's Original Note was allegedly cross- collateralized by 1001 WL's Office Building and a subordinate lien on Otisco's La Vernia Property, known in these proceedings as the Wilson County Property.

15. On February 6, 2024, Romspen, as the purported lienholder, sought to foreclose on the La Vernia Property owned by Otisco ("February 2024 Sale") (see Exhibit 3). There is uncontroverted evidence that the foreclosure sale of the La Vernia Property was struck and sold for $550,000 to a third-party bidder, not to Romspen, nor the later formed Debtor.

16. Moreover, after the February 2024 Sale was completed, a fraudulent trustee's deed and bill of sale were issued (see Exhibit 4). The Deed issued by the Substitute Trustee listed the holder of the Original Note as Debtor, not Romspen, and further stated in the Deed that Debtor purchased the property, which was false. It is believed that attorney's for Romspen prepared these documents to assist the fraud.

17. Although Romspen and Debtor's counsel testified in a deposition that the Deed of Trust was assigned to Debtor at about the time of the February 2024 Sale (see Exhibit 4) which could not have occurred, that assignment could not have occurred on or before the foreclosure because the Debtor did not exist at that time. The Debtor was not formed as a Texas entity until February16, 2024, after the foreclosure sale (see Exhibit 2).

18. Yet, Debtor filed this Chapter 11 and has scheduled the La Vernia Property in Wilson County as its only asset.

19. Moreover, in the bankruptcy proceedings of 1001 WL, LLC, Romspen filed an amended proof of claim [Claim No. 1-2] asserting that Romspen (not the Debtor) is the holder of the Original Note and thus owns the debt. This Proof of Claim was submitted under penalty of perjury by the same attorney who is counsel of record for the Debtor in these proceedings.

20. After the February 2024 Sale, Milestone took action to foreclose on the La Vernia Property.

21. On April 24, 2024, Debtor filed an Original Petition against Milestone to void Milestone's lien on the La Vernia Property in Wilson County Texas. That case is *RIC (LaVernia) LLC v. Milestone Capital CRE 1, LLC et al.*, Cause No. CVW-2404240 ("State Court Case"). That suit as well was groundless since the Debtor was not the buyer at the foreclosure sale.

22. On June 27, 2024, Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11, United States Code beginning this bankruptcy case ("Bankruptcy Case").

23. On June 28, 2024, Debtor removed the State Court Case to the Bankruptcy Court, which began the adversary proceeding of RIC (Lavernia) LLC against Milestone Capital CRE 1, LLC, John Daves, Lori Daves, Andres Cedillos ("Milestone Adversary") or ("Milestone") in Case No. 24-05043.

24. As the Debtor does not own the real estate, it had no standing to bring the Milestone Adversary and removed the same for further delay of the rights of Milestone.

## IV. LEGAL ARGUMENT

### A. Applicable Legal Standards

25. The Bankruptcy Court mandates that, on request of a party interest, a court "shall convert" a Chapter 11 bankruptcy case to Chapter 7 "or *dismiss a case*…whichever is in the best interests of the creditors and the estate, *for cause*." 11 U.S.C. § 1112(b)(1) and (4) (emphasis added). The Fifth Circuit has held that a bankruptcy filed without "good faith" should be dismissed under the "cause" standard in Section 1112(b) of the Bankruptcy Code. *See*, *e.g.*, *In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991); *In re Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992).

26. "[G]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." *In re Cedar Short Resort, Inc*., 235 F.3d 375, 379 (8th Cir. 2000) (quoting *In re Metropolitan Realty Corp*., 433 F.2d 676, 678 (5th Cir. 1970)). The Fifth Circuit has made clear that this "good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *Elmwood Dev*., 964 F.2d at 510 (5th Cir. 1992). Further, the good faith standard maintains the integrity of the bankruptcy process by providing equitable bankruptcy relief only to debtors with "clean hands.").

27. The bankruptcy court, as "a court of equity, is enabled to frustrate fraud and work complete justice" with "broad statutory power" pursuant to 11 U.S.C. § 105(a) to dismiss a bankruptcy proceeding *sua sponte. See* 11 U.S.C. § 105(a); *Pipkins-Thomas v. United States*, 223 Fed. Appx. 310, 313 (5th Cir. 2007) (internal quotations omitted) (explaining that the Bankruptcy Code vests bankruptcy courts with latitude to carry out provisions of the Code and prevent abuses of process). Accordingly, the Fifth Circuit has also provided the following rule when determining whether a filing has been made in good faith:

> The good faith determination depends largely upon the bankruptcy court's on-the spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.

*Elmwood Dev*., 964 F.2d at 510. This is a totality of the circumstances test. *See, e.g*., *Cedar Shore*, 235 F.3d at 379.

28. After the movant satisfies the initial burden to make a prima facie showing of bad faith, the burden shifts to the bankruptcy petitioner to demonstrate good faith. *In re Sherwood Enters., Inc*., 112 B.R. 165, 172 (Bankr. S.D. Tex. 1989) (describing the burden shifting analysis). Here there is nothing the Debtor can do to refute the foreclosure sale which occurred before it came into existence.

29. Bad faith is also routinely found in this Circuit when the debtor files a petition merely to secure a litigation advantage, forum shop, and/or when there is no financial need for bankruptcy. *See Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) ("[B]ad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal."); *See* No. 12-39321-H3-11, 2013 Bankr. LEXIS 2499, at *4 (Bankr. S.D. Tex. Jun. 19, 2013) (the bankruptcy court dismissed a bad faith filing, where the debtor operated profitably pre- and post-petition because "[t]here was no financial need" to file the Chapter 11 bankruptcy other than to gain unfair advantage in litigation). In this case there is

no "financial need" as the Debtor is not the owner of the property it seeks to administer in the Chapter 11.

30. Furthermore, seeking to frustrate the foreclosure of Milestone's lien on this real estate, despite lack of any standing to challenge the lien, was another clear motive here.

31. The Fifth Circuit's case *In In re Antelope Techs., Inc*, is an example of a case where the Fifth Circuit found dismissal was appropriate when a filing is guided by litigation tactics. 431 Fed. Appx. 272, 273 (5th Cir. 2011). In this case, the Fifth Circuit evaluated whether the bankruptcy court erred in denying a motion to dismiss a bad faith filing where a Chapter 11 bankruptcy was initiated by the controlling shareholders of the debtor who had been sued. *Id.* The bankruptcy court had "found that the petition was filed to gain advantage in the shareholder litigation rather than for a reorganization" and held that "there was no clear error in the finding that the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action." *Id.* at 275.

**B. <u>The Totality of the Circumstances Shows that Debtor's Bankruptcy Case was Filed in Bad Faith and Must be Dismissed</u>.**

32. As shown in detail above, the Bankruptcy Case is a sham. The Debtor has falsely attested ownership to real estate it does not own and scheduled the same as its sole asset. The owners of the Debtor, which appear to be controlled by Romspen, only filed this case to prevent the bidder at the foreclosure sale from taking title and to frustrate the first lienholder's foreclosure. The simple reality is that the State Court Case was pending before the Debtor's bankruptcy filing and was being resolved in the Texas State Court. Despite this, Debtor engaged in forum shopping by filing the Bankruptcy Case and removing the State Court Case to this Court.

33. Debtor is not and has never been the owner of the real estate. Its A/B schedule at the time the Bankruptcy Case filing was false, and it remains false today. This filing with a

false attestation as to ownership in the Wilson County real estate unequivocally shows that the Debtor's filing was done in bad faith and for a litigation advantage, thus prompt dismissal is warranted.

## V. CONCLUSION

WHEREFORE, Movants request that the Court grant the Motion and for any further relief as may be just and proper.

Dated: September 17, 2025

Respectfully submitted,

*/s/ Lyndel Anne Vargas*__________
Lyndel Anne Vargas
State Bar No. 24058913
CAVAZOS HENDRICKS POIROT, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX 75202
Direct Dial: (214) 573-7344
Fax: (214) 573-7399
Email: LVargas@chfirm.com

Attorneys for Milestone Capital CRE 1, LLC
and Otisco RDX, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2025, a true and correct copy of the foregoing was served via the Court's ECF notification system, the U.S. Trustee, and any party who has filed a notice of appearance in this case, or via first class mail, postage prepaid on the parties listed.

Clinton Wayne Alexander on behalf of Attorney Kell C Mercer
calexander@bls-legal.com

Karalyssa C Casillas on behalf of Creditor Wilson County
karalyssa.casillas@lgbs.com

Erin Coughlin on behalf of Interested Party United States Trustee - SA12 erin.coughlin@usdoj.gov, carey.a.tompkins@usdoj.gov; omar.e.jones@usdoj.gov

Paul Kirklin
pkirklin@kirklinlaw.com

Stephen Kirklin on behalf of Attorney Paul Kirklin
skirklin312@gmail.com

Leslie M. Luttrell on behalf of Interested Party Travis B Vargo
luttrell@lclawgroup.net, sdpitis@lclawgroup.net; wperotti@lclawgroup.net; emeier@lclawgroup.net

Kiernan McAlpine on behalf of Plaintiff Otisco RDX, LLC
kier@mcalpinelaw.com

Shea Neal Palavan on behalf of Interested Party Shea N Palavan
shea@houstonip.com, service@houstonip.com

Justin Rayome on behalf of Interested Party Milestone Capital CRE 1, LLC justin.rayome.law@gmail.com

Justin Rayome on behalf of Plaintiff/Interested Party Otisco RDX, LLC justin.rayome.law@gmail.com

Gerald Sager on behalf of Interested Party ServiceLink
jerry.sager@fnf.com

Howard Marc Spector on behalf of Creditor Propel Financial Services as agent and attorney in fact for FNA VII, LLC
hspector@spectorcox.com, sshank@spectorcox.com; ahawkins@spectorcox.com; slthorn@spcctorcox.com hspector@ccf.courtdrive.com

George H. Spencer, Jr. on behalf of Defendant John Daves
gspencer@langleybanack.com

George H. Spencer, Jr. on behalf of Defendant Lori Daves
gspencer@langleybanack.com

United States Trustee - SA 12 - USTPRegion07.SN.ECF@usdoj.gov

Lyndel A. Vargas on behalf of Interested Party Milestone Capital CRE 1, LLC
LVargas@chfirm.com, chps.ecfnotices@ecf.com

Lyndel A. Vargas on behalf of Plaintiff/Interested Party Otisco RDX, LLC
LVargas@chfirrn.com

Natalie F. Wilson on behalf of Defendants/Interested Parties John Daves and Lori Daves
nwilson@langleybanack.com, Gjohnston@langleybanack.com;
sfoushee@langleybanack.com

U.S. Bankruptcy Court
615 E. Houston Street, Room 597
San Antonio, Tx 78205-2055

RIC (Lavernia) LLC
162 Cumberland Street, Suite 300
Toronto, ON M5R 3N5 Canada

John Daves
The Daves Law Firm
3624 North Hills Drive Suite B100
Austin, TX 78731-3242

Ali Choudhri
1001 West Loop South, Suite 700
Houston, TX 77027-9033

Andres Cedillos
3951 FM 1303
Floresville, TX 78114-6440

Peter J. Stanton
The Law Offices of Peter J. Stanton
111 Soledad, Suite 470
San Antonio, TX 78205-2243

Linebarger Goggan Blair & Sampson
Attn Don Stecker
112 E Pecan, Suite 2200
San Antonio TX 78205-1588

Internal Revenue Service Centralized
Insolvency Operations
Post Office Box 7346
Philadelphia, PA 19101-7346

*/s/ Lyndel Anne Vargas*__________
Lyndel Anne Vargas

# Wilson CAD Property Search

Page 3 of 3 - Total: 52 (0.23 seconds)

1 2 3 — 51 - 52 of 52 items

| Property ID | Geo ID | Type | Owner Name | Owner ID | Address | Legal Description | Appraised |
|---|---|---|---|---|---|---|---|
| 20139145 | 0481-00000-00108 | R | OTISCO RDX LLC | 187195 | (LAKE VALL... DR), LA VER... TX 78121 | A0481 W H L JACKSON SUR, TRACT 1 PT, ACRES 1.924, (TRACT 3C) | $871,060 |
| 20139146 | 0171-00000-00109 | R | OTISCO RDX LLC | 187195 | (LAKE VALL... DR), LA VER... TX 78121 | A0171 H & TC RR CO SUR, TRACT 1 PT & TR 2 PT A481 W H L JACKSON, ACRES 152.88, (TRACT 3D) | $1,041,980 |

1 2 3 — 51 - 52 of 52 items

**EXHIBIT 1**
**Page 1 of 6**

# Wilson CAD Property Search

Page 2 of 3 - Total: 52 (0.06 seconds)

1 2 3 — 26 - 50 of 52 items

| Property ID | Geo ID | Type | Owner Name | Owner ID | Address | Legal Description | Appraised |
|---|---|---|---|---|---|---|---|
| 38114 | 0760-12000-24500 | R | OTISCO RDX LLC | 187195 | 109 CHAMPIONS BLVD, LA VERNIA TX 78121 | LAS PALOMAS COUNTRY CLUB EST, LOT 245A (SEC 12), ACRES 1.0 | $59,000 |
| 20139142 | 0171-00000-00107 | R | OTISCO RDX LLC | 187195 | (LAKE VALLEY DR), LA VERNIA TX 78121 | A0171 H & TC RR CO SUR, TRACT 1 PT & TR 2 PT A481 W H L JACKSON, ACRES 120.18, (TRACT 2) | $899,580 |
| 20139141 | 0171-00000-00106 | R | OTISCO RDX LLC | 187195 | (LAS PALOMAS DR), LA VERNIA TX 78121 | A0171 H & TC RR CO SUR, TRACT 1 PT & TR 2 PT A481 W H L JACKSON, ACRES 24.92, (TRACT 1) | $384,760 |
| 53643 | 0933-01000-04000 | R | OTISCO RDX LLC | 187195 | 852 LAKE VALLEY DR, STOCKDALE TX 78160 | THE MEADOWS AT QUAIL RUN, LOT 40, SEC 1, ACRES 1.01 | $80,000 |
| 53642 | 0933-01000-03900 | R | OTISCO RDX LLC | 187195 | 848 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 39, SEC 1, ACRES 1.01 | $80,000 |

**EXHIBIT 1**
**Page 2 of 6**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 53641 | 0933-01000-03800 | R | OTISCO RDX LLC | 187195 | 844 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 38, SEC 1, ACRES 1.01 | $80,000 |
| 53640 | 0933-01000-03700 | R | OTISCO RDX LLC | 187195 | 840 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 37, SEC 1, ACRES 1.01 | $80,000 |
| 53639 | 0933-01000-03600 | R | OTISCO RDX LLC | 187195 | 836 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 36, SEC 1, ACRES 1.02 | $80,100 |
| 53638 | 0933-01000-03500 | R | OTISCO RDX LLC | 187195 | 832 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 35, SEC 1, ACRES 1.03 | $80,180 |
| 53637 | 0933-01000-03400 | R | OTISCO RDX LLC | 187195 | 828 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 34, SEC 1, ACRES 1.01 | $80,000 |
| 53636 | 0933-01000-03300 | R | OTISCO RDX LLC | 187195 | 824 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 33, SEC 1, ACRES 1.83 | $64,090 |

**EXHIBIT 1**
**Page 3 of 6**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20139143 | 0171-00000-00108 | R | OTISCO RDX LLC | 187195 | (LAKE VALLEY DR), LA VERNIA TX 78121 | A0171 H & TC RR CO SUR, TRACT 1 PT & TR 2 PT A481 W H L JACKSON, ACRES 60.14, (TRACT 3A) | $449,430 |
| 53635 | 0933-01000-03200 | R | OTISCO RDX LLC | 187195 | 820 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 32, SEC 1, ACRES 1.2 | $79,470 |
| 53633 | 0933-01000-03000 | R | OTISCO RDX LLC | 187195 | 812 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 30, SEC 1, ACRES 1.01 | $80,000 |
| 53632 | 0933-01000-02900 | R | OTISCO RDX LLC | 187195 | 808 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 29, SEC 1, ACRES 1.01 | $80,000 |
| 53631 | 0933-01000-02800 | R | OTISCO RDX LLC | 187195 | 804 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 28, SEC 1, ACRES 1.01 | $80,000 |
| 53630 | 0933-01000-02700 | R | OTISCO RDX LLC | 187195 | 800 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 27, SEC 1, ACRES 1.01 | $80,000 |

**EXHIBIT 1**
**Page 4 of 6**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 53629 | 0933-01000-02600 | R | OTISCO RDX LLC | 187195 | 796 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 26, SEC 1, ACRES 1.01 | $80,000 |
| 53626 | 0933-01000-02300 | R | OTISCO RDX LLC | 187195 | 784 LAKE VALLEY DR, LA VERNAI TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 23, SEC 1, ACRES 1.01 | $80,000 |
| 53625 | 0933-01000-02200 | R | OTISCO RDX LLC | 187195 | 780 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 22, SEC 1, ACRES 1.02 | $80,100 |
| 53624 | 0933-01000-02100 | R | OTISCO RDX LLC | 187195 | 776 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 21, SEC 1, ACRES 1.51 | $62,050 |
| 53622 | 0933-01000-01900 | R | OTISCO RDX LLC | 187195 | 768 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 19, SEC 1, ACRES 3.32 | $116,270 |
| 53621 | 0933-01000-01800 | R | OTISCO RDX LLC | 187195 | 764 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 18, SEC 1, ACRES 1.01 | $80,000 |
| 53634 | 0933-01000-03100 | R | OTISCO RDX LLC | 187195 | 816 LAKE VALLEY DR, LA VERNIA TX 78121 | THE MEADOWS AT QUAIL RUN, LOT 31, SEC 1, ACRES 1.02 | $80,100 |

**EXHIBIT 1**
**Page 5 of 6**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20139144 | 0481-00000-00107 | R | OTISCO RDX LLC | 187195 | (LAKE VALLEY DR), LA VERNIA TX 78121 | A0481 W H L JACKSON SUR, TRACT 1 PT, ACRES 0.456, (TRACT 3B) | $15,050 |

1 2 3

26 - 50 of 52 items

**EXHIBIT 1**
**Page 6 of 6**

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Jane Nelson
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

RIC (Lavernia) LLC
Filing Number: 805430834

Certificate of Formation February 16, 2024

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on August 01, 2025.

Jane Nelson
Secretary of State



*Come visit us on the internet at https://www.sos.texas.gov/*
Phone: (512) 463-5555 Fax: (512) 463-5709 Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB TID: 10266 Document: 1505464660005

**Form 205**
**(Revised 12/21)**

Submit in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555

**Filing Fee: $300**

This space reserved for office use.

# Certificate of Formation Limited Liability Company

## Article 1 – Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

RIC (Lavernia) LLC

The name must contain the words "limited liability company," "limited company," or an abbreviation of one of these phrases.

## Article 2 – Registered Agent and Registered Office

(See instructions. Select and complete either A or B and complete C.)

☑ A. The initial registered agent is an organization (cannot be entity named above) by the name of:

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company

**OR**

☐ B. The initial registered agent is an individual resident of the state whose name is set forth below:

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|
| | | | |

C. The business address of the registered agent and the registered office address is:

| *Street Address* | *City* | *State* | *Zip Code* |
|---|---|---|---|
| 211 E. 7th Street, Suite 620 | Austin | TX | 78701-3218 |

## Article 3—Governing Authority

(Select and complete either A or B and provide the name and address of each initial governing person.)

☐ A. The limited liability company initially has managers. The name and address of each initial manager are set forth below.

☑ B. The limited liability company does not initially have managers. The name and address of each initial member are set forth below.

**INITIAL GOVERNING PERSON 1**

**NAME** (Enter the name of either an individual or an organization, but not both.)

**IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|
| | | | |

**OR**

**IF ORGANIZATION**

Romspen (Reomaster II) Holdings Inc.

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|
| 162 Cumberland Street, Ste 300 | Toronto | ON | CN | M5R 3N5 |

**EXHIBIT 2**
**Page 2 of 5**

**INITIAL GOVERNING PERSON 2**

**NAME** (Enter the name of either an individual or an organization, but not both.)

**IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|
| | | | |

**OR**

**IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|
| | | | | |

**INITIAL GOVERNING PERSON 3**

**NAME** (Enter the name of either an individual or an organization, but not both.)

**IF INDIVIDUAL**

| *First Name* | *M.I.* | *Last Name* | *Suffix* |
|---|---|---|---|
| | | | |

**OR**

**IF ORGANIZATION**

*Organization Name*

**ADDRESS**

| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |
|---|---|---|---|---|
| | | | | |

## Article 4 – Purpose

The purpose for which the company is formed is for the transaction of any and all lawful purposes for which a limited liability company may be organized under the Texas Business Organizations Code.

## Initial Mailing Address

(Provide the mailing address to which state franchise tax correspondence should be sent.)

| *Mailing Address* | *City* | *State* | *Zip Code* | *Country* |
|---|---|---|---|---|
| 162 Cumberland Street, Ste 300 | Toronto | ON | M5R 3N5 | CN |

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

**EXHIBIT 2**

**Page 3 of 5**

## Organizer

The name and address of the organizer:

Joel Mickelson
*Name*

| 162 Cumberland Street, Ste 300 | Toronto | ON | M5R 3N5 |
|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Zip Code* |

## Effectiveness of Filing (Select either A, B, or C.)

A. ☑ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, or a later date and time, not more than 90 days from the date of signing. The later effective date, or date and time is: ______________________

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: ______________________

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned also affirms that, to the best knowledge of the undersigned, the name provided as the name of the filing entity does not falsely imply an affiliation with a governmental entity. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized to execute the filing instrument.

Date: February 16, 2024

DocuSigned by:
Joel Mickelson
Signature of organizer

Joel Mickelson
Printed or typed name of organizer

**EXHIBIT 2**
**Page 4 of 5**

Form 401-A
(Revised 12/09)

# Acceptance of Appointment and Consent to Serve as Registered Agent §5.201(b) Business Organizations Code

The following form may be used when the person designated as registered agent in a registered agent filing is an individual.

---

Acceptance of Appointment and Consent to Serve as Registered Agent

I acknowledge, accept and consent to my designation or appointment as registered agent in Texas for

*Name of represented entity*

I am a resident of the state and understand that it will be my responsibility to receive any process, notice, or demand that is served on me as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if I resign.

x: ______

*Signature of registered agent* *Printed name of registered agent* *Date (mm/dd/yyyy)*

---

The following form may be used when the person designated as registered agent in a registered agent filing is an organization.

---

Acceptance of Appointment and Consent to Serve as Registered Agent

I am authorized to act on behalf of Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company

*Name of organization designated as registered agent*

The organization is registered or otherwise authorized to do business in Texas. The organization acknowledges, accepts and consents to its appointment or designation as registered agent in Texas for:

RIC (LAVERNIA) LLC

*Name of represented entity*

The organization takes responsibility to receive any process, notice, or demand that is served on the organization as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if the organization resigns.

x: By: [signature] Brian Courtney, Asst. Vice President 2/16/2024

*Signature of person authorized to act on behalf of organization* *Printed name of authorized person* *Date (mm/dd/yyyy)*

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company

---

**EXHIBIT 2**
**Page 5 of 5**

**Fill in this information to identify the case:**

Debtor 1: 1001 WL, LLC

Debtor 2 (Spouse, if filing): ____

United States Bankruptcy Court for the: Western District of Texas

Case number: 24-10119

# Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

TIG Romspen US Master Mortgage LP
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Name | Kyle S. Hirsch, Bryan Cave Leighton Paisner LLP | TIG Romspen US Master Mortgage LP |
| Number Street | 2200 Ross Avenue, Suite 4200W | See wire instructions attached |
| City State ZIP Code | Phoenix AZ 85004 | |
| Contact phone | (602) 364-7000 | (416) 966-1100 |
| Contact email | kyle.hirsch@bclplaw.com | blakecassidy@romspen.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 1-1 Filed on 02/16/2024 (MM / DD / YYYY)

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____

**EXHIBIT 3**
**Page 1 of 6**

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 8 7 5 7

**7. How much is the claim?**

$ 33,115,553.94 . **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

A lien encumbering Debtor's sole asset

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________

**Basis for perfection:** UCC Statement 19-0022217680

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $____________

**Amount of the claim that is secured:** $ 33,115,553.94

**Amount of the claim that is unsecured:** $____________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 33,115,553.94

**Annual Interest Rate** (when case was filed) 10.25 %

☑ Fixed
☐ Variable

and default interest calculated at 15.25% per annum

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________

**EXHIBIT 3**
**Page 2 of 6**

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $____________________ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $____________________ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $____________________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $____________________ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $____________________ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 07/12/2024
MM / DD / YYYY

/s/ Blake A. Cassidy
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Blake (First name) Alexander (Middle name) Cassidy (Last name)

Title: President of the GP of the sole member of the GP of the creditor

Company: ____________________
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 162 (Number) Cumberland Street, Suite 300 (Street)
Toronto, Ontario, Canada M5R 3N5 (City) State ZIP Code

Contact phone (416) 966-1100 Email blakecassidy@romspen.com

**EXHIBIT 3**
**Page 3 of 6**

Attachment to TIG Romspen US Master Mortgage LP
**<u>Amended Proof of Claim for 1001 WL, LLC</u>**
**<u>United States Bankruptcy Court, W. D. Tex., Case No. 24-10119</u>**

As of February 6, 2024 (the "*Petition Date*"), TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership ("*Romspen*") asserted its original claim against the bankruptcy estate of Chapter 11 debtor and debtor-in-possession 1001 WL, LLC (the "*Debtor*") in connection with the Romspen lien encumbering the Debtor's sole asset as security for payment and performance of the indebtedness owed by Galleria Loop Note Holder, LLC ("*GLNH*") as described herein.

Romspen made a loan to GLNH in the original principal amount of $18,500,000.00 (the "Loan"). The Loan is evidenced by, among other things: (i) that certain Loan Agreement dated May 31, 2019, between GLNH and Romspen (as amended, modified, and/or restated from time to time, the "Loan Agreement"); and (ii) that certain Promissory Note dated May 31, 2019, in the original amount of $18,500,000.00 given by GLNH in favor of Romspen (as amended, modified, and/or restated from time to time, the "Note" and together with the Loan Agreement and all other documents evidencing and/or securing the Loan, the "Loan Documents").

To secure GLNH's payment and performance obligations under the Loan, GLNH granted to Romspen, among other things a senior priority lien interest in and to an office building located at 1001 West Loop South, Houston, Texas, 77027 ("Office Building") and related personal property (together, with the Office Building, the "Property") pursuant to: (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Romspen Deed of Trust") dated September 4, 2019, recorded on September 5, 2019, in the Official Records of Harris County, Texas at Document Number RP-2019-392981; (ii) an absolute assignment of all the rents generated from and leases related to the Office Building pursuant to that certain Assignment of Leases and Rents dated September 4, 2019, and recorded on September 5, 2019, in the Official Records of Harris County, Texas at Document Number RP-2019-393175 (the "Romspen Assignment of Rents"); and (iii) a senior priority security interest in substantially all of GLNH's personal property as set forth in that certain Security Agreement dated May 31, 2019 (the "Romspen Security Agreement" and, together with the Romspen Deed of Trust dated September 4, 2019 and the Romspen Assignment of Rents, the "Security Documents").

Romspen perfected its security interests in and to the Property by recording the Romspen Deed of Trust and the Romspen Assignment of Rents in the Harris County Records; and by filing a UCC-1 Financing Statement in the Texas Secretary of State's Office on June 13, 2019 as document number 19-0022217680 (the "UCC-1").

The Loan Documents prohibit GLNH from transferring any of the Property. See Loan Agreement, § 5(C); Romspen DOT, § 6.2. However, all of the assets of GLNH were transferred to the Debtor, as evidenced by that Special Warranty Deed recorded on January 22, 2024 (the "Prepetition Transfer Deed"), purporting to convey to the Debtor an office building located at 1001 West Loop South, Houston, Texas 77027.

Additionally, as inducement for Romspen to further forbear from enforcing its rights and

remedies arising from GLNH's defaults under the Loan as set forth in that certain Amended and Restated First Amendment to Reinstatement of and Amendment to Loan Agreement executed on or about August 14, 2023 ("Amended and Restated First Amended Reinstatement Agreement"), GLNH caused related entity OTISCO RDX, LLC ("OTISCO") to grant Romspen a lien encumbering undeveloped real property owned by OTISCO located in La Vernia, Wilson County, Texas (the "La Vernia Property"). The Romspen lien encumbering the La Vernia Property secured repayment of a portion of the indebtedness owed by GLNH on the Loan, specifically in the initial stated amount of $2,266,000.00, subject to increases for accruing interest and other amounts (the "La Vernia Lien Indebtedness").

After GLNH again failed to pay and perform as agreed, and after giving due and proper notice, Romspen caused the beneficiary under the La Vernia deed of trust to foreclose its lien interest encumbering the La Vernia Property. On February 6, 2024, the La Vernia Property was sold to Romspen's assignee RIC (Lavernia) LLC for a successful bid in the amount of $100,000.00.

As of the Petition Date, the amount due and owing to Romspen arising from the Loan Documents was $33,215,553.94 as set forth in Romspen's Proof of Claim #1-1 filed on February 16, 2024. Rompsen now amends Proof of Claim #1-1 to deduct its $100,000.00 credit bid, reducing the amount due and owing as of the Petition Date to $33,115,553.94, plus interest and any other charges that continue to accrue.

All of the documents associated with these described transactions are too voluminous to attach, may be made available upon proper request. However, many of the Loan Documents are attached as exhibits to Romspen's stay relief motion filed on February 14, 2024 [ECF 5].

Romspen generally reserves the right to further amend this Proof of Claim.

Neither the filing of this Amended Proof of Claim, nor any subsequent appearance, pleading, claim, amended proof of claim, document, suit, motion, nor any other writing or conduct shall be deemed or construed as: (i) a waiver or release of Romspen's rights against any person, entity, estate or property (including, without limitation, any person or entity that is or may become a debtor in a case pending in this Court); (ii) a consent by Romspen to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving Romspen; (iii) a waiver or release of Romspen's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein or therein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related thereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such right to jury trial is pursuant to statute or the United States Constitution; (iv) a consent by Romspen to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (v) a waiver or release of Romspen's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (vi) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Amended Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Romspen; (vii) a waiver or release of any right of setoff or recoupment that Romspen

may hold against Debtor or any other obligor of the amounts reflected herein; or (vii) a waiver or release of any of Romspen's other rights, claims, actions, defenses, or other matters to which Romspen is entitled under any agreements or at law or equity or under the United States Constitution.

COPY

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**STATE OF TEXAS** §
§
**COUNTY OF WILSON** §

| | |
|---|---|
| Date: | January 11, 2024 |
| Borrower: | Galleria Loop Note Holder LLC, a Texas limited liability company |
| Borrower's Address: | 2500 West Loop South, Suite 255, Houston, Texas 77027 |
| Holder: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Holder's Address: | 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5 |
| Substitute Trustees: | Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone |
| Substitute Trustees' Address: | 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201 |
| Deed of Trust: | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing |
| Date: | August 18, 2023 |
| Grantor: | OTISCO RDX, LLC, a Texas limited liability company |
| Lender: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Trustee: | Randa Barton |

4806764

| | |
|---|---|
| Secures: | Promissory Note (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder. |
| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in this Notice of Substitute Trustee's Sale, it being the intent that the Foreclosure Sale will cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |
| Foreclosure Sale | |
| Date of Sale: | Tuesday, February 6, 2024 |
| Time of Sale: | The sale of the Property will take place between the hours of 12:00 p.m. and 3:00 p.m. local time; the earliest time at which the sale will take place is 12:00 p.m., and the sale will begin within three hours thereafter. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |

Holder has appointed Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone, as Substitute Trustees under the Deed of Trust upon the contingency and in the manner outlined by the Deed of Trust and in accordance with Chapter 51 of the Texas Property Code. Default has occurred pursuant to the provisions of the Deed of Trust. The indebtedness evidenced by the Note is now wholly due. Holder has instructed Substitute Trustees, and each of them acting alone, to sell the Property toward the satisfaction of the Note.

The Deed of Trust may encumber both real and personal property. Notice is hereby given of Holder's election to proceed against and sell all the real property and any personal property described in the Deed of Trust in accordance with the Holder's rights and remedies under the Deed of Trust and Section 9.604 of the Texas Business and Commerce Code.

Notice is hereby given that on the Date of Sale, at the Time of Sale, Substitute Trustees, or any of them acting alone, will offer the Property for sale at public auction at the Place of Sale, to the highest bidder for cash, "AS IS". THERE WILL BE NO WARRANTY RELATING TO TITLE, POSSESSION OR QUIET ENJOYMENT OR THE LIKE FOR THE PERSONAL PROPERTY INCLUDED IN THE SALE. Holder may bid by credit against the indebtedness secured by the Deed of Trust. The Substitute Trustee(s) conducting the Foreclosure Sale may, at their option, postpone the sale for a reasonable time to permit the highest bidder (if other than Holder) to produce cash to pay the purchase price bid, and the sale may be resumed if the bidder fails to produce cash to pay the purchase price within such time period, provided in any event the sale shall be concluded no later than 4:00 P.M. local time.

Troy Martin
TROY MARTIN, Substitute Trustee

STATE OF TEXAS §
§
COUNTY OF Medina §

This instrument was acknowledged before me on this 11 day of January, 2024, by Troy Martin, as Substitute Trustee.

[SEAL] DEBORAH MARTIN Notary Public, State of Texas Comm. Expires 01-16-2024 Notary ID 124796435

Deborah Martin
Notary Public, State of Texas

My Commission Expires:
1/16/2024

Deborah Martin
Printed Name of Notary

After recording return to:

Kyle S. Hirsch
c/o Bryan Cave Leighton Paisner LLP
2200 Ross Avenue, Suite 4200 W
Dallas, Texas 75201

# EXHIBIT A

## LEGAL DESCRIPTION

Tract 1:
A 24.92 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171, and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 24.91 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 3) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 24.92 acre tract being more particularly described by metes and bounds on Exhibit "A" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

Tract 2:
A 120.18 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being all of that called 120.16 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 5) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 120.18 acre tract being more particularly described by metes and bounds on Exhibit "B" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3A:
A 60.14 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 60.14 acre tract being more particularly described by metes and bounds on Exhibit "C-1" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated whether formally or by implication or operation of law, as a road or roadway.

Tract 3B:
A 0.456 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 0.456 acre tract being more particularly described by metes and bounds on Exhibit "C-2" attached hereto and made a part hereof for all purposes.

Tract 3C:
A 1.924 acre tract of land, more or less, situated in the H.&T.C.R.R.Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 1.924 acre tract being more particularly described by metes and bounds on Exhibit "C-3" attached hereto and made a part hereof for all purposes.

Tract 3D:
A 152.88 acre tract of land, more or less, situated in the H.&T.C.R.R. Co. Survey No. 39, Abstract 171 and the W.H.L. Jackson Survey No. 40, Abstract 481, Wilson County, Texas, being out of that residue of a called 279.69 acre tract described in Deed to the Meadows at Quail Run, Ltd. (Tract 6) recorded in Volume 1211, Page 431 of the Wilson County Official Public Records, said 152.88 acre tract being more particularly described by metes and bounds on Exhibit "C-4" attached hereto and made a part hereof for all purposes.

LESS AND EXCEPT any portion of the subject property used or dedicated, whether formally or by implication or operation of law, as a road or roadway.

<u>Tract 4:</u>
Lots 244 and 245A, Las Palomas Country Club Estates, Unit 12, as per plat of Las Palomas Country Club Estates, Unit 12 filed of record in Volume 8, Pages 13-16, Plat Records of Wilson County, Texas, as amended by plat filed of record in Volume 9, Pages 42-43, Plat Records of Wilson County, Texas, to any extent modified by partial replatting as per plat of Estates of Quail Run Subidivison, filed of record in Volume 9, Pages 72-74, Plat Records of Wilson County, Texas.

<u>Tract 5:</u>
Lots 18, 19, 21, 22, 23 and 26 through 40, The Meadows at Quail Run, Section 1, as shown on plat of The Meadows at Quail Run, Section 1 of record in Volume 9, Pages 44-47, Plat Records of Wilson County, Texas.

<u>Tract 6:</u>
Lot 13, Lake Valley Estates Subdivision, Unit 35 as per plat of Lake Valley Estates Subdivislion, Unit 35 of record in Volume 5, Page 29, Plat Records of Wilson County, Texas.

<u>Tract 7:</u>
Lots 1, 2, 10, 11 and 12, Block 1, Lake Valley Estates Subdivision, Unit 36 as per plat of Lake Valley Estates Subdivision, Unit 36 of record in Volume 5, Page 43, Plat Records of Wilson County, Texas.

<u>Tract 8:</u>
Lots 1 through 10, Lake Valley Estates Subdivision, Unit 42 as per plat of Lake Valley Estates Subdivision, Unit 42 of record in Volume 5, Page 44, Plat Records of Wilson County, Texas.

<u>Tract 9:</u>
Lots 2, 3, 5, 9 and 12, Lake Valley Estates Subdivision, Unit 43 as per plat of Lake Valley Estates Subdivision, Unit 43 of record in Volume 5, Page 45, Plat Records of Wilson County, Texas.

<u>Tract 10:</u>
Lot 2, Lake Valley Estates Subdivision, Unit 44 as per plat of Lake Valley Estates Subdivision, Unit 44 of record in Volume 5, Page 28, Plat Records of Wilson County, Texas.

# EXHIBIT "A"

METES AND BOUNDS DESCRIPTION
TRACT 1
24.92 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON
SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 24.92-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 24.91-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 3) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 24.92-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

**COMMENCING** at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the east right-of-way line of Pine Valley Drive (60-foot width, Volume 7, Page 46, Wilson County Plat Records) marking the most northerly northwest corner of a called 44.82-acre tract of land described in a deed to The Meadows at Quail Run, Ltd (Tract 2), recorded in Volume 1211, Page 431 of the Wilson County Official Public Records and the southwest corner of Lot 69 of Las Palomas Country Club Estates, Section 2 recorded in Volume 7, Page 46 of the Wilson County Plat Records;

**THENCE** North 85°02'52" East, 159.35 feet, along the common line of said Tract 2 and said Lot 69 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 69.95-acre tract of land described in a deed to National Loan Investors, L. P., (Tract 5) marking the northeast corner of said Tract 2 and the southeast corner of said Lot 69;

**THENCE** North 79°16'55" East, 20.20 feet, over and across said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking an ell corner of said Tract 5 and the northwest corner of said Tract 3 and the **POINT OF BEGINNING** of the herein described tract of land;

**THENCE** along the common line of said Tract 5 and said Tract 3 as follows:

(1) North 79°07'31" East, 452.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Tract 3 and of the herein described tract of land;

(2) South 25°02'54" East, 97.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3) South 24°56'32" East, 833.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the north corner of Lot 113 of said Las Palomas Country Club Estates, Section 2 and a reentrant corner of said Tract 3 and of the herein described tract of land;

(4) THENCE South 65°08'59" West, 147.55 feet along the common line of said Lot 113 and said Tract 3 to a found 1/2-inch iron rod with cap stamped "INTREPID" marking the northeast terminus of Colonial Lane (60-foot width, Volume 7, Page 46 Wilson County Plat Records) and the west corner of said Lot 113;

THENCE along the common line of said Colonial Lane and said Tract 3 as follows:

(5) South 54°55'50" West, 59.52 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(6) South 07°20'02" West, 33.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) South 43°00'36" East, 59.42 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485";

(8) North 89°50'08" East, 32.44 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (leaning) marking the point of curvature of a curve to the left;

(9) in a southeasterly direction, 48.40 feet, along the arc of said curve to the left, having a radius of 894.25 feet, a central angle of 03°06'03" and a chord which bears South 55°49'15" East, 48.39 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency and the west corner of Lot 114 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Country Club Estates, Section 2 and said Tract 3 as follows:

(10) South 18°26'02" East, 203.77 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 114 and the southwest corner of Lot 115 of said Las Palomas Country Club Estates, Section 2;

(11) South 68°37'55" East, 89.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 115 and the southwest corner of Lot 116 of said Las Palomas Country Club Estates, Section 2;

(12) South 59°35'52" East, 450.14 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13) South 66°51'07" East, 244.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the northwest right-of-way line of Las Palomas Drive (60-foot width, Volume 7, Page 46, Wilson County Plat

Records) marking the south corner of Lot 123 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Las Palomas Drive and said Tract 3 as follows:

(14) South 23°11'33" West, 154.97 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest terminus of said Las Palomas Drive;

(15) South 68°48'12" East, 60.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast terminus of said Las Palomas Drive and the northwest corner of Lot 124 of said Las Palomas Country Club Estates, Section 2;

THENCE along the common line of said Lot 124 and said Tract 3 as follows:

(16) South 21°57'45" East, 35.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of said Lot 124;

(17) North 64°59'31" East, 259.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of said Lot 124, and the point of curvature of a non-tangent curve to the left;

THENCE along the common line of said Tract 5 and said Tract 3 as follows:

(18) In a southeasterly direction, 127.23 feet, along the arc of said non-tangent curve to the left, having a radius of 140.86 feet, a central angle of 51°44'53" and a chord which bears South 52°04'00" East, 122.94 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(19) South 02°43'19" West, 187.84 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(20) South 14°33'56" West, 198.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the south corner of the herein described tract of land;

(21) North 66°51'06" West, 813.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22) North 82°01'44" West, 305.83 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(23) In a southwesterly direction, 107.82 feet, along the arc of said curve to the left, having a radius of 135.82 feet, a central angle of 45°29'11" and a chord which bears South 82°28'47" West, 105.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(24) North 18°28'05" West, 863.57 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(25) North 11°09'17" West, 431.99 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of curvature of a curve to the left;

(26) In a northwesterly direction, 227.34 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 93°20'38" and a chord which bears North 55°25'03" West, 203.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(27) North 19°58'55" West, 368.24 feet to the **POINT OF BEGINNING** and containing 24.92 acres (1,085,697 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "B"

**METES AND BOUNDS DESCRIPTION**
**TRACT 2**
**120.18 ACRES IN THE**
**H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481**
**WILSON COUNTY, TEXAS**

A 120.18-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING ALL OF THAT CALLED 120.16-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 5) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 120.18-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

**COMMENCING** at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southerly point of tangency of a curve to the right of Lot 24 of The Meadows of Quail Run Section 1 as recorded in Volume 9, Page 44 of the Wilson County Plat Records;

**THENCE** South 30°45'42" East, 316.64 feet, along the common line of Lots 24 and 25 of said Meadows of Quail Run Section 1 and Lake Valley Drive to a point in the northeast line of said Lot 25;

**THENCE** South 59°14'18" East, 427.11 feet, over and across said Lot 25 and a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a reentrant corner of said Tract 4 and the northeast corner of said Tract 5, a point in the arc of a non-tangent curve to the left and being the **POINT OF BEGINNING** of the herein described tract of land;

**THENCE** along the common line of said Tract 5 and said Tract 4 as follows:

(1) In a southeasterly direction, 21.77 feet, along the arc of said non-tangent curve to the left, having a radius of 172.96 feet, a central angle of 07°12'37" and a chord which bears South 24°41'19" East, 21.76 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(2) South 27°12'04" East, 879.11 feet to a found 1/2-inch iron rod with cap stamped "NORTHSTAR 4350";

(3) South 17°34'48" East, 834.37 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) North 81°00'17" East, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(5) South 63°47'04" East, 356.54 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(6) South 39°39'48" West, 261.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) South 41°13'31" West, 834.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8) South 66°05'42" West, 352.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(9) in a southwesterly direction, 352.46 feet, along the arc of said curve to the left, having a radius of 140.01 feet, a central angle of 144°14'04" and a chord which bears South 82°56'39" West, 266.49 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10) South 17°17'46" West, 379.48 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11) South 12°32'07" East, 834.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 06°30'54" West, 367.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13) in a southwesterly direction, 332.66 feet, along the arc of said curve to the left, having a radius of 139.55 feet, a central angle of 136°34'53" and a chord which bears South 28°30'30" West, 259.30 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14) South 48°12'41" East, 582.61 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15) South 20°50'51" West, 335.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(16) in a southwesterly direction, 231.62 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 94°57'22" and a chord which bears South 65°14'30" West, 206.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(17) South 15°39'27" West, 244.09 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

24-51195-mmp Doc#239-2 Filed 09/10/25 Entered 09/10/25 16:13:20 Exhibit 2 Pg 41 of 57



(18) South 42°58'23" West, 813.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(19) North 68°38'37" West, 372.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(20) In a northeasterly direction, 44.08 feet, along the arc of said curve to the left, having a radius of 137.66 feet, a central angle of 18°20'48" and a chord which bears North 04°07'13" East, 43.89 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(21) North 02°08'57" West, 572.01 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22) North 29°53'19" West, 536.31 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the south corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records and the west corner of said Tract 5 and of the herein described tract of land;

(23) THENCE North 60°12'12" East, 100.85 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a southeast corner of said Tract 1, the west corner of a called 7.64-acre tract of land (Tract 2) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 5 and said Tract 2 as follows:

(24) South 68°08'43" East, 903.87 feet to a found 5/8-inch iron rod (leaning) and being the south corner of said Tract 2;

(25) North 16°45'01" East, 450.11 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" being the east corner of said Tract 2;

(26) North 78°17'50" West, 903.44 feet to a 5/8-inch iron rod set with cap stamped "RPLS 6485" in the southeast line of said Tract 1 marking the north corner of said Tract 2 and a reentrant corner of said Tract 5 and of the herein described tract of land;

(27) THENCE North 13°11'49" East, 78.37 feet, along the common line of said Tract 1 and said Tract 5 to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the east corner of said Tract 1, in an interior line of said Tract 4, and a reentrant corner of said Tract 5 and of the herein described tract of land;

THENCE along the common line of said Tract 4 and said Tract 5 as follows:

(28) North 73°43'18" East, 409.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(29) North 18°55'44" East, 763.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(30) North 14°21'21" West, 834.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(31) North 02°46'17" East, 371.26 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(32) in a northeasterly direction, 211.68 feet, along the arc of said curve to the left, having a radius of 139.76 feet, a central angle of 86°46'44" and a chord which bears North 49°23'02" East, 192.02 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(33) North 09°05'09" East, 526.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(34) North 13°59'53" West, 834.67 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(35) South 84°36'42" West, 79.96 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(36) North 01°49'36" West, 449.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" (bent) in the arc of a curve to the left;

(37) in a northeasterly direction, 69.69 feet, along the arc of said curve to the left, having a radius of 137.53 feet, a central angle of 28°59'26" and a chord which bears North 65°42'44" East, 68.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(38) North 43°29'57" East, 655.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

120.18 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
and W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(39) North 68°22'33" East, 360.71 feet to the POINT OF BEGINNING and containing 120.18 acres (5,235,106 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-1"

METES AND BOUNDS DESCRIPTION
TRACT 3A
60.14 ACRES IN THE
H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, AND A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 60.14-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171 AND W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 60.14-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

**BEGINNING** at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) **THENCE** North 68°12'03" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

**THENCE** along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 22°00'09" East, 4.93 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(3) South 23°07'26" West, 35.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 21°48'28" East, 94.27 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(5) In a southeasterly direction, 145.78 feet, along the arc of said curve to the left, having a radius of 265.04 feet, a central angle of 31°30'51" and a chord which bears South 37°33'54" East, 143.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the point of tangency;

(6) South 53°14'05" East, 109.12 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) North 61°25'04" East, 516.81 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(8) North 62°18'13" East, 879.33 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left in a northerly southwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southeast corner of lot 19 of said Meadows of Quail Run Section 1 and a reentrant corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

**THENCE** along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(9) In a southeasterly direction, 89.78 feet, along the arc of said curve to the left, having a radius of 143.65 feet, a central angle of 35°48'34" and a chord which bears South 73°39'12" East, 88.33 feet to a found 5/8-inch iron rod at the end of said curve;

(10) South 01°50'06" East, 449.56 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11) South 03°14'36" West, 834.53 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 01°37'02" West, 458.08 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(13) In a southeasterly direction, 207.93 feet, along the arc of said curve to the left, having a radius of 140.32 feet, a central angle of 84°54'14" and a chord which bears South 36°31'19" East, 189.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(14) South 02°45'41" West, 375.51 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(15) South 84°17'20" West, 79.88 feet to a found 5/8-inch iron rod;

(16) South 02°52'11" West, 834.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(17) South 18°25'11" West, 462.20 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" and being the southeast corner of the herein described tract of land;

60.14 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 461
A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(18) South 67°26'01" West, 256.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of a called 4.81-acre tract of land (Tract 1) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records;

(19) THENCE South 83°28'02" West, 77.35 feet, along the common line of said Tract 1 and of the herein described tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in an easterly line of a called 69.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records, and the southwest corner of the herein described tract of land;

THENCE along the common line of said called 69.95-acre tract of land (Tract 5) and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

(20) North 08°56'44" East, 950.32 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(21) North 08°36'17" West, 834.42 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(22) North 09°59'21" West, 100.00 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(23) North 50°14'17" West, 361.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

(24) In a northwesterly direction, 206.56 feet, along the arc of said curve to the left, having a radius of 138.99 feet, a central angle of 85°08'51" and a chord which bears North 02°17'01" West, 188.07 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(25) North 33°40'28" West, 183.06 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(26) North 53°18'51" West, 834.92 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of Lot 10 of said Meadows of Quail Run Section 1;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(27) North 28°00'40" West, 108.19 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(28) North 21°48'15" West, 77.80 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the southwest corner of Lot 11 of said Meadows of Quail Run Section One;

(29) North 55°42'57" East, 247.34 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a non-tangent curve to the right at the southeast corner of said Lot 11;

(30) in a northwesterly direction, 39.47 feet, along the arc of said non-tangent curve to the right, having a radius of 335.00 feet, a central angle of 06°45'02" and a chord which bears North 25°10'46" West, 39.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the point of tangency;

(31) North 21°48'15" West, 94.38 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(32) North 66°48'15" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 11 and the southeast corner of said 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1;

(33) **THENCE** North 21°48'15" West, 5.00 feet to the POINT OF BEGINNING and containing 60.14 acres (2,619,822 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-2"

METES AND BOUNDS DESCRIPTION
TRACT 3B
0.456 ACRE IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481
WILSON COUNTY, TEXAS

A 0.456-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 0.456-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

**BEGINNING** at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the south right-of-way line of Lake Valley Drive (width varies) marking the northeast corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northerly northwest corner of the herein described tract of land;

(1) **THENCE** North 58°41'18" East, 120.00 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northwest corner of a 5-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the northerly northeast corner of the herein described tract of land;

**THENCE** along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 31°26'05" East, 5.03 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the northwest corner of Lot 22 of said Meadows of Quail Run Section One;

(3) South 13°41'18" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 31°20'38" East, 246.73 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northwest line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L.P. recorded in Volume 1594, Page 737 of the Wilson County Official Public Records marking the southwest corner of said Lot 22 and the southeast corner of the herein described tract of land;

0.456 Acre
W. H. L. Jackson Survey No. 40, Abstract 481
Wilson County, Texas

(5) THENCE South 68°13'58" West, 71.19 feet, along the common line of said Tract 1 and of the herein described tract of land to a 5/8-inch iron rod set with cap stamped "RPLS 5465" marking a southeast corner of Lot 21 of said Meadows of Quail Run Section 1 and the southwest corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(6) North 31°17'51" West, 234.95 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(7) North 76°17'51" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northeast corner of said Lot 21;

(8) North 31°17'51" West, 5.00 feet to the POINT OF BEGINNING and containing 0.456 acres (19,863 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-3"

METES AND BOUNDS DESCRIPTION
TRACT 3C
1.924 ACRES IN THE
W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND
A. JACKSON SURVEY NO. 34, ABSTRACT 482
WILSON COUNTY, TEXAS

A 1.924-ACRE TRACT OF LAND SITUATED IN THE W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481 AND A. JACKSON SURVEY NO. 34, ABSTRACT 482, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 1.924-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

BEGINNING at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the west right-of-way line of Lake Valley Drive (width varies) marking the southeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of The Meadows of Quail Run Section 1 recorded in Volume 9, Page 44 of the Wilson County Plat Records and the northeast corner of the herein described tract of land;

(1) THENCE South 30°29'55" East, 119.90 feet, along the common line of said Lake Valley Drive and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the northeast corner of a 6-foot-wide strip of land dedicated for right-of-way widening as shown on the map or plat of said Meadows of Quail Run Section 1 and the east corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(2) South 59°28'12" West, 6.00 feet to a found 5/8-inch iron rod with aluminum cap stamped " PRO-TECH" at the easterly northeast corner of Lot 34 of said Meadows of Quail Run Section One;

(3) North 76°31'48" West, 35.36 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(4) South 59°28'12" West, 60.46 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking a point on curvature of an curve to the left;

(5) In a southwesterly direction, 168.78 feet, along the arc of said curve to the left, having a radius of 2,470.64 feet, a central angle of 03°54'51" and a chord which bears South 57°30'22" West, 168.75 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the northwest corner of said Lot 34 and a reentrant corner of the herein described tract of land;

1.924 Acres
W. H. L. Jackson Survey No. 40, Abstract 481
and A. Jackson Survey No. 34, Abstract 482
Wilson County, Texas

(6) South 30°31'48" East, at 170.27 feet pass a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southwest corner of said Lot 34 and the northwest corner of Lot 35 of said Meadows of Quail Run Section 1, continuing in all for a total distance of 263.80 feet to a 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in a northeast line of a called 70.47-acre tract of land (Tract 4) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 Wilson County Official Public Records being the arc of a curve to the left, same being the northerly southwest corner of said Lot 35 and the southeast corner of the herein described tract of land;

THENCE along the common line of said Tract 4 and said residue of a called 279.69-acre tract of land as follows:

(7) in a southwesterly direction, 112.66 feet, along the arc of said curve to the left, having a radius of 140.47 feet, a central angle of 45°57'05" and a chord which bears South 57°41'35" West, 109.66 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(8) North 63°48'44" West, 346.14 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5485" marking the point of curvature of a non-tangent curve to the right, the southwest corner of Lot 33 of said Meadows of Quail Run Section One and the west corner of the herein described tract of land;

THENCE along the common line of said Meadows of Quail Run Section 1 and said residue of a called 279.69-acre tract of land as follows:

(9) in a northeasterly direction, 470.91 feet, along the arc of said non-tangent curve to the right, having a radius of 2,535.00 feet, a central angle of 10°38'36" and a chord which bears North 54°08'54" East, 470.23 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the end of said curve;

(10) North 59°28'12" East, 60.45 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(11) North 14°53'31" East, 35.40 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" at the easterly southeast corner of said Lot 33;

(12) North 58°48'46" East, 4.86 feet to the POINT OF BEGINNING and containing 1.924 acres (83,807 square feet) of land. This description accompanies an Alta/NSPS Land Title Survey, prepared by KM Surveying, LLC and dated this the 3rd day of May, 2022.

# EXHIBIT "C-4"

**METES AND BOUNDS DESCRIPTION**
**TRACT 3D**
**152.88 ACRES IN THE**
**H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, A. JACKSON SURVEY NO. 34, ABSTRACT 482, AND B. H. STEPHENS SURVEY, ABSTRACT 505**
**WILSON COUNTY, TEXAS**

A 152.88-ACRE TRACT OF LAND SITUATED IN THE H. & T. C. R.R. CO. SURVEY NO. 39, ABSTRACT 171, W. H. L. JACKSON SURVEY NO. 40, ABSTRACT 481, AND B. H. STEPHENS SURVEY, ABSTRACT 505, WILSON COUNTY, TEXAS, BEING OUT OF THAT RESIDUE OF A CALLED 279.69-ACRE TRACT DESCRIBED IN DEED TO THE MEADOWS AT QUAIL RUN, LTD (TRACT 6) RECORDED IN VOLUME 1211, PAGE 431 OF THE WILSON COUNTY OFFICIAL PUBLIC RECORDS, SAID 152.88-ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS, (BEARINGS BASED ON THE TEXAS COORDINATE SYSTEM OF 1983, SOUTH CENTRAL ZONE (4204), AS DETERMINED BY GPS MEASUREMENTS):

**BEGINNING** at a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the north line of a called 131.73-acre tract of land described in a deed to Scott D. & Sharon E. Garrett recorded in Volume 926, Page 506 of the Wilson County Official Public Records marking the southwest corner of Lot 42 of the Meadows of Quail Run Section One recorded in Volume 9, Page 44 of the Wilson County Plat Records and the east corner of said residue of a called 279.69-acre tract of land;

**THENCE** along the common line of said 131.73-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(1) South 59°16'57" West, 1,655.99 feet to a 5/8-inch iron rod set with cap stamped "RPLS 5465";

(2) South 59°22'35" West, 378.76 feet to a found 1/2-inch iron rod;

(3) South 48°28'19" West, 95.16 feet to a fence post for corner marking the northwest corner of said called131.73-acre tract of land and a reentrant corner of the herein described tract of land;

(4) South 31°03'56" East, 706.81 to a found 3-inch metal fence post for corner;

(5) South 05°33'39" East, 199.78 feet to a found 1-inch iron pipe marking the northwest corner of a called 960.00-acre tract of land described in a deed to Margaret Chance Evans Rael, et al, recorded in Volume 1541, Page 386 of the Wilson County Official Public Records and the southwest corner of said 131.73-acre tract of land;

**THENCE** along the common line of said called 960.00-acre tract of land and the said residue of a called 279.69-acre tract of land and of the herein described tract of land as follows:

152.86 Acres
H. & T. C. R.R. Co. Survey No. 39, Abstract 171
W. H. L. Jackson Survey No. 40, Abstract 481
A. Jackson Survey No. 34, Abstract 482
and B. H. Stephens Survey, Abstract 505
Wilson County, Texas

(6) South 04°46'07" East, 88.20 feet to a found 5/8-inch iron rod with cap stamped "W. DOVE 4143";

(7) South 31°07'27" East, 1,073.20 feet to a found 1/2-inch iron rod marking the northeast corner of a called 317.60-acre tract of land described in a deed to Charles and Mary Meeks recorded in Volume 1788, Page 774 of the Wilson County Official Public Records and the southeast corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

(8) THENCE South 59°50'04" West, 3,847.77 feet along the common line of said 317.60-acre tract of land and said residue of a called 279.69-acre tract of land to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 27.22-acre tract of land described in a deed to Campo Golf Management Company, LLC recorded in Volume 1080, Page 26 of the Wilson County Official Public Records and the southwest corner of said residue of a called 279.69-acre tract of land and of the herein described tract of land;

THENCE along the common line of said called 27.22-acre tract of land and said residue of a called 279.69-acre tract of land as follows:

(9) North 10°35'21" West, 1,042.65 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(10) North 84°04'23" West, 830.85 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" marking the southeast corner of a called 89.95-acre tract of land (Tract 5) described in a deed to National Loan Investors, L. P. recorded in Volume 1594, Page 737 and being the most westerly corner of the herein described tract of land;

THENCE along the common line of said Tract 5 and said residue of a called 279.69-acre tract of land as follows:

(11) North 05°57'31" East, 459.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(12) South 84°07'07" East, 622.03 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(13) North 14°35'16" East, 303.52 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH";

(14) North 02°46'13" East, 188.29 feet to a found 5/8-inch iron rod with aluminum cap stamped "PRO-TECH" in the arc of a curve to the left;

*VG-6488-2024-245*

**Wilson County**
**Genevieve Martinez**
**Wilson County Clerk**

---

**Instrument Number:** 245

Foreclosure Posting

Recorded On: January 11, 2024 11:46 AM

Number of Pages: 26

---

**" Examined and Charged as Follows: "**

Total Recording: $2.00

---

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 245 |
| Receipt Number: | 20240111000019 |
| Recorded Date/Time: | January 11, 2024 11:46 AM |
| User: | Loretta R |
| Station: | cclerk03 |

**Record and Return To:**

TROY MARTIN

TX

---

**STATE OF TEXAS**
**Wilson County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time printed hereon, and was duly recorded in the Official Records of Wilson County, Texas**

COUNTY COURT ★ COUNTY OF WILSON, TEXAS

Genevieve Martinez

Genevieve Martinez
Wilson County Clerk
Floresville, TX

29

SCANNED

# SUBSTITUTE TRUSTEE'S DEED AND BILL OF SALE

**STATE OF TEXAS** §
§
**COUNTY OF WILSON** §

| | |
|---|---|
| Date: | March 22, 2024 |
| Borrower: | Galleria Loop Note Holder LLC, a Texas limited liability company |
| Borrower's Address: | 2500 West Loop South, Suite 255, Houston, Texas 77027 |
| Holder: | RIC (LAVERNIA), LLC |
| Holder's Address: | 162 Cumberland Street, Suite 300, Toronto, Ontario M5R 3N5 |
| Substitute Trustees: | Troy Martin, Deborah Martin, Cassie Martin, Alexis Martin, Martha Rossington, Reyn Rossington, Wayne Daughtrey, Shelby Martin, Jennyfer Sakiewicz, and each of them acting alone |
| Substitute Trustees' Address: | c/o Bryan Cave Leighton Paisner LLP, 2200 Ross Avenue, Suite 4200 W, Dallas, Texas 75201 |
| Deed of Trust: | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing |
| Date: | August 18, 2023 |
| Grantor: | OTISCO RDX, LLC, a Texas limited liability company |
| Lender: | TIG Romspen US Master Mortgage LP, an exempted Cayman Islands limited partnership |
| Trustee: | Randa Barton |
| Secures: | Loan Agreement (as amended, restated, replaced, supplemented, renewed, extended, or otherwise modified from time to time, "Note"), dated May 31, 2019, in the original principal amount of $18,500,000.00, executed by Borrower, payable to the order of Lender and currently held by Holder. |

After recording, return to:
**ServiceLink, ASAP**
4600 Fuller Ave, Suite 400
Irving, TX 75038
4813054

| | |
|---|---|
| Recording: | Recorded on August 22, 2023, as Document Number 135641 of the Official Public Records of Wilson County, Texas, Receipt No. 20230822000016. |
| Property: | All real property, improvements and personal property described as collateral in the Deed of Trust (defined above); the legal description of the real property is also, for the sake of convenience only, described in Exhibit A attached hereto and made a part hereof for all purposes; however, the description of the real property, improvements and personal property in the Deed of Trust will control to the extent of any conflict or any deficiency in such description contained in the Notice of Substitute Trustee's Sale filed and posted in connection with the Foreclosure Sale (as defined below) or this Substitute Trustee's Deed and Bill of Sale, it being the intent that the Foreclosure Sale cover all property, real, personal, tangible and intangible, which constitutes collateral under, and described in, the Deed of Trust. |
| Foreclosure Sale | |
| Date of Sale: | Tuesday, February 6, 2024 |
| Time of Sale: | 12:00 p.m. local time (that being within three hours of the earliest time of the sale of the Property at the public sale (the "Foreclosure Sale" as stated in the Notice of Substitute Trustee's Sale. |
| Place of Sale: | At the most north-easterly door of the Wilson County Courthouse, being the courthouse door facing the office of the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, 2 Library Lane, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court. |
| Grantee: | RIC (LAVERNIA), LLC |
| Grantee's Mailing Address: | 162 Cumberland Street, Suite 300<br>Toronto, Ontario M5R 3N5<br>CANADA |

Purchase Price: $100,000 (which payment, in accordance with applicable law and the terms of the Deed of Trust, was made by crediting the Purchase Price against amounts due on or with respect to the indebtedness secured by the Deed of Trust, including the Note)

Grantor conveyed to Trustee the Property for the purposes of securing and enforcing payment of, among other things, the Note.

Holder is the owner and holder of the Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing encumbering the Property.

Borrower defaulted under the terms of the Note, and the maturity of the entire principal balance of the Note either had come due by the express terms of the Note or had been accelerated by Lender in accordance with the terms thereof, and the same remains due and payable as of the date hereof.

Lender appointed Substitute Trustees, and each of them acting alone, under the circumstances and in the manner set forth in the Deed of Trust. Lender instructed Substitute Trustees, and each of them acting alone, as authorized by and provided in the Deed of Trust, to enforce the trust due to the occurrence of the foregoing events and sell the Property at the Foreclosure Sale.

As evidenced by executed affidavits held in Lender's file, at the request of Lender, Substitute Trustees (i) filed, or caused to be filed, written notice ("Notice") of the earliest time, place and terms of the Foreclosure Sale with the county clerk of Wilson County, Texas, and (ii) posted, or caused to be posted, the Notice at the location in Wilson County, Texas designated for such notices by the Wilson County Tax Assessor-Collector, in Floresville, Wilson County, Texas, the county in which the Property is situated. In addition, also as evidenced by executed affidavits held in Lender's file, counsel to Lender served, or caused to be served, the Notice by certified mail, return receipt requested, on each debtor obligated to pay the Note according to the records of Lender and as required by law.

All prerequisites required by law, the Deed of Trust and/or other documents creating, evidencing, describing or securing the Note have been duly satisfied by Lender and by Trustee.

The Foreclosure Sale was held by the undersigned pursuant to the terms of the Deed of Trust and in accordance with the laws of the State of Texas on the Date of Sale, Time of Sale and at the Place of Sale. The Foreclosure Sale commenced at the Time of Sale and was concluded by 4:00 p.m. on the Date of Sale.

Grantee, having been assigned all of Lender's right, title and beneficial interest in and to the Deed of Trust by and through that certain Assignment Of Beneficial Interest Under Deed Of Trust with an effective date of February 5, 2024, being the highest bidder at the Foreclosure Sale, did purchase the Property for the Purchase Price.

The undersigned Trustee, in consideration of the foregoing and of the payment of the Purchase Price, by the authority conferred on the undersigned Trustee by the Deed of Trust, GRANTS, SELLS and CONVEYS to Grantee, its legal representatives, successors and assigns,

the Property, together with, all and singular, the rights, privileges, and appurtenances thereto, subject, subordinate and inferior to any senior encumbrances and other exceptions to conveyance and warranty in the Deed of Trust (the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with the rights, privileges and appurtenances thereto, subject, subordinate and inferior to the Permitted Exceptions, to Grantee, its legal representatives, successors and assigns, forever. Substitute Trustee binds Borrower and Borrower's legal representatives, successors and assigns to warrant and defend the Property to Grantee, its legal representatives, successors and assigns forever, against the claims or claims of all persons claiming or to claim the same or any part thereof, except as to the Permitted Exceptions. Substitute Trustee has not made, and does not make, any representation, express or implied, with respect to the personal property and the personal property is sold to Buyer "as is, where is, and with all faults." There is no warranty relating to title, possession, quiet enjoyment, or the like in this disposition of personal property.

Cassie Martin

Cassie Martin, Substitute Trustee