# EXHIBIT 32

Transcript excerpt, Motions Hearing, Khawaja Partners, Ltd. v. Jetall Companies, Inc., Adv. No. 13-03252 (Bankr. S.D. Tex. Aug. 28, 2014), testimony of Omar Khawaja, pp. 1–3, 32–34, 55–56

Unofficial Copy Office of Marilyn Burgess District Clerk

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| KHAWAJA PARTNERS, LTD., ET AL | § | CASE NO. 13-03252-H5-ADV |
| | § | HOUSTON, TEXAS |
| VS. | § | THURSDAY, |
| | § | AUGUST 28, 2014 |
| JETALL COMPANIES, INC., ET AL | § | 11:06 A.M. TO 3:46 P.M. |

MOTIONS HEARING

BEFORE THE HONORABLE KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR DEBTOR: SEE NEXT PAGE

COURT RECORDER: ALISHA MALY-WATSON

COURTROOM DEPUTY: ANNAROSE HARDING

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
Tel: 281-277-5325 ▼ Fax: 281-277-0946
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Unofficial Copy Office of Marilyn Burgess District Clerk

APPEARANCES:

FOR JETALL COMPANIES, INC.:
HUGH MASSEY RAY, III, ESQ.
McKool Smith
600 Travis
Suite 7000
Houston, TX 77002

BRUCE J. RUZINSKY, ESQ.
MATTHEW D. CAVENAUGH, ESQ.
Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX 77010

FOR KHAWAJA PARTNERS, LTD:
LEWIS WILLIAMS JOST, ESQ.
MARK MYERS, ESQ.
Adair & Myers PLLC
3120 S.W. Freeway
Suite 320
Houston, TX 77098

FOR GEORGE LEE:
DAVID A. CHAUMETTE, ESQ.
Chaumette PLLC
50 Briar Hollow Lane
Suite 235W
Houston, TX 77027

FOR AVONDALE DEVELOPMENT:
RACHEL SHERMAN, ESQ.
Dunn Neal and Gerger
3006 Brazos Street
Houston, TX 77006

Unofficial Copy Office of Marilyn Burgess District Clerk

INDEX


| OPENING STATEMENTS | Page |
|---|---|
| By Mr. Jost | 7 |
| By Mr. Ruzinsky | 9 |

| WITNESS: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| ALI CHOUDHRI | | | | |
| By Mr. Ruzinsky | 12 | . | . | . |
| By Mr. Jost | . | 13 | . | . |
| RUBEN BISK | | | | |
| By Mr. Jost | 19 | . | . | . |
| By Mr. Ray | . | 25 | . | . |
| OMAR KHAWAJA | | | | |
| By Mr. Jost | 32 | . | 69 | . |
| By Mr. Ruzinsky | . | 50 | . | . |
| GLENN LANDRUM | | | | |
| By Mr. Ruzinsky | 75 | . | . | . |
| By Mr. Jost | . | 80 | . | . |
| ALI CHOUDHRI | | | | |
| By Mr. Jost | 85 | . | . | . |
| ALI CHOUDHRI | | | | |
| By Mr. Ruzinsky | 111 | . | . | . |

| EXHIBITS: | Marked | Offered | Received |
|---|---|---|---|
| Plaintiff’s: | | | |
| 1-11 | 20 | 20 | 20 |
| Respondent’s: | | | |
| 1-11 and 13 | 20 | 20 | 20 |

| CLOSING STATEMENTS | Page |
|---|---|
| By Mr. Jost | 119 |
| By Mr. Ruzinsky | 119 |
| By Mr. Chaumette | 121 |


Unofficial Copy Office of Marilyn Burgess District Clerk

THE COURT: All right. Let's go.

DIRECT EXAMINATION OF OMAR KHAWAJA

BY MR. JOST:

Q Mr. Khawaja, would you state your full name first.

A My name is Omar Khawaja, K-H-A-W-A-J-A.

Q And very briefly, if you'd tell us who you are and what you do.

A Yeah. I am a practicing attorney, I was licensed in May of 2010. Prior to that, I worked -- prior to law school, I worked as a congressional staffer on Capitol Hill. During law school, I worked at the Securities and Exchange Division, Division of Enforcement. I moved to Houston, I was a prosecutor in Midland, Texas for about a year, then I was a prosecutor in Fort Bend County for about three years. And since that time, I've been in private practice.

Q Do you have any connection to the Plaintiff, Khawaja Partners, Limited?

A Yes. That is an entity that is owned by my family, my parents.

Q Okay. Do you have a personal role with the Plaintiff?

A I do. I help manage my family's business interests.

Q Prior to March 8th of 2013, did you have any involvement with the Avondale Apartments?

A I did. I was -- you know, my family had acquired the property in 1997 or so, 1998, you know, of course I have my

Unofficial Copy Office of Marilyn Burgess District Clerk

own career and my own life, but since that time, I helped manage the property to the extent that my father asked for my help.

I also, and more recently, when I did have more time here in Houston, after I moved back from Washington, D.C. helped manage the property.

Q Was there any reason within your family that required you to step up a bit in terms of a new role?

A Yeah, absolutely. You know, in about early or late two thousand -- early 2013 and late 2012, my father's health was declining. My father is 74 years old now, and you know, he's sort of the patriarch of our large family here in Houston, and I and my brothers were called upon to help him. He has a business in manufacturing, as well as this apartment complex, Avondale Apartments, which was supposed to be his retirement income for him and my mother who doesn't work.

And we had to play a larger role because of financial difficulties that were occurring as a result of the declining real estate market in Houston. And so as a result of my father's health declining and the real estate market remaining stagnant for many years, my family's business which is a manufacturing plant tied into the real estate industry declined.

And so my father needed our help. He was having severe

Unofficial Copy Office of Marilyn Burgess District Clerk

problems with his health, his back, his neck, and in fact, he ended up having surgery in April -- late March 2013 when all of this occurred.

Q In your role for Khawaja Partners, Limited, did you have occasion to come into contact with Mr. Ali Choudhri?

A Well, I actually knew Mr. Choudhri before then. I've known him since high school. I wasn't particularly close to him. I saw him around. But my family and his family knew each other very well. His father knew me very well. I do a lot of community activities, I'm very well known in the Pakistani Community for community service. So I'd see his father at various events, always exchanged courtesies with him.

I knew his mother, because his mother and my mother were good friends. They would go to each other's homes, they would attend events together. My family attended his wedding in 2009, I believe. He was married here in Houston, and my family attended that wedding. I wasn't able to attend. So we knew each other.

Q Personal contacts aside, in your role for Khawaja Partners, Limited, did you ever have occasion to come into contact with Mr. Choudhri?

A Yes. We came into contact really right around 2012, and at that time, I was playing a role in my family's business. At that time, there was no -- there was still

Unofficial Copy Office of Marilyn Burgess District Clerk

deficiency, right?
A Correct.
Q And in terms of the property not being foreclosed, the property was worth at this time in March of 2013, about how much, in your mind?
A I would estimate maybe 750,000, 800,000.
Q Okay. Well, you're generally familiar with the real estate market, aren't you?
A Generally, very generally.
Q You know that the market's been getting better, it's not getting worse, right?
A (No audible response.)
Q Okay. So you also -- let's see, this bankruptcy case was filed in September of 2013, right?
A Correct.
Q And there were schedules filed by the Debtor in this case, right?
A Correct.
Q And, in fact, you signed them, didn't you?
A I may have.
Q Okay.
MR. RUZINSKY: Your Honor, may I approach the witness?
THE COURT: Yes.
BY MR. RUZINSKY:

Unofficial Copy Office of Marilyn Burgess District Clerk

Q Sir, I'm going to hand you a copy of the Bankruptcy Schedules off the Docket, and ask you if the last page of that was signed by you.
A Yes, sir, that's my signature.
Q Okay. And take a look at the document, the many pages, and please tell me if you recall signing the Bankruptcy Schedule.
A Yes, sir, I do recall signing this.
Q And on the first page of the Bankruptcy Schedules, you indicate a value of the property of $750,000 current market value, right?
A Yes.
Q Okay. Sir, would you agree with me that back in March of 2013, a half a year beforehand, in the market that's rising and not declining, that the value of the property was not greater than $750,000 in March of 2013?
A It's possible, but I have no personal knowledge of that.
Q So in terms of benefits to the Debtor, the Debtor didn't have foreclosed on a $750,000 piece of property, the Debtor avoided $400,000 of a deficiency claim, and under this agreement, Exhibit No. 3 in the black notebook, the Debtor got certain rights under a couple of scenarios, didn't he?
A Yes.

Unofficial Copy Office of Marilyn Burgess District Clerk