# EXHIBIT 64

Status conference before the Hon. Randy Wilson, Sept. 19, 2023, in the suffix cases of Cause No. 2012-27197 (333rd Dist. Ct., Harris County): transcript of the recording (00:00–00:23 and from 14:43), with declaration (highlighting added)

Unofficial Copy Office of Marilyn Burgess District Clerk

**Declaration** (Tex. Civ. Prac. & Rem. Code § 132.001)

My name is Ali Choudhri. My date of birth is [redacted] 1980, and my address is 4521 San Felipe Street, Unit 3201, Houston, Texas 77027. I attended the September 19, 2023 status conference before Judge Randy Wilson by video. The proceeding was recorded with the Court's knowledge and permission: at the outset, when counsel asked to transcribe the recording, Judge Wilson said, "That'd be fine with me," and acknowledged that the parties were "keeping a bystander record." The transcript that follows was prepared from that recording. It includes the opening exchange (00:00–00:23) and the portion from 14:43 to the end, except 39:00–40:47; the omitted portions are marked. I have compared the transcript with the recording, and it accurately reflects what was said. The recording is retained and will be produced or lodged on request. I declare under penalty of perjury that the foregoing is true and correct. Executed in Harris County, Texas, on October 21, 2026.

/s/ Ali Choudhri

Ali Choudhri

Unofficial Copy Office of Marilyn Burgess District Clerk

## Transcript of the recording: 00:00–00:23, and 14:43 to the end

**RODNEY DRINNON 00:00**
Transcribe the recording.

**JUDGE RANDY WILSON 00:03**
That'd be fine with me. I'm

**JAMES PIERCE 00:08**
I'm not sure that that's permitted. I don't know.

**JUDGE RANDY WILSON 00:10**
Yeah, I have to candidly tell you. I don't know

**RODNEY DRINNON 00:12**
either.

**JUDGE RANDY WILSON 00:13**
I've never heard of that being done before. But

**RODNEY DRINNON 00:16**
there's something called the bystander rule, I think, or something like that.

**JUDGE RANDY WILSON 00:20**
Yeah, they're keeping a bystander record.

**RODNEY DRINNON 00:23**
Yeah, I guess that's it. How you doing, Andy? Been a long time. Yeah, hello. I finally figured out the video. I don't know why

[00:23–14:43 omitted]

**ANDY TAYLOR 14:43**
right? And I'm avoiding argument on purpose. **I learned last night that you have denied the motion to compel arbitration in the D case that I filed several weeks ago.** Right. When I when I learned of that, I was disappointed because I had intended to put evidence in for for that motion, and had requested. **I had a live request for an oral hearing** that may or may not have ever made it to you because I'm not talking to you directly. But I did make that clear to Karina and everyone else in writing that **I was asking for an oral hearing** because when you move to compel arbitration, typically you put in evidence like the arbitration agreement, the pleading that you're saying has an arbitrable claim, et cetera, et cetera. So that that didn't happen. So what I did in reaction last night, as soon as I learned, was two things. One, I filed an amended motion to compel arbitration, and I put into that motion the very documents I had intended to submit into evidence on an oral hearing on the original motion. There are 11 of them, exhibits one through 11. So I attached those exhibits to an amended motion and filed it last night. Second, as soon as I did that, I filed a notice of interlocutory appeal of your ruling on the first motion, and if you read that notice, and if you look at the Coinbase case, which is U.S. Supreme Court. The filing of an interlocutory appeal under these circumstances creates an automatic stay. So it's our legal position that the D case is stayed pending the outcome of the interlocutory appeal, and I'm not arguing the merits of why that is, or I'm just telling you what what the document says, and I'm happy at the proper time to to argue it when we have a court reporter and a record, but The amended motion is asking that the case be referred to arbitration, and if you were to grant that motion, then our appeal would be moot.

**JUDGE RANDY WILSON 17:34**
Well, I can't. It's state, so I've got a I've got a Hobson's choice here.

**ANDY TAYLOR 17:39**
Yeah, I would I would say this because I I thought that through late last night about well, if the original motion

Unofficial Copy Office of Marilyn Burgess District Clerk

that you denied **without a submission and without a oral hearing** is appealed, which we did last night. Then, under the U.S. Supreme Court case, there's a stay. It's absolutely true. But the motion, the amended motion that I filed, asking you to refer it to arbitration, was filed before the stay, and it's much like motion for rehearing, motion for a new trial. We're asking you to do the very thing that the appeal is trying to accomplish. If you feel that you are barred from ruling on that amended motion because of the stay, then then so be it. mr.

**JUDGE RANDY WILSON 18:39**
Taylor, mr. Taylor, what if we did this? I'm happy to take up your amended motion to compel, which obviously is going to be a more fulsome Exposition or explanation of why you think arbitration is appropriate. Your original motion to compel arbitration was pretty cursory, like one page. Now I recognize you say you wanted to present some evidence, but it was pretty bare bones. I'm happy to consider your amended motion, and what I would suggest is you dismiss your appeal, and then I'll I'll take up your amended motion and see what you got. I just think my hands are tied right now.

**ANDY TAYLOR 19:54**
Okay, I thought that through as well, and. That is, frankly, from a procedural point of view, what I would like to do. The thing I have to be careful about is if I dismiss my appeal, I would want to make sure that you would rule on the amended motion. And if you disagree with me, then I would then appeal that ruling before you make any other rulings in the case. I know there's nothing right now pending in front of you. The motion to enter judgment's been withdrawn, but you know I want to make sure sua sponte, so I don't get sued for malpractice. That if I dismiss the appeal today and then I get you know a judgment entered against us this afternoon, I know you're not going to do that. But I'm not going to

**JUDGE RANDY WILSON 20:51**
do that. Look, I know

**ANDY TAYLOR 20:52**
I'm just protecting myself.

**JUDGE RANDY WILSON 20:54**
Look, look,

**SCOTT FUNK 21:00**
and Judge, before you decide what to do on this, can we please just have a chance to weigh in because there's some missing pieces here.

**JUDGE RANDY WILSON 21:09**
Fair enough. Yeah, give me one second. Yeah, go ahead, mr. Funk.

**SCOTT FUNK 21:30**
So, and I'll let mr. Drabble address this in more detail, if Your Honor would like. But the case is not stayed, and Your Honor, being on the appellate court, probably knows that when there's an appeal, if somebody wants to stay a case, you've got to file a motion for stay. Yeah,

**JUDGE RANDY WILSON 21:51**
you've got to you've got to file that motion, but and it would probably it would probably get granted.

**SCOTT FUNK 21:57**
Well, it may it may not. I mean, in this case, I don't think it would. There's specific provisions in you know dealing with interlocutory appeals, some of which you can't have a trial on the merits in the underlying case if there's an appeal of a special appearance, for example. That's not the case in Texas procedure for denial of a motion to compel arbitration. So it may or may not get granted. That's that's number one. But the the the Casey citing deals with federal procedure and the deference to you know appellate courts that acquire a dominant jurisdiction type to the exclusion of district courts when there's that appeal in federal court, a doctrine of law that

Unofficial Copy Office of Marilyn Burgess District Clerk

doesn't even exist for Texas. So it's a new case and it doesn't apply. There's there's no indications it's ever applied in Texas, but that's one. You've still got jurisdiction. You're not. There's no stay. There's no lack of jurisdiction. But what I want to back up and focus on here is what's really going on and what are they really trying to do, because I think that ought to help shape what's the right remedy and where to go? This is nothing but an effort to delay and try to avoid entry of judgment on the AAA arbitration claims once the motion for rehearing is denied, which I think everyone expects. I mean, they didn't ask for briefing after they filed their petition; they denied their requests without any briefing. So there's nothing new, really, in a motion for rehearing. It's I think expected any day now for that to happen. So if you focus on what's really going on, Judge, we had this blowout argument about what should be together and what shouldn't, and for full briefing and arguments, that the 2020 claims shouldn't slow down or be part of the AAA claims in the arbitration confirmation process. You entered an order of severance. You put those 2020 claims into the C case. These aren't intertwined, and I don't mean to contradict your judge, but I'm going to. They're word for word the same.

**JUDGE RANDY WILSON 24:04**
Well, there are some. Much of it is cut and pasted, but there are some new claims, are there not?

**SCOTT FUNK 24:10**
No, word for word and claim for claim the same. I believe, Judge, in terms of that. I mean, there may be some new wording on the front end with the here comes Mocaran filing this petition instead of that petition, but I think you could take a cut and paste word document on the allegations and the claims of what's in the C case and what's been filed in the D case. Now they just did what you told them they couldn't do. I got in a sense when you said we're not going to join these claims, I'm going to sever them. They ignored your order and put them back into the case you just severed them from. All right, so take that piece in consideration, and really, I want you to think about just the big picture of what's going on. They filed these claims in the D case. It's their claims, and they're telling you we filed them in the D case, but they. Really belong in arbitration. Okay, it's their claims. If their own claims belong in arbitration, the claimant just goes and files an arbitration. You don't move to compel your own claims that you just filed. They're basically saying we intentionally filed them in the wrong case, and they really belong in arbitration. Well, why would they do that? Well, they would do it because they know they're not arbitrable, and they know you're going to deny a motion to compel arbitration. That they'll try to manipulate this appeal and an argument for a stay and everything else on a motion to compel arbitration. And again, all doing it in the AAA case, so it slows it down and it delays it, and so so what I suggest, I think you've got jurisdiction over this case. So let me respectfully suggest here's a here's a good path, which would be number one, withdraw the order denying the motion to compel arbitration. mr. Taylor has already said he wanted a hearing on his amended motion to compound. You're going to give it to him, just when you got jurisdiction still, just withdraw the order. But secondly, rather, if you just abate the claims in the D case, they stay in the D case. You can't have a final judgment on the arbitration award until you separate the AAA claims from these 2020 claims, so there's got to be a severance there at some point. Well, what happened? We've already had a severance, but in this case, I would just do it again. Frankly, that's why I said it's really dismissal. It really ought to be you just violated the order I signed. I said sever these claims, and you have flaunted my order and just refiled them again in the in the in the D case when I said they ought to be separated, and so frankly, what it ought to be is a sanctions hearing about why are we doing this. But if you want to deal with that later, right now you could sever these new claims in the D case and transfer them to the C case, it seems kind of silly, as I said in my motion, because you're transferring the exact same allegations and the exact same claims that already exist in the C case. But given the procedural status of sort of dominant jurisdiction, and what do you do with a second filed case when another court has dominant jurisdiction? It's the law is talking about abatement, but you don't need to abate them. You can just-they're already pending and existing in the C case. So transfer them back to that case and tell them you can't do this again. Keep the claims where I told you to keep the claims. Let's resolve them in those cases. And by that, it's sort of issue.

**SCOTT FUNK 27:35**
And I've asked you to issue an order in the D case, the AAA claims, that sort of sets a docket control deadline of today and says you can't file more claims or defenses in this case without leave of court because we're going to keep the AAA claims separate once the Supreme Court denies the motion for rehearing judgment can be entered

Unofficial Copy Office of Marilyn Burgess District Clerk

on those and then the 2020 claims are alive and well in the C case and whatever they want to do with them they can do with them if they want to go ask you to compel their own claims that they filed in state court to arbitration, which is nonsensical, well, they could do that. I might suggest to you: you tell them if that's the case, I don't need a rule on a motion to compel arbitration. If you think they're arbitrable, go arbitrate, and if they're not arbitrable, they can be resolved in the C case, but that's what's really going on here. Is these things were filed at the 11th hour after you intentionally severed them, so that it can't have an entry of final judgment. You can't have them required to post a supersedious bond and have collection on a case they're trying to delay, just like the middle and everything else. mr.

**JUDGE RANDY WILSON 28:41**
Taylor, why isn't that a viable path forward? Transfer the 2020 claims, send them to the C case, and that way we have a clean D case.

**ANDY TAYLOR 28:56**
There are a bunch of reasons, both procedural and substantive, why that doesn't work? First of all, I know your honor's not in possession, and hadn't read yet what I filed last night. Of course, right now we're in a status conference. I don't want this to be my hearing. We don't want to have a court reporter. No question.

**JUDGE RANDY WILSON 29:23**
No question. It's not.

**ANDY TAYLOR 29:24**
Yeah. Yes, sir. So I know we're just jaw boning, but it's for a good reason. So if you look at the Civil Practice and Revenue Code, go check out Chapter 51.016, Your Honor. 51 six. That says that in any appeal that has the FAA, the Federal Arbitration Act component to it, then it is. With exactly the same as 9 U.S.C. section 16, 9 U.S.C. section 16. So Texas, in the Civil Practices and Remedies Code, has said to you, whatever 9 U.S.C. 16 allows, You allow they're the same. Now 9u.S. 16 specifically allows an interlocutory appeal order denying a motion to arbitrate in the trial court. So the question that was a split in the federal circuits for years is what do you do when the trial courts denied a motion arbitrate and there's an interlocutory appeal taken? What do you do with the underlying case? Is it stayed or can you keep going? There was a split in the circuits and the U.S. Supreme Court on June 23rd of this year settled.

**JUDGE RANDY WILSON 31:07**
Okay, okay, mr. Tater, I get that, but what if I did exactly what mr. Funk was proposing? I withdraw the withdraw the order denying your original motion. I send, I sever out your 2020 claims from the D case and send them to C. And then, if you want to move to compel arbitration, do it in the C case, where these claims are already in in existence.

**ANDY TAYLOR 31:45**
Two reasons why you can't1. is procedural; you're stayed right now. But the substantive reason we put under the adage of two wrongs don't make a right. We objected in writing to taking out of the A case the 2020 claims and putting them in the C case, and the AAA matter and putting it in the D case, and the reasons that are all set forth in writing in my objection are that we have eight parties, five of which are being taken to one court, one case. Three of which are not. But the three have claims against the five, and the five have claims against the three. And so what we've done is created we've created a Frankenstein because if you look at the C case, you can't get full adjudication of all claims because not all parties are there, and the parties that are there, not all of their claims are there. They've been but if but if you combine

**JUDGE RANDY WILSON 32:52**
if you combine your new counterclaim in the D case with what's in the C case, then everybody is everybody's there.

**ANDY TAYLOR 33:01**
No, because the the problem with the D case is that involves the arbitration, and what is unique in the pleading

Unofficial Copy Office of Marilyn Burgess District Clerk

that I filed in the D case is that there are **two huge issues that have not yet been adjudicated**, that deal directly with that arbitration award, the first one, and both of these, by the way, **temporally have occurred after the award. This isn't something I could have brought up, or my predecessor counsel could have brought up at the time because it didn't exist in the award**, there is on page 41 what I call an interrom clause, and they basically say to our side, you have to make an election by such and such time. The consequences are either A or negative A, depending on how you so elect. We made that election, but opposing counsel and opposing party doesn't agree with how we made the election. So we've got a genuine dispute over whether we properly triggered the interorem clause, the benefit of a clause versus the detriment of a clause. That's something that's got to be figured out. The second thing that's got to be figured out is the award specifically assumes that Macarm's a 30% interest owner, and as we pointed out in our pleading, there is a bill of sale that says once certain events occur, 15% reverts back, and that reversion back hasn't been looked at or adjusted. By anybody, that would net out cutting that award in half just on that one argument. **So those are two post-arbitration award rulings** that either Yoon or the appellate courts have signed off on, yea or nay, as of this point. So to try to dump those pleated issues into the C case, which is the 2020 case, when the D case is the arbitration case, makes no sense. There's overlap between the parties and the claims. What we would suggest the path be is you rule on our amended motion, and if you grant it, then we're off to arbitration. If you deny it, we're going to file a notice of interlocutory appeal, like I did last night on the original motion, and you'll have to decide if it stayed or or not. What the U.S. Supreme Court said when they resolved this conflict is they said as a matter of jurisprudential, they didn't read it because it's in the Congressional FAA statute. They said that there has to be an automatic stay, not because there's an automatic stay written in the statute, but because jurisprudentially, it has to be granted as a matter of equity, and because Texas has said we're going to follow the FAA rules, and remember, I argued till I was blue in the face that the FAA didn't exclusively apply to this arbitration, and I lost. You ruled against me, Court of Appeals ruled against me. Everybody is saying it's exclusive, and you also will recall that there was an arbitration agreement that sprung not from the note, deed of trust, and guarantee agreement, but from a purported agreed order that Jeff Joyce had signed off on in court, that was entered, and over my objection and my predecessor's objection, that was ruled to be an independent agreement to arbitrate that didn't have any of the clauses or escape hatches that were in the three financing documents. It was like, you know, for anything and everything. And so the idea that there's no arbitrable claim is something that I think, when you look at it after a hearing, an argument, an evidence, you're going to say there there is. I've also got a Second Circuit federal case and a Houston First District appellate case that say there's no collateral estoppel res judicata when you are seeking to go back to arbitration, even if there was a prior arbitration result, the arbitrators are the ones who try to figure that out, and they're the ones that have the power and the jurisdiction to determine it. And so, for those reasons, Judge, we think the suggestion by mr.

**ANDY TAYLOR 38:24**

Funk doesn't accomplish what needs to be accomplished in order to reach finality. Our position is the last thing I'll say, and you know maybe it's impossible to put Humpty Dumpty back together again at this point. But our position has always been that D and C should have remained in A, and we get these things dealt with, and then you know go up our merry way. But that ship has sailed, and D and C are are are where they are. mr.

**JUDGE RANDY WILSON 38:58**

Funk, anything more you want to wish to add?

[39:00–40:47 omitted]

**JUDGE RANDY WILSON 40:47**

going to do. I need to bring this to an end. I've got a conflict coming up. I'm going to on the D case. I am going to enter an order withdrawing my prior motion to compel denying the motion to compel arbitration, mr. Funk. I want you to draft a proposed order that sends the claims that were recently filed in the D case that sends them to C, and as well include in that an order that there will be no additional claims in the D case without leaving court. It

**SCOTT FUNK 41:24**

was e-filed this morning, Your Honor.

Unofficial Copy Office of Marilyn Burgess District Clerk

**JAMES PIERCE 41:26**
Beg pardon. It

**SCOTT FUNK 41:27**
was E filed this morning a proposed order that does exactly what you just said. It does not have the withdrawal, but it has the severance and the no more filing.

**JUDGE RANDY WILSON 41:36**
All right, I'll I'll look at that. All right, like I said, I've got to bring this to a close. One. One of the one of the things I wanted to do that we didn't get to was to talk about then how to bring the C case to a conclusion. We will schedule another status conference that will set up a schedule on bringing C to an end. All right. Thanks, guys. That's all. That's all I have time to deal with today. Thank you. Thank you.

Unofficial Copy Office of Marilyn Burgess District Clerk