PANACHE

Arboretum Plaza I
9442 N. Capital of Texas
Hwy., Ste. 850
Austin, TX 78759
512-345-7000

www.panache-usa.com

September 11, 2025

Ryan W. Mitchem
Deputy General Counsel
Husch Blackwell

Re: Conflict of Interest – Romspen Representation

Dear Mr. Mitchem,

Thank you for your response. I appreciate the courtesy of your reply. The reason I have taken it upon myself to write to you directly is because I value my relationship with Husch Blackwell and wish to maintain my working relationship with Mr. Legatos. My intent is to resolve this matter in a professional way that protects that relationship while addressing the concerns raised.

This issue cannot be set aside, however, because it involves core duties of loyalty and confidentiality. Based on the record and the Texas Disciplinary Rules of Professional Conduct, there are several points that must be addressed with clarity.

1. **Current Client Status**
   I remain a client of Husch Blackwell in the Romspen matter. There is nothing to suggest otherwise. Your billing statement that you sent is an internally generated document that is an accounting process. There is no document in existence that states that the matter is concluded. The case was never concluded; it was stayed because of Romspen's bankruptcy. I have continued substantive communications with your attorneys, including Mr. Legatos, into 2025 about strategy and developments in the same dispute in Federal court. Under Texas Disciplinary Rule 1.15, termination of representation requires notice and return of the client file. I have received no closing letter, no notice of withdrawal, and no return of files. In absence of those steps, the attorney–client relationship remains in place. Accordingly, under Texas Disciplinary Rule 1.06, your firm may not represent Romspen against me as a current client, absent my informed written consent, which has not been given.
2. **Engagement Letter Termination Language**
   You referenced the engagement letter's provision that representation ends "whenever the task ends" or after six months of inactivity. That language is ambiguous because it fails to define what "the task" is. Under Rule 1.15, termination requires clear notice to the client

and return of the client's file. Neither occurred. Ambiguous contract language cannot override mandatory ethical duties. The case was not concluded; it was stayed. This status has been reported to Mr. Legatos.

3. **Conflict Check**
   Your response does not reference any conflict check. A proper conflict check should have identified me and my entities. If Panache's name or my name did not appear, that suggests a system failure; if it did appear, it was disregarded. Either way, the absence of disclosure or waiver indicates that the Romspen representation was undertaken without the safeguards required under Rule 1.06 (conflicts for current clients) and Rule 1.09 (duties to former clients). Please produce the conflict check report or documentation reflecting how this engagement was cleared.
4. **Same Matter, Same Lender**
   The matters are substantially related. Romspen is not "a different lender." It is a lending enterprise operating through affiliated entities with the same management and decision-makers. This is confirmed by your firm's own memorandum of September 15, 2023, authored by Mr. Legatos and his colleagues, which specifically analyzed claims by Vesta Texas, Panache, and AFMN against Romspen. The factual and legal issues overlap directly, and the memorandum demonstrates that Husch was engaged to advise us in disputes with Romspen.
5. **Custody of Confidential Information**
   Your firm **gained possession of Panache's confidential client files** following the death of our attorney, Mr. Kell Mercer. These files included binders, Mr. Mercer's computer, and strategy materials containing privileged communications, trial strategies, and legal analysis for Panache and related entities. The evidentiary summary of emails with and about Mr. Lynn Butler confirms that Mr. Butler personally took custody of these materials. The Email Summary Evidence is at the end of this letter.

Under Texas Disciplinary Rules 1.05 and 1.09, once a lawyer has obtained access to a client's confidential information, no wall or screening mechanism can guarantee that such information will not, directly or indirectly, be used to the client's disadvantage. The law presumes that confidential information obtained in a prior representation will be used in any substantially related adverse matter.

Although I understand that Mr. Butler is representing Romspen in a separate but similar case in the same United States Bankruptcy Court for the Western District of Texas, the conflict is not lessened. The possession of Panache's privileged files and strategies by an attorney within your firm creates an incurable conflict. There is no way to protect Panache, Vesta, AFMN, or myself unless Mr. Butler recuses himself entirely from Romspen's representation in related matters. Even the appearance of divided loyalty is disqualifying in the Fifth Circuit, and this case goes far beyond appearance — it establishes actual possession of client files and strategies by an attorney now working for the opposing lender enterprise.

6. **Relationship with Mr. Legatos**
   In addition, I have had a long-standing professional relationship with Mr. Nicholas Legatos that pre-dates his time at Husch Blackwell. That relationship continued through his tenure at your firm, and I have regularly updated him on the status of the current

matter. In September 2023, Mr. Legatos co-authored a memorandum analyzing claims by Panache, Vesta, and AFMN against Romspen, and since then he has continued to receive updates from me. For that reason, I remain a current client of Mr. Legatos and of Husch Blackwell. Under Texas Disciplinary Rule 1.06, your firm may not represent Romspen against me in any matter substantially related to this dispute, absent my informed written consent, which has never been given.

7. **Necessary Information and Confirmations**
   To resolve this matter, I respectfully request written certification regarding:
   a. Whether Husch Blackwell will continue to represent Romspen given these facts.
   b. Whether a conflict check was run, its results, and whether my matter was flagged.
   c. Whether a disengagement letter exists, whether my file was closed and returned, and if not, why not.
   d. The steps taken to segregate my files and prevent access by Mr. Butler or any other personnel working on Romspen's representation.

Please provide these certifications by September 15, 2025, so that I have clarity on the firm's position and the handling of my files. We must make decisions moving forward based upon your response.

I want to emphasize again that my purpose in raising this directly with you is to protect my relationship with your firm while ensuring compliance with the duties of loyalty and confidentiality that apply under the Texas Disciplinary Rules and ABA Model Rules. Nothing in this letter should be construed as a waiver of any rights, including the right to seek disqualification, damages, or referral to the appropriate disciplinary authorities.

Sincerely,

Adam Zarafshani

## Email Evidence Summary

1. **Adam Zarafshani to Lynn Butler**
   – Date: May 15, 2025
   – Content: Introduction email from Adam Zarafshani to Lynn Butler.
2. **Russ Horton to Adam Zarafshani**
   – Date: May 17, 2025
   – Content: Forwards Lynn Butler's email acknowledging possession of client files.
3. **Casey Roy to Adam Zarafshani**
   – Date: May 16, 2025
   – Content: States belief that Lynn Butler will be the point of recovery on Kell Mercer's legal files.
4. **Adam Zarafshani Russ Horton**
   – Date: May 28, 2025
   – Content: Lists cases Kell Mercer was handling at the time of his death.

5. **Casey Roy to Lynn Butler**
   – Date: June 2, 2025
   – Content: Conveys legal cases to Lynn Butler for handling.
6. **Casey Roy to Adam Zarafshani**
   – Date: June 2, 2025
   – Content: Acknowledges Adam's instruction to contact Lynn Butler.
7. **Casey Roy to Adam Zarafshani**
   – Date: June 2, 2025
   – Content: Reports that Lynn Butler has two of Kell's binders related to Panache's matters.
8. **Adam Zarafshani to Casey Roy, cc: Russ Horton**
   – Date: June 2, 2025
   – Content: Directs that list of cases be conveyed to Lynn Butler.
9. **Lynn Butler to Catherine Curtis**
   – Date: June 30, 2025
   – Content: Correspondence regarding Clint Alexander, a local probate attorney.
10. **Lynn Butler to Jason Rudd**
    – Date: June 9, 2025
    – Content: Advises that Kell Mercer's accounts are frozen.
11. **Adam Zarafshani to Lynn Butler**
    – Date: June 9, 2025
    – Content: Requests that funds from Kell's account be transferred to Wick Phillips.
12. **Russ Horton to Adam Zarafshani**
    – Date: May 23, 2025
    – Content: States that Lynn Butler confirmed he had Kell Mercer's files.