# EXHIBIT 5

Transcript excerpts, In re MCITBE LLC (Sept. 23, 2026): Vargo testimony

Unofficial Copy Office of Marilyn Burgess District Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE: . Case No. 26-32580-MVL-11
.
MCITBE LLC, . Chapter 11
.
Debtor. .
. Wednesday, September 23, 2026
. . . . . . . . . . . . . . . 9:39 A.M.

TRANSCRIPT OF HEARING ON
MOTION TO DISMISS CASE FILED BY INTERESTED PARTY
TRAVIS B. VARGO, COURT-APPOINTED RECEIVER (21)

**BEFORE THE HONORABLE MICHELLE V. LARSON**
**UNITED STATES BANKRUPTCY COURT JUDGE**

For the Debtor:

Yablon Law PLLC
BY: MARK P. YABLON, ESQUIRE
2777 Allen Parkway, Suite Floor 10
Houston, Texas 77019

For Interested Party, Travis B. Vargo, Court-Appointed Receiver:

Luttrell Carmody Law Group
BY: LESLIE M. LUTTRELL, ESQUIRE
100 NE Loop 510
San Antonio, Texas 78216

Audio Recorder: Bryon A. Robinson
Earle Cabell Federal Building
1100 Commerce Street, Room 1254
Dallas, Texas 75242

Transcription Service: Liberty Transcripts
9107 Topridge Drive
Austin, Texas 78750
(847) 848-4907
DBPATEL1180@GMAIL.COM

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

Unofficial Copy Office of Marilyn Burgess District Clerk

Unofficial Copy Office of Marilyn Burgess District Clerk

Q Okay. Do you --

MR. YABLON: I'm sorry, could I have a point of clarification? These were written agreements?

THE WITNESS: Yes.

MR. YABLON: Okay.

BY MS. LUTTRELL:

Q In your experience in dealing with Mr. Choudhri in relationship to the Choudhri LLCs as identified at Paragraph 9 in ECF 20, Exhibit 1, have there been any other events or actions that -- any other actions perpetrated by Mr. Choudhri or those acting on his behalf that, in your opinion, thwarted your efforts to fulfill your mandate as a Receiver?

A I'm not sure which ones I mentioned earlier, but he remands cases —- excuse me, not he remands. He removes -- excuse me. He files bankruptcies for entities that have some sort of connection to him, either express or through an agency agreement, and then he removes, basically at the time that I'm doing it, most of the related ongoing litigation that I have against him or, for example, one of the ones that we saw earlier, his mother. Those delay matters tremendously.

He employs the recusal of judges, which he's done on at least a half dozen occasions that I've seen. In particular, in the 2012 A-Case and the 2012 D-Case, he did so numerous times. He also, in one of the most recent pieces of litigation, also, to the extent that it was effective, probably not, but he said

that he was moving to recuse a judge in one of those.

So that was just within the last four to six weeks, but it was by email. It was not to a clerk. It wasn't on a filing. That's about it for now. I mean, there's lots of things that he does, but that's what I can remember right this second.

Q As you sit here today, are there any other instances of, using the term of art, litigation tactics that you believe are relevant to this proceeding that Judge Larson should be advised of?

A Well, he's also started to file numerous lawsuits against me. That would be another. And then the next would be the abusive use of the ancillary court in Harris County. When he doesn't like the answer that Judge Wilson gives him, he goes to ancillary.

And then with the ancillary, which obviously is only going to be valid for up to 14 days, he goes to the regular judge. And then if that judge tells him no, then he files another ancillary and gets another judge. He did that more recently relating to a different matter.

Q And you've been in the courtroom for the entire time during the presentation today, correct?

A Yes.

Q Okay. And you heard Mr. Steidley's reference to WC 4th and Colorado and your email to Kell Mercer?

A Yes.

Unofficial Copy Office of Marilyn Burgess District Clerk

Q Okay. Who is or was Kell Mercer?
A He's a bankruptcy lawyer that was practicing in the Western District. And my understanding is he passed away.
Q Okay. And at the time that you made the representation that Mr. Steidley is referring to Mr. Mercer, the email that pops up with a great deal of regularity, had Judge Wilson issued his ruling in WC 4th and Colorado?
A No.

MS. LUTTRELL: Okay. And for -- may I approach the witness?

THE WITNESS: I believe the --

MS. LUTTRELL: Your Honor?

THE COURT: Yes, you may.

THE WITNESS: The Judge Wilson opinion came out on, like, April 27th I think it is.

BY MS. LUTTRELL:

Q I'm handing you a copy of WC 4th and Colorado.
A Yeah. April 29th.
Q And does WC 4th and Colorado pre-date or post-date the receivership orders?
A It post-dates them.
Q And the receivership orders are the ones that we've been talking about at ECF 20?
A Yes.
Q Okay. Have you made any representations like you made

Unofficial Copy Office of Marilyn Burgess District Clerk

THE COURT: Could you give me the date of the order? April 29th, 202- --

MS. LUTTRELL: '25.

THE COURT: Thank you.

MS. LUTTRELL: May I approach, Your Honor? I'll hand you a copy of it.

THE COURT: Yes. I think you may have given it to me at one point, but I'll take it. Appreciate that. Thank you.

BY MS. LUTTRELL:

Q Since the issuance -- and for clarification, Randy Wilson, the Justice of the 14th Court of Appeals that authored the WC 4th and Colorado case that you've got there in front of you, is that the same Randy Wilson that is sitting in the 333rd by special assignment?

A Yes.

Q Okay. At any time since April the 29th of 2025, have you made such a representation concerning single-member LLCs that was similar to what was made to Mr. Mercer in the early part of April?

A No.

MS. LUTTRELL: Pass the witness.

(Pause)

CROSS-EXAMINATION

BY MR. YABLON:

Q Hello, Mr. Vargo. How are you?

Unofficial Copy Office of Marilyn Burgess District Clerk

A Well, MCITBE is listed in Paragraph 9 as a Choudhri LLC.
Q And when it says a Choudhri LLC, which Choudhri does that mean, Ali Choudhri or Shahnaz Choudhri or either of them? Or Mobeen Choudhri?
A Well, this proceeding involves Ali Choudhri.
Q Okay.
A So Mr. Ali Choudhri.
Q All right. So the proceeding is Ali Choudhri, but not MCITBE LLC. That's not part of that proceeding then, correct?
A Can you rephrase that?
Q Well, you just said that that proceeding, the A- and D-Case, those are Ali Choudhri cases, correct?
A Yes, involving his assets.
Q Right. But not -- MCITBE is not a party to that case, correct?
A No.
Q Okay. So where is the authority that you can take over MCITBE?
A Well, there's another order that Judge Wilson issued where he struck an intervention related to it.
Q I'm sorry. Right now I'm asking about --
A I know you don't want to talk about it --
Q -- your Exhibit 20.
A -- but I'm trying to answer your question. You said where is it.

Unofficial Copy Office of Marilyn Burgess District Clerk

Q I'm limiting my question to Exhibit 20. Where in Exhibit 20, in these two receivership orders, do you have authority to take over, manage, control, or do anything to MCITBE?

A I mean, if you're asking me to do the arguments and the law, I think we've done that about nine times.

Q That's not what I'm asking.

A Including all over the Western District when you --

MR. YABLON: Objection, Your Honor.

THE WITNESS: -- testified at the hearing.

MR. YABLON: Objection. Narrative, nonresponsive, and argumentative.

THE COURT: Sustained.

MR. YABLON: Thank you.

BY MR. YABLON:

Q Within your Exhibit Number 20, factually even, where does it say -- state -- well, first of all, did you write this order, the genesis of it, and submit it to the Court?

A No.

Q Who wrote -- who submitted the order, the proposed order to the Court, this proposed order? Sorry.

A If you're talking about the A, I'm assuming it was Michael Ballases. If you're talking about the D, I'm assuming it was someone at Gray Reed.

Q I thought there were only three parties, Ali Choudhri, Dalio, and Dalio. And you mentioned something about another

Unofficial Copy Office of Marilyn Burgess District Clerk

company just now.
A Those are the lawyers.
Q Okay. Who was the last lawyer? Maybe I didn't hear you. I'm sorry. For D.
A The Creditor's counsel for in the A-Case is HooverSlovacek, and it's a gentleman named Michael Ballases.
Q Okay.
A I don't know whether Mr. Ballases is in the D-Case as well, but I know that Gray Reed is representing --
Q Thank you.
A -- creditors in the D-Case.
Q I just didn't understand you. I'm sorry.
A Yes. So --
Q Were you part of the drafting of the proposed order?
A These appear to be some of the provisions that are in my receivership orders in general. But no, I did not take an editing pen to this anywhere in or around, for sure not in 2025. And I wasn't part of that drafting.
Q Okay. But you're familiar with the order, right?
A No.
Q You're not familiar with the order that gives you the authority to take millions of dollars of assets from another entity or person?
A I thought you meant am I familiar with -- oh, let me rephrase. I am familiar with these two orders in general, yes.

Unofficial Copy Office of Marilyn Burgess District Clerk

Q Okay. So getting back to where I started sort of, in this order, either order A or D, can you tell me where you have authority over MCITBE?

A No. We'd have to go through this. And I mean, we've been sitting here for like seven hours.

Q Well, wouldn't you think that's pretty critical? We all talk about Debtor's authority. I'm asking about the Receiver's authority to take actions detrimental to an entity. Shouldn't you have to show me what your authority is? I'm looking at your orders. In this order, where is there authority?

A No. I wasn't aware that I had -- I was testifying down to the specific provision in the A- and D-Case order. Can I do it? Yes. How long are we going to be here? For a little bit.

MR. YABLON: Objection. Narrative, argumentative, nonresponsive, Your Honor.

THE COURT: Ms. Luttrell?

MS. LUTTRELL: Your Honor, Mr. Vargo was saying that if you want to go through each and every paragraph, he can go through each and every paragraph. How long does Mr. Yablon want to take?

If he wants him to identify -- if he's asking him to identify the specific paragraphs in which the authority is derived cumulatively, he can do that. He's going to need to go through each of those paragraphs. Mr. Vargo does not have a marked copy of the order there in front of him.

Unofficial Copy Office of Marilyn Burgess District Clerk

recollection to go and read some other Court's order and how they interpret it. I recognize that it might have a factual walkthrough of the various provisions, but I don't think that's a proper use of refresh recollection.

MS. LUTTRELL: Then Mr. Vargo would like the opportunity to review ECF 20, Exhibit 1 and Exhibit 2 in order to respond to Mr. Yablon's inquiries.

THE COURT: Mr. Yablon, any response?

MR. YABLON: As long as I can see what he's reviewing to make sure that he doesn't have notes, I'd like to see the notes if he's made notes in it.

THE COURT: Of course.

MR. YABLON: Would it be appropriate to just look over his shoulder as he's speaking?

THE COURT: Well, I think that he can hand you what he's about to read, and then you can hand them back to him.

MR. YABLON: Okay. Thank you. May I approach?

THE COURT: Yes.

THE WITNESS: Can I get pens and highlighters?

THE COURT: Oh, okay. No. No, no, no. Do you have a copy of an unmarked version of the amended turnover orders?

THE WITNESS: Yes.

THE COURT: Okay. Show them to Mr. Yablon.

MR. YABLON: Thank you.

(Pause)

Unofficial Copy Office of Marilyn Burgess District Clerk

MR. YABLON: Trying to be fast.

THE COURT: That's fine. That's fine.

MR. YABLON: Can I ask that he not read other things? He's still reading notes.

THE COURT: Please don't read any other exhibits --

THE WITNESS: Yes, Judge.

THE COURT: -- pending.

MR. YABLON: Here you go.

THE COURT: The record will reflect that the witness is looking now at an unmarked copy of the two amended orders that are called the A and D orders found at Docket 20.

THE WITNESS:

THE WITNESS: Judge, could I get a highlighter out of my bag?

THE COURT: Here.

MS. LUTTRELL: I've got one for him, Judge.

THE COURT: Okay.

(Pause)

MR. YABLON: And again, Your Honor, is there a way to have it on the record when he started trying to find the answer to my question and how long it ultimately takes?

THE COURT: The audio is kept with the clock.

MR. YABLON: Okay.

THE COURT: Okay?

MR. YABLON: Thank you.

Unofficial Copy Office of Marilyn Burgess District Clerk

THE COURT: -- we'll wait.

THE WITNESS: Okay. Well, I'm going to continue adding to this testimony, but I want to point two things out. Number one, the WC Colorado decision, I believe, is controlling over --

MR. YABLON: Objection, Your Honor. Nonresponsive, argumentative, and narrative. He's talking about case law, not answering my direct question about what is -- the receivership orders, they don't talk about WC 40 or whatever it is.

THE COURT: Let's start -- I'm going to sustain the objection. You can testify with respect to these orders in particular, and to the extent that your counsel wishes to further redirect you, which I mean, I think we covered on direct.

But with respect to the second appellate decision, we can address that. But let's answer Mr. Yablon's question, Where in these orders do you find your authority?

THE WITNESS: Well, related to that point, Paragraph 8 is Choudhri receivership assets and includes all assets owned by Choudhri except his ownership in any limited liability company, right. However --

BY MR. YABLON:

Q That's on Page 6. Okay. I see that.

A Okay. You will take an order and interpret it with the case law and make arguments relating to the assets --

Unofficial Copy Office of Marilyn Burgess District Clerk

MR. YABLON: Objection, Your Honor. He's making --

THE WITNESS: May I finish my answer?

MR. YABLON: -- argument rather than saying what's in the confines of this order. This order doesn't say go look at case law and kind of make your own interpretation, Mr. Receiver. To be enforceable, an order, written order has to be very specific, and especially with a Receiver who's a magistrate of the Court taking action against somebody or an entity.

MS. LUTTRELL: Objection, Your Honor. It's argumentative. Mr. Vargo is trying to answer his question to the best of his ability with what he knows in dealing with this case on a daily basis.

THE WITNESS: In addition to that, there's --

MR. YABLON: Hold on.

THE COURT: Let's keep it within the confines of the order. Just give him the paragraphs that you've highlighted, and then we'll move on from there.

THE WITNESS: All right. 22D has a procedure for disputed rights. So to the extent that there's an issue, the order directs me to take custody of it. And third parties have a procedure whereby we can adjudicate it in front of Judge Wilson and adjudicate their rights.

BY MR. YABLON:

Q Where does it say that you have authority over MCITBE?

Unofficial Copy Office of Marilyn Burgess District Clerk

Not how do you deal with a dispute, but where does it explicitly state in this order you are in charge of MCITBE or MCITBE's assets?

(Pause)

THE COURT: All right. I think we need to move on from this question. We've waited a considerable amount of time.

(Pause)

BY MR. YABLON:

Q Okay. So I think we've established that you do not know where there's any authority. There's nothing that you can find that gives you the direct authority over MCITBE. Would you agree with that?

A No.

Q Thirty, twenty minutes into this, you --

A No. You handed me two 37-page documents at 5 o'clock in the afternoon after sitting in the room --

Q I handed you one 37-page document.

A No. You handed me -- I have two.

Q Well, your exhibit says there's only 37 pages long.

A In the A order. And then there's 37 in the B.

THE COURT: The record will reflect the whole document is 37 pages, and it has the two documents.

MR. YABLON: Yes.

THE WITNESS: Oh, my apologies, Mark. Yes, 37.

Unofficial Copy Office of Marilyn Burgess District Clerk

BY MR. YABLON:

Q I make those -- I make kind of mistakes like that all the time. It's all good.

A It's late.

Q On that one.

A Yeah. No. But, no, we're not going to agree that I can't. Maybe not under these circumstances right this moment.

Q Well, don't you think you should have known this when you filed a motion and made representations to the Court that you are in charge of MCITBE, that you should know your authority?

A Yes.

Q But you don't.

A I disagree with that.

Q Give me the evidence.

A You're limiting me to this document, and the law is more than a specific document.

Q I'm limiting you to an order.

A Mark, this order does not say --

MR. YABLON: Objection, being argumentative.

THE WITNESS: -- what's exempt. But the law tells me what's exempt, and I have to follow the law.

MR. YABLON: Your Honor, he's making legal argument.

THE COURT: Sustained.

MR. YABLON: Thank you. Move to strike.

THE COURT: Sustained.

Unofficial Copy Office of Marilyn Burgess District Clerk

MR. YABLON: Thank you.

BY MR. YABLON:

Q So, you don't have proof of your authority over my client, do you?

A Can you rephrase that?

Q You don't have proof in the order -- well, let me back up. In this Document 20, the what we call A and D orders, there is nothing in this order giving you direct authority or indirect authority over MCITBE, correct?

A False.

Q Then show it to us. I'm waiting.

A Well, the Court told us to move on.

MR. YABLON: Your Honor, I think I heard you say move on, but this is the most quintessential -- I mean, he can't even be here if he can't show his authority, much less claim to be owning the Debtor and that the Debtor shouldn't be here. This is it. This is the whole -- I mean, if he can't show it, then I move that you deny his order.

THE COURT: Ms. Luttrell?

MS. LUTTRELL: Your Honor, Mr. Yablon is being quite argumentative there in taking a position that is contrary to what Mr. Vargo has stated. I know the Court sustained the objection on legal argument. But Mr. Vargo is a lawyer.

And pursuant to the terms of the enforcement of these orders in his capacity as Receiver, he acts in his capacity

Unofficial Copy Office of Marilyn Burgess District Clerk

are -- they say what they say. And what is to come to that is going to be the argument of the attorney.

I recognize that Mr. Vargo is an attorney. I recognize that he is the Receiver. He has shown you what he knows. And other than that, I mean, then Ms. Luttrell will make her argument based upon that. I'm just not --

MR. YABLON: Okay.

THE COURT: We can't make it appear is what I'm telling you. So I'm going to allow you to continue your questions. But again --

MR. YABLON: Yes, Your Honor.

THE COURT: -- I think it is time to move on.

BY MR. YABLON:

Q So, let's look at Number 8 on Page 6, Mr. Vargo. Does that statement represent -- does that statement give you authority --

A Number 8 on Page 6. Page 6 of 37?

Q Yes, sir.

A Okay.

Q I'm sorry. We're still in ECF Number 20.

A Yes.

Q The A-Case order, and we're on Number 6 -- Page 6, Number 8. And it says, "The Choudhri receivership Assets include all assets owned by Choudhri except his ownership interest in any limited liability company." Does that mean that Choudhri

Unofficial Copy Office of Marilyn Burgess District Clerk

Receiver Assets -- Choudhri Receiver Assets -- Jiminy Crickets.

THE COURT: It's like Yablon Law. I'm telling you, it's a tongue twister.

MR. YABLON: I was waiting for that. You know that, right? All right.

BY MR. YABLON:

Q "Choudhri receivership Assets includes all assets owned by Choudhri except his ownership interests in any limited liability company." So, if Mr. Choudhri owned an interest in company A, does that then give you the authority to take over company A?

A I'm not following what you're saying. Can you repeat that or rephrase it?

Q Number 8, it's saying that the assets that you can take over have to be owned by Choudhri, correct? Under Number 8.

A Yes.

Q Except for his ownership interests in any limited liability company, correct?

A That's what it says here.

Q Well, is that correct?

A Well, that's what it says here.

Q Okay. So, if Choudhri owned part of Vargo Law -- that's not a good example. If Choudhri owned part of a laundromat, it was an LLC and he owned part of it, would Number 8 give you the authority to take over that laundromat based on Number 8?

Unofficial Copy Office of Marilyn Burgess District Clerk

A If we're just staring at Number 8?
Q Uh-huh.
A And we're not going to follow any law, we're just looking at 8?
Q I'm asking you under the order --
A I know. I want to make sure that I give you right answers, though.
Q I agree.
A So, we're not bound by any other laws? We shouldn't look at any of the laws?

MR. YABLON: Objection, nonresponsive. I'm asking him on a Court order, does it allow him to do something, not

THE COURT: Okay. Mr. Yablon, I don't know how else to tell you this.

MR. YABLON: Okay.

THE COURT: I am the trier of fact and law, okay. I understand as plain as day that you are arguing that these turnover orders, on their face, just with the words on the page, do not give him receivership rights over the membership interests, okay, because in the time that we have been in here, I've been able to read this three times, okay.

MR. YABLON: Yes, Your Honor.

THE COURT: And I know exactly how Choudhri LLCs are used. And I've already gone through the Exhibit A to see how they're used there. And let the record reflect there are some

Unofficial Copy Office of Marilyn Burgess District Clerk

definitional issues here.

MR. YABLON: Thank you, Your Honor.

THE COURT: Okay. However, just so we're clear, I also know, and Ms. Luttrell's argued today, she's covered it with the witness, and she argued at a prior hearing that the WC 4th and Colorado case expands the Receiver's powers by essentially giving him more than the charging order in Paragraph 18 would otherwise give him relative to the membership interests. That is their legal argument.

So if you were trying to pin him down to say only what the words that are in this document say, you can pin him down to that. They say what they say. But he can't divorce himself from what he believes the law is based upon the WC Colorado case.

I'm not trying to short-circuit this and give people their arguments. I'm just trying to say that's what we've established. That is where the source of the dispute between the two tables is, okay. And at the end of the day, I'll have to be the daylight between those two arguments and determine what I believe.

MR. YABLON: Okay.

THE COURT: All right?

BY MR. YABLON:

Q So I kind of forgot what I asked you, so I'll make this quick. You don't contend that Ali Choudhri has an ownership

Unofficial Copy Office of Marilyn Burgess District Clerk

MCITBE?

A The -- there's no evidence, document evidence of any ownership of MCITBE.

MR. YABLON: Objection, nonresponsive. I'm asking him a very specific question. Does he have evidence that Ali Choudhri owns MCITBE, not who else might own it.

THE COURT: Objection sustained.

THE WITNESS: The way that you asked the question, I believe --

MR. YABLON: Objection, he's nonresponsive.

THE WITNESS: If a Court order can be evidence, I would say that -- or to the extent that --

MR. YABLON: Objection, nonresponsive.

THE WITNESS: I'm relying upon Judge Wilson's orders.

MR. YABLON: Objection, nonresponsive. I asked, does he have evidence --

THE COURT: Overruled.

BY MR. YABLON:

Q So, you're saying that Judge Wilson's orders prove that Ali owns a membership interest in MCITBE?

A Yes. There were hearings held and issues ordered.

Q Okay.

A Yes.

Q I hate to do this, but where in this order does it find that Ali Choudhri is an owner of MCITBE?

Unofficial Copy Office of Marilyn Burgess District Clerk